AMERICAN LAND TITLE ASSOCIATION
LOAN POLICY
(10-17-92)

## Policy No. 72107- 2834015

# CHICAGO TITLE INSURANCE COMPANY

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, CHICAGO TITLE INSURANCE COMPANY, a Missouri corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or
   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

*In Witness Whereof,* CHICAGO TITLE INSURANCE COMPANY has caused this policy to be signed and sealed as of Date of Policy shown in Schedule A, the policy to become valid when countersigned by an authorized signatory.

CHICAGO TITLE INSURANCE COMPANY

By: [signature]
President

ATTEST:
[signature]
Secretary

Reorder Form No. 8257 (Reprinted 10/00)

ALTA Loan Policy (10-17-92)

# CHICAGO TITLE INSURANCE COMPANY

## ALTA ENDORSEMENT - FORM 1

Title No. HTA-2005-190

Attached to and made a part of Policy Number 72107-2834015

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

Any assessments for street or other municipal improvements authorized, under construction, or completed at Date of Policy not excepted in Schedule B which now have gained or hereafter may gain priority over the lien of the insured mortgage.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

**CHICAGO TITLE INSURANCE COMPANY**

By:_____

ALTA 1 (Street Assessment)

# CHICAGO TITLE INSURANCE COMPANY

### Policy Endorsement

Attached to and made a part of Policy Number 72107-2834015

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

(1) The invalidity or unenforceability of the lien of the insured mortgage resulting from the provisions therein which provide for changes in the rate of interest.

(2) Loss of priority of the lien of the insured mortgage as security for the unpaid principal balance of the loan, together with interest as changed in accordance with the provisions of the insured mortgage, which loss of priority is caused by said changes in the rate of interest.

"Changes in the rate of interest", as used in this endorsement, shall mean only those changes in the rate of interest calculated pursuant to the formula provided in the insured mortgage at Date of Policy.

This endorsement does not insure against loss or damage based upon (a) usury, or (b) any consumer credit protection or truth in lending law.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto, except that the insurance afforded by this endorsement is not subject to Section 3(d) of the Exclusions From Coverage. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

**CHICAGO TITLE INSURANCE COMPANY**

By_____

ALTA 6 (Variable Rate Mortgage)

# CHICAGO TITLE INSURANCE COMPANY

### Endorsement

Attached to and made a part of Policy Number 72107-2834015

The insurance afforded by this endorsement is only effective if the land is used or is to be used primarily for residential purposes.

The Company insures the insured against loss or damage sustained by reason of lack of priority of the lien of the insured mortgage over:

(a) any environmental protection lien which, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the clerk of the United States district court for the district in which the land is located, except as set forth in Schedule B; or

(b) any environmental protection lien provided for by any state statute in effect at Date of Policy, except environmental protection liens provided for by the following state statutes:

This endorsement will not insure against liens arising pursuant to the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq. subsequent to the effective date of this policy.

This endorsement is made a part of the policy and is subject to all the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

**CHICAGO TITLE INSURANCE COMPANY**

By_____

ALTA 8.1(Environmental Protection Lien)

# CHICAGO TITLE INSURANCE COMPANY

### Endorsement

Attached to and made a part of Policy Number 72107-2834015

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1. Any incorrectness in the assurance that, at Date of Policy:
   a. There are no covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.
   b. Unless expressly excepted in Schedule B:
      1. There are no present violations on the land of an enforceable covenants, conditions or restrictions, nor do any existing improvements on the land violate any building setback lines shown on a plat of subdivision recorded or filed in the public records.
      2. Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land does not, in addition, (i) establish an easement on the land; (ii) provide a lien for liquidated damages; (iii) provide for a private charge of assessment; (iv) provide for an option to purchase, a right of first refusal or the prior approval of future purchaser or occupant.
      3. There is no encroachment of existing improvements located on the land onto adjoining land, nor any encroachment onto the land of existing improvements located on adjoining land.
      4. There is no encroachment of existing improvements located on the land onto that portion of the land subject to any easement excepted in Schedule B.
      5. There are no notices of violation of covenants, conditions and restrictions relating to environmental protection recorded or filed in the public records.
2. Any future violation on the land of any existing covenants, conditions or restrictions occurring prior to the acquisition of title to the estate of interest in the land by the insured, provided the violation results in:
   a. invalidity, loss of priority, or unenforceability of the lien of the insured mortgage; or
   b. loss of title to the estate or interest in the land if the insured shall acquire title in satisfaction of the indebtedness secured by the insured mortgage.
3. Damage to existing improvements, including lawns, shrubbery or trees:
   a. which are located on or encroach upon that portion of the land subject to any easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved.
   b. resulting from the future exercise of any right to use the surface of the land for the extraction or development of minerals excepted from the description of the land or excepted in Schedule B.
4. Any final court order or judgment requiring the removal from any land adjoining the land of any encroachment excepted in Schedule B.
5. Any final court order or judgment denying the right to maintain any existing improvement on the land because of any violation of covenants, conditions or restriction or building setback lines shown on a plat of subdivision recorded or filed in the public records.

Whenever in this endorsement the words "covenants, conditions or restriction" appear, they shall not be deemed to refer to or include the terms, covenants, conditions or limitations contained in an instrument creating a lease.

As used in paragraphs 1(b)(1) and 5, the words "covenants, conditions or restrictions" shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection.

This endorsement is made a part of the policy and is subject to all the terms and provisions thereof and of any prior endorsements thereto. Except to the extend expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

CHICAGO TITLE INSURANCE COMPANY

By_____

ALTA 9 (Restrictions, Encroachments, Minerals)

# CHICAGO TITLE INSURANCE COMPANY

## SCHEDULE A

POLICY NUMBER: 72107-2834015

**Amount of Insurance:** $5,500,000.00

**Date of Policy:** March 30, 2006

**Office File Number:** HTA-2005-190

1. **Name of Insured:**

   Dare Investments, L.L.C,, ISAOA/ATIMA, and James J. Licata, First Connecticut Consulting Group, Inc., First Connecticut Holding Group, L.L.C, XXIII and First Connecticut Holding Group, XXIV, as the insured's interest appears pursuant to a certain Security and Intercreditor Agre
   1801 North 1120 West
   Provo, UT  84601

2. **Title to the estate or interest in the land is at date of policy vested in:**

   Lorraine Munnia Mocco, by deed from Peter M. Mocco, dated September 26, 1991, recorded February 24, 1992 in the Middlesex County Clerk/Register's Office in Deed Book 3964, Page 84 (As to Parcel 1).

   Lorraine Munnia Mocco, by deed from Peter M. Mocco, dated September 26, 1991, recorded February 24, 1992 in the Middlesex County Clerk/Register's Office in Deed Book 3964, Page 84. (As to Parcel 2).

   Lorraine Munnia Mocco, by deed from Peter M. Mocco, dated September 26, 1991, recorded February 24, 1992 in the Middlesex County Clerk/Register's Office in Deed Book 3964, Page 84. (As to Parcel 3).

3. **The estate or interest in the land which is encumbered by mortgage is:**

   Fee Simple

Issued by:
**Horizon Title Agency**
65 State Highway 4 - Suite 3
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

4. **The insured mortgage and assignments thereof, if any, are described as follows:**

   Mortgage from Lorraine Mocco to First Connecticut Consulting Group, Inc., dated September 26, 1996, recorded September 26, 1996 in Mortgage Book 5164, Page 55 in the Clerk's Office of the County of Middlesex, in the originally stated amount of $15,000,000.00.

   Said Mortgage was assigned to EMP Whole Loan I, L.L.C. by assignment dated September 26, 1996, recorded September 26, 1996 in Assignment Book 658, Page 312.

   Said mortgage was further assigned to SWJ Holdings, LLC by assignment dated March 13, 2006, recorded March 30, 2006, in Assignment Book 966, Pages 28, 36 and 40.

   Amended and Restated Mortgage from Lorraine Mocco to First Connecticut Consulting Group, Inc. dated September 26, 1996, recorded November 14, 1996 in Mortgage Book 5187, Page 815.

   Said Amended and Restated Mortgage was assigned to SWJ Holdings, Inc. by assignment dated March March 13, 2006, recorded March 30, 2006 in Assignment Book 966, Page 32.

   With respect to any interest of said EMP Whole Loan I, LLC in and to the subject mortgage hereunder, the Final Title Policy will insure over same.

**THIS POLICY INSURES THAT THE MORTGAGE HEREIN IS A VALID FIRST LIEN.**

SEE SCHEDULE C, DESCRIPTION ATTACHED.

Issued by:
**Horizon Title Agency**
65 State Highway 4 - Suite 3
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

Policy Number 72107-2834015

## SCHEDULE C, D E S C R I P T I O N

All that certain lot, tract or parcel of land and premises, situate, lying and being in the Borough of Sayreville, County of Middlesex and State of New Jersey, being further described as follows:

PARCEL 1

BEING known as Lot 1 in Block 249 as shown on the Tax Map of the Borough of Sayreville. (The foregoing description being for identification only).

PARCEL 2

BEING known as Lot 1 in Block 250 as shown on the Tax Map of the Borough of Sayreville. (The foregoing description being for identification only).

PARCEL 3

BEING known as Lot 1 in Block 251 as shown on the Tax Map of the Borough of Sayreville. (The foregoing description being for identification only).

**The premises to be insured known as Lot(s) 1, Block 249on the Tax Map of the Borough of Sayreville, County of Middlesex and State of New Jersey.**

Issued by:
**Horizon Title Agency**
65 State Highway 4 - Suite 3
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

## SCHEDULE B

### Part I

Policy Number 72107-2834015

**This policy does not insure against loss or damage by reason of the following:**

1. Any facts about the land which a correct survey would disclose, and which are not shown by the public record.

2. This property is subject to the current year's taxes levied or to be levied, and not yet certified to by the Middlesex County Board of Taxation in accordance with Chapter 397, Laws of 1941, as amended and supplemented.

3. The Policy to Dare Investments will affirmatively insure that the said mortgage that is the subject of the Collateral Assignment of Mortgage hereinbefore referred to, was given pursuant to a Federal Bankruptcy Court Order of September 25, 1996, as amended or modified.

4. Easements as set forth in Deed Book 1015, Page 576, Deed Book 3366, Page 62, Deed Book 2507, Page 384, Deed Book 2131, Page 42, Deed Book 3180, Page 650, Deed Book 3180, Page 655 and Deed Book 4384, Page 614. (Affects Parcel 1). Same does not interefere with the use and occupancy of the premises.

5. Easements as set forth in Deed Book 255, Page 326, Deed Book 2507, Page 384, Deed Book 3180, Page 650, Deed Book 3180, Page 655 and Deed Book 4354, Page 614. (Affects Parcel 2). Same does not interfere with the use and occupancy of the premises.

6. Easements as set forth in Deed Book 384, Page 490, Deed Book 861, Page 4, Deed Book 1136, Page 120, Deed Book 1166, Page 493, Deed Book 2338, Page 494, Deed Book 3053, Page 463, Deed Book 3366, Page 62, Deed Book 2507, Page 384, Deed Book 3180, Page 650, Deed Book 3180, Page 655, Deed Book 2493, Page 1136, Deed Book 2977, Page 533, Deed Book 2516, Page 269, Deed Book 2599, Page 283, Deed Book 4354, Page 614 and Deed Book 2131, Page 42. Same does not interfere with the use of the premises.

7. Subject to the terms, conditions, covenants, court orders, etc, as set forth in the United States Bankruptcy Court, District of Connecticut, Bridgeport Division Case No. 02-50851 (AHWS), and the Asset Purchase Agreement thereunder.

8. EXCLUSIONS FROM COVERAGE, ITEM #3b as set forth on the policy cover jacket to accompany said Final Title Policy, hereunder:

   Same will be omitted only as specific to the said "Mocco"/"Scarpone" claims and positions challenging positions in and to said mortgage hereunder as per letter of February 23, 2006 from James A. Scarpone, Esq. to Alan J. Brady, Esq., et als.

Issued by:
**Horizon Title Agency**
65 State Highway 4 - Suite 3
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

9. The Policy to Dare Investments will affirmatively insure that the said mortgage that is the subject of the Collateral Assignment of Mortgage hereinbefore referred to, was given pursuant to a Federal Bankruptcy Court Order of September 25, 1996, as amended or modified. Also that the original principal balance of said mortgage was $15,000,000.00.

This Company, through its due diligence, can verify that the amount currently due and owing on the said mortgage being insured hereunder, at the date of this Commitment, is no less that $15,000,000.00.

NOTE: Unless Schedule B Part II is attached there are no subordinate matters that affect the title to the estate or interest referred to in Schedule A.

Issued by:
Horizon Title Agency
65 State Highway 4 - Suite 3
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

NOTE: Unless Schedule B Part II is attached there are no subordinate matters that affect the title to the estate or interest referred to in Schedule A.

Issued by:
**Horizon Title Agency**
65 State Highway 4 - Suite 3
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

**SCHEDULE B**

## PART II

Policy Number 72107-2834015

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that such matters are subordinate to lien or charge of the insured mortgage upon said estate or interest:

COUNTERSIGNED

_____
Authorized Signature

Issued by:
**Horizon Title Agency**
65 State Highway 4 - Suite 3
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

### SURVEY ENDORSEMENT
(Without Survey)

Attached to and made a part of Policy Number 72107-2834015

If this endorsement is attached to a Loan Policy, exception number 6 in Schedule B of this policy is hereby deleted and the Company insures against loss or damage which the insured shall sustain by reason of any encroachments, overlaps, boundary line disputes, or easements not set forth in Schedule B of Policy.

If this endorsement is attached to an Owner's Policy, this endorsement is void.

This endorsement is made a part of the policy and is subject to all the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

This endorsement shall not be valid or binding until countersigned by an authorized signatory as designated below.

**CHICAGO TITLE INSURANCE COMPANY**

By _____

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (i) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (ii) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
      (a) to timely record the instrument of transfer; or
      (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

## CONDITIONS AND STIPULATIONS

### 1. DEFINITION OF TERMS

The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A. The term "insured" also includes

(i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

(ii) any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

(iii) the parties designated in Section 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage.

(c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d) "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g) "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

### 2. CONTINUATION OF INSURANCE

(a) After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b) After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(c) **Amount of Insurance.** The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

(i) the Amount of Insurance stated in Schedule A;

(ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

(iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

### 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

### 4. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

### 5. PROOF OF LOSS OR DAMAGE

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

### 6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a) **To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.**

(i) to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii) to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

(b) **To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.**

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs (b)(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

### 7. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of Insurance as defined in Section 2 (c) of these Conditions and Stipulations;

(ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

(iii) the difference between the value of the [insu]red estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

## 8. LIMITATION OF LIABILITY

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d) The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

## 9. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

## 10. LIABILITY NONCUMULATIVE

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

## 11. PAYMENT OF LOSS

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

## 12. SUBROGATION UPON PAYMENT OR SETTLEMENT

(a) The Company's Right of Subrogation.

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against a[ny] person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b) The Insured's Rights and Limitations.

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c) The Company's Rights Against Non-Insured Obligors.

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

## 13. ARBITRATION

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

## 14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

## 15. SEVERABILITY

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

## 16. NOTICES, WHERE SENT

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at the issuing office or to:

Chicago Title Insurance Company
National Claims Administration