| | |
|---|---|
| DARE INVESTMENTS, LLC, a Utah limited liability company,<br><br><br>Plaintiff,<br><br>vs.<br><br>CHICAGO TITLE INSURANCE COMPANY, a Missouri domiciled insurer; HORIZON TITLE AGENCY, Inc., a New Jersey domiciled company; CHICAGO TITLE RICO ENTERPRISE, a racketeering enterprise,<br><br>Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br><br>Case Action No.2:10-CV-06088(DRD)(MAS)<br><br><br>Hon. Dickinson R. Debevoise |

---

## BRIEF OF CHICAGO TITLE INSURANCE COMPANY IN SUPPORT OF MOTION TO DISMISS COMPLAINT OF DARE INVESTMENTS, LLC

---

RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800
Federal Bar No. 7088

Attorneys for Defendant Chicago Title Ins. Co.

Of Counsel:
    Michael R. O'Donnell, Esq.
    Derrick R. Freijomil, Esq.

On the Brief:
    Derrick R. Freijomil, Esq.
    Wendy Elsa Bozzolasco, Esq.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ............................................................................... 3

A.    Background: Dare Closing & Bankruptcy Sale ............................................. 3

B.    Dare's Hard Money Loan ......................................................................... 4

C.    State Court Litigation &Injunction & Vermont Decision ............................... 6

    1.    1999 State Court Litigation & 2001 Injunction ................................... 6

    2.    2004 Vermont Decision ................................................................. 6

    3.    2007 Claims Against Dare in the State Court Litigation ...................... 8

D.    Dare's Claims Against Chicago Title Here ................................................. 8

    1.    Dare's Causes of Action ................................................................ 8

    2.    Dare's Alleged Factual Bases .......................................................... 9

E.    The Title Policy ...................................................................................... 10

F.    The Security Agreement ............................................................................ 12

G.    Dare's Sworn Testimony & Documents ..................................................... 13

    1.    Dare Relied on & Used Multiple Counsel ......................................... 13

    2.    Dare Was Aware of the State Court Litigation ................................... 15

    3.    Dare Knew of the State Court Injunction, Vermont Decision, & Its Appeal ................................................................. 15

    4.    Dare Often Communicated with Moccos' Counsel ............................ 17

**TABLE OF CONTENTS**
**(CONTINUED)**

H.  Chicago Title's Coverage Determinations .................................................. 18

LEGAL ARGUMENT ................................................................................................ 19

I.  LEGAL STANDARD .......................................................................................... 19

II.  DARE'S INDISPUTABLE KNOWLEDGE & APPLICABLE LAW
    REQUIRE DISMISSAL OF ENTIRE COMPLAINT ................................... 20

A.  DARE'S  FRAUD-BASED  CLAIMS  MUST  BE
    DISMISSED ......................................................................................................... 20

B.  DARE'S  NEGLIGENCE  CLAIM  MUST  BE
    DISMISSED ......................................................................................................... 22

    1.  Dare's Knowledge Precludes Its Negligence Claim .......................... 22

    2.  Dare's Negligence Claim Fails as a Matter of Law .......................... 23

C.  DARE'S  REFORMATION  CLAIM  MUST  BE
    DISMISSED ......................................................................................................... 24

    1.  Dare Cannot Establish Unilateral Mistake Coupled With
        Fraud or Unconscionable Conduct ...................................................... 24

    2.  Dare's Reformation Claim Is Barred by Laches ................................ 26

D.  COVERAGE  &  BAD  FAITH  CLAIMS  MUST  BE
    DISMISSED ......................................................................................................... 26

    1.  No Coverage Exists Under the Title Policy ........................................ 26

    2.  Dare Fails to Allege a Bad Faith Denial of Coverage ...................... 29

III.  ADDITIONAL, INDEPENDENT GROUNDS REQUIRE
     DISMISSAL OF DARE'S FRAUD-BASED CLAIMS WITH
     PREJUDICE ......................................................................................................... 30

**TABLE OF CONTENTS**
**(CONTINUED)**

A.    Dare's Fraud-Based Claims Must Be Dismissed for Failure to Plead With the Requisite Particularity ........................................... 30

B.    Dare Has Failed to State a Claim Under the NJCFA.................................... 31

    1.    Title Agents Are Outside the NJCFA................................................... 31

    2.    Dare's Hard Money Loan is Outside the NJCFA............................... 32

C.    Dare Has Failed to State a Claim Under RICO ............................................ 34

    1.    Dare Has No RICO Standing................................................................ 34

    2.    Dare Has Failed to Meet the Notice Pleading Requirements ................................................................................ 35

    3.    Dare Has Failed to Plead RICO With Particularity............................. 35

    4.    Dare Has Failed to Plead That Chicago Title Participated in the RICO Enterprise ........................................................ 36

    5.    Dare Has Failed to Plead an Enterprise Separate From the Predicate Acts of Racketeering............................................. 38

    6.    Dare's RICO Claims Must Be Dismissed As Untimely..................... 38

IV.    Chicago Title RICO Enterprise Must Be Dismissed ..................................... 39

CONCLUSION ....................................................................................................... 40

# TABLE OF AUTHORITIES

## CASES

Agency Holding Corp. v. Malley-Duff & Assocs.,
    483 U.S. 143 (1987) ................................................................38

Alexander v. CIGNA Corp.,
    991 F. Supp. 427 (D.N.J.) , aff'd, 172 F.3d 859 (3d Cir. 1998) ......................24

Am. Sav. & Loan Ass'n. v. Lawyers Title Ins. Corp.,
    793 F.2d 780 (6th Cir. 1986) .............................................................27

In re Baillio,
    2010 WL. 3782065 (Bkrtcy. D.N.M. Sept. 21, 2010) ........................................4

Bancoklahoma Mrtg. Corp. v. Capital Title Co., Inc.,
    194 F.3d 1089 (10th Cir. 1999) ......................................................36, 37

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) ................................................................19

Berman v. Gurwicz,
    189 N.J. Super. 89 (Ch. Div. 1981) .........................................................21, 23

Burd v. Sussex Mut. Ins. Co.,
    56 N.J. 383 (1970) ....................................................................26

In re Burlington Coat Factory Sec. Litig.,
    114 F.3d 1410 (3d Cir. 1997).........................................................19

Centrum Fin. Servs. v. Chicago Title Ins. Co.,
    2010 WL. 936201 (D.N.J. March 12, 2010)....................................................33

Cetel v. Kirwan Fin. Group, Inc.,
    460 F.3d 494 (3d Cir. 2006)..............................................................39

DJL Mrtg. Capital Inc. v. Kontogiannis,
    726 F. Supp. 2d 225 (E.D.N.Y. 2010) ..........................................................34

DSK Enters., Inc. v. United Jersey Bank,
    189 N.J. Super. 242 (App. Div. 1983) ............................................................21

Dunkin' Donuts of Am., Inc. v. Middletown Donut Corp.,
    100 N.J. 166 (1985) ....................................................................24

FL Receivables Trust 2002-A v. Bagga,
      2005 WL. 563535 (E.D. Pa. March 8, 2005) ....................................................34

Feldman v. Urban Comm., Inc.,
      78 N.J. Super. 520 (Ch. Div. 1963), aff'd, 87 N.J. Super. 391 (App.
      Div. 1965) ........................................................................................................27

Ferrell v. America's Dream Homes, Inc.,
      2010 WL. 3075578 (App. Div. Aug. 4, 2010)................................................20

In re First Conn. Consulting Group, Inc.,
      2007 WL. 3498199 (2d Cir. 2007)..................................................................7

Fleming  Co., Inc. v. Thriftway Medford Lakes, Inc.,
      913 F. Supp. 837 (D.N.J. 1995) ................................................................20, 25

Forbes v. Eagleson,
      228 F.3d 471 (3d Cir. 2000), cert. denied, 533 U.S. 929 (2001) ....................38

Frank v. Cape May Cty.,
      2010 WL. 3614193 (D.N.J. Sept. 9, 2010) .....................................................39

Frederico v. Home Depot,
      507 F.3d 188 (3d Cir. 2007)............................................................................30

Grand Cove II Condo. Ass'n. v. Ginsburg,
      291 N.J. Super. 58 (App. Div. 1996) ..............................................................26

Hollis-Arrington v. PHH Mort. Corp.,
      2005 WL. 3077853 (D.N.J. 2005) ..................................................................38

Horesh v. State Farm Fire & Cas. Co.,
      265 N.J. Super. 32 (App. Div. 1993) ..............................................................26

In re House of Drugs, Inc.,
      251 B.R. 206 (Bankr. D.N.J. 2000) ................................................................21

Iacaponi v. New Amsterdam Cas. Co.,
      379 F.2d 311 (3d Cir. 1967)............................................................................20

In re Ins. Brokerage Antitrust Litig.,
      2006 WL. 2850607 (D.N.J. 2006) .............................................................36, 38

In re Integrity Ins. Co.,
      245 N.J. Super. 133 (Law Div. 1990) .............................................................38

Jewish Cntr. of Sussex Cty. v. Whale,
 86 N.J. 619 (1981) ............................................................20

John Hancock Mut. Life. Ins. Co. of Boston v. Cronin,
 139 N.J. Eq. 392 (E & A 1947)....................................20, 21

Kaufman v. i-Stat Corp.,
 165 N.J. 94 (2000) ...........................................................22

Kuhnel v. CNA Ins. Cos.,
 322 N.J. Super. 568 (App. Div. 1999) .............................23

Kunz v. Mason,
 75 N.J. Eq. 616 (E. & A. 1909)........................................26

Lum v. Bank of Am.,
 361 F.3d 217 (3d Cir.), cert. den., 543 U.S. 918 (2004) ...............20

Macedo v. Dello Russo,
 178 N.J. 340 (2004) .........................................................31

Martinez v. John Hancock Mut. Life Ins. Co.,
 145 N.J. Super. 301 (App. Div. 1976) .............................24

Matthews v. Kidder, Peabody & Co., Inc.,
 260 F.3d 239 (3d Cir. 2001).............................................34

Mocco et al. v. Licata et al.,
 Docket No. ESX-C-397-99 ...............................................6

Neveroski v. Blair,
 141 N.J. Super. 365 (App. Div. 1976) .............................31

Optica, Inc. v. Metro Pub. Adjustment,
 2005 WL 1719134 (D.N.J. July 21, 2005).......................33

Parrino v. Swift,
 2006 WL 1722585 (D.N.J. June 19, 2006).......................38

Pickett v. Lloyd's,
 131 N.J. 457 (1993) ...................................................29, 30

Plemmons v. Blue Chip Ins. Serv.,
 387 N.J. Super. 551 (App. Div. 2006) .............................31

Prof'l. Cleaning & Innovative Bldg. Serv., Inc. v. Kennedy Funding, Inc.,
    2007 WL. 2249064 (D.N.J. Aug. 7, 2007) .................................................4

Prof'l. Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding Inc.,
    2009 U.S. Dist. LEXIS 49508 (D.N.J. June 12, 2009)...................................33

Robeson Indus. Corp. v. Hartford Accident & Indem. Co.,
    178 F.3d 160 (3d Cir. 1999)...........................................................29

Roby v. Corp. of Lloyd's,
    796 F. Supp. 103 (S.D.N.Y. 1992) ..................................................39

Rogers v. Weichert Title Agency,
    Docket No. L-6935-06 ...............................................................32

Saltiel v. GSI Consultants, Inc.,
    170 N.J. 297 (2002) .................................................................23

In re Schering-Plough Corp. Intron/Temodar Consumer Class Action,
    2009 WL. 2043604 (D.N.J. 2009) (Ex. 20 to O'Donnell Cert.).......................35

Smock v. Atl. Cas. Ins. Co.,
    25 N.J. Super. 324 (App. Div. 1952) ...............................................26

Soto v. Quicken Loans, Inc.,
    2010 WL. 5169024 (D.N.J. Dec. 14, 2010)..................................30, 31

Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.,
    181 F.3d 410 (3d Cir. 1999)..........................................................20

State v. Ball,
    141 N.J. 142 (1995) .................................................................38

Stewart Title Guar. Co. v. Greenlands Realty, LLC,
    58 F. Supp. 2d 370 (D.N.J. 1999) ...................................................24

Swierkiewicz v. Sorema,
    534 U.S. 506 (2002)..................................................................35

The Univ. of Md. at Baltimore v. Peat, Marwick, Main & Co.,
    996 F.2d 1534 (3d Cir. 1993)........................................................37

US Land Res., LP v. JDI Realty LLC, et als.,
    2009 WL. 2488316 (D.N.J. Aug. 12, 2009) ......................................19

<u>U.S. v. Turkette</u>,
    452 U.S. 576 (1981) ...................................................................................38

<u>Van Holt v. Liberty Mut. Fire Ins. Co.</u>,
    163 F.3d 161 (3d Cir. 1998)...................................................................33

<u>White v. Green</u>, 382 Fed. Appx. 199, 202 (3d Cir. 2010) .............................40

<u>Yapak v. Mass. Bay Ins. Co.</u>,
    2009 WL. 3366464 (D.N.J. Oct. 16, 2009).........................................30

## STATUTES

<u>F.R.C.P.</u> 8(a)(2) ...........................................................................................35

<u>F.R.C.P.</u> 9(b) .........................................................................................30, 31

<u>N.J.A.C.</u> 11:17A-1.1 <u>et</u> <u>seq</u> ........................................................................32

<u>N.J.S.A.</u> 17:22A-26 <u>et</u> <u>seq</u> .........................................................................32

<u>N.J.S.A.</u> 17:46B-1 <u>et</u> <u>seq</u>............................................................................32

18 U.S.C. §1962(c) ......................................................................................36

## PRELIMINARY STATEMENT

This matter arises from the issuance of a lender's title insurance policy to Dare Investments, LLC ("Dare") by Chicago Title Insurance Company ("Chicago Title") for a mortgage collaterally assigned to Dare from SWJ Investments, LLC ("SWJ"). Having been properly denied coverage under the title policy for a number of valid reasons, Dare now seeks to use this trumped-up litigation, averring claims carrying the threat of punitive and treble damages, to strong-arm Chicago Title into indemnifying it.[1] When its half-truths are revealed, however, Dare's specious claims fall under the weight of its own documents and sworn statements and the applicable the law.

All of Dare's fraud-based claims must be dismissed as Dare's own admissions in its sworn testimony and documents unequivocally show that Dare knew everything it now claims had been allegedly misrepresented or not disclosed. Even if Dare did not have such actual knowledge (which it did), New Jersey law is clear that after having performed its own due diligence via counsel, it is chargeable with the knowledge that was discoverable through the same. For similar reasons, Dare cannot sustain its negligent misrepresentation or omission claim. Dare's negligence claim further fails under application of the economic loss doctrine to

---

[1] On June 19, 2007, Dare filed a one-count complaint for title coverage against Chicago Title, which it dismissed without prejudice on July 29, 2008.

1

the title insurance context, which precludes a negligence claim unless the insurer assumed a duty outside the policy, which did not occur and was not alleged here.

Dare's contract-based claims equally cannot stand.  Dare's admitted knowledge precludes it from establishing either of the required elements for the rare remedy of reformation of the title policy, as Dare cannot show an alleged fraud or unconscionable conduct, nor can Dare show a mistake in the policy amount as it knew it was less than the face amount of the mortgage collaterally assigned to it.  Moreover, Dare's claim for coverage under the policy must be dismissed because it knew of and agreed to the alleged defect it now raises and further because the alleged defect (a bankruptcy decision and order) was specifically excluded from coverage under the policy.  Without any coverage under the policy, Dare's allegation of bad faith denial of coverage also must fail. Nonetheless, Dare additionally fails to allege a bad faith claim because there was at least a "fairly debatable" basis for Chicago Title's denial of coverage.

Finally, there are a multitude of additional and independent bases warranting dismissal of Dare's fraud-based claims, which, while a voluminous example of redundancy and legal rhetoric, are not pled with requisite specificity. Dare's New Jersey Consumer Fraud Act claim does not apply to a title agent's acts at issue here or to Dare's hard money loan.  Dare has no standing to bring its RICO claim, which does not meet the notice and particularity requirements and further

4104809.10

does not allege sufficient participation in the RICO enterprise and a separate RICO enterprise from the predicate acts of racketeering, not to mention that it is untimely. Finally, Dare's attempt to add Chicago Title's name to the RICO enterprise (a legal element of a RICO claim) to fabricate a defendant named "Chicago Title RICO Enterprise" so that it may take a default against this legal fiction is legally impermissible and evidences Dare's surreptitious attempt to get a judgment against a "Chicago Title" party. Thus, Chicago Title respectfully requests that this Court dismiss Dare's entire complaint with prejudice.

## STATEMENT OF FACTS[2]

### A.   Background: Dare Closing & Bankruptcy Sale

The Dare closing was consummated on March 13, 2006 (the "Closing") and involved a $5 million loan (the "Dare Loan") that Dare made to SWJ, which was secured by a collateral assignment of (among other things) a mortgage in the face amount of $15 million on 158 acres of property located in Sayreville, New Jersey (the "Sayreville Mortgage"). Compl. at ¶¶ 11, 38, 41 & 48. Chicago Title issued a $5.5 million lender's policy of title insurance, number 72107-2834015 (the "Title Policy"), insuring the Sayreville Mortgage. Id. at ¶ 44.

SWJ used the Dare Loan, in part, to purchase a group of assets, including the Sayreville Mortgage, pursuant to Section 363 of the Bankruptcy

4104809.10

Code and a certain asset purchase agreement (the "Bankruptcy Sale"). See Compl. at ¶ 38-41; March 13, 2006 Security & Intercreditor Agrmt. at "Whereas" Paras., Ex. 1 to Compl.; March 28, 2006 Op. & Order in Bankr. Proceeding, Ex. 5 to Compl.; June 21, 2005 Order in Bankr. Proceeding, Ex. 1 to Feb. 9, 2011 Cert. of Michael R. O'Donnell, Esq. (the "O'Donnell Cert."). The Bankruptcy Sale occurred in the jointly-administered bankruptcy proceedings of James J. Licata ("Licata"), on the one part, and First Connecticut Consulting Group, Inc. ("FCCG") and First Connecticut Holding Group, LLCs bearing Roman Numerals II, III, X, XI, and XIII (the "Dismissed-LLCs") and I, XXIII, and XXIV (the "Remaining-LLCs" and collectively with the Dismissed-LLCs as the "Debtor-LLCs"), on the other part (collectively the "Bankruptcy Proceeding"). See ibid.

## B.    Dare's Hard Money Loan

Dare's $5 million "hard money loan"[3] was for SWJ to purchase assets out of the Bankruptcy Sale. See Compl. at ¶¶ 38-39; ███████████████

████████████████████████████████████████, Ex. 2 to

---

[2] This Statement of Facts is based on Dare's allegations and referenced documents, which are not disputed for purposes of this motion only.

[3] "Hard money loans are difficult to find and come with a high interest rate due to perceived risk." See In re Baillio, 2010 WL 3782065 at *10 (Bkrtcy. D.N.M. Sept. 21, 2010); Prof'l. Cleaning & Innovative Bldg. Serv., Inc. v. Kennedy Funding, Inc., 2007 WL 2249064 *2, n.3 (D.N.J. Aug. 7, 2007) ("A hard-money lender is one that lends money as a last resort to borrowers who cannot get loans from other (footnote continued...)

O'Donnell Cert.  Dare's principal, Richard Dare McCloskey, ███████████

███████████████████████████████████████████████

████████████████  See Tr. of June 8, 2007 Exam of R.D. McCloskey at

42:10-44:1 & 48:4-49:23 ("McCloskey Tr."), Ex. 5 to O'Donnell Cert. █



███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████; McCloskey Tr. at ██████

████; Tr. of June 20, 2007 Exam of E. Kenneth Williams (the "Williams Tr.") at

██████, Ex. 6 to O'Donnell Cert.[4]

---

mainstream institutions because of severe time constraints or other reasons, such as lack of acceptable credit."), Exs. 3-4 O'Donnell Cert.

[4] 

See McCloskey Tr. at ████ . See Williams Tr. at

4104809.10

**C.    State Court Litigation &Injunction & Vermont Decision**

**1.    1999 State Court Litigation & 2001 Injunction**

In 1999, Peter and Lorraine Mocco and their entities (collectively "the Moccos"), represented by James Scarpone, Esq. ("Scarpone"), filed the "State Court Litigation," styled <u>Mocco et al. v. Licata et al.</u>, Docket No. ESX-C-397-99, Superior Court of New Jersey, Essex County, Chancery Division, against Licata[5] and others "to compel the reconveyance as agreed in the 09-25-96 Reconveyance Agreement," namely the "newly formed First Connecticut Holding Group, LLCs" holding title to properties the Moccos previously owned. <u>See</u> Compl. at ¶¶ 63, 67 & 130.  In September 2001, the state court issued a September 21, 2001 Order, stating that "no party or any affiliate of a party shall transfer, lien, or encumber any interest in any of the Holding Entity LLCs or any properties owned in the name of any such Holding LLCs" (the "State Court Injunction").  <u>See</u> <u>id.</u> at ¶¶ 67-68, & State Ct. Inj., Ex. 7 to O'Donnell Cert.

**2.    2004 Vermont Decision**

In 2002, Licata, FCCG, and the Debtor-LLCs filed the Bankruptcy Proceeding.  <u>See</u> Compl. at ¶¶ 69-70; March 28, 2006 Op. & Order, Ex. 5 to the

---

[5] By way of background (but not necessary for this motion), the Moccos and Licata (and their entities) entered into agreements in connection with the Moccos' 1996 bankruptcy proceeding, whereby Licata indisputably held legal title to certain assets and pursuant to which the Moccos claimed (and Licata disputed) that they held equitable title to those assets because Licata was merely their nominee.

Compl.   The Moccos challenged the bankruptcy filings of only certain of the Debtor-LLCs, specifically the Dismissed-LLCs, claiming that the Moccos, and not Licata, were the owners of the Dismissed-LLCs.  See Compl. at ¶ 70.  There was no such challenge as to FCCG or the Sayreville Mortgage.  See id. at ¶¶ 63 & 69-70 & Vt. Decision attached thereto as Ex. 4.  The Moccos' motion was not heard in the original venue, District of Connecticut, but instead was heard by the Bankruptcy Court in the District of Vermont for scheduling reasons.  See Vt. Decision & March 28, 2006 Op. & Order at pp.1-2, Ex. 5 to the Compl.  In a July 27, 2004 Memo. of Decision (the "Vermont Decision"), attached as Ex. 4 to the Compl., the Bankruptcy Court ruled in favor of the Moccos.  See Compl. at ¶70.

The Vermont Decision not only identified the State Court Litigation, but devoted a section thereof to the State Court Injunction, which section is entitled, "The State Court Order Directing Turnover of Ownership Documents to a Receiver" and which quoted paragraph five of the State Court Injunction.  See Vt. Decision at pp.16-17 (emphasis in original).  At the time of the Dare Closing (March 13, 20006), the Vermont Decision had been appealed to the District Court, which affirmed the decision via the March 28, 2006 Opinion and Order (Ex. 5 to the Compl.).  This decision was affirmed by the Second Circuit.  See Compl. at ¶ 71; In re First Conn. Consulting Group, Inc., 2007 WL 3498199 (2d Cir. 2007).

4104809.10

### 3.    2007 Claims Against Dare in the State Court Litigation

In 2007, the Moccos amended their State Court Complaint to include, among other things, a claim against Dare to quiet title to the Sayreville property. Compl. at ¶¶ 52 & 90.  The Moccos asserted in their amended complaint that the collateral effect of the Vermont Decision was to render the property secured by the Sayreville Mortgage free and clear of said mortgage.  See Compl. at ¶ 90; Aug. 14, 2007 Coverage Determination at p.2, attached as Ex. 3 to Compl.

### D.    Dare's Claims Against Chicago Title Here

### 1.    Dare's Causes of Action

Almost three and a half years after Chicago Title denied Dare's claim and two and a half years after Dare dismissed its single-count declaratory judgment action against Chicago Title, Dare has now filed the instant action asserting a hodge podge of claims that generally can be grouped as follows:  (a) "Fraud-Based Claims" that are alleged causes of action grounded in fraud and conspiring in or aiding and abetting a fraud, specifically Counts (i) One (fraud in the inducement), (ii) Five (common law fraud and failure to disclose), (iii) Six (civil conspiracy), (iv) Seven (aiding and abetting), (v) Eight (Federal and New Jersey RICO), and (v) Nine (consumer fraud); (b) "Contract-Based Claims," (i) seeking in Count Two (reformation) to reform the Title Policy to provide for almost three times the amount of coverage specified in the Title Policy, and (ii) also seeking in Count Three (breach of contract) coverage under the Title Policy, (iii) coupled with an

8

alleged bad faith denial of coverage under the Title Policy in Count Ten (breach of good faith and fair dealing); and (c) finally, Dare brings a negligence claim with regard to the title search in Count Four (negligence – common law and per se).

### 2. Dare's Alleged Factual Bases

Dare's position is distilled in Paragraph 18 of its Complaint:

> Chicago Title and Horizon Title[6] agreed to participate in SWJ's scams by, inter alia, (i) misrepresenting the condition of title to the insured real estate securities; (ii) issuing policies of title insurance to uninsurable and unmarketable real estate securities; (iii) failing to advise the victims of their conspiratorial agreement with SWJ; and (iv) knowingly inducing the victims into believing that they would receive title insurance which would, in the event the real estate securities turned out to be fraudulent, protect them from losses.[7]

The only alleged factual support for these claims is that the following three matters were supposedly either misrepresented or not disclosed to Dare:

(1) the State Court Litigation, see Compl. at ¶¶ 67 & 130;

(2) the State Court Injunction, see Compl. at ¶¶ 67-68; and

(3) the Vermont Decision, Ex. 5 to the Compl., which Dare claims rendered the Sayreville Mortgage unmarketable, see Compl. at ¶¶ 70-73 & 130.[8]

---

[6] Dare makes no claim that Chicago Title was directly involved in this matter, except to argue that Horizon Title Agency, Inc. ("Horizon Title"), as Chicago Title's policy-issuing agent, issued the Title Policy. While Chicago Title maintains that no such agency relationship would ever support Dare's claim, under theory of respondeat superior, it will address those matters as needed if any claim remains.

[7] These claims are repeatedly littered throughout the Complaint. See, e.g., Compl. at ¶¶ 15, 16, 23, 25, 26, 43, 47f-g, 49a, 57.

[8] The reference to the March 30, 2006 decision by the District Court affirming the Vermont Decision having been misrepresented or not disclosed to Dare is an (footnote continued...)

In addition, Dare appears to be arguing that Chicago Title issued the Title Policy with the "secret intent to deny coverage if a claim were made" and improperly denied coverage. Compl. at ¶¶ 47e & 77j; see also id. at ¶ 47c.

Other than stating that Chicago Title issued the Title Policy, Dare does nothing more to specify Chicago Title's alleged direct involvement in the claimed "RICO Enterprise" other than making formulaic recitations of legal elements and conclusions, such as Chicago Title purportedly being included in the "membership" of the RICO Enterprise, Compl. at ¶ 5, or being a "principal" player or member of the RICO Enterprise, id. at ¶¶ 19, 77a & 77c. Finally, as to its claim for reformation, Dare simply avers that it "was entitled to secure a $15,000,000.00 policy because the value of the Sayreville Mortgage was $15,000,000" and that Chicago Title failed to disclose same to Dare. Id. at ¶¶ 49b, 51 & 86.

### E.    The Title Policy

Dare's Complaint specifically references and relies upon the Title Policy and attaches a copy thereto. See, e.g., Compl. at ¶ 44 & Ex. 2 thereto. The Title Policy insured the Sayreville Mortgage, which was collaterally assigned to secure the Dare Loan. See ibid. The Title Policy states in capital letters on the very first page that coverage thereunder is "SUBJECT TO THE EXCLUSIONS

---

obvious error as said decision was issued well after the March 13, 2006 Closing and Dare's posting of the $5 million loan proceeds in February 2006.

4104809.10

FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS[.]"  <u>See</u> Title Policy at First Page; <u>see also</u> <u>id.</u> at ¶ 4 of Conditions & Stipulations.

The Title Policy states on the first page that coverage is limited to the Amount of Insurance stated in Schedule A, which is $5.5 million here.  Title Policy at p.1 & Sched. A; ARMLA at ¶ 8.



McCloskey Tr. at        (emphasis added).

Two Title Policy provision are at issue on this motion for purposes of coverage.  The first, "Section 3(a)," states:

<u>EXCLUSIONS FROM COVERAGE</u>

The following matters are expressly excluded from coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

* * *

3. Defects, liens, encumbrances, adverse claims or other matters:

    (a) created, suffered, assumed or agreed to by the insured claimant;

<u>See</u> Title Policy at ¶ 3 in Exclusions from Coverage.  The second is "Exception 7":

11

This policy does not insure against loss or damage by reason of the following:

\* \* \*

7. Subject to the terms, conditions, covenants, court orders, etc[.], as set forth in the United States Bankruptcy Court, District of Connecticut, Bridgeport Division Case No. 02-50851 (AHWS), and the Asset Purchase Agreement thereunder.

<u>See</u> Title Policy at ¶ 7 in Sched. B (identifying the Bankruptcy Proceeding).

███████████████████████████████████████████████

████████████████████. <u>See</u> Williams Tr. at ██████████.

## F.    The Security Agreement

Dare relies upon and attaches to its Complaint a March 13, 2006 Security and Intercreditor Agreement ("Security Agreement"), which it signed and to which it is a party along with SWJ and others – but not Chicago Title or Horizon. Compl. at ¶ 38 & Ex. 1 thereto at pp.1 & 15. The Security Agreement specifically references the Bankruptcy Proceeding, orders entered therein, and the asset purchase agreement in connection with the Bankruptcy Sale, as well as explains the nature of the Bankruptcy Sale and Dare's role therein. <u>See</u> Security Agrmnt. at pp.1-2, Ex. 1 to Compl. "SWJ purchased certain bankruptcy assets listed in Exhibits A through F to the Security Agreement," which schedules and exhibits also identify the Vermont Decision, its appeal, the State Court Litigation, the State Court Injunction entered therein, and the Sayreville Mortgage being for $15 million. <u>See</u> Compl. at ¶¶ 39 & 41; Security Agrmnt. at n.3 on p. 5 of 6 of the

4104809.10

Inventory of Acquired Assets of James J. Licata in Ex. A, Acquired Assets (identifying "state court litigation between Mocco and Licata/FCCG"), no. 3 on p. 1 of 3 of the Inventory of Acquired Assets of FCCG in Ex. A, Acquired Assets (noting Sayreville Mortgage was for $15 million), n.1 on p. 1 of 2 of the James J. Licata Ownership Interest in Various Entities, Sched. A in Ex. A, Acquired Assets (referring to Vt. Decision, its appeal, Bankruptcy Proceeding, & State Court Litigation & Injunction), Ex. A-1 (noting Sayreville Mortgage for $15 million).

### G.     Dare's Sworn Testimony & Documents

In response to Dare's claim, Chicago Title conducted examinations-under-oath of McCloskey and one of Dare's New Jersey counsel, E. Kenneth Williams. See Aug. 14, 2007 Coverage Determination at pp.9-12, Ex. 3 to Compl. (citing McCloskey & Williams Trs.). Dare also produced its documents. See ibid. Dare's sworn testimony and documents, which are detailed in Chicago Title's Coverage Determination (see pp.15-23) attached to Dare's Complaint, clearly and indisputably show Dare's knowledge of the matters about which it now complains.

### 1.     Dare Relied on & Used Multiple Counsel

██████████████████████████████████████

██████████████████████████   See  Williams  Tr.  at  ██████

████████████████████████████████████████

██████████████████████████; id. at ██████.  McCloskey testified

13

██████████████████████████████████████

████████████████████████. <u>See</u> McCloskey Tr. at ████████████

████; <u>see also</u> <u>id</u>. at ████████████████████████

████████████████████████████████████████;  ██████

██████████████████████████.

████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████  Williams Tr. at ██████ (emphases added).  ████

██████████████████████████████████████

████████████████████████████." <u>See</u> <u>id</u>. at ████████.

Finally,  McCloskey  ████████████████████████

██████████████████████████████████████

██████████████████████████████████████

<u>See</u> McCloskey Tr. at ████████████; <u>see also</u> Williams Tr. at ██████ ████

████████████████████████████████████.  Indeed,

McCloskey testified that ██████████████████████████

██████████████████████████████████████

████████████████████████.

14

## 2.    Dare Was Aware of the State Court Litigation



Williams Tr. at ███████. ████████████████████████

████████████████████████████████████████████

██████████████████████. Id. at ████████.

## 3.    Dare Knew of the State Court Injunction, Vermont Decision, & Its Appeal

████████████████████████████████████████████

████████████████████████████████████████████

4104809.10



Williams Tr. at ██████ (emphases added); see also id. at ██████ ████████
████████████████████████████████████████████████████████████████████.

Williams ████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████ Id. at ████████.

Williams ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████ Id. at
████████████████; see also McCloskey Tr. at ████████████████████.

16

### 4.    Dare Often Communicated with Moccos' Counsel

████████████████████████████████████

███████████████████████████████████████

██████████████████████████████. Williams Tr. at ███████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████. ██████████████████

███████████████████████████████████████

████ Ex. 9 to O'Donnell Cert. ████████████████

███████████████████████████████████████

██████████████████████ Ex. 8 to O'Donnell Cert. ████████

████████████████████████████████████

█████████████████████████████████

███████████████████████████████████████

█████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████ Ex. 8 to O'Donnell Cert.;

Williams Tr. ███████████████████████████████████

4104809.10



. Williams Tr. at ███████ (emphases added); id. at ███████ (same).

Id. at ███████ (emphases added). ████████████████████████████████████

███ See Williams Tr. at ███████████████ .

## H.    Chicago Title's Coverage Determinations

Based on the sworn testimony and documents provided by Dare during the claim investigation, on August 14, 2007 Chicago Title denied Dare's

4104809.10

claim for coverage under the Policy.[9] See Compl. at ¶ 90; Aug. 14, 2007 Coverage Determination, Ex. 3 to the Compl.  In November 2010, Dare submitted another claim for coverage, raising no new facts or issues, and Chicago Title denied this second claim for coverage by letter dated November 19, 2010. See Compl. at ¶ 93; Nov. 19, 2010 Coverage Determination, Ex. 10 to O'Donnell Cert.

## LEGAL ARGUMENT

### I.    LEGAL STANDARD

A complaint supported by mere labels and conclusions or formulaic recitation of legal elements will not survive a motion to dismiss.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).  "While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations."  US Land Res., LP v. JDI Realty LLC, et als., 2009 WL 2488316 at *3 (D.N.J. Aug. 12, 2009) (Ex. 11 to O'Donnell Cert.).

A plaintiff "cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  On a motion to dismiss, courts may consider "exhibits attached to the complaint,

---

[9] Chicago Title also denied coverage based on Dare's lack of cooperation, which included, among other things, cutting short the examination of Mr. Williams and refusing to produce additional counsel for examination.

matters of public record, and documents that form the basis of a claim." See Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir.), cert. den., 543 U.S. 918 (2004).

A document "'integral to or explicitly relied upon in the complaint'" "forms the basis of a claim." Lum, 361 F.3d at 222 n.3 (quoting Burlington Coat Factory, 114 F.3d at 1426). Such a document may be examined "to see if it contradicts the complaint's legal conclusions or factual claims." See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 427 (3d Cir. 1999). A court may consider litigations referenced in the complaint and take judicial notice of prior judicial opinions. Iacaponi v. New Amsterdam Cas. Co., 379 F.2d 311, 311-312 (3d Cir. 1967); Lum, 361 F.3d at 222 n.3.

## II.  DARE'S INDISPUTABLE KNOWLEDGE & APPLICABLE LAW REQUIRE DISMISSAL OF ENTIRE COMPLAINT

### A.  DARE'S FRAUD-BASED CLAIMS MUST BE DISMISSED

To prove fraud, a plaintiff must establish inter alia, reasonable reliance on the alleged material misstatement or omission. See Jewish Cntr. of Sussex Cty. v. Whale, 86 N.J. 619, 624-625 (1981); Ferrell v. America's Dream Homes, Inc., 2010 WL 3075578 (App. Div. Aug. 4, 2010) (dismissing consumer fraud claims where plaintiffs knew of alleged misrepresentation), Ex. 12 to O'Donnell Cert. "A false representation made to a **person who knows it to be false is not, in legal estimation, a fraud**." John Hancock Mut. Life. Ins. Co. of Boston v. Cronin, 139 N.J. Eq. 392, 398 (E & A 1947) (emphasis added); Fleming

Co., Inc. v. Thriftway Medford Lakes, Inc., 913 F. Supp. 837, 844 (D.N.J. 1995) (requiring "justified and reasonable" reliance).

When a party chooses to conduct its own investigation or due diligence, it "will be accountable for everything such party could have discerned by employing reasonable diligence." In re House of Drugs, Inc., 251 B.R. 206, 211 (Bankr. D.N.J. 2000) (citing John Hancock, 139 N.J. Eq. at 398); DSK Enters., Inc. v. United Jersey Bank, 189 N.J. Super. 242, 251 (App. Div. 1983). More specifically, where a party is represented by counsel, it is considered to have undertaken an investigation and is chargeable with knowledge of facts discoverable through reasonable diligence. See Berman v. Gurwicz, 189 N.J. Super. 89, 102-103 (Ch. Div. 1981) (a party represented by counsel cannot aver fraud because it is "the obligation of [their] attorneys to" investigate and advise their client accordingly). Thus, Dare's Fraud-Based Claims fail here.

The Security Agreement, to which Dare was a party, explained how the Sayreville Mortgage was being obtained out of the Bankruptcy Sale in the Bankruptcy Proceeding and further specifically referenced in its Schedules and Exhibits the Vermont Decision, the appeal thereof, the State Court Litigation, and

4104809.10

the State Court Injunction[10] entered therein.  On these grounds alone, Dare cannot claim to have been defrauded as to these matters.



## B.    DARE'S NEGLIGENCE CLAIM MUST BE DISMISSED

### 1.    Dare's Knowledge Precludes Its Negligence Claim

To establish a negligent misrepresentation or omission claim, a party must show the same reliance element required by fraud.  See Kaufman v. i-Stat

---

[10] Dare's reference to the State Court Injunction is a red herring as it unequivocally
(footnote continued...)

4104809.10

Corp., 165 N.J. 94, 109 (2000); Kuhnel v. CNA Ins. Cos., 322 N.J. Super. 568, 581 (App. Div. 1999). Reliance will not be found where a party undertook an independent investigation revealing the facts allegedly misrepresented. See Berman v. Gurwicz, 189 N.J. Super. at 102-103. Here, as detailed above, Dare conducted its own investigation and had knowledge of all these matters. Thus, Dare's negligence claim fails as it cannot show reasonable reliance.

## 2. Dare's Negligence Claim Fails as a Matter of Law

Dare's claim of negligence (both common law and per se) against Chicago Title also contradicts black letter law in New Jersey. Dare alleged that "Defendants conducted a negligent title search, causing damage to Plaintiff." See Compl. at ¶100; see also id. at ¶¶ 96-99 & 101 (referring to statutes providing for examination of title and exceptions to coverage). However, an independent tort action is not cognizable when the only duty owed to the plaintiff is one arising out of a contract. Saltiel v. GSI Consultants, Inc. 170 N.J. 297, 314-316 (2002). The New Jersey Supreme Court recognized the application of this principle in the title insurance context in the seminal case Walker-Rogge, Inc. v. Chelsea Title & Guar., 116 N.J. 517, 540 (1989). There, the Court pronounced that "the relationship between the [title] company and the insured is essentially contractual." Id. There, "the rule has been [and is] that a title company's liability is limited to the policy

---

only applied to the LLCs and not FCCG. Nonetheless, Dare had knowledge of it.

4104809.10

and that <u>the company is not liable in tort for negligence in searching records</u>." <u>Id.</u> at 535. The reasoning behind this decision is simple: "If the title company fails to conduct a reasonable title examination or, having conducted such an examination, fails to disclose the results to the insured, then it runs the risk of liability under the policy." <u>Id.</u> at 536, 540. Thus, Dare's claim here for negligent title search should be dismissed with prejudice. <u>See id.</u> at 535-36 & 540; <u>Stewart Title Guar. Co. v. Greenlands Realty, LLC</u>, 58 F.Supp.2d 370, 386-87 (D.N.J. 1999) (holding plaintiff could not assert breach of fiduciary duty claim against insurer).

## C.   DARE'S REFORMATION CLAIM MUST BE DISMISSED

### 1.   Dare Cannot Establish Unilateral Mistake Coupled With Fraud or Unconscionable Conduct

"[T]he extraordinary remedy of reformation is available only 'where there is mutual mistake . . . or where a mistake on the part of one party is <u>accompanied by fraud or other unconscionable conduct of the other party</u>.'" <u>Martinez v. John Hancock Mut. Life Ins. Co.</u>, 145 N.J. Super. 301, 312 (App. Div. 1976) (emphasis added); <u>Alexander v. CIGNA Corp.</u>, 991 F. Supp. 427, 442 (D.N.J.) (citing, <u>inter alia</u>, <u>Dunkin' Donuts of Am., Inc. v. Middletown Donut Corp.</u>, 100 N.J. 166, 183 (1985)), <u>aff'd</u>, 172 F.3d 859 (3d Cir. 1998). Chicago Title obviously does not agree that there was a mistake as to the Title Policy limit. Thus, Dare must establish a unilateral mistake coupled with fraud or unconscionable conduct by Chicago Title which Dare cannot do. Given Dare's

24

4104809.10

admitted knowledge at the time of Closing, it cannot establish any of its alleged fraud or unconscionable conduct by Chicago Title, requiring dismissal of its reformation claim. <u>Fleming Cos., Inc.</u>, 913 F. Supp. at 843 (because "a mistaken party must have exercised <u>reasonable care under the circumstances before the party may obtain . . . reformation,</u> <u>where the mistake is the result of the mistaken party's own negligence such remedies are unavailable</u>") (emphases added).

Second, Dare failed to allege any mistake, let alone that it exercised reasonable care as to that mistake. Dare simply alleges that had it known the Sayreville Mortgage was for $15 million, it would have secured that title coverage amount instead of the $5.5 million provided for in the Title Policy. Admittedly, however, the Security Agreement and the Title Policy attached to the Complaint identify that the Sayreville Mortgage was for $15 million and that coverage under the Title Policy was limited to $5.5 million. Moreover, the Dare Loan was for $5 million, while Dare sought and obtained coverage under the Title Policy for $5.5 million, precluding any claim that it did not know it could secure coverage beyond the Dare Loan amount. ████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

████████████████████████

### 2.    Dare's Reformation Claim Is Barred by Laches

An "injured party must assert his remedy . . . without delay upon becoming aware of the fraud or mistake" underlying his claim for reformation. See Smock v. Atl. Cas. Ins. Co., 25 N.J. Super. 324, 329 (App. Div. 1952). Courts have barred reformation claims brought after only a two-year delay. See id. (two year delay in seeking reformation of an insurance policy will "be regarded as acquiescence and a bar to any equitable remedy"); see Kunz v. Mason, 75 N.J. Eq. 616 (E. & A. 1909) (two-year delay barred claim for reformation). Here, Dare and its counsel knew of its alleged reformation claim by the Closing on March 13, 2006, more than four years ago, requiring dismissal of Dare's reformation claim.

### D.    COVERAGE & BAD FAITH CLAIMS MUST BE DISMISSED

### 1.    No Coverage Exists Under the Title Policy

"If an excluded claim is made, the insurer has no duty to undertake the expense and effort to defeat it[.]" Horesh v. State Farm Fire & Cas. Co., 265 N.J. Super. 32, 39 (App. Div. 1993); Grand Cove II Condo. Ass'n. v. Ginsburg, 291 N.J. Super. 58, 72 (App. Div. 1996) (same); see also Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 389 (1970) (an insurer does not have to defend claims "beyond the covenant to pay if the claimant prevailed"). The Title Policy states plainly on its face that coverage thereunder is limited by the exceptions and exclusions set forth

therein, including (among others) Section 3(a) and Exception 7. These two grounds are included in Chicago Title's August 14, 2007 coverage determination attached to Dare's Complaint, which details these bases for precluding coverage to Dare under the Title Policy based on, among other things, Dare's knowledge.

Section 3(a) precludes coverage based on "defects, liens, encumbrances, adverse claims or other matters . . . created, suffered, assumed or agreed to by the insured claimant." Courts have interpreted this standard Title Policy language to include defects arising from facts known to the insured. See Feldman v. Urban Comm., Inc., 87 N.J. Super. 391, 404 (App. Div. 1965); Am. Sav. & Loan Ass'n. v. Lawyers Title Ins. Corp., 793 F.2d 780, 784 (6th Cir. 1986); see also Feldman v. Urban Comm., Inc., 78 N.J. Super. 520, 531 (Ch. Div. 1963) (insurers' knowledge "is immaterial to any issue raised by the first phrase of the quoted exceptions in paragraph 8, to wit, 'created or suffered.'"), aff'd, 87 N.J. Super. 391 (App. Div. 1965). Here, Dare not only knew about all the matters at issue as explained above, ███████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████ There could be no clearer case of title coverage being excluded under Section 3(a) than here, based upon Dare's admitted knowledge. See Feldman, 87 N.J. Super. 391.

4104809.10

Coverage under the Title Policy is also precluded under Exception 7, which excludes from coverage "the terms, conditions, covenants, court orders, etc[.]" of the Bankruptcy Proceeding "and the Asset Purchase Agreement thereunder." There is no dispute that the Moccos added Dare to its quiet title claim in the State Court Litigation in 2007 (for which Dare sought defense and indemnification) based on the Moccos' arguing that the collateral effect of the Vermont Decision was to render the property secured by the Sayreville Mortgage free and clear of said mortgage. There is equally no ███████████████ ███████████████ that the Vermont Decision was rendered in the Bankruptcy Proceeding, thus precluding coverage under the Title Policy pursuant to Exclusion 7. ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ Thus, any such failures of the Sayreville Mortgage would be precluded from coverage under Exclusion 7 of the Title Policy. See Walker-Rogge, Inc., 116 N.J. at 529 ("We will not rewrite a policy or create a better one than that which the insured purchased.").

### 2.    Dare Fails to Allege a Bad Faith Denial of Coverage

Having failed to allege a viable claim for coverage under the Title Policy, as detailed above, Dare cannot maintain a claim for breach of the implied covenant of good faith and fair dealing with regard to the proper denial of said claim. See Pickett v. Lloyd's, 131 N.J. 457, 481 (1993) (finding that plaintiff's failure to establish right to summary judgment that there was coverage under the insurance policy required dismissal under New Jersey law of the plaintiff's claim of bad faith); see also Robeson Indus. Corp. v. Hartford Accident & Indem. Co., 178 F.3d 160, 168-69 (3d Cir. 1999) (same). Accordingly, along with its coverage claim, Dare's bad faith denial of coverage claim must be dismissed.

Nonetheless, even if this Court were to deny Chicago Title's motion to dismiss Dare's coverage claim at this juncture, Dare has failed to state a claim for bad faith denial of coverage. "In the case of denial of benefits, bad faith is established by showing that no debatable reasons existed for denial of the benefits." Pickett, 131 N.J. at 481. This "fairly debatable" standard is established where the plaintiff would be unable to establish a right to summary judgment on coverage. See id. at 473; Robeson Indus., 178 F.3d at 168-69. Here, given all the reasons set forth in Chicago Title's coverage denial letter and Dare's sworn testimony and documents cited therein, it is without a doubt that Chicago Title has at least raised an issue of fact as to a defense to coverage under the Title Policy that

would prevent Dare from obtaining summary judgment on coverage.  Thus, Dare's

claim for bad faith denial of coverage must be dismissed.  See Pickett, 131 N.J. at

473; Yapak v. Mass. Bay Ins. Co., 2009 WL 3366464 at *1-2 (D.N.J. Oct. 16,

2009) (conclusory bad faith claim dismissed as "factual allegations are more likely

explained by lawful behavior than illegal activity"), Ex. 13 to O'Donnnell Cert.

## III.    ADDITIONAL, INDEPENDENT GROUNDS REQUIRE DISMISSAL OF DARE'S FRAUD-BASED CLAIMS WITH PREJUDICE

### A.    Dare's Fraud-Based Claims Must Be Dismissed for Failure to Plead With the Requisite Particularity

When "alleging fraud or mistake, a party must state with particularity,

the circumstances constituting fraud or mistake."  F.R.C.P. 9(b); Soto v. Quicken

Loans, Inc., 2010 WL 5169024 at *4-*5 (D.N.J. Dec. 14, 2010), Ex. 14 to

O'Donnell Cert. (consumer fraud, RICO and common law fraud claims must all

meet the heightened pleading requirement).  Under Rule 9(b), a plaintiff alleging

fraud must identify the "precise misconduct with which [the defendant is being]

charged" by alleging the "the date, time, and place of the alleged fraud or

otherwise inject[ing] precision or some measure of substantiation into a fraud

allegation."  Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

Here, Dare falls woefully short in carrying its burden under Rule 9(b)

as to its Fraud-Based Claims.  Dare does not identify one fraudulent representation

or omission attributable to Chicago Title with any specificity.  See Compl. at 79-

4104809.10

84. Moreover, Dare fails to include <u>any reference</u> to the date, time and place any alleged representation was made to it. Rather than attribute fraudulent actions to specific parties, Dare unabashedly relies on the moniker "Chicago Title RICO Enterprise" in an effort to obfuscate its failure to meet 9(b) specificity requirements. All that Dare specifically alleges against Chicago Title is that it issued title policies, which is itself not actionable fraud. Such pleadings fail to satisfy Rule 9(b). <u>See</u> <u>Soto</u>, 2010 WL 5169024 at *4-*5 (dismissing complaint where, among other things, parties referred to as single-unit violating <u>R.</u> 9(b)).

## B. Dare Has Failed to State a Claim Under the NJCFA

### 1. Title Agents Are Outside the NJCFA

The State of New Jersey has long recognized that professionals and semi-professionals are exempt from the New Jersey Consumer Fraud Act ("NJCFA") when acting in their professional capacity. <u>See, e.g.</u>, <u>Macedo v. Dello Russo</u>, 178 N.J. 340, 345-346 (2004); <u>Plemmons v. Blue Chip Ins. Serv.</u>, 387 N.J. Super. 551, 556 (App. Div. 2006) ("an insurance broker is a semi-professional, who is subject to testing, licensing and regulation under other statutory provisions, and therefore is excluded from liability under the CFA for the performance of brokerage services"); <u>Neveroski v. Blair</u>, 141 N.J. Super. 365, 379 (App. Div. 1976) (holding real estate brokers not subject to the CFA because they are "in a far different category from the purveyors of products or services or other activities"

31

and are instead "in a semi-professional status subject to testing, licensing, regulations and penalties through other legislative provisions").

Title insurers and agents are such professionals. They are subject to the strict licensing requirements and regulations. See, e.g., N.J.S.A. 17:46B-1 et seq.; N.J.S.A. 17:22A-26 et seq.; N.J.A.C. 11:17A-1.1 et seq. Specifically, title agents and insurers are regulated by the Title Insurance Act of 2001, N.J.S.A. 17:46B-1 et seq., as well as numerous other statutes and regulations covering the insurance industry. Id. That is why the Superior Court of New Jersey, Law Division, Camden County, has confirmed that the exception from the CFA applies to the title insurance industry. Rogers v. Weichert Title Agency, Docket No. L-6935-06 (order dismissing CFA claims against Weichert Title Agency because of Weichert Title Agency's status as a semi-professional), Ex. 15 to O'Donnell Cert.

In its very Complaint, Dare acknowledges Chicago Title is subject to extensive state regulation. See Compl. at ¶¶ 74-75. In light of the provisions of the licensing requirements and regulations upon title insurers and agents, it is equally clear that the acts alleged in Dare's Complaint were conducted by trained professionals in a highly-regulated field and, as such, are outside the CFA.

### 2. Dare's Hard Money Loan is Outside the NJCFA

Dare's attempt to shoehorn its claim under the NJCFA fails for two reasons. First, the law is clear that the denial of insurance benefits, dissatisfaction

with insurance benefits, and payment of insurance benefits are not subject to the CFA. See Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 168 (3d Cir. 1998) ("New Jersey courts that have decided the issue have consistently held that the payment of insurance benefits is not subject to the Consumer Fraud Act."); Optica, Inc. v. Metro Pub. Adjustment, 2005 WL 1719134, *12 (D.N.J. July 21, 2005) (acknowledging that "the mere denial of insurance benefits to which the plaintiffs believed they were entitled does not comprise an unconscionable commercial practice" and that "New Jersey courts have uniformly supported this interpretation") (Ex. 16 to O'Donnell Cert.).

Second, Dare's attempt to recover its hard money loan under the NJCFA is simply not permitted. Dare admittedly gave SWJ a hard money loan ███████████████████████████. Such a loan transaction between two commercial entities, particularly a hard money lender, is not covered by the NJCFA. See Prof'l. Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding Inc., 2009 U.S. Dist. LEXIS 49508 at *12-15 (D.N.J. June 12, 2009) (hard money lending providing "creative financing" between commercial entities is not the type of transaction covered by the NJCFA) (Ex. 17 to O'Donnell Cert.); see also Centrum Fin. Servs. v. Chicago Title Ins. Co., 2010 WL 936201 at *4 (D.N.J. March 12, 2010) (title insurance sold to hard money lender through counsel during course of loan is not a consumer product under CFA) (Ex. 18 to O'Donnell Cert.).

The same holds true here. This transaction involved a $5 million hard money loan to be used to buy assets out of the Bankruptcy Sale ██████████ ████████████████████████████████████. Accordingly, Plaintiff's CFA claim must be dismissed with prejudice.

### C. Dare Has Failed to State a Claim Under RICO

#### 1. Dare Has No RICO Standing

The enhanced RICO standing requires a plaintiff to establish "clear and definite" damages by first exhausting all contractual and other legal remedies before bringing a RICO claim. FL Receivables Trust 2002-A v. Bagga, 2005 WL 563535 at *3-4 (E.D. Pa. March 8, 2005), Ex. 19 to O'Donnell Cert. As to RICO claims alleging fraudulently induced mortgages, this means that lenders must first foreclose and bring all other legal claims to clearly and definitely determine their asserted damages. DJL Mrtg. Capital Inc. v. Kontogiannis, 726 F. Supp. 2d 225, 237-40 (E.D.N.Y. 2010); see also Matthews v. Kidder, Peabody & Co., Inc., 260 F.3d 239, 248-49 (3d Cir. 2001). Where such other claims are pending, they are the poison pill to standing under RICO and mandate dismissal of the RICO claims. DJL Mrtg., 723 F. Supp. 2d at 238-39. Under this firm precedent, Dare's RICO claims must be dismissed for lack of standing based on its not having concluded any foreclosure proceeding and in light of its asserted contractual and other legal

34

claims in this matter.  Id. (dismissing RICO claims for lack of standing where mortgagee had not foreclosed and asserted contract/other claims in its pleading).

### 2.   Dare Has Failed to Meet the Notice Pleading Requirements

Dare's RICO claim fails to meet basic notice pleading requirements. Conspicuously absent from the Complaint is a single reference to the provision of the Federal or New Jersey RICO statutes Dare claims Chicago Title violated.  See Compl. at ¶¶ 122-128.  Dare, instead, strings together formulistic recitations of the elements of RICO violations, leaving it to the Defendants and the Court to discern exactly what violations are alleged.  Such vague and imprecise pleadings directly contravene the requirements of F.R.C.P. 8(a)(2), which requires that the plaintiff "give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests."  Swierkiewicz v. Sorema, 534 U.S. 506, 512 (2002).

### 3.   Dare Has Failed to Plead RICO With Particularity

Dare has failed to plead the predicate acts of mail and wire fraud with specificity, which requires a plaintiff to demonstrate, among other things, "the use of the mails or interstate wire communications in furtherance of the scheme."  In re Schering-Plough Corp. Intron/Temodar Consumer Class Action, 2009 WL 2043604 at *26 (D.N.J. 2009) (citation omitted) (Rule 9(b) applies to pleading mail and wire fraud) (Ex. 20 to O'Donnell Cert.).  To meet the requirements of 9(b),

> averments of mail and wire fraud must be pled 'with particularity with respect to what happened to . . . specific plaintiff [s].'  In other words,

> plaintiffs must identify the predicate acts of racketeering that 'directly' injure them.

Id. (emphasis added) (dismissing RICO claims for lack of particularized allegations of mail/wire fraud involving plaintiff). Allegations devoid of such details are "grossly inadequate" and ripe for dismissal based on R. 9(b). Id. at *27.

Dare alleges that the Sky Land, Centrum and Dare transactions constitute predicate acts of mail and wire fraud. See Compl. at ¶¶77(o)-(r). Dare has failed, however, to identify any mail or wire fraud by Chicago Title aimed at Dare. Indeed, Dare alleges that only SWJ made representations to it regarding the nature of the Sayreville Mortgage. See Compl. at ¶¶11-13, 22, 24, 34, 37, 56. Despite referencing three allegedly fraudulent schemes, Dare has failed to identify a single instance of mail or wire fraud directed at it by Chicago Title. All such information is within Dare's possession as it involves communications with it. Based on the above, Dare's failure to include same warrants dismissal.

### 4. Dare Has Failed to Plead That Chicago Title Participated in the RICO Enterprise

To prove a civil RICO claim under 18 U.S.C. §1962(c), a plaintiff must show that the title company "(1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering." Bancoklahoma Mrtg. Corp. v. Capital Title Co., Inc., 194 F.3d 1089, 1100 (10th Cir. 1999); In re Ins. Brokerage Antitrust Litig., 2006 WL 2850607 at *14 (D.N.J. 2006), Ex. 21 to O'Donnell Cert.

The Supreme Court adopted the "'operation or management' test to determine whether a defendant has 'participated in the conduct' of the affairs of a RICO enterprise." <u>Bancoklahoma</u>, 194 F.3d at 1100. That test requires that "the defendants must have participated in the operation or management of the RICO enterprise." <u>Id.</u>

> <u>Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result</u>. There must be a nexus between the person and the conduct in the affairs of the enterprise. The operation or management test goes to that nexus. . . . [T]he person must knowingly engage in '<u>directing the enterprise's affairs' through a pattern of racketeering activity</u>.

<u>The Univ. of Md. at Baltimore v. Peat, Marwick, Main & Co.</u>, 996 F.2d 1534, 1539 (3d Cir. 1993) (emphases added).

Absent generic, conclusory statements that Chicago Title purportedly was a member the alleged RICO Enterprise, Dare specifies no activity that Chicago Title took to manage or operate any such RICO Enterprise. Rather, Dare merely avers that Chicago Title issued a title policy and conducted searches related to the same. These are actions that Chicago Title "perform[s] in [its] normal course of business" and thus fail to satisfy the "management or operations" requirement here, requiring dismissal of the RICO claim. <u>Bancoklahoma</u>, 194 F.3d 1100-1102 (finding management or operation was not shown where plaintiffs based a <u>title insurer's</u> liability on "activities the Title Companies would have performed in their normal course of business in dealing with all mortgage lenders").

4104809.10

5.      **Dare Has Failed to Plead an Enterprise Separate From the Predicate Acts of Racketeering**

"It is an essential element of the RICO cause of action that the 'enterprise' be apart from the underlying pattern of racketeering activity." Ins. Brokerage Anti-Trust Litig., 2006 WL 2850607 at \*16; see also U.S. v. Turkette, 452 U.S. 576, 583 (1981); State v. Ball, 141 N.J. 142, 161-162 (1995).  The existence of an enterprise separate and apart from the pattern of racketeering is not proven when the "sole reason for the existence of the [e]nterprise" is to commit the fraudulent predicate acts alleged in the complaint.  See Hollis-Arrington v. PHH Mort. Corp., 2005 WL 3077853 at \*8 (D.N.J. 2005) (Ex. 22 to O'Donnell Cert.). Dare failed to allege an enterprise separate and apart from the claimed predicate acts, i.e. the allegedly fraudulent Sky Land, Dare and Centrum loan transactions. Thus, Dare has failed to meet the distinctiveness requirements of RICO, requiring dismissal thereof.  See id. at \*8; Parrino v. Swift, 2006 WL 1722585 at \*2-3 (D.N.J. June 19, 2006) (Ex. 23 to O'Donnell Cert.).

6.      **Dare's RICO Claims Must Be Dismissed As Untimely**

Dare's RICO claims are subject to a four-year statute of limitations. Agency Holding Corp. v. Malley-Duff & Assocs., 483 U.S. 143, 156 (1987); In re Integrity Ins. Co., 245 N.J. Super. 133, 134-35 (Law Div. 1990).  Pursuant to the "injury discovery rule" applicable in RICO cases, the cause of action accrues when "plaintiffs knew or should have known of their injury."  Forbes v. Eagleson, 228

F.3d 471, 484, 485 (3d Cir. 2000), <u>cert. denied</u>, 533 U.S. 929 (2001). Per the Third

Circuit, inquiry notice is determined as follows:

> First, the burden is on the defendant to show the existence of 'storm
> warnings.' Storm warnings have not been exhaustively catalogued,
> but they are essentially any information or accumulation of data 'that
> would alert a reasonable person to the probability that misleading
> statements or significant omissions had been made.' This is an
> objective inquiry and hinges not on a plaintiff's actual awareness of
> suspicious circumstances or even on the ability of a plaintiff to
> understand their import. . . .

<u>Cetel v. Kirwan Fin. Group, Inc.</u>, 460 F.3d 494, 507 (3d Cir. 2006). Here, as

detailed above, Dare not only had "storm warnings," but actually knew at the time

of Closing the matters about which it now complains. ████████████████

████████████████████████████████████████████. Thus,

Dare was on inquiry notice of its alleged RICO claim by the Closing, March 13,

2006, rendering its RICO claim, filed on November 22, 2010, time-barred.

## IV.    CHICAGO TITLE RICO ENTERPRISE MUST BE DISMISSED

It is axiomatic that a party must have a separate corporate existence to

sue or be sued. <u>See</u> <u>Roby v. Corp. of Lloyd's</u>, 796 F. Supp. 103, 109-111

(S.D.N.Y. 1992); <u>Frank v. Cape May Cty.</u>, 2010 WL 3614193 at *7 (D.N.J. Sept.

9, 2010) (Ex. 24 to O'Donnell Cert.). The "Chicago Title RICO Enterprise" is a

moniker Dare crafted in its Complaint to refer to the alleged affiliation of parties

to establish a "RICO enterprise" – a required <u>legal</u> <u>element</u> for establishing a RICO

violation, <u>not</u> a separate <u>legal</u> <u>entity</u>. Dare surreptitiously chose to add Chicago

Title's name to the RICO enterprise for a reason. Dare has sought a default against the "Chicago Title RICO Enterprise," claiming service of this fictitious entity via Corporation Trust Company. See App. for Default [Dkt. No. 9]; see also White v. Green, 382 Fed. Appx. 199, 202 (3d Cir. 2010) (default inappropriate when proper service is not effectuated). Thus, Dare is trying to obtain a default judgment against this nonexistent entity that it named using Chicago Title's name and mark without permission -- in an apparent effort to then trumpet this judgment against "Chicago Title RICO Enterprise" and somehow suggest liability on the part of Chicago Title. Dare's tactics are not permissible, and Dare must be required to withdraw its default application against "Chicago Title RICO Enterprise," dismiss its claims against the same with prejudice, and remove said label from the caption.

## CONCLUSION

For the foregoing reasons, Chicago Title respectfully requests that Dare's Complaint be dismissed with prejudice.

Respectfully submitted,

*/s/ Michael R. O'Donnell*
Date: February 9, 2011                          Michael R. O'Donnell

40

4104809.10