RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800
Attorneys for Defendants Chicago Title
Insurance Company
Federal Bar No.: (MO-7088)

| | |
|---|---|
| DARE INVESTMENTS, LLC, a Utah limited liability company,<br><br><br>Plaintiff,<br><br>vs.<br><br><br>CHICAGO TITLE INSURANCE COMPANY, a Missouri domiciled insurer; HORIZON TITLE AGENCY, Inc., a New Jersey domiciled company; CHICAGO TITLE RICO ENTERPRISE, a racketeering enterprise,<br><br>Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br><br>Case Action No.2:10-CV-06088(DRD)(MAS)<br><br>Motion to Dismiss Hearing Return Date: March 7, 2011<br><br>**CERTIFICATION OF MICHAEL R. O'DONNELL, ESQ. IN SUPPORT OF CHICAGO TITLE INSURANCE COMPANY'S MOTION TO DISMISS** |

I, MICHAEL R. O'DONNELL, hereby certify as follows:

1.    I am an attorney-at-law admitted to practice in the State of New Jersey and am a partner of the law firm of Riker, Danzig, Scherer, Hyland & Perretti LLP, attorneys for Chicago Title Insurance Company ("Chicago Title") in the above-matter.  As such, I am fully familiar with the facts stated herein based upon personal knowledge and review of documents.  I

make this certification in support of Chicago Title's Motion to Dismiss the Complaint of Dare Investments, LLC ("Dare").

2.    Attached hereto as Exhibit 1 is a true and complete copy of the June 21, 2005 Order in the bankruptcy proceeding styled <u>In re First Connecticut Consulting Group, Inc. et al</u>, Case No.: 02-50852 (AHWS), United States Bankruptcy Court District of Connecticut.

3.    Attached hereto as Exhibit 2 is a true and complete copy of the ███████████████████████████████████████████, which was included as part of the documents marked as Exhibit 21 at the examination under oath of Richard Dare McCloskey on June 8, 2007.

4.    Attached hereto as Exhibit 3 is a true and complete copy of the following opinion:  <u>In re Baillio</u>, 2010 WL 3782065 (Bankr. D.N.M. Sept. 21, 2010).

5.    Attached hereto as Exhibit 4 is a true and complete copy of the following opinion:  <u>Prof'l. Cleaning and Innovative Bldg. Serv. Inc.</u>, 2007 WL 2249064 (D.N.J. Aug. 7, 2007).

6.    Attached hereto as Exhibit 5 are true and complete copies of excerpts from the transcript of the examination under oath of Richard Dare McCloskey on June 8, 2007.

7.    Attached hereto as Exhibit 6 are true and complete copies of excerpts from the transcript of the examination under oath of E. Kenneth Williams, Esq. on June 20, 2007.

8.    Attached hereto as Exhibit 7 is a true and complete copy of the September 21, 2001 Order issued by the Superior Court of New Jersey, Chancery Division, Essex County, in the matter styled <u>Peter Mocco et al v. James Licata et al</u>, Docket No.: ESX-C-397-99.

9.    Attached hereto as Exhibit 8 is a true and complete copy of the ████████████████████████████████████████████████ ██████████████████████ marked as Exhibit D-42 during the examination under oath of E. Kenneth Williams, Esq. on June 20, 2007.

10.    Attached hereto as Exhibit 9 is a true and complete copy of the ███████████████████████████████████████████ marked as Exhibit D-16 at the examination under oath of Richard Dare McCloskey on June 8, 2007.

11.    Attached hereto as Exhibit 10 is a true and complete copy of Chicago Title's November 19, 2010 Coverage Determination.

12.    Attached hereto as Exhibit 11 is a true and complete copy of the following opinion: <u>US Land Res., LP v. JDI Realty, LLC</u>, 2009 WL 2488316 (D.N.J. Aug. 12, 2009).

13.    Attached hereto as Exhibit 12 is a true and complete copy of the following opinion:  Ferrell v. America's Dream Homes, Inc., 2010 WL 3075578 (App. Div. Aug. 4, 2010).

14.    Attached hereto as Exhibit 13 is a true and complete copy of the following opinion:  Yapak v. Mass. Bay Ins. Co., 2009 WL 3366464 (D.N.J. Oct. 16, 2009).

15.    Attached hereto as Exhibit 14 is a true and complete copy of the following opinion:  Soto v. Quicken Loans, Inc., 2010 WL 5169024 (D.N.J. Dec. 14, 2010).

16.    Attached hereto as Exhibit 15 is a true and complete copy of the March 2, 2007 Order issued in Rogers v. Weichert Title Agency, Docket No.: L-6935-06, Superior Court of New Jersey, Law Division, Camden County.

17.    Attached hereto as Exhibit 16 is a true and complete copy of the following opinion:  Optica, Inc. v. Metro Pub. Adjustment, 2005 WL 1719134 (D.N.J. July 21, 2005).

18.    Attached hereto as Exhibit 17 is a true and complete copy of the following opinion:  Prof. Cleaning Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc. et al, 2009 U.S. Dist. LEXIS 49508 (D.N.J. June 12, 2009).

19.    Attached hereto as Exhibit 18 is a true and complete copy of the following opinion:  Centrum Fin. Servs. v. Chicago Title Ins. Co., 2010 WL 936201 (D.N.J. March 12, 2010).

20.     Attached hereto as Exhibit 19 is a true and complete copy of the following opinion: <u>FL Receivables Trust 2002-A v. Bagga</u>, 2005 WL 563535 at *3-4 (E.D. Pa. March 8, 2005).

21.     Attached hereto as Exhibit 20 is a true and complete copy of the following opinion: <u>In re Schering-Plough Corp. Intron/Temodar Consumer Class Action</u>, 2009 WL 2043604 (D.N.J. 2009).

22.     Attached hereto as Exhibit 21 is a true and complete copy of the following opinion: <u>In re Ins. Brokerage Antitrust Litig.</u>, 2006 WL 2850607 (D.N.J. 2006).

23.     Attached hereto as Exhibit 22 is a true and complete copy of the following opinion: <u>Hollis-Arrington v. PHH Mort. Corp.</u>, 2005 WL 3077853 (D.N.J. 2005).

24.     Attached hereto as Exhibit 23 is a true and complete copy of the following opinion: <u>Parrino v. Swift</u>, 2006 WL 1722585 (D.N.J. June 19, 2006).

25.     Attached hereto as Exhibit 24 is a true and complete copy of the following opinion: <u>Frank v. Cape May Cty.</u>, 2010 WL 3614193 (D.N.J. Sept. 9, 2010).

I certify under the penalty of perjury that the foregoing statements made by me are true and correct.

*/s/ Michael R. O'Donnell*

Dated:  February 9, 2011          Michael R. O'Donnell (MO-7088)

4111099.2

# **EXHIBIT 1**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| **FIRST CONNECTICUT CONSULTING** | ) | Chapter 11 |
| **GROUP, INC.,** *et al.,* | ) | |
| | ) | Case No. 02-50852 (AHWS) |
| Debtors. | ) | |
| | ) | (Jointly Administered) |

ORDER AUTHORIZING AND APPROVING (1) ASSET PURCHASE
AGREEMENT, (2) SALE OF ACQUIRED ASSETS OF THE
DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, AND
ENCUMBRANCES TO SWJ HOLDINGS LLC, (3) ASSUMPTION AND
ASSIGNMENT TO SWJ OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES, AND (4) CERTAIN RELATED RELIEF

This matter having come before the Court on the Motion, dated March 10, 2005 (as

amended, the "Motion")[1] of JAMES J. LICATA ("Licata"), FIRST CONNECTICUT

CONSULTING GROUP, INC., a Connecticut corporation ("FCCG"), FIRST CONNECTICUT

HOLDING GROUP L.L.C. I, a New Jersey limited liability company ("FCHG I"), FIRST

CONNECTICUT HOLDING GROUP L.L.C. XXIII, a New Jersey limited liability company

("FCHG XXIII") and FIRST CONNECTICUT HOLDING GROUP L.L.C. XXIV, a New

Jersey limited liability company ("FCHG XXIV") (each individually a "Debtor" and

collectively the "Debtors"), operating as debtors-in-possession under Chapter 11 of Title 11 of

the United States Code, Section 101, et seq. as amended (the "Bankruptcy Code"), for entry of

an order authorizing and approving, among other things, (i) certain bidding procedures and bid

protections (collectively, the "Bidding Procedures"), and a form of Asset Purchase Agreement in

---

[1]    All capitalized terms not otherwise defined herein shall have the meaning ascribed to
them in the Motion or the Asset Purchase Agreement (as defined below), as applicable.

254866

connection with the Debtors' intended sale of the Acquired Assets (as such term is defined in the Asset Purchase Agreement), (ii) the sale (the "Sale") of such Acquired Assets free and clear of liens, claims, and encumbrances to SWJ Holdings LLC (the "Purchaser"), pursuant to that certain First Amended Asset Purchase Agreement, dated as of May 18, 2005 (including all exhibits, supplements and attachments thereto, the "Asset Purchase Agreement"), among the Debtors, as sellers (collectively, the "Sellers"), and the Purchaser, as purchaser, subject to higher and better offers, and (iii) notice with respect thereto; and the Court having entered an order on May 25, 2005 (the "Sale Procedures Order") approving, among other things, the proposed Bidding Procedures, notice of the Sale; and an auction (the "Auction") of the Acquired Assets having been held on June 21, 2005 in accordance with the Sale Procedures Order and the Bidding Procedures; and the Debtors, as Sellers, having executed the Asset Purchase Agreement with the Purchaser appended hereto as **Exhibit A**; and the Purchaser having been determined by the Debtors to have submitted the highest and/or otherwise best bid at the Auction for the Acquired Assets that are the subject of the Asset Purchase Agreement and the Assumed Contracts to be assumed and assigned to the Purchaser pursuant to the Asset Purchase Agreement; and a hearing to consider the relief requested in the Motion having been held on June 21, 2005 (the "Sale Hearing"); and the Debtors having submitted into evidence the transcript of the Auction at the Sale Hearing; and adequate and sufficient notice of the Bidding Procedures, the proposed Asset Purchase Agreement (and all transactions contemplated thereunder and in this Order, including, but not limited to, the Auction, the Sale and the assignment of the Assumed Contracts to the Purchaser (collectively, the "Transactions")), and the Sale Hearing having been given to all parties-in-interest in these cases; and all interested parties having been afforded an opportunity to be heard with respect to the Motion and all relief

2

related thereto; and the Creditors' Committee having supported the Transactions and the approval of the Sale of the Purchaser of the Acquired Assets (which include among other things the Acquired Claims) identified in the Asset Purchase Agreement and the assumption and assignment to the Purchaser of the Assumed Contracts; and the Court having reviewed and considered (i) the Motion, (ii) the objections thereto, if any, and (iii) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that the relief requested in the Motion and the approval of the Sale to the Purchaser of the Acquired Assets identified in the Asset Purchase Agreement and the assumption and assignment to the Purchaser of the Assumed Contracts in connection and in accordance therewith, is in the best interests of the Debtors, their estates, creditors, and other parties-in-interest herein; and based on the Motion, the statements of counsel, the record of the Sale Hearing, and the Auction, and the record in these cases, the Court having determined and concluded as follows, it is hereby

FOUND AND DETERMINED THAT:[2]

A.    The court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief sought in the Motion are sections 105(a), 363(b), (f), (m), and (n), 365, and 1146(c) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), and Rules 2002, 6004, 6006, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

3

C.    This Court entered this Sale Procedures Order on June 21, 2005 and the Sale Procedures Order has become a final and non-appealable Order. Due, proper, timely, adequate, and sufficient notice of the Bidding Procedures has been given in accordance with the provisions of sections 363(b) and (f) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004. No other or further notice of the Bidding Procedures, is or shall be required.

D.    As evidenced by the affidavits of service and publication filed with this Court, and based on representations of counsel at the Sale Hearing, (i) due, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, and the Transactions, including, without limitation, the Sale of the Acquired Assets, and the assumption and assignment of the Assumed Contracts, has been provided in accordance with sections 102(1), 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014 and in compliance with the Bidding Procedures, (ii) such notice was good, sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, or the Transactions, including, without limitation, the Sale of the Acquired Assets, and the assumption and assignment of the Assumed Contracts is or shall be required.

E.    A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein (including, without limitation, the Sale of the Acquired Assets and the assumption and assignment of the Assumed Contracts) has been afforded to all interested persons and entities, including, without limitation: (i) the Office of the United States Trustee for the District of Connecticut; (ii) counsel for the Committee; (iii) all entities known to have expressed an interest in a Transaction with respect to the Acquired Assets since the Petition Date; (iv) all entities known to have expressed or asserted any liens, claims, or encumbrances in or upon any of the Acquired Assets or the Assumed Contracts; (v) the United States Attorney's

office; (vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service and any other taxing authority known to the Debtors as having a potential lien, claim, or encumbrance or other interest in all or any part of the Acquired Assets, if any; (viii) counsel for any other official committee appointed in these cases; (ix) parties to governmental approvals or permits; (x) non-Debtor parties to the Assumed Contracts; (xi) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested in the Motion; and (xii) all other parties that have filed a notice of appearance and demand for service of papers in these cases under Bankruptcy Rule 2002.

F.    As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors and their professionals have marketed the Acquired Assets and the Assumed Contracts and conducted the sale process with respect thereto in compliance with the Bidding Procedures and the Sale Procedures Order.

G.    Each Seller (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby and the Sale of the Acquired Assets, the assignment of the Assumed Contracts by the Debtors, and all of the other Transactions have been duly and validly authorized by all necessary corporate action of each of the Sellers, (ii) has all of the power and authority, including corporate power and authority necessary to consummate the Transactions, (iii) has taken all action, including corporate action necessary to authorize and approve the Asset Purchase Agreement and all other documents contemplated thereby and the consummation by such Debtors of the Transactions, and (iv) other than the consent of this Court, no consents or approvals are required for the Debtors, the Sellers, or the Purchaser to consummate the Transactions.

H.    The relief requested in the Motion (including, without limitation, the approval of the Asset Purchase Agreement, the Sale pursuant to section 363(b) of the Bankruptcy Code, and the other Transactions) is a necessary and appropriate step toward enabling the Debtors to successfully conclude these Chapter 11 cases and is in the best interests of the Debtors, their creditors, their estates, and all other parties-in-interest in these cases.

I.    The Sale to the Purchaser and the consummation of the other Transactions is a prerequisite to the Debtors' ability to confirm and consummate their Chapter 11 plan or plans.

J.    The Sale is a sale in contemplation of a plan and, accordingly, a transfer pursuant to section 1146(c) of the Bankruptcy Code, which shall not be taxed under any law imposing a stamp tax or similar tax.

K.    The Debtors have demonstrated and proven to the satisfaction of this Court good, sufficient, and sound business purpose and justification for the Sale and other Transactions contemplated by the Asset Purchase Agreement and this Order, pursuant to section 363(b) of the Bankruptcy Code. The relief requested in the Motion (including, without limitation, the approval of the Asset Purchase Agreement, the Sale, and the other Transactions) at this time prior to, and outside of, a plan of reorganization is further justified by the compelling circumstances described in the Motion. Accordingly, the entry of this Order and the approval of (a) the Sale of the Acquired Assets and the (b) assumption and assignment of the Assumed Contracts to the Purchaser under the Asset Purchase Agreement, pursuant to sections 363(b), 363(f), and 365 of the Bankruptcy Code, are necessary and appropriate to maximize the value of the Debtors' estates.

6

L.      The Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code, and is completely unrelated to the Debtors. The sale price under the Asset Purchase Agreement was not controlled by an agreement between potential or actual bidders within the meaning of section 363(n) of the Bankruptcy Code. The Asset Purchase Agreement was negotiated, proposed, and entered into by the Debtor and consented to by the Creditors' Committee, on one hand and the Purchaser, on the other hand without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors or the Creditors' Committee nor the Purchaser have engaged in any conduct that would cause or permit the Asset Purchase Agreement or any part of the Transactions to be avoided under section 363(n) of the Bankruptcy Code.

M.      This Court and all parties-in-interest in these cases have been given the opportunity to examine the Purchaser with respect to its relationship with Licata. In addition, the Asset Purchase Agreement includes as Exhibit H thereto the Transfer, Settlement and Release Agreement (the "TSRA") dated as of April 25, 2005 between Cynthia Licata and the Purchaser. Moreover, the Purchaser has previously advised the Seller, the Creditors' Committee, this Court and all parties-in-interest that it is negotiating an agreement with EMP Whole Loan 1, L.L.C. ("EMP"), pursuant to which, and among other things, the Purchaser is acquiring certain claims of EMP and its affiliates against the Estate.

N.      The Court having considered the disclosures that have been made to this Court, this Court makes the finding and determines that the Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code, *In re Gucci*, 126 F.3d 380 (2d Cir. 1997) and *Committee*

7

*of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063 (2d Cir. 1983) in closing the Transactions.

O.    The Asset Purchase Agreement must be approved and consummated promptly in order to preserve the viability of the Debtors' estates.

P.    Through marketing efforts and a competitive sale process, including (i) the marketing of the Acquired Assets for several months and (ii) seeking higher and better offers for the Acquired Assets and the Assumed Contracts through notice of the Motion, the Auction, and pursuant to the overbid procedures set forth in the Sale Procedures Order, the Debtors, the Creditors' Committee and their professionals afforded interested potential purchasers a full, fair, and reasonable opportunity to make a higher and better offer to purchase the Acquired Assets and the Assumed Contracts.

Q.    The Acquired Assets, which include the Assumed Contracts to be assumed and assigned pursuant to the Asset Purchase Agreement, are in full force and effect and (subject to, and upon the payment of, the Cure Amounts, if any (as defined below herein)) relating to the Assumed Contracts, no default exists thereunder with respect to any material term, condition, covenant, payment obligation or other obligations thereunder, whether prepetition or postpetition in nature, on the part of any of the Debtors, other than any event of default existing as a result of the filing of these bankruptcy cases, which event of default may and shall be cured by or at the Closing; provided, however, that the following agreements ("Litigated Agreements") shall not be Assumed Contracts under this order or the APA: (i) Joint Venture Agreement dated 1/28/98 made effective 5/1/97, between James Licata and Peter Mocco, as amended; (ii) Limited Liability Company operating agreement for Diversified Venture Capital Investments Group,

8

LLC; (iii) Limited Liability Company operating agreement for Diversified Liberty Harbor Holdings LLC; (iv) Limited Liability Company operating agreement for Liberty Harbor North II Urban Renewal Co., LLC; (v) Limited Liability Company operating agreement for Fulton's Landing Urban Renewal Co., LLC (originally known as Fulton's Landing, LLC); (vi) Limited Liability Company operating agreement for Renewal Associates, LLC; (vii) Limited Liability Company operating agreement for Metropolitan Management, LLC; (viii) Limited Liability Company operating agreement for Liberty Harbor North 1 Urban Renewal Co., LLC; (ix) Limited Liability Company operating agreement for Liberty Harbor North, LLC; (x) Shareholder Agreement for Metropolitan Management Corp.; (xi) Shareholder Agreement for A-1 Self Storage, Inc.; (xii) Shareholder Agreement for A-1 Property Management, Inc.; (xiii) Shareholder Agreement for AJK Holding Corporation; and it is further provided that any issues regarding capital contributions or the cure of defaults with respect or under to any Litigated Agreements shall be resolved in the appropriate non-bankruptcy forum.

R.    Each entity with a security interest in the Acquired Assets or the Assumed Contracts has consented to its sale, is deemed to have consented to its sale, or could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest, or the Sale otherwise satisfies the requirements of section 363(f) of the Bankruptcy Code.

S.    The Debtors have, to the extent necessary, satisfied the requirements of sections 365(b)(1) and 365(f) of the Bankruptcy Code in connection with the sale, assumption, and assignment of the Assumed Contracts, and shall upon the assignment thereof at the Closing, be relieved from any liability for any breach of such Assumed Contract.

9

T.     The aggregate consideration provided by the Purchaser for the Acquired Assets pursuant to the Asset Purchase Agreement and the assignment of the Assumed Contracts thereunder (i) is fair and reasonable, (ii) is the highest and best offer for the Acquired Assets and the Assumed Contracts, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical, available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia. The terms and conditions of the Asset Purchase Agreement are also fair and reasonable.

U.     The transfer of the Acquired Assets and the Assumed Contracts to the Purchaser will be a legal, valid, and effective transfer of such assets and contracts and will vest the Purchaser with all right, title, and interest of the Sellers to such assets, and contracts free and clear of all claims and interests, including, without limitation, those (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Sellers' or the Purchaser's interest in such assets or contracts, or any similar rights and (ii) relate to taxes arising under or out of, in connection with, or in any way relating to the operation of the Debtor' and their affairs prior to the date of the closing of the Asset Purchase Agreement (the "Closing Date").

V.     Except for the Assumptions (as such term is defined below), the Sellers may sell the Acquired Assets free and clear of all claims, liens, encumbrances and interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those non-debtor parties with claims or interests in the Acquired Assets who did not object, or who withdrew their objections, to the Asset Purchase Agreement or the Motion are deemed to have consented to such sale

10

pursuant to sections 363(f)(2) and 365 of the Bankruptcy Code. Those non-debtor parties with claims, liens, encumbrances and interests in the Acquired Assets who did object fall within one or more of the other subsections of sections 363(f) and 365 of the Bankruptcy Code and are adequately protected by having their claims or interests, if any, attach to the cash proceeds, of the Transactions ultimately attributable to the property against or in which they claim an interest with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto, or by Assumptions.

W.    The transfer of the Acquired Assets and the assumption and assignment of the Assumed Contracts to the Purchaser shall not subject the Purchaser to any liability whatsoever with respect to the Debtors' and/or their estates or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity, including, without limitation, any theory of antitrust, successor, or transferee liability. Except as expressly, and solely to the extent provided in the Asset Purchase Agreement, the Purchaser shall not assume or in any manner whatsoever be liable or responsible for any liability of any Seller, or any predecessors or affiliate of any Seller, and any of their respective representatives or any claim against any and all of the foregoing, whether matured or unmatured, known or unknown, contingent or absolute, direct or indirect, whensoever incurred, whether or not related to the Debtors' businesses or affairs or otherwise; except that, (i) the Acquired Assets shall be acquired subject to the Specific Assumed Liability for each such asset and (ii) the Defenses to the Acquired Claims will be preserved, each solely to the extent and in accordance with the conditions and limitations set forth in the Asset Purchase Agreement (collectively, the "Assumptions").

11

X.    The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the Transactions, thus adversely affecting the Debtors, their estates, and their creditors, if the Sale of the Acquired Assets and the assignment of the Assumed Contracts to the Purchaser, except for the Assumptions, were not free and clear of all Interests (defined below) of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of the Interests.

Y.    The Assumed Contracts being assigned to the Purchaser are an integral part of the Acquired Assets purchased by the Purchaser and, accordingly, the assumption and assignment of the Assumed Contracts to the Purchaser is reasonable, enhances the value of the Debtors' estates, and does not constitute unfair discrimination.

Z.    The Purchaser, at its sole option, may elect to (i) cure, or provide adequate assurance of cure, of any default existing prior to the date hereof under each of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, (ii) provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and (iii) provide adequate assurance of the Purchaser's future performance of and under the Assumed Contracts, within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code; provided, however, in the event the Purchaser elects not to provide a cure of any monetary default existing prior to the date hereof, under a contract that is listed as an Assumed Contract, such contact shall not be deemed an Assumed Contract. For the avoidance of doubt, the Debtors shall have no obligation to provide a cure of pre-petition monetary defaults under any Assumed Contract.

AA.    The transfer of the rights, with respect to the Acquired Claims, to the Purchaser is warranted as such transfer shall benefit the Estate and its creditors.  This Court has the authority to enter an order barring any Person from challenging the Purchaser's standing to pursue or prosecute the Acquired Claims.  Moreover, it is proper to grant and confer upon the Purchaser the right to pursue, prosecute and/or unilaterally direct the prosecution of the Acquired Claims and, for good and valuable consideration (i.e., the Purchase Price that shall benefit the Estate and all creditors) receive all proceeds and benefits of the Acquired Claims.

BB.    Time to close the Transactions is material, and the Debtors and the Purchaser intend to close the Sale and other Transactions as soon as possible.  Therefore, any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay or risk their appeal being foreclosed as moot.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

## General Provisions

1.    The Motion is GRANTED in all respects to the extent provided herein.

2.    All objections to the entry of this Order or the relief provided herein and in the Motion that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits with prejudice.

## Approval of the Asset Purchase Agreement

3.    The Asset Purchase Agreement, and all of the terms and conditions thereof, the Sale, and all other Transactions are hereby approved in all respects.

4.    Pursuant to section 363(b) of the Bankruptcy Code, the Sellers (including, but not limited to, their respective officers, employees, and agents) are authorized and directed to consummate the Transactions pursuant to, and in accordance with, the terms and conditions of the Asset Purchase Agreement.

5.    Pursuant to section 363(b) of the Bankruptcy Code, the Debtors (including, but not limited to, each of their respective officers, employees, and agents) are further authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary, appropriate, or desirable to implement the Asset Purchase Agreement (including, but not limited to, any and all such instruments of assignment, transfer, or conveyance as shall, in the reasonable opinion of the Purchaser and its counsel, be necessary or appropriate to vest in the Purchaser good, valid, and marketable title to the Acquired Assets and to put the Purchaser in actual possession or control of the Acquired Assets), and to take all further actions as may be necessary, desirable, or appropriate to the performance of the obligations and to implement more effectively the Transactions as contemplated by the Asset Purchase Agreement, as set forth more fully therein, including, but not limited to **Articles 5 and 6** thereof.

## Transfer of the Acquired Assets and the Post-Petition Contracts

6.    Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Acquired Assets (and good, clear, and marketable title thereto) shall be transferred, conveyed, and assigned to the Purchaser upon consummation of the Transactions (the "Closing") as set forth in the Asset Purchase Agreement  free and clear of all Encumbrances, liens, claims,

liabilities, causes of action, chooses of action, pledges, offsets, set-offs, recoupments, right, title and interest of any kind, type, description, or nature whatsoever (collectively, the "Interests"), except for the Assumptions, and except for the Assumptions, all such Interests of any kind, type, description, or nature whatsoever to attach to the net cash proceeds of the Transactions ultimately attributable to the property against or in which the holder of an Interest claims or may claim an Interest in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto. Without in any way limiting the generality of the foregoing, other than as set forth in the Asset Purchase Agreement, the Acquired Assets transferred under the Asset Purchase Agreement shall be transferred, conveyed, and assigned to the Purchaser free and clear of any and all claims, liens, pledges, offsets, set-offs, recoupments, charges, successor, product, environmental, tax, and other liabilities (whether secured or unsecured, contingent, or absolute, liquidated or unliquidated, perfected or unperfected, choate or inchoate, filed or unfilled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded), taxes, security interests, mortgages, restrictions, indentures, loans, credit agreements, other agreements, instruments, contracts, judgments, and orders of any court or governmental department, commission, board, agency, or instrumentality, domestic or foreign, and any actions and proceedings of any kind or nature, and any claim by any person or entity asserting any rights or interests except as specifically reserved within the Asset Purchase Agreement.

7.    Except as expressly permitted or otherwise specifically provided by the Asset Purchase Agreement and/or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, federal, state, or local governmental, tax, environmental, and regulatory authorities or agencies, lenders, trade, and other creditors, holding

Interests of any kind or nature whatsoever against or in the Debtors, the Acquired Assets, or the Assumed Contracts (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the Assumed Contracts, the operation of the Debtors' businesses and/or affairs and prior to the Closing Date, or the transfer of the Acquired Assets or the Assumed Contracts to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its designee or successors or assigns, property, or assets, such persons' or entities' respective Interests. No such persons or entities shall assert against the Purchaser or its successors in interest any liability, debt, claim, or obligation relating to or arising from the ownership or operation of the Acquired Assets or any liabilities calculable by reference to the Debtors or the Sellers or the Debtors' or the Sellers' assets or operations.

8.    The transfer of the Acquired Assets and the Assumed Contracts to the Purchaser pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer, assignment, and conveyance of such assets and contracts, and shall vest the Purchaser with all right, title (which shall be good, clear, and marketable), claim and interest of the Debtors and their estates in and to such assets and contracts free and clear of all Interests (except for the Assumptions) of any kind or nature whatsoever. Without limiting the generality of the foregoing, the Debtors shall transfer to the Purchaser all licenses and permits held by each Seller or issued or granted by any Governmental Authority or any other Person with respect to the operation of the Debtors' businesses or affairs or the use or ownership of any of the Acquired Assets, and all Persons and Governmental Authorities shall honor such transfer.

9.       The transfer of the Acquired Assets and the Assumed Contracts pursuant to the Asset Purchase Agreement is a transfer pursuant to section 1146(c) of the Bankruptcy Code, and accordingly shall not be taxed under any federal, state, local municipal, or other law imposing, or claiming to impose, a stamp tax or a sale, transfer, or any other similar tax on any of the Debtors' transfer or sale of real estate, assignment of any note, mortgage or instrument, any release of any note, mortgage or instrument, transfer of personal property, or any other assets pursuant to the Asset Purchase Agreement.

## Assumption and Assignment to the Purchaser of the Assumed Contracts

10.       Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors' assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms set forth in the Asset Purchase Agreement, of the Assumed Contracts, is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

11.       The Debtors are hereby authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, effective upon the Closing, the Assumed Contracts free and clear of all Interests of any kind or nature whatsoever, and (b) as set forth in the Asset Purchase Agreement, execute and deliver to the Purchaser such documents or other instruments and take all further actions as may be necessary or appropriate to assign and transfer the Assumed Contracts to the Purchaser.

12.       The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type

described in sections 365(b)(2) and (f)(1) of the Bankruptcy Code) that prohibits, precludes, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to, and assumption by, the Purchaser.

13.    All defaults or other obligations of the Debtors under any Assumed Contract, as listed on the Cure Schedule to the Asset Purchase Agreement, arising or accruing prior to the date of this Order or accruing prior to the date of any order approving the assumption and assignment thereof to the Purchaser (without, in either case, giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Purchaser, in its sole discretion, upon payment by the Purchaser, in its sole discretion, at the Closing of the Transactions or as soon thereafter as practicable of the cure amounts, that are listed on the Cure Schedule to the Asset Purchase Agreement or such other amounts established by the nondebtor parties to such contracts and as expressly fixed by this Order, with respect to those Assumed Contracts (the "Cure Amounts"); provided, however, in the event the Purchaser elects not to provide a cure of any monetary default existing prior to the date hereof, under a contract that is listed as an Assumed Contract, such contact shall not be deemed an Assumed Contract and the Purchaser shall have no liability or obligation arising or accruing prior to the Closing Date with respect such contracts. For the avoidance of doubt, the Debtors shall have no obligation to provide a cure of pre-petition monetary defaults under any Assumed Contract.

14.    Except for the Defenses to claims under the Assumed Contracts, each non-debtor party to an Assumed Contract is forever barred, precluded, estopped, and permanently enjoined from asserting against the Purchaser, or the property of any of them, any default

existing as of the date of the Closing Date; or, against the Purchaser, any counterclaim, defense, setoff, or any other claim asserted or assertable against the Debtors.

15.    Any provision in any Assumed Contract or any other agreement to which any of the Debtors is a party that purports to declare a breach or default as a result of a change in control of the Debtors' affairs or businesses or requires the consent of a non-Debtor party is hereby deemed unenforceable under section 365(f) of the Bankruptcy Code, and all such Assumed Contracts and other agreements shall remain in full force and effect and shall be valid, binding, and enforceable upon all non-debtor parties thereto to the same extent they were prior to the transfer thereof by the applicable Debtors.

16.    The failure of the Sellers or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, of the Sellers' and the Purchaser's rights to enforce every term and condition of such Assumed Contract.

## Additional Provisions

17.    The aggregate consideration provided by the Purchaser for the Acquired Assets pursuant to the Asset Purchase Agreement and the assignment of the Assumed Contracts thereunder (i) is fair and reasonable and (ii) shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  The terms and conditions of the Asset Purchase Agreement are also fair and reasonable, and may not be avoided under section 363(n) of the Bankruptcy Code.

18.    The Purchase Price as determined in accordance with Section 1.3 of the Asset Purchase Agreement and is $8,950,000.

19.    On the Closing Date of the Transactions, the Sellers and the Purchaser are authorized to take such actions as may be necessary to obtain a release of Interests in the Acquired Assets and the Assumed Contracts, if any, as such Interests may have been recorded or may otherwise exist.

20.    This Order (a) shall be effective as a determination that, on the Closing Date, all Interests (except for the Assumptions) of any kind or nature whatsoever existing with respect to the Debtors, the Acquired Assets, or the Assumed Contracts prior to the Closing have been unconditionally released, discharged, and terminated and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of such assets or contracts.

21.    Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement

(including, but not limited to, with respect to the Sale of the Acquired Assets, the transfer of all permits and licenses, and the assignment of the Assumed Contracts).

22.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Interests with respect to the Debtors, the Acquired Assets, or the Assumed Contracts shall not have delivered to the Debtors and the Purchaser prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests which the person or entity has with respect to the Debtors, the Acquired Assets, the Assumed Contracts, or otherwise, then (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such assets and contracts and (b) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Acquired Assets and the Assumed Contracts of any kind or nature whatsoever.

23.    All entities who are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets either to (a) the Debtors prior to the Closing Date, for subsequent transfer to the Purchaser on the Closing Date, or (b) to the Purchaser on the Closing Date.

24.    The Purchaser is not assuming and shall have no liability or responsibility, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors or the Sellers or any liabilities, debts, or obligations in any way whatsoever relating to or arising from the Sellers' ownership or operation of the Acquired Assets or the Assumed Contracts or any right,

claim, or interest of any kind or nature therein (whether in law, equity or otherwise), prior to the Closing Date or any liabilities calculable by reference to the Debtors or the Sellers or their assets or operations, or relating to continuing conditions existing on or prior to the Closing Date, without regard to whether the claimant asserting any such liabilities, debts, or obligations has delivered to the Purchaser a release thereof. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Asset Purchase Agreement, the Purchaser shall not assume or in any manner whatsoever be liable or responsible for any liability of any Debtor or Sellers, or any predecessors or Affiliate of any Debtor or Sellers, and any of their respective representatives or any claim against any and all of the foregoing, whether matured or unmatured, known or unknown, contingent or absolute, direct or indirect, whensoever incurred, whether or not related to their affairs on businesses, and the Purchaser shall have no successor or vicarious liability or responsibility of any kind or character whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or the Sellers or any obligations of the Debtors or the Sellers arising prior to the Closing Date, including but not limited to, (1) any liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the affairs or businesses prior to the Closing Date (including, without limitation, any liabilities arising under or with respect to any tax statutes or ordinances including, without limitation, the Internal Revenue Code of 1986, as amended) and (2) any liabilities based on any theory of antitrust; environmental, including, without limitation, debts, claims, or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes) which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental

22

Response, Compensation and Liability Act, 42 U.S.C. § 9601, et seq.; successor or transferee liability; labor law, including, without limitation, any obligations which might otherwise arise or, pursuant to, the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standards Act, Title VII of Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, et seq. the National Labor Relations Act, or the Consolidated Omnibus Budget Reconciliation Act of 1985, workmen's compensation, occupational disease, retirement health benefit or unemployment or temporary disability insurance claims; de facto merger, or substantial continuity; any bulk sales or similar law; and any products liability or similar claims whether pursuant to any state or any federal laws or otherwise.  Further without limiting the generality of the foregoing, except as expressly provided in the Asset Purchase Agreement, (A) the Purchaser shall have no obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, unemployment benefits and contributions or payments on account of any under-binding with respect to any and all pension plans) or any other payment to employees of Debtors, (B) the Purchaser shall have no obligation for the cessation of any of the Debtors' operations, dismissal by the Debtors of employees, or termination by the Debtors of employment or labor agreements, (C) the Purchaser shall have no liability with respect to any collective bargaining agreement, employee pension plan, employee welfare or retention, compensation, benefit and/or incentive plan, agreements, practices, or program to which any of the Debtors are a party (including, without limitation, arising from or related to the rejection or termination of any such agreement), (D) the Purchaser shall in no way be deemed a party to or assignee of any such agreement, plan, practice, or program, (E) no employee of the Purchaser shall be deemed in any way covered by a party to any such agreement, practice, plan, or

program, and (F) *all parties to any such agreement, practice, plan, or program are hereby enjoined from asserting against the Purchaser any and all claims arising from or relating thereto*. The recitation in this paragraph of the Order of specific agreements, plans, programs, statutes, or any other potential source of liability, is not intended, and shall not be construed, to limit the generality of the categories of liabilities, debts, claims, or obligations referred to therein.

25.    No Person can challenge the Purchaser's standing to pursue or prosecute the Acquired Claims. The Purchaser shall have the right to pursue, prosecute and/or unilaterally direct the prosecution of the Acquired Claims and, for good and valuable consideration (i.e., the Purchase Price that shall benefit the Estate and all creditors) shall have the right to receive all proceeds and benefits of the Acquired Claims.

26.    The Purchaser is not and shall not be deemed a successor of or to the Debtors for any Interest against or in the Debtors, the Acquired Assets, or the Assumed Contracts of any kind or nature whatsoever. Except as expressly provided herein and in the Asset Purchase Agreement: (a) the sale, transfer, assignment, and delivery of the Acquired Assets and the Assumed Contracts shall not be subject to any Interests, and Interests of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtors; and (b) all persons holding Interests against or in the Debtors, the Acquired Assets, or the Assumed Contracts of any kind or nature whatsoever (including, but not limited to, the Debtors and/or their respective successors (including any trustee), creditors, employees, unions, former employees and shareholders, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and the successors and assigns of each of the foregoing) shall be, and hereby are, forever barred, banned, estopped, and permanently enjoined from

24