# **<u>EXHIBIT 5</u>**

# EXHIBIT FILED UNDER SEAL

# **EXHIBIT 6**

# EXHIBIT FILED UNDER SEAL

# **EXHIBIT 7**

PODVEY, SACHS, MEANOR, CATENACCI,
    HILDNER & COCOZIELLO, P.C.
A Professional Corporation
One Riverfront Plaza – 8th Fl.
Newark, New Jersey 07102-5497
(201) 623-1000
Attorneys for Defendants, James J. Licata, Cynthia
Licata, First Connecticut Consulting Group, Inc.,
First Connecticut Holding Group, L.L.C., II-X, and
First Connecticut Holding Group, L.L.C. XII



F I L E D

SEP 2 1 2001

KENNETH S. LEVY, J.S.C.

| | |
|---|---|
| PETER MOCCO, LORRAINE MOCCO, 8-10 CLIFTON PLACE CORP., HAMILTON PARK HEALTH CARE CENTER, TD., LIBERTY HARBOR MARINA, INC., STONEHYRST INVESTMENTS, L.L.C. AND A-1 SELF STORAGE, INC. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: ESSEX COUNTY<br><br>DOCKET NO. ESX-C-397-99<br>Consolidated with ESX-C-280-98 |
| Plaintiffs,<br><br>vs.<br><br>JAMES LICATA, CYNTHIA LICATA, FIRST CONNECTICUT CONSULTING GROUP, INC., et als.<br><br>Defendants. | Civil Action<br><br>ORDER |

THIS MATTER having been opened to the Court on the motion of the defendants, i.e.,

Licata Parties, to dismiss the Complaint in Action No. 2 and to discharge the Lis Pendens filed

with regard to the real estate referenced in Action No. 2, and the plaintiff i.e., the Mocco Parties,

having filed a cross motion to enjoin attempted encumbrances of real estate, and the Licata

Parties by and through their attorneys, Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello,

Esqs., J. Barry Cocoziello, appearing, and the Mocco Parties by and through their attorneys,

Hellring, Lindeman, Goldstein & Siegal, James Scarpone, Esq., appearing, having submitted

argument to the Court with regard to the referenced motions on September 7, 2001, and the

Court having reviewed the moving and opposing papers submitted in this matter, and the Court having concluded that the issues raised under the United States Bankruptcy Code in connection with these motions should be determined in the United States Bankruptcy Court and that this Court would defer to and grant comity to determinations made by the United States Bankruptcy Court as related to the Order of Confirmation entered by the Bankruptcy Court on September 26, 1996, and for the reasons set forth on the record by the Court on September 7, 2001,

IT IS on this 21st day of September 2001, ORDERED as follows:

1. The motion by the Licata Parties to dismiss the Complaint in Action No. 2 and discharge the lis pendens is denied without prejudice.

2. The Licata parties shall have twenty-eight (28) days (i.e., until on or before October 5, 2001) within which to file an appropriate application in the United States Bankruptcy Court for the District of New Jersey for whatever relief they claim may be appropriate with respect to the matters raised in their motion to dismiss or otherwise arising out of or related to the September 26, 1996 Order Confirming Debtors' Fourth Amended Plan of reorganization As Modified filed by the Mocco Debtors (i.e., Peter Mocco, Lorraine Mocco, Village Townhouse Estates, Inc., Knob Hill Victorian Estates, Inc., and Liberty Harbor North, Inc.).

3. This Court shall grant comity to and defer to determinations made in the Bankruptcy Court with regard to the bankruptcy issues raised in the motion filed by the Licata Parties.

4. Peter Mocco and Lorraine Mocco shall, within seven (7) days (i.e., on or before September 14, 2001) physically deliver to Dennis Drasco, Esquire, the originals of all materials delivered to them by Pieter de Jong on or about September 1,

2001.  Those materials consist, in general, of unit powers, units of interests in LLCs and replacement units for the "Holding Entity" LLCs referenced in the Mocco Complaint in Action No. 2.  Mr. Drasco shall hold these materials until further Order of the Court, and shall provide copies of such material to counsel for the Licata Parties.

5.  Pending further order of this Court, or should the Bankruptcy Court assume jurisdiction of this matter, the order of the Bankruptcy Court, no party or any affiliate of a party shall transfer, lien, or encumber any interest in any of the Holding Entity LLCs or any properties owned in the name of any such Holding LLCs.  The Order set forth in this paragraph does not apply to the property known as the Atrium.

6.  A copy of the within Order shall be served on all parties within _7_ days of the date hereof.

Honorable Kenneth F. Levy, J.S.C.

Document #:107305

# Superior Court of New Jersey

I, Vanessa Hendrickson, designated by the Deputy Clerk of the Superior Court of the State of New Jersey for Essex County, do hereby certify that <u>Kenneth S. Levy</u>, whose name is subscribed to the preceding certificate, is a judge of the Superior Court of New Jersey, duly commissioned and sworn, and that the signature of said judge to said certificate is genuine.

Peter Mocco                                 C-280-98

     Vs

James Licata, et al

September 21, 2001 Order Denying Motion to Dismiss Complaint and Discharge Lis Pendens Without Prejudice

**IN TESTIMONY WHEREOF**, I have hereunto set my hand and affixed the seal of said Court at Newark, New Jersey this date: *August 21, 2006*

                                               Designated by the Deputy Clerk of the
                                                     Superior Court

# **EXHIBIT 8**

# EXHIBIT FILED UNDER SEAL

# <u>EXHIBIT 9</u>

# EXHIBIT FILED UNDER SEAL

# **<u>EXHIBIT 10</u>**



**RIKER**
**DANZIG**
**SCHERER**
**HYLAND**
**PERRETTI** LLP

A T T O R N E Y S   A T   L A W

Michael R. O'Donnell
Partner

Direct:
t:973.451.8476
f:973.451.8700
modonnell@riker.com
Reply to: Morristown

November 19, 2010

**Via Email and U.S. Mail**
Christopher C. Humphrey, Esq.
Humphrey Law, LLC
7 Lothrop Lane
PO Box 608
Cohasset, Massachusetts 02025
chumphreylaw@gmail.com

Peter Strojnik, Esq.
Peter Strojnik, P.C.
3030 North Central Avenue
Suite 1401
Phoenix, Arizona 85012
strojnik@aol.com

Peter K. Strojnik, Esq.
The Strojnik Firm, LLC
3030 North Central Avenue
Suite 1401
Phoenix, Arizona 85012
strojnik@skplaw.com

Re:  **Insured:**      **Dare Investments, LLC ("Dare")**
     **Property:**     **Vacant land located in Sayreville, N.J. (the "Property")**
     **Mortgage:**     **$15 million Mortgage recorded on the Property (the "Mortgage")**
     **Policy No.:**   **Loan Policy No. 72107-2834015 (the "Policy")**
     **Litigation:**   **Mocco et al. v. Licata et al., Action No. 2 consolidated and filed under Docket No. ESX-C-397-99 (formerly Docket No. ESX-L-4058-99), Superior Court of New Jersey, Essex County, Chancery Division (the "Action")**

Dear Counsel:

We represent Chicago Title Insurance Company ("Chicago Title") and write in response to the November 1, 2010 letter from Peter Strojnik sent on behalf of Dare (the "Letter") and the November 16, 2010 email from Mr. Stronik on behalf of Dare enclosing a draft complaint of Dare against Chicago Title (the "Draft Complaint"). The Letter sought indemnification for Dare under the Policy and invited Chicago Title to respond to proposed litigation claims against it and to a proposal by Dare and/or its counsel to post a

Headquarters Plaza, One Speedwell Avenue, Morristown, NJ 07962-1981 • t: 973.538.0800 f: 973.538.1984
50 West State Street, Suite 1010, Trenton, NJ 08608-1220 • t: 609.396.2121 f: 609.396.4578
500 Fifth Avenue, New York, NY 10110 • t: 212.302.6574 f: 212.302.6628
London Affiliate: 33 Cornhill, London EC3V 3ND, England • t: +44 (0) 20.7877.3270 f: +44 (0) 20.7877.3271
www.riker.com

Christopher C. Humphrey, Esq.
Peter Strojnik, Esq.
Peter K. Strojnik, Esq.
November 19, 2010
Page 2

website and/or other electronic comment about Chicago Title. The Letter was sent while I was out of the office, and Mr. Strojnik agreed that Chicago Title could respond to the Letter by today, November 19, 2010. Nonetheless, on November 16, 2010, the Draft Complaint was emailed under a cover stating that it was prepared by "[o]ur team of attorneys" and would be filed on November 20, 2010. It seems apparent that Dare intends on filing claims against Chicago Title regardless of any response it provides. Chicago Title, nevertheless, will attempt to respond to the extent possible on this short notice, but reserves it right to supplement and amend same in the future.

As to the Policy, Dare seeks indemnification based on alleged unmarketable title and title defect.[1] Dare acknowledges Chicago Title's August 14, 2007 coverage determination (the "Coverage Determination"), but provides nothing new that warrants change in the Coverage Determination, which is hereby incorporated by reference. To the contrary, since the Coverage Determination, Dare has elected to settle the claims by Peter Mocco et al. (the "Moccos") against it in the Action in exchange for it agreeing to be bound by the title determination in the Action, which title determination has not been made. To Chicago Title's knowledge, Dare is not participating in a defense of title in the Action and has not done so at least since entering into its settlement with the Moccos. In addition, Dare has participated in the foreclosure on the assets of SWJ Holdings, LLC in its bankruptcy in satisfaction of, among other things, the Mortgage. Upon information and belief, moreover, Dare has not properly obtained the underlying debt that the Mortgage secures. All of these acts, individually and collectively, may provide additional grounds that preclude Dare from being covered in part or in full under the Policy.

In addition to the matters detailed in the Coverage Determination, Chicago Title has learned that Dare, by and through its counsel in the underlying transaction, had communications with the Moccos' counsel regarding many, if not all, of the matters about which Dare now complains. For example, Chicago Title identified in the Coverage Determination the testimony of Dare's principal and/or counsel conceding that Dare elected to go forward with the transaction against the advice of its counsel and that, prior to the closing, its counsel was not only aware of the Vermont bankruptcy decision and its pending appeal, but even attended bankruptcy meetings and hearings as to the bankruptcy sale. Similarly, Dare's counsel testified that, before the closing, he had reviewed the

---

[1] With regard to these claims, Dare cites to the insuring language in the Policy, which further states in capital letters that such coverage is "SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS" in the Policy and in an amount "not exceeding the Amount of Insurance stated in Schedule A[.]"

Christopher C. Humphrey, Esq.
Peter Strojnik, Esq.
Peter K. Strojnik, Esq.
November 19, 2010
Page 3

claims in the Action and had communications with and received documents from the Moccos' counsel. Chicago Title strongly recommends that Dare revisit the Coverage Determination and the documents and materials referenced therein before proceeding further based on the conflicting allegations it is now making in the Letter and Draft Complaint. These sources, which include sworn testimony of Dare's principal and its counsel, not only preclude coverage under the Policy and the relief Dare now seeks, but raise serious concerns regarding potential sanctionable and actionable conduct. See Fed. R. Civ. P. 11; N.J.S.A. 17:33A-4(a) (permitting a private right of action, including the potential for trebling damages, for various misrepresentations and misstatements made by an insured to an insurer in connection with obtaining benefits under the insurance policy); Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 540, 542 (1990) (finding that an insured's post-loss knowing and material misrepresentations will void coverage irrespective of prejudice to the insurer). Please be guided accordingly.

As to the litigation claims raised in the Letter and Draft Complaint, Chicago Title is unaware of any obligation to respond to the same at this time as it appears that Dare is raising them in an effort to force coverage under the Policy. Nonetheless, the facts and analyses set forth herein, in the Coverage Determination, and in the sources therefore provide ample grounds for rebutting those litigation claims. Suffice it to say that Chicago Title disputes any liability under any of those alleged claims and further reminds Dare and its counsel of their obligations under their agreement concerning the Sky Land Investments, LLC matter.

Finally, Dare raises matters concerning the posting of comments regarding Chicago Title on a website and/or other electronic medium and use of Chicago Title's name and/or mark. Chicago Title in no way consents to any such use, acts or statements. To the extent Dare intends to or has used Chicago Title's name, likeness, and/or mark, Chicago Title hereby demands that it cease and desist such activities.

Chicago Title reserves all its rights and remedies regarding any and all such acts and statements by Dare and/or its counsel concerning this matter.

Very truly yours,

/s/ Michael R. O'Donnell (DRF)
Michael R. O'Donnell (DRF)
4091485.1

# **EXHIBIT 11**

Westlaw.

Not Reported in F.Supp.2d, 2009 WL 2488316 (D.N.J.)
(Cite as: 2009 WL 2488316 (D.N.J.))

**H**Only the Westlaw citation is currently available.NOT FOR PUBLICATION

United States District Court,
D. New Jersey.
UNITED STATES LAND RESOURCES, LP, Waterford Investors, LP and Lawrence S. Berger, Plaintiffs,
v.
JDI REALTY LLC, JDI Montclair, LLC, Jefferey Aeder and Waterford Investors LLC, Defendants.

Civil Action No. 08-5162 (WHW).
Aug. 12, 2009.

West KeySummary**Mortgages 266** 🗝️216

266 Mortgages
   266IV Rights and Liabilities of Parties
     266k215 Actions for Damages
      266k216 k. Between Parties to Mortgage or Their Privies. Most Cited Cases
   Mortgagors' complaint against mortgagee set forth sufficient information to permit reasonable inferences that the elements of a violation of the covenant of good faith and fair dealing were satisfied. Without notice, mortgagee renegotiated a lease with a tenant at the subject property and then sold the property. Mortgagors relied on mortgagee's assurances that they were not required to pay off mortgage debt at end of three-year term and continued to make interest payments beyond end of term. Thus, it was reasonable to infer mortgagee knew that mortgagors did not anticipate the lease renegotiation or property sale and that mortgagee acted with ill motive.

William J. Pinilis, Pinilis Halpern, Morristown, NJ, for Plaintiffs.

Robert E. Bartkus, Dillon, Bitar & Luther, LLC, Morristown, NJ, for Defendants.

## OPINION
WALLS, Senior District Judge.
   *1 Defendants have moved to dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6).

## FACTUAL & PROCEDURAL BACKGROUND
   On August 21, 2008, plaintiffs United States Land Resources, LP ("USLR") and Waterford Investors, LP ("Waterford LP") filed a complaint in New Jersey Superior Court against defendants JDI Realty LLC, JDI Montclair LLC and Jeffrey Aeder. (See Not. of Removal Pls.' Compl. and Jury Demand ("Pls.' Compl.") (Dkt. Entry No. 1, filed Oct. 20, 2008.) Plaintiffs alleged the following:

   Plaintiffs [FN1] entered into a contract to purchase a commercial warehouse in Wall Township, New Jersey (the "Property") for $15.6 million. (See Pls.' Compl. ¶¶ 9-10.) Plaintiffs obtained a mortgage from Smith Barney in the amount of $11 million and sought second mortgage financing from defendants. (See id. ¶¶ 10-11.) Defendant Jeffrey Aeder agreed on behalf of defendants to provide second mortgage financing in the amount of $3,150,000 at a rate of 17% per annum. (See id. ¶ 12.) As a condition, defendants required that plaintiffs enter into a partnership agreement with Aeder and transfer to defendants their partnership interest in the entity that contracted to purchase the property.[FN2] (See id. ¶ 13.) This structure was designed to allow defendants to effectively foreclose on the property without instituting a foreclosure proceeding. (See id. ¶ 14.) Aeder represented to plaintiffs that, "when plaintiffs paid off the second mortgage financing, defendants would be 'bought out' of any ownership interest in the property" and plaintiffs relied on this representation in agreeing to the terms. (See.id. ¶ 16.)

    FN1. Throughout their complaint, plaintiffs do not identify which of the named plaintiffs or named defendants specifically engaged in the alleged acts. For purposes of the present motion, where the complaint is ambiguous the Court assumes that plaintiffs intend to plead that each and all of the plaintiffs engaged in the act. However, in future pleadings plaintiffs must be more specific as to the actions and identities of each party.

    FN2. Plaintiffs plead ownership of the Property with a similar lack of precision to that which they apply to the parties. The entity

Page 2

Not Reported in F.Supp.2d, 2009 WL 2488316 (D.N.J.)
(Cite as: 2009 WL 2488316 (D.N.J.))

that purchased the Property is information plaintiffs should have little trouble specifying and plaintiffs must be more specific in their amended pleadings.

Defendants originally agreed to provide the second mortgage financing for a three-year term, at the end of which (the "Unwind Date") defendants were to pay off the principal balance but plaintiffs "did not pay off the second mortgage financing [at the Unwind Date]," (*Id.* ¶ 18.), because Aeder had assured them on behalf of defendants that, as long as they continued to make interest and principal payments, defendants "would honor their agreement to transfer back to [p]laintiffs their partnership interest in the entity owning the Property." (*Id.* ¶ 19.)

In 2003, without notice to plaintiffs, Aeder renegotiated a lease with one of the tenants at the Property at a lower rent. (*See id.* ¶¶ 20-21.) Plaintiffs claim that such reduction lowered the value of the Property. (*See id.* ¶ 22.) Defendants later sold the property, again without notice to plaintiffs, for "only $300,000 more than the price paid six years earlier." (*See id.* ¶ 23.) Plaintiffs first learned of the sale when they received a check for $64,117 from defendants, which sum, defendants asserted, was plaintiffs' share of the proceeds. (*See id.* ¶ 25.)

On the basis of these factual allegations, plaintiffs alleged fraud (Count 1), breach of contract (Count 2), unjust enrichment (Count 3), breach of implied duty of good faith and fair dealing (Count 4), conversion (Count 5) and breach of fiduciary duty (Count 6). (*See* Pls.' Compl. ¶¶ 27-50.) Defendants removed to this Court and filed a motion to dismiss in lieu of an answer. (*See* Mot. to Dismiss Action (Dkt. Entry No. 3, filed Dec. 14, 2008).) In response, plaintiffs filed an amended complaint, adding two new parties, plaintiff Lawrence Berger and defendant Waterford Investors, LLC ("Waterford LLC"), and making several changes to their initial allegations. (*See* First Am. Compl. (Dkt. Entry No. 4, filed December 31, 2008).) Plaintiffs allege that Waterford LLC "was created by defendants (or certain of them) to act as the general partner of Waterford LP." (*Id.* ¶ 10.) Waterford LLC has not been served. (*See* Defs.' Supp. 1.)

*2 Plaintiffs now claim that Aeder, "acting both on his behalf and that of the [d]efendants (whom he controlled and was a principal in), agreed and promised plaintiffs that [d]efendants would not take any other action to jeopardize [p]laintiffs' interest in the [p]roperty as long as [defendants][FN3] were paid the aforementioned seventeen percent (17%) interest," (*See* First Am. Compl. ¶ 27.), and that "Aeder further assured the plaintiffs that neither he nor the other [d]efendants were interested in ownership or operation of the property, and that they simply wanted to collect 17% interest per annum as a lender." (*See id.* ¶ 29.) According to plaintiffs, such assurances were given again after the transaction was consummated. (*See id.* ¶ 30.) Plaintiffs insist that Aeder's assurances "were important and material to [p]laintiffs in agreeing to proceed with the transaction as structured by [d]efendants, and in allowing the transaction to continue without taking action to satisfy the loan or protect and preserve [p]laintiffs' rights and interest." (*See id.* ¶ 31.) According to plaintiffs, "Aeder's assurances were untrue at the time they were made and were given with the intention of inducing plaintiffs to rely" upon them in "consummating the transaction and in refraining from taking actions which they would have taken, or which [d]efendants believed they would have taken, to protect and preserve [p]laintiff's rights." (*See id.* ¶ 32.) Additionally, [p]laintiffs allege that "there came a time when Aeder knew that [his assurances] were no longer true, and Aeder knowingly and intentionally failed to notify [p]laintiffs of that change, with the intention that [p]laintiffs would continue to rely." (*See id.* ¶ 33.)

> FN3. Plaintiffs' first amended complaint reads "as long as *Plaintiffs* were paid ..." (First Am. Compl. ¶ 27 (emphasis added).) Because this allegation is inconsistent with all other allegations the Court assumes that the plaintiffs intended to say "as long as *defendants* were paid ..."

Plaintiffs also omit in their amended complaint, the allegation, present in their initial complaint, that they "did not pay off the second mortgage in the year 2000," (*See* Pls.' Compl. ¶ 18.), and delete dates that were present in the original complaint, (*See, e.g., id.* ¶ 17 ("The original agreement ... was that the second mortgage financing was for a period of three years ... plaintiffs were to pay off the second mortgage loan in or about the year 2000."); *id.* ¶ 20 (alleging that Aeder renegotiated the lease in 2003)), noting only that defendants received payment of 17% per annum

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2488316 (D.N.J.)
(Cite as: 2009 WL 2488316 (D.N.J.))

interest. (*See* First Am. Compl. ¶ 34.) Plaintiffs do provide more detail as to the purportedly secret lease extension. Now plaintiffs allege that Aeder and defendants had agreed to the reduction in rent in order to extend the term of the lease and, ultimately, to facilitate sale. (*Id.* ¶ 35-42.) Plaintiffs claim further that defendants "willfully and knowingly [failed to] notif[y][p]laintiffs in advance of [d]efendants' plan to renegotiate for [sic] the lease or sell the Property because [d]efendants did not want [p]laintiffs" <u>FN4</u> to take action to protect their interests. (*Id.* ¶ 45.) Finally, plaintiffs added a count for waste and mismanagement (Count 7) and violation of the New Jersey Consumer Fraud Act (the "CFA") (Count 8). (*See* First Am. Compl. ¶¶ 51-57.)

> <u>FN4.</u> Plaintiffs' complaint read that defendants "willfully and knowingly notified plaintiffs in advance of defendants' plan ..." (First Am. Compl. ¶ 45.) Read in the context of plaintiffs' other allegations, which clearly allege that defendants failed to notify plaintiffs, this sentence can only be understood to be a typographical error. Defendants did not make any argument as to this point at oral argument and, for purposes of this motion, the Court assumes that plaintiffs intended the sentence to read "willfully and knowingly *failed to notify* plaintiffs."

*3 The Court has subject matter jurisdiction over this matter pursuant to <u>28 U.S.C. § 1332</u>. Defendants now move for dismissal, with prejudice, of each of plaintiffs' counts. Short of full dismissal, defendants insist that plaintiff Waterford LP and plaintiff USLR should be dismissed, that plaintiffs' fraud counts must be amended to plead fraud with particularity, that Waterford LLC should be dismissed pending service of process and that plaintiffs' CFA claim must be dismissed for failure to state a claim.

**LEGAL STANDARD**

On a motion to dismiss pursuant to <u>Fed.R.Civ.P. 12(b)(6)</u>, a court is required to accept as true all allegations in the complaint and draw all reasonable inferences in the light most favorable to the non-moving party. *See* <u>Umland v. Planco Fin. Servs., 542 F.3d 59, 64 (3d Cir.2008)</u>; *see also* <u>Phillips v. County of Allegheny, 515 F.3d 224, 232-33 (3d Cir.2008)</u>.

A complaint will survive a motion under <u>Rule</u> <u>12(b)(6)</u> if it states plausible grounds for plaintiff's entitlement to the relief sought. *See* <u>Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965, 1968-69, 167 L.Ed.2d 929 (2007)</u> (abrogating *Conley v. Gibson,* <u>355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)</u> which held that a "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief") (emphasis added). A plaintiff's obligation to provide the grounds for its "entitlement to relief" requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp., 127 S.Ct. at 1964-65</u>. In other words, the complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level ." <u>Id. at 1965.</u> "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." <u>Id. at 1981</u> (quoting *Scheuer v. Rhodes,* <u>416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)</u>). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* --- U.S. ----, ----, <u>129 S.Ct. 1937, 1949, 173 L.Ed.2d 868, 2009 WL 1361536 (2009)</u>.

While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See* <u>id. at 1949-50</u>. Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. See <u>Fed.R.Civ.P. 8(a)(2)</u>; <u>Twombly, 550 U.S. at 555</u>.

The Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. *See* <u>Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir.2003)</u>; *see also* <u>5B Wright & Miller, Federal Practice & Procedure § 1357 (2009)</u>. "A 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.' " *Mele v. Federal Reserve Bank,* <u>359 F.3d 251, 255 n. 5 (3d Cir.2004)</u>

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Not Reported in F.Supp.2d, 2009 WL 2488316 (D.N.J.)
(Cite as: 2009 WL 2488316 (D.N.J.))

(quoting *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1220 (1st Cir.1996)). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997).

## ANALYSIS

### *1. Dismissal of Waterford LP*

*4 On the basis of a good standing certificate from the State of New Jersey, defendants claim that Waterford LP was dissolved on September 30, 1997 and, therefore, it is legally impossible for Waterford LLC to have been its general partner during the operative years. (*See* Defs.' Supp. 8-9.) Moreover, defendants posit that plaintiffs fail to allege that Waterford LLC authorized Waterford LP to hire plaintiffs' counsel, (*See* Def.'s Supp. 9.), and also fail to plead that Waterford LLC authorized suit by Waterford LP against defendants (*See id.*)

Plaintiffs respond that consideration of the certificate submitted by defendants is improper on a Rule 12(b)(6) motion. (*See* Pls.' Opp'n 8-9.) According to plaintiffs, the Court should consider only the pleadings, documents attached to the pleadings, exhibits to the pleadings and matters of judicial notice. (Pls.' Opp'n 8.) Plaintiffs insist that whether Waterford LP exists is a factual question more properly dealt with in discovery. (Pls.' Opp'n 9.)

### a. *Standard*

Generally, if "matters outside the pleadings are presented to and not excluded by the court" a motion to dismiss must be treated as a motion for summary judgment. Fed.R.Civ.P. 12(d); *see also In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir.1999); *Garlanger v. Verbeke,* 223 F.Supp.2d 596, 606 n. 4 (D.N.J.2002). There are several narrow exceptions to this general rule. *See In re Rockefeller Ctr.* at 287. A court may consider documents "integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory,* 114 F.3d at 1426, or "undisputedly authentic documents [ ] if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993). The rationale behind these exceptions is that the primary problem created by review of documents outside of the pleadings, a

lack of notice to the plaintiff, is not present where a plaintiff has actual notice of the document and relied upon it in its pleadings. *See In re Burlington Coat Factory,* 114 F.3d at 1426.

### b. *Discussion*

This case is distinguishable from *In re Burlington Coat Factory,* where the Third Circuit affirmed a district court's consideration of an annual report because the complaint referred to data in the annual report without citation. *See id.* Although plaintiffs' claim here is not based on the document in question, defendants do rely on an "undisputedly authentic document." *See Pension Benefit Guar. Corp.,* 998 F.2d at 1196. Plaintiffs do not contest the authenticity of the certificate and the certificate bears similarity to the other types of documents that courts have properly reviewed in support of a motion to dismiss. *See id.* at 1197 (public records, including criminal case dispositions, letters of decision by government agencies, and published reports of administrative bodies, may be considered). Unlike the documents deemed not to be public records for purposes of a motion to dismiss in *Pension Benefit Guar. Corp.,* the certificate was not subject to any access restrictions. *See id.* at 1197.

*5 Based on the good standing certificate, Waterford LP was cancelled in 1997. (*See* Certification of Robert E. Bartkus, Esq. (Dkt. Entry No. 7-2, filed Jan. 27, 2009).) A nonexistent plaintiff does not have standing to sue. *See Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co.,* 59 F.Supp.2d 398, 401 (D.N.J.1999) (quoting *St. John Baptist Greek Catholic Church v. Gengor,* 118 N.J.Eq. 467, 473, 180 A. 379 (1935) (a "corporation must qualify as 'either de jure or de facto or it has no legal capacity to sue or be sued.' ") Waterford LP is dismissed without prejudice. The Court grants plaintiffs leave to amend to plead the status of plaintiff Waterford LP.

### *2. Dismissal of USLR*

Defendants argue that defendant USLR should also be dismissed for lack of standing, (Def.'s Supp. 10 n. 2.), and plaintiffs do not respond to this argument. If the Court finds that USLR satisfies the requirements for standing generally, defendants argue that USLR lacks standing for Count 6, alleging breach of fiduciary duty and Count 7, alleging waste, because plaintiffs have conceded that Berger, as the partner in Waterford LP, is the only party asserting

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2488316 (D.N.J.)
**(Cite as: 2009 WL 2488316 (D.N.J.))**

these claims. (*See* Pls.' Opp'n 23.)

a. *Standard*

"Article III of the Constitution restricts the judicial power of the United States to the resolution of cases and controversies." *Taliaferro v. Darby Twp. Zoning Bd.,* 458 F.3d 181, 188 (3d Cir.2006) (internal quotations omitted). A litigant must satisfy the elements of standing or a federal court does not have subject matter jurisdiction over the litigants claims and they must be dismissed. *See id.*

The three elements of standing are

"(1) the plaintiff must have suffered an injury in factan invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Id.* (quoting *United States v. Hays,* 515 U.S. 737, 742-43, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995)).

b. *Discussion*

Plaintiffs pleadings as to USLR are opaque. Although, plaintiffs assert that USLR formed Waterford LP, (*See* First Am. Compl. ¶ 16.), and contributed $1,500,000 in cash to permit Waterford LP to purchase the Property, (*See* First Am. Compl. ¶ 19.), plaintiffs then resort to the general term "Plaintiffs" in other allegations. The pleadings do not identify USLR, separate from the other plaintiffs, as having independently been either the subject or object of the other allegations. This imprecision makes it difficult for the defendants, as well as the Court, to disentangle the substance of plaintiffs' allegations. However, accepting all of plaintiffs' allegations as true and drawing all reasonable inferences in the light most favorable to the non-moving party, *see Umland,* 542 F.3d at 64, plaintiffs' complaint alleges that USLR contributed funds used to purchase the Property in reliance upon defendants' assurances that they would not disturb plaintiffs' interests and, as a result, USLR suffered damages caused by defendants' renegotiation of the lease and sale of the Property.

*6 These allegations are sufficient to support USLR's standing with regard to plaintiffs' claims for fraud (Count 1), breach of contract (Count 2), unjust enrichment (Count 3), breach of implied duty of good faith and fair dealing (Count 4), conversion (Count 5) and the New Jersey CFA (Count 8). Plaintiffs have alleged that USLR was injured by reason of defendants' misrepresentations and such injury could be redressed by judgment in USLR's favor. Plaintiffs do not, however, allege that USLR is an equity owner of Waterford LP, (*See* First Am. Compl. ¶ 4.) To the extent that any of plaintiffs' counts depend on a partnership relationship, such counts must be dismissed as to USLR. Count 6 alleges a breach of fiduciary duty owed by defendants to plaintiffs "[b]y reason of the partnership relationship and business dealings between Plaintiffs and Defendants." (*See id.* ¶ 48, p. 10.) Plaintiffs conceded in opposition that this claim is "based [on] a partnership relationship." (Pls.' Reply ¶ 23.) As such, Count 6 is dismissed as to USLR. For the same reasons as apply to Count 6, Count 7, which alleges that defendants "wasted the only asset of Waterford LP to the detriment of [p]laintiffs," is dismissed as to USLR.

*3. Fraud*

a. *Standard*

Rule 9(b) requires that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). "The purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which defendants are charged" in order to give them an opportunity to respond meaningfully to a complaint, "and to prevent false or unsubstantiated charges." *Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 658 (3d Cir.1998). To satisfy Rule 9(b), a plaintiff must "plead with particularity the 'circumstances' of the alleged fraud." *Rolo,* 155 F.3d at 658. Rule 9(b) "requires plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.' " *In re Advanta Corp. Sec. Litig.,* 180 F.3d 525, 534 (3d Cir.1999) (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990)). Plaintiffs need not, however, plead the 'date, place or time' of the fraud, so long as they use an 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.' " *Rolo,* 155 F.3d at 658 (quoting *Seville Indus. Machinery v. South-*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2488316 (D.N.J.)
**(Cite as: 2009 WL 2488316 (D.N.J.))**

_most Machinery,_ 742 F.2d 786, 791 (3d Cir.1984)). The Third Circuit has cautioned that courts should "apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." _Rolo,_ 155 F.3d at 658 (citing _Christidis v. First Pennsylvania Mortgage Trust,_ 717 F.2d 96, 99 (3d Cir.1983)).

The elements of fraud under New Jersey law are proof that the defendant made (1) a material misrepresentation of present or past fact; (2) with knowledge of its falsity; (3) with the intention that the other party rely thereon; and (4) which resulted in reasonable reliance by plaintiff. _See Jewish Ctr. of Sussex County v. Whale,_ 86 N.J. 619, 432 A.2d 521, 524 (N.J.1981). Defendants take issue with plaintiffs' pleadings as to all four of these prongs.

*7 Defendants first argue that there is no allegation of a specific misrepresentation made by defendants at a specific time. (Def.'s Supp. 12.) According to defendants, plaintiff cannot assert fraud based on assertions made at the time of contract and, even if a fraud claim did survive, the statute of limitations would apply. (_Id._ 12-13, 432 A.2d 521.) Defendants add that plaintiffs' allegations that defendants may have later changed their mind fails because there is no "fraud in the performance" of a contract. Moreover, according to defendants, once plaintiffs defaulted, it was not fraud for the defendants to refuse to perform. (_Id._ 13, 432 A.2d 521.)

Defendants find further fault with plaintiffs failure to particularize aspects of the fraud that they assert should be within Mr. Berger's knowledge. According to defendants, plaintiffs failed to disclose: (i) the initial period within which to unwind the transaction; (ii) when the assurances took place; (iii) what form they took; and (iv) how long the forbearance was. (Defs.' Reply 6 (citing Pls.' Opp'n 2).) According to defendants, the lack of particularity is an attempt to avoid the implausibility of plaintiffs' claim that defendants agreed not to take action even if plaintiffs failed to repay the principal, an implausibility that arises, according to defendants, because the entire structure was set up to avoid the necessity of instituting a foreclosure proceeding. (_See_ Defs.' Supp. 1.)

Defendants also claim that the pleadings are too generalized as to plaintiffs' reliance on the purported representations. (_See_ Defs.' Supp. 13-14.) Specifically, defendants insist that it is not enough for plaintiffs to assert only that they failed to repay the loan in reliance on defendants' assurances without also alleging that they could have repaid the loan. (_See id._) Defendants entreat that the purposes of Rule 9(b) would be served by dismissal, not only because plaintiffs have failed to place defendants on notice of the precise misconduct with which they are charged but also because Rule 9(b) serves to safeguard defendants against spurious charges of immoral or fraudulent behavior. (_See id._ at 14, 432 A.2d 521.)

Plaintiffs resist these arguments by highlighting their allegations that defendant Aeder and other defendants promised, both at the time of contract and in the years after the loan, that as long as they received a 17% return they would not jeopardize plaintiffs' interest in the property and, further, that if the principal was repaid they would return the partnership interest. According to plaintiffs, specific dates and times are not required by Rule 9(b), and, in any event, plaintiffs identified the times that the misrepresentations occurred. (Pls.' Opp'n 10-11 (citing First Am. Compl. ¶¶ 27, 28, 29 & 30).) With regard to intent and knowledge, plaintiffs argue that allegations dealing with the state of mind or knowledge of the defendants may be generally averred and ask that the court be sensitive to the reality that facts necessary to prove this element are obviously within the defendant's control. (_See_ Pls.' Opp'n 12.) But even with this consideration, plaintiffs assert their pleadings allow a reasonable inference, from the fact that defendants both renegotiated the lease and sold the Property without notice to plaintiffs, that defendants knew the alleged misrepresentations were false when made and intended that plaintiffs would rely on the truth of such assurances. (_See id._) Additionally, even if such assurances may have been true at some point, plaintiffs allege that they had ceased to be true at a later point and defendants failed to correct plaintiffs mistaken impression. Plaintiffs reiterate that it is reasonable to infer from the secrecy of the transactions that defendants knew the representations were false. (_See id._ at 12-13, 432 A.2d 521.) In resistance to defendant's arguments as to reliance, plaintiffs assert anew that the representations were important to plaintiffs not only in initially entering the transaction but also in failing to take action to protect their interest later. (_See id._ at 13, 432 A.2d 521 (citing First Am. Compl. ¶ 31).)

Not Reported in F.Supp.2d, 2009 WL 2488316 (D.N.J.)
**(Cite as: 2009 WL 2488316 (D.N.J.))**

#### b. *Discussion*

**\*8** Plaintiffs make two basic fraud claims: First, that Aeder and other defendants, which he allegedly controlled, at the time of contract misrepresented that as long as they received the 17% return defendants would not jeopardize plaintiffs' interest in the property and that if the principal was repaid Aeder would return the partnership interest and, second, that defendants made similar assertions at the unwind date. (*See* First Am. Compl. ¶ 27, 28, 29 & 30.)

Plaintiffs first claim fails under Rule 12(b)(6) because there is no fraud in the performance of a contract absent a showing that "at the time the promise to perform was made, the promisor did not intend to fulfill the promise." *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1186 (3d Cir.1993). Moreover, fraud can only be "extrinsic" to the contract terms. *See Bracco Diagnostics, Inc. v. Bergen Brunswick Drug Co.,* 226 F.Supp.2d 557, 564 (D.N.J.2002). So, if the parties agreed at the original time of contract that defendants would not do anything to disturb plaintiffs' interest in the Property, any claim by plaintiff relating to such promise should be grounded in breach of contract not fraud. Plaintiffs fraud claim would have to allege that defendants made misrepresentations as to a matter distinct from the contractual agreement.

It is implausible not only that defendants would even make such an assurance, but also that plaintiffs could reasonably rely upon it. Plaintiffs allege that the parties structured the transaction to allow defendants to "foreclose" on the financing without the necessity of a formal foreclosure proceeding. (First Am. Compl. ¶ 25.) This conflicts with plaintiffs' allegation that defendants simultaneously represented that they would not exercise those rights in the event that plaintiffs failed to unwind the transaction.[FN5] Moreover, the structure of the transaction undermines plaintiffs' reasonable reliance on any such representation. How could plaintiffs believe that defendants would take no action if the parties had gone to such lengths to avoid a formal foreclosure proceeding? No amendment to the allegations can cure this incongruity.

FN5. As noted earlier, plaintiffs' initial complaint alleged "[t]he original agreement between the parties was that the second mortgage financing was for a period of three years. Thus, plaintiffs were to pay off the second mortgage loan in or about the year 2000." (Pls.' Compl. ¶ 17.) Plaintiffs removed this allegation from their First Amended Complaint but, as defendants note, this is a party admission. *See Johnson v. Goldstein,* 864 F.Supp. 490, 493 (E.D.Pa.1994) (citing Federal Rule of Evidence 801(d)).

Plaintiffs' second claim, however, might survive a motion to dismiss if plaintiffs provide increased specificity as to the identity of the parties and nature of the assurances. Unlike any promises of forbearance made at the time of contract, it is plausible that defendants might have assured plaintiffs at the unwind date that they did not have to pay off the principal balance of the loan so long as they continued to make interest payments. Specific dates and times are not required by Rule 9(b), *see Seville Indus. Machinery Corp.* 742 F.2d at 791, and plaintiffs are not required to plead the exact phrases that were used or the exact dates on which they occurred, so long as they use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Rolo,* 155 F.3d at 658 (internal citations omitted). Although plaintiffs have failed to specify the exact dates that misrepresentations were made and the exact form they took, plaintiffs have been precise about the nature of the misrepresentations and the dates they occurred relative to other milestones in the transactions, (*See* First Am. Compl. ¶¶ 27-30 (alleging that defendants promised not to act against plaintiffs' interest in the Property both at the original time of contract, as well as at the Unwind Date).), and thereby injected sufficient precision. *See Rolo,* 155 F.3d at 658.

**\*9** With regard to intent, allegations that deal with the state of mind or knowledge of the defendants may be generally averred. *See* Fed.R.Civ.P. 9(b). The court must be sensitive to the reality that facts necessary to prove this element are obviously within the defendants' control. *See Shapiro v. UJB Fin. Corp.,* 964 F.2d 272, 284 (3d Cir.1992). As plaintiffs argue, the Court can reasonably infer from the fact that defendants renegotiated the lease and sold the property, in both cases without notice to plaintiffs, that defendants knew the representations were false. (Pls.' Opp'n 12.)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2488316 (D.N.J.)
**(Cite as: 2009 WL 2488316 (D.N.J.))**

Whether plaintiffs have adequately pleaded reliance is a closer call. Defendants argue that it is not enough to say that plaintiffs simply did not repay the loan without saying they could have repaid the loan. (Def.'s Supp. 13-14.) Plaintiffs respond only that the representations were important to plaintiffs in entering the transactions. (Pls.' Opp'n 13.) At the unwind date plaintiffs' reliance was only that they did nothing to protect their interest. Although plaintiffs do not plead reliance in detail, it is reasonable to infer, based on plaintiffs' allegations that the fair market value of the property exceeded the amount owed to defendants, that plaintiffs could have taken action to protect their interests by selling the Property at this fair market value to a third party and, in turn, paying off the second mortgage financing.

In sum, plaintiffs' claims of fraud arising at the original time of contract are dismissed with prejudice both because such claims are implausible and there can be no fraud in the performance of a contract. With regard to the Unwind Date, plaintiffs have satisfied Rule 9(b) about alleged representations made by defendants then. However plaintiffs have failed to be sufficiently specific as to which defendants made these assurances. Plaintiffs must plead the "who" of "who, what, when, where and how" to satisfy Rule 9(b). *See In re Advanta Corp. Sec. Lit.,* 180 F.3d at 534. Plaintiffs' fraud claim based on alleged representations at the Unwind Date is dismissed without prejudice with leave to amend.

*4. Breach of Contract*
Defendants argue that plaintiffs' allegations as to breach of contract are not sufficiently "plausible," (*See* Defs.' Supp. 11.), both because plaintiffs defaulted on their obligation to unwind the second mortgage agreement, (*See* Defs.' Supp. 12.), and because sophisticated parties would not agree to such an open-ended commitment as plaintiffs allege without regard to "business conditions, tenant's intentions and the like." (*Id.*)

Plaintiffs concede that they make two contract claims. First, plaintiffs allege an agreement by defendants not to harm plaintiffs' interest in the Property so long as defendants were paid 17% interest, breached, first, when defendants secretly renegotiated the lease, with damages due to the reduction in rental income and, second, when defendants sold the property at

below market value without plaintiffs' knowledge, with damages equal to the loss of the Property as well as dissipation of its value. (*See* Pls.' Opp'n 17-18.) Second, plaintiffs claim, in their opposition brief but not in either complaint, that the transaction was an equitable mortgage, which defendants breached by failing to afford plaintiffs a right of redemption. (*See id.* at 18.)

\*10 Defendants assail the alleged promise at the Unwind Date as just as implausible because defendants would not have agreed to forbearance of the mortgage loan without additional consideration, (*See* Defs.' Supp. 16.), fault plaintiffs for failing to allege what recourse defendants would have if plaintiffs defaulted and predict that, if an agreement to forbear was oral, it would be barred by the statute of frauds. (*See* Defs.' Supp. 16.) Defendants add that plaintiffs' assertion that defendants only valued the property up to the outstanding principal balance is illogical because defendants held a 99% interest in the entity which owned the Property. Plaintiffs insist that this interest gave them an incentive to maximize the sale value of the Property. Finally, defendants challenge plaintiffs' purported right to redemption, not only because the partnership agreement gave defendants the right to sell without a foreclosure action, (*see id.* ¶¶ 25-26.), but also because such claim was not pleaded. In any event, defendants argue that New Jersey does not provide a right of foreclosure under these circumstances. (*See* Defs.' Supp. 17.)

*a. **Standard***
To state a claim for breach of contract, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot,* 507 F.3d 188, 203 (3d Cir.2007) (citing *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.,* 210 F.Supp.2d 552, 561 (D.N.J.2002)).

*b. **Discussion***
The Court can glean three potential contracts arising from plaintiffs' pleadings: (1) the original second mortgage agreement; (2) the original second mortgage agreement as modified by the equitable mortgage law of New Jersey; and (3) an oral agreement under which plaintiffs agreed to continue to make interest payments and defendants agreed not to take any action to disturb plaintiffs' interests in the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2488316 (D.N.J.)
(Cite as: 2009 WL 2488316 (D.N.J.))

Property. Although plaintiffs attempt to characterize the original second mortgage agreement as an agreement "not to take any action to deprive plaintiffs of the Property so long as [d]efendants were paid 17% interest," as discussed earlier, this agreement is implausible.

As to the second, although plaintiffs did plead breach of contract, they did not specifically plead the right of redemption. However, under New Jersey law, plaintiffs have a colorable argument that the right of redemption was incorporated into the financing agreement. It is a long-standing rule of property that any agreement which cuts off or surrenders a mortgagor's right to redeem is void and unenforceable as against public policy.[FN6] See *Humble Oil & Refining Co. v. Doerr,* 123 N.J.Super. 530, 544, 303 A.2d 898 (1973). This rule applies not simply to traditional mortgage structures but to all transactions where the parties intend that real property be the security for the transaction. See *Rutherford National Bank v. H.R. Bogle & Co.,* 114 N.J.Eq. 571, 574, 169 A. 180 (Ch.1933).

> FN6. Defendants' conclusion that *Humble Oil* would make the entire mortgage agreement null and void is incorrect. If the equitable mortgage theory applies, any provisions of the agreement which clogged the right of redemption would be void but the entire contract would not. See, e.g. *Humble Oil,* 123 N.J.Super. 530, 303 A.2d 898 (concluding that an option which clogged the right of redemption was invalid without disturbing the other terms of a sale leaseback transaction).

*11 In any event, the Court need not address these issues unless and until plaintiffs file an amended complaint properly pleading these claims. A court may grant a party leave to amend its pleadings pursuant to Rule 15(a)(1) and should freely give leave when justice so requires. See Fed.R.Civ.P. 15(a)(1). Given the early stage of this matter, it is appropriate to grant plaintiffs the opportunity to plead their equitable mortgage theory.

As to the third, plaintiffs have failed to state a claim. Plaintiffs allege that, in return for plaintiffs' agreement to continue to make interest payments on the second mortgage loan, defendants agreed not to

take any action adverse to plaintiffs' interest in the property, (See First Am. Compl. ¶ 27.), that despite receiving such interest, (See id. ¶ 34, 169 A. 180.), defendants renegotiated a lease on a portion of the Property and sold the property, (See id. ¶¶ 35-43, 169 A. 180.), that plaintiffs were thereby damaged because the new rent was lower and, consequently, the value of the property was diminished, (See id. ¶ 41, 169 A. 180), and the Property sold for less than fair market value. (See id. ¶ 43, 169 A. 180.)

In order for a contract to be valid, it must be supported by adequate consideration. See Restatement (Second) of Contracts § 17(1) (1981). Consideration requires a bargained-for performance or return promise. See id. § 71. "[N]either the performance of duty nor the promise to render a performance already required by duty is a consideration for a return promise," because such promises are pre-existing duties. 2 Arthur L. Corbin, *Corbin on Contracts* § 7.1 (Joseph Perillo ed., Matthew Bender & Co. Inc.2009). Plaintiffs' pleadings are insufficient to resist a motion to dismiss because they fail to allege what consideration was provided for this purported agreement.

The Court of Chancery held in 1853 that consideration is lacking when a borrower promises to continue to pay interest on a mortgage loan for an unfixed period of time in exchange for the lender's promise not to demand payment of the principal on its original due date. See *Massaker v. Mackerley,* 9 N.J.Eq. 440, 444 (Ch. 1853). The *Massaker* lender told the borrower "that he did not wish him to pay any more of the principal when ... [it] became due; that all the ... [lender] wanted was his interest." *Id.* When the lender later failed to give the borrower notice before demanding payment of the principal, the court found that the borrower's promise to continue to pay interest that he already owed "amount[ed] to nothing," and refused to enforce the agreement for forbearance of the principal payment for lack of consideration. *Id.*

Other courts have found that somewhat similar transactions were supported by valid consideration. "[A]n agreement between debtor and creditor, extending for a *fixed* time an interest-bearing debt, is a valid contract, in that the promise of a creditor to forbear collection and the surrender by the debtor of his right to stop accrual of interest by payment of the

Not Reported in F.Supp.2d, 2009 WL 2488316 (D.N.J.)
(Cite as: 2009 WL 2488316 (D.N.J.))

principal constitute sufficient consideration[ ] ...”
*Burack v. Mayers,* 121 N.J. Eq. 135, 187 A. 767, 769
(1936) (emphasis added); *see also Massey v. Del-
Valley Corp.,* 46 N.J.Super. 400, 134 A.2d 802, 805
(App.Div.1957) (dictum) (“[T]he debtor's surrender
of his technical right to pay off the principal of the
debt and thus stop the accrual of interest thereon,
gives rise to a good consideration.”); 3 *Williston on
Contracts* § 7.28 (Thomson Reuters/West 4th ed.
2009) (“When a debtor and a creditor agree that an
interest bearing debt shall be extended for a fixed
time, the promise of each is consideration for the
promise of the other.”); 29 Myron C. Weinstein, *Law
of Mortgages* § 4.9 in N.J. Practice Series (Thomson
Reuters/West 2d ed.2008) (2001) (noting that the
consideration requirement rarely causes difficulty in
enforcing promise to extend time for payment).
Whether the term is relevant because it indi-
cates that the lender received a benefit. That the
lender's benefit is the primary question is suggested
by a decision of the Court of Chancery in a similar
situation, holding that a “[lender's] promise to extend
a mortgage [to the borrower in return for an agree-
ment to take on an additional investor] rested upon a
good consideration,” and the contract was enforce-
able because as part of the extension the borrower
had agreed to take on a new investor and the lender
benefitted from additional security of its borrower's
increased capitalization. *See Hauser v. Capital City
Brewing Co.,* 57 A. 722, 724 (Ch.1904).

*12 The respective outcomes of *Massaker* and
*Burack* hinge on whether the extension was for a
fixed period of time in part because where the agree-
ment is alleged to have been for a fixed period, the
lender receives the benefit of the borrower's promise
to pay interest for such fixed period. This case is
more similar to *Massaker,* where the borrower con-
tinued to pay interest for an unfixed period of time,
than it is to *Burack,* where the alleged agreement was
not open-ended. In the present case, the plaintiffs
have not alleged that the defendants' extension of
interest payments was for a fixed period of time. As
in *Massaker,* the agreement was without considera-
tion and the promise not to jeopardize plaintiffs' in-
terest is unenforceable. Moreover, unlike *Hauser,*
defendants did not benefit from the purported prom-
ise. *See Hauser,* 57 A. at 724. Plaintiffs have failed to
allege that the purported agreement made at the Un-
wind Date contract was supported by valid considera-
tion and such claim must be dismissed. Because the
Court has concluded that plaintiffs' contract claim

must be dismissed it need not address defendants'
statute of frauds argument. Plaintiffs' contract claims
as alleged are dismissed without prejudice, with leave
to amend its claim only to the extent that plaintiffs
assert an equitable mortgage theory.

*5. Unjust Enrichment*
    According to defendants, plaintiffs unjust en-
richment claim is speculative because they admit
their default under the original agreement and do not
allege that they gave anything to defendants. Defen-
dants argue that, because no benefit was conveyed
upon them, no unjust enrichment claim can survive.
(Defs.' Supp. 20-21.) An unjust enrichment plaintiff,
defendants reiterate, must allege that a defendant was
enriched beyond its contractual rights. (*Id.* at 21.)

    Plaintiffs see such benefit in the $1.8 million in
equity, allegedly contributed for acquisition of the
Property, that defendants allegedly retained after sale
of the Property and satisfaction of the outstanding
principal balance. (*See* Pls.' Opp'n 19.)

*a. Standard*
    “To establish unjust enrichment, a plaintiff must
show both that defendant received a benefit and that
retention of that benefit without payment would be
unjust.” *Premier Pork L.L.C. v. Westin, Inc.,* No. 07-
1661, 2008 U.S. Dist. LEXIS 20532, at *40-41, 2008
WL 724352 (D.N.J. Mar. 17, 2008) (internal citations
omitted). “The unjust enrichment doctrine requires
that plaintiff show that it expected remuneration from
the defendant at the time it performed or conferred a
benefit on defendant and that the failure of remunera-
tion enriched defendant beyond its contractual
rights.” *VRG Corp. v. GKN Realty Corp.,* 135 N.J.
539, 554, 641 A.2d 519 (1994).

    Consequently, liability for unjust enrichment is
not appropriate where “an express contract exists
concerning the identical subject matter.” *Premier
Pork* at *41. “Although litigants may plead alterna-
tive and inconsistent claims [ ], courts have on nu-
merous occasions dismissed under Rule 12(b)(6) un-
just enrichment claims that relate to the same subject
matter as valid contracts.” *Premier Pork,* 2008 U.S.
Dist. LEXIS 20532, at *42, 2008 WL 724352 (citing
*Estate of Gleiberman v. Hartford Life Ins. Co.,* 94
Fed. Appx. 944, 947 (3d Cir.2004); *Royale Luau Re-
sort v. Kennedy Funding,* Civil No. 07-1342, 2008
U.S. Dist. LEXIS 11902, at *30-31, 2008 WL

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2488316 (D.N.J.)
(Cite as: 2009 WL 2488316 (D.N.J.))

482327 (D.N.J. Feb. 19, 2008); *Kohn v. Haymount Ltd. P'ship, LP (In re Int'l Benefits Group, Inc.,* Civil No. 06-2363, 2007 U.S. Dist. LEXIS 46889, at *11, 2007 WL 1875926 (D.N.J. June 28, 2007); *Oswell v. Morgan Stanley Dean Witter & Co.,* Civil No. 06-5814, 2007 U.S. Dist. LEXIS 44315, at *29-30, 2007 WL 1756027 (D.N.J. June 18, 2007)).

**b. *Discussion***

*\*13** Count 3 alleges that "[p]laintiffs have provided value to the [d]efendants," (First Am. Compl. ¶ 59.), "defendants have failed to pay plaintiff for the value received," (*Id.* ¶ 60.), and "retention of that value without payment for it would be unjust." (*Id.* ¶ 61.)

Because plaintiffs allege that a contract governed the arrangement, (*Id.* ¶¶ 22-28.), they cannot maintain an unjust enrichment claim. *See Premier Pork* at *42. As defendants aptly point out, the $1.8 million was paid in return for a 1% equity interest and, upon sale of the Property, the plaintiffs received 1% of the proceeds. So plaintiffs received remuneration for the benefits they conferred, in the form of equity in the partnership as well as their pro rata share of the proceeds from sale. If plaintiffs have a claim for the excess proceeds, that claim is properly grounded in contract. Count 3 is dismissed with prejudice.

**6. *Breach of Good Faith and Fair Dealing***

Defendants argue that plaintiffs claim for breach of good faith and fair dealing is speculative because plaintiffs have not alleged any "bad faith, or untoward commercial practices, or that [d]efendants undertook any actions 'without any legitimate purpose,' with the unlawful intent to deprive [p]laintiffs of the benefit of any bargain or contract." (Defs.' Supp. 21-22.) Plaintiffs rejoin that the duty of good faith and fair dealing requires that neither party do anything that would deprive either party of the benefit of their bargain. (*See* Pls.' Opp'n 21.) According to plaintiffs, they bargained for the forbearance and equity of redemption and defendants breached their duty by renegotiating the lease and selling the property. (*See id.*)

**a. *Standard***

"A plaintiff may be entitled to relief under the covenant [of good faith and fair dealing] if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose." *DiCarlo v. St. Mary's Hospital,* 2006 U.S. Dist. LEXIS 49000. *21, 2006 WL 2038498 (D.N.J. July 19, 2006)* (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.,* 182 N.J. 210, 226, 864 A.2d 387 (2005)). A "defendant may be liable for a breach of the covenant of good faith and fair dealing even if it does not violate an express term of a contract." *Id.* For example, the covenant can be violated when a party to a contract withholds critical information from its contractual counterpart. *See Bak-A-Lum Corp. v. Alcoa Building Prods.,* 69 N.J. 123, 126-27, 129-30, 351 A.2d 349 (1976) (defendant's withholding of intention to terminate at will contract, while knowing that plaintiff was relying upon renewal of said contract could violate covenant).

**b. *Discussion***

Even if plaintiffs had not pleaded that defendants had assured them they would not do anything to affect plaintiffs' interest in the Property, its other pleadings could color a violation of the covenant of good faith and fair dealing. That plaintiffs did plead such assurances only further bolsters their claim.

*\*14** To avoid dismissal plaintiffs need only set forth sufficient information to permit reasonable inferences that the elements of the cause of action exist. *See Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (2d ed.1990)). Plaintiffs have alleged that they continued to make interest payments to defendants after the Unwind Date. (*See* First Am. Compl ¶ 34.) Based on plaintiffs' continued payments, it is reasonable to infer that defendants knew that plaintiffs did not anticipate the renegotiation of the lease or sale of the property and reasonable to infer, based on the secret renegotiation and sale, that defendants proceeded without notice to plaintiffs for just that reason. That these actions were done without notice, (*See id.* ¶¶ 38, 43.), also bolsters an inference that defendants acted with ill motive.

In *Bak-A-Lum,* a manufacturer withheld from its exclusive distributor its plan to terminate an exclusive distribution arrangement, despite the manufacturer's knowledge that the distributor was entering a lease in reliance on the continued exclusivity. *See Bak-A-Lum,* 69 N.J. at 128, 351 A.2d 349. The *Bak-A-Lum* court concluded that, although the manufac-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2488316 (D.N.J.)
(Cite as: 2009 WL 2488316 (D.N.J.))

turer fulfilled its contractual obligations it breached the duty of good faith and fair dealing because it withheld critical information from its contractual counterpart. *See id.* at 126-27, 129-30, 351 A.2d 349. Here, as in *Bak-A-Lum,* plaintiffs have alleged that defendants, with knowledge of information critical to plaintiffs, acted against plaintiffs' interest. Even if defendants complied with the terms of the contract, as the *Bak-A-Lum* defendants did, they could still be liable under the covenant of good faith and fair dealing.

Defendants' motion to dismiss with regard to plaintiffs' breach of good faith and fair dealing claim is denied.

*7. Conversion*

Plaintiffs allege in Count 5 that "[d]efendants improperly and illegally converted property belonging to [p]laintiff," without disclosing what property plaintiffs are referring to.[FN7] (First Am. Compl. ¶ 44, p. 10.)

> FN7. Plaintiffs' First Am. Complaint contains two paragraphs numbered 44-57. (*See* First Am. Compl. ¶¶ 43-57, pp. 7-9; 43-57, pp. 10-11.) Where the Court refers to the latter set of paragraphs the citation includes the page number on which the paragraph appears.

a. **Standard**

The "[t]ort of conversion consists of the wrongful exercise of dominion and control over property owned by another in a manner inconsistent with the owner's rights." *Commercial Ins. Co. of Newark v. Apgar,* 111 N.J.Super. 108, 114-15, 267 A.2d 559 (Law Div.1970) (citing *McGlynn v. Schultz,* 90 N.J.Super. 505, 218 A.2d 408 (Ch.Div.1966), *aff'd* 95 N.J.Super. 412, 231 A.2d 386 (App.Div.1967), *cert. denied* 50 N.J. 409, 235 A.2d 901 (1967). Conversion requires that the defendant "assumed and exercised the right of ownership over [personal property] without permission." *Video Pipeline, Inc. v. Buena Vista,* 275 F.Supp.2d 543, 576 (D.N.J.2003).

b. **Discussion**

Defendants argue that the conversion claim should be dismissed because plaintiffs allege the parties agreed to transfer the partnership interests and have not alleged that defendants acted contrary to the

terms of this agreement. (Defs.' Reply 12.) Although plaintiffs assert in reply that the conversion was of the interests in the partnership that owned the Property, (*See* Pls.' Opp'n 22.), plaintiffs do not allege that defendants violated the terms of this partnership agreement. Plaintiffs allege only that defendants had promised not to exercise the rights associated with the partnership interests in such a way that would harm plaintiffs' interests in the property. Because defendants consented to the transfer of the partnership interests defendants did not exercise a right of ownership over the partnership interests without permission and plaintiffs cannot maintain a conversion claim. *See Video Pipeline,* 275 F.Supp.2d at 576 (defendant must have assumed and exercised right of ownership without permission). Count 5 is dismissed with prejudice.

*8. Breach of Fiduciary Duty*

*\*15* At Count 6 plaintiffs allege that defendants preferred their own interests over plaintiffs' and thereby "breached the fiduciary duty owed to [p]laintiffs, including but not limited to, obligations of loyalty, good faith, fair dealing, full disclosure and care." (First Am. Compl. ¶ 49, p. 10.)

a. **Standard**

"Each partner stands in a fiduciary relationship to every other partner." *Heller v. Hartz Mountain Indus.,* 270 N.J.Super. 143, 150, 636 A.2d 599 (Law Div.1993). "The relationship is one of trust and confidence, calling for the utmost good faith, permitting of no secret advantages or benefits." *Id.* at 151, 636 A.2d 599 (internal citations omitted). "[W]here a managing partner controls the partnership's business, that partner is held to the strictest possible obligation to his or her co-partner." *Id.* (internal citations omitted).

b. **Discussion**

"New Jersey does not find fiduciary duty in the debtor-creditor context," *DiCarlo, supra,* 2006 U.S. Dist. LEXIS 49000, at \*26, 2006 WL 2038498 so plaintiffs fiduciary duty claim depends upon the "partnership relationship." According to defendants, plaintiffs failed to allege the nature and name of the partnership the parties were in, the state in which the partnership was formed and whether there are general partners or limited partners, unless the partnership in question is Waterford LP, which plaintiffs assert was cancelled in 1997. According to plaintiffs, that the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.