|  |  |
|---|---|
| DARE INVESTMENTS, LLC, a Utah limited liability company, | **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY** |
| Plaintiff, | Civil Action No. 2:10-cv-06088-DRD-MAS |
| vs. | |
| CHICAGO TITLE INSURANCE COMPANY, a Missouri domiciled insurer; HORIZON TITLE AGENCY, Inc., a New Jersey domiciled company; CHICAGO TITLE RICO ENTERPRISE, a racketeering enterprise, | **Honorable Dickinson R. Debevoise** |
| Defendants. | |

## BRIEF OF PLAINTIFF DARE INVESTMENTS IN OPPOSITION TO DEFENDANT CHICAGO TITLE INSURANCE COMPANY'S MOTION TO DISMISS
### AND
## IN SUPPORT OF ITS CROSS MOTION FOR SUMMARY JUDGMENT

**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Phone: 602-524-6602
Arizona Bar No. 6464
*Application Pro Hac Vice Pending*
Attorney for Plaintiff Dare Investments, LLC

Co-Counsel:
Christopher Humphreys, Esq.
Peter K. Strojnik, Esq. *pro hac vice* application pending

# INDEX

**Section**                                                                 **Page**

INDEX…………………………………………………………………….. …ii

TABLE OF AUTHORITIES…………………………………………… …v

**I. SUMMARY OF RESPONSE AND CROSS MOTION**………………... …1

**II. STATEMENT OF FACTS**…………………………………………….6

**III. POLICY ANALYSIS**……………………………………………….10

    1. INSURING CLAUSE COVERS THE LOSS OR DAMAGE SUSTAINED BY DARE
    INVESTMENTS………………………………………………….....10

    2. CHICAGO TITLE SPECIFICALLY ASSUMED COVERAGE OVER
    MOCCO/SCARPONE CLAIMS AND POSITIONS…………………………..10

    3. INTENTIONAL CAUSATION EXCLUSION DOES NOT EXCLUDE THE LOSS
    OR DAMAGE TO DARE INVESTMENTS FROM COVERAGE, NOR DOES IT
    APPLY TO DARE'S CLAIM……………………………………………..11

    4. ITEM 7 TO SCHEDULE B IS INCOMPREHENSIBLE AND DOES NOT APPLY…..15

    5. SPECIFIC WARRANTY OF THE AMOUNT DUE AND OWING ON THE
    SAYERVILLE MORTGAGE………………………………………………..17

**IV. ARGUMENT AND SUPPORTING LAW**……………………….....17

    1. RULE 12(B) (6) STANDARD………………………………………….17

    2. CONVERSION OF CHICAGO TITLE'S MOTION TO DISMISS TO ONE FOR
    SUMMARY JUDGMENT…………………………………………………..17

    3. CHICAGO TITLE BREACHED THE POLICY IN BAD FAITH…………………..18

        a. Chicago Title Breached the Express Terms of the Policy………….. ..18

b. Chicago Title Breached The Covenant Of Good Faith And Fair Dealing; Coverage Is Not "Fairly Debatable"……………………....…20

4. DARE HAD THE RIGHT TO RELY ON HORIZON TITLE'S AND CHICAGO TITLE'S REPRESENTATIONS…………………………………………....21

5. CHICAGO TITLE IS LIABLE TO DARE FOR ITS OWN FRAUD AND FOR THE FRAUD BY HORIZON TITLE'S FRAUD UNDER THE "IMPUTATION DOCTRINE"…………………………………………………….. ..24

6. DARE'S NEGLIGENCE CLAIMS ARE PROPERLY PLED……………….............26

7. DARE'S REFORMATION CLAIM IS PROPERLY PLED……………………..27

8. DARE'S FRAUD CLAIMS ARE PLED WITH REQUISITE PARTICULARITY……..28

9. DARE STATED A CLAIM UNDER THE NJCFA – INSURANCE BROKERS ARE OUTSIDE NJCFA WHILE THE INSURANCE COMPANIES ARE WITHIN THE NJCFA………………………………………………………… ..29

a. Insurers Are Covered by NJCFA………………………………………..29

b. Non-Payment of a Claim, Coupled with Fraud, Misrepresentation or Misleading, is covered by the NJCFA……………………….. ..32

c. Dare Did Not Extend a Hard Money Loan To Chicago Title**………** ..33

10. DARE PROPERLY PLED RICO CLAIMS…………………………………..33

a. There Is No Requirement Of "Exhaustion" Of State Remedies Before Bringing A RICO Suit…………………………………………33

b. Dare's RICO allegations Clearly Allege Chicago Title's Mail and Wire Fraud against Dare………………………………………..35

c. Dare Properly Alleged Chicago Title's Participation In the RICO Enterprise………………………………………………….... .36

d. RICO Statute of Limitations Has Not Run…………………………..37

11. CHICAGO TITLE RICO ENTERPRISE IS AN ENTITY CAPABLE OF BEING SUED…………………………………………………………………..38

**IV. CONCLUSION AND PRAYER FOR RELIEF**…………………….....39

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

Adron, Inc. v. Home Ins. Co., 292 N.J. Super. 463 (App. Div. 1996)………...18

American Savings and Loan Association v. Lawyers Title Insurance Corp.,
    793 F.2d 780 (6th Cir. 1986)……………………………………………….12, 14

Arizona Title Insurance & Trust Company v. Smith, 21 Ariz. App. 371, 519
    P. 2d 860 (1974)………………………………………………………….....15

Bankruptcy Estate of Richard v. Chicago Title Insurance Co., No. 09-1776
    (D.Minn. 2010)……………………………………………………….......15

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)…………………………17

Bier v. Walbaum, 102 N.J.L. 368 (E. & A. 1926)…………………………… ..10

Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292 (3d
    Cir. 1993)………………………………………………………........ ..23

Bonnieview Homeowners Association, LLC v. Woodmont Builders, L.L.C.,
    655 F.Supp.2d 473 (D.N.J. 2009)………………………………………..25

Brown's Tie & Lumber Co. v. Chicago Title Co. of Idaho, 764 P.2d 423
    (Idaho 1988)…………………………………………………………….27

Call v. Czaplicki, No. 09-6561 (D.N.J. 2010)…………………………….....5, 32

Channel Cos. v. Britton, 400 A.2d 1221 (N.J. Super. Ct. App. Div. 1979)…....29

Clark v. Prudential Insurance Company of America, No. 08-6197 (D.N.J.
    2010)…………………………………………………………………… ..38

Countryside Oil Co. v. Travelers Ins. Co., 928 F. Supp. 474 (D.N.J.
    1995)……………………………………………………………….... ..28

Cox. v. Sears Roebuck & Co., 647 A.2d 454 (1994)…………………………..29

Enright v. Farm Family Cas. Ins. Co., 2005 U.S. Dist. LEXIS 37544 (D.N.J. Dec. 29, 2005)………………………………………………………..20

Farris v. Farris Engineering Corp, et al., 81 A.2d 731(1951)…………..……... ..39

Feldman v. Urban Comm., Inc., 87 N.J. Super. 391(App. Div. 1965)…….…......12, 13

Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009)……………….......17

Gardner v. Rosecliff Realty Co., 41 N.J. Super. 1 (App. Div. 1956)………….25

Gaub v. Nassau Homes, Inc., 53 N.J. Super. 209, 223 (App. Div. 1958)……...11

Glickstein v. Sun Bank/Miami, N.A., 922 F.2d 666 (11th Cir. 1991)………....6, 34

Griggs v. Bertram, 88 N.J. 347 (N.J. 1982)…………………………………... ..23

Hansen v. Western Title Insurance Company, 220 Cal. App. 2d 531, 33 Cal. Rptr. 668 (1963)……………………………………………………….....15

Horvath v. Keystone Health Plan E., Inc., 333 F.3d 450 (3d Cir. 2003)…….. ..23

In re Rockefeller Ctr. Props. Secs. Litig., 311 F.3d 198 (3d Cir. 2002)…….... ..28

Keown v. West Jersey Title and Guaranty Co., 390 A.2d 715, 161 N.J.Super. 19 (N.J. App. Div. 1978)…………………………………………………...14

Ketzner v. John Hancock Mut. Life Ins. Co., 118 Fed. Appx. 594 (3d Cir. 2004)……………………………………………………………....… ..20

Lee v. First Union Nat'l Bank, 971 A.2d 1054 (N.J. 2009)……..……………...29

Lemelledo v. Beneficial Mgmt. Corp., 150 N.J. 255 (1997)…………………...31

Macedo v. Dello Russo, 840 A.2d 238 (N.J. 2004)…………………………... ..30

Martinez v. John Hancock Mut. Life Ins. Co., 145 N.J. Super. 301 (App. Div. 1976), certif. denied, 74 N.J. 253 (1977)……………………............. ..28

Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, Switzerland, 35 N.J. 1
    (1961)………………………………………………………………....…19

Millbrook Tax Fund, Inc. v. P.L. Henry & Assocs., 344 N.J. Super. 49 (App.
    Div. 2001)……………………………………………………………… ..27

NCP Litigation Trust v. KPMG LLP, 187 N.J. 353, 901 A.2d
    871(2006)………………………………………………………………..26

Neveroski v. Blair, 358 A.2d 473 (N.J. Super. A.D. 1976)………………….... ..31

New Jersey, Dancy v. Popp, 114 N.J. 570 (1989)………………………….…..27

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380 (3d Cir. 1994).. ..38

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008)…………………..17, 21

Pickett v. Lloyd's, 621 A.2d 445 (N.J. 1993)…………………………………….4, 20, 23

Plemmons v. Blue Chip Insurance Services, Inc., 387 N.J.Super 551, 904
    A.2d 825 (N.J. Super. App. 2006)…………………………………………... .30

President v. Jenkins, 180 N.J. 550 (2004)……………………………………….4

Rao v. Universal Underwriters Ins. Co., 228 N.J. Super. 396 (App. Div.
    1988)…………………………………………………………………… ..18

Real v. Radir Wheels, Inc., 969 A.2d 1069 (N.J. 2009)……………………….30

Reves v. Ernst & Young, 507 U.S. 170 (1993)…………………………………..36

Ricketts v. Pennsylvania R. Co., 153 F.2d 757 (2d Cir. 1946)……………….5, 25

S.T. Hudson Eng'rs, Inc. v. Pa. Nat'l Mut. Cas. Co., 388 N.J. Super. 592,
    (App. Div. 2006), certif. denied, 189 N.J. 647 (2007)……………………….19

Sears Mortg. Corp. v. Rose, 634 A.2d 74 (N.J. 1993)………………………...20

Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d
    786 (3d Cir. 1984)……………………………………………………………28

<u>Sobotor v. Prudential Prop. & Cas. Ins. Co.</u>, 200 N.J. Super. 333 (App. Div. 1984)……………………………………………………………………… ..23, 27

<u>Tillotson v. Gesner</u>, 33 N.J. Eq. 313 (E. & A. 1880)…………………………..11

<u>United States v. Fox Lake State Bank</u>, 240 F. Supp. 720 (N.D. Ill. 1965), rev'd on other grounds, 366 F.2d 962 (7th Cir. 1966)……………………...25

<u>United States v. Parise</u>, 159 F.3d 790 (3d Cir. 1998)…………………………..37

<u>United States v. Turkette</u>, 452 U.S. 576 (1981)………………………………..38

<u>Univ. of Md. at Baltimore</u>, 996 F. 2nd 1534 (3rd Cit. 1993)…………………....36

<u>Van Hold v. Liberty Mut. Fire Ins. Co.</u>, 163 F.3d 161 (3rd Cir. 1998)……… ..32

<u>Walker Rogge, Inc. v. Chelsea Title & Guaranty Co.</u>, 116 N.J. 517 (1989)……………………………………………………………………....5, 26

<u>Webster-Art Strength B. & L. Ass'n v. Armando</u>, 128 N.J. Eq. 219 (Ch. 1940)……………………………………………………………………… ..11

<u>Weedo v. Vivino</u>, 81 N.J. 233 (1979)…………………………………………....19

| | |
|---|---|
| <u>Weinisch v. Sawyer,</u> 123 N.J. 333 (1991)…………………………………………….. | .27 |
| <u>Yarchak v. Trek Bicycle Corp.,</u> 208 F. Supp. 2d 470 (D.N.J. 2002)………… | .37 |
| <u>Zacarias v. Allstate Ins. Co.</u>, 168 N.J. 590 (2001)………………………… | ..4 |
| **<u>Other Authorities</u>** | |
| Restatement (Second) of Torts § 551……………………………………….. | .23 |
| Restatement (Third) of Agency § 7.03……………………………………….. | .25 |
| 18 U.S.C. § 1961(4)…………………………………………………….. | .38 |
| N.J.S.A. 56:8-2………………………………………………………….. | .30 |
| N.J.S.A. 56:8-1(c)……………………………………………………….. | .30 |
| N.J.S.A. 42:1-6………………………………………………………….. | .39 |

## I. SUMMARY OF RESPONSE AND CROSS MOTION

In March of 2006, Dare Investments ("Dare") extended a $5,000,000.00 loan to SWJ Holdings, LLC ("SWJ"). The $5M loan from Dare to SWJ was secured, in part, by a collateral assignment of a mortgage in the principal amount of $15,000,000.00 (The "Mortgage"). The Mortgage covered 158 acres of raw land owned by one Lorraine Mocco ("Mocco")[1].

Dare knew the loan money was used to acquire bankruptcy assets, and that Mocco's attorney Mr. James Scarpone, Esq. ("Scarpone") initiated collateral state court proceedings regarding ownership of these assets. Two separate attorneys counseled Dare not to go through with the transaction because there was insufficient time to complete due diligence. Indeed, Dare knew that Mocco and Scarpone were making adverse claims to the Mortgage that put Dare's security interest in the Mortgage at risk[2].

Messrs. Mocco and Scarpone crystallized their claims and positions in a letter dated February 23, 2006[3], in which Mr. Scarpone claimed that the Mortgage had been paid off and that it was discharged. In light of the Mocco/Scarpone

---

[1] Complaint at ¶¶ 22-59; Policy, Exhibit 2 to Complaint, Exhibit 1 hereto.

[2] See also Exhibit 2, McCloskey Certification and Exhibit 3, Scarpone Certification.

[3] Exhibit 4, Scarpone to Brody letter dated February 23. 2006.

Claims and Positions, Dare knew that the SWJ Loan was a "huge risk" but "went forward with the transaction anyway."[4]

Consequently, Dare hedged its risk by insisting that SWJ procure a title policy insuring against the Mocco/Scarpone Claims and Positions. Dare insisted that the insurer cover not only Mocco/Scarpone Claims and Positions, but to verify that the amount due on the Mortgage was no less than $15,000,000.00[5].

Every title policy contains a Prior Knowledge Exclusion. See, e.g., Policy Standard Exclusion 3(b) which excludes "[d]efects, liens, encumbrances, adverse claims or other matters <u>not known to the company</u>…<u>but known to the insured</u>…". Therefore, in order to avoid any ambiguity with respect to coverage and to avoid any potential litigation in the future, it became necessary that the Mocco/Scarpone Claims and Positions be *omitted* from the Prior Knowledge Exclusion. It also became necessary that the policy confirm that the Mocco/Scarpone Claims and Positions were "known to the company". Lastly, it became necessary that the insurer verify that the amount still due and owing on the Mortgage was $15,000,000.00. Id.

SWJ engaged Horizon Title, Chicago Title's issuing agent, to provide just such coverage. In order to *omit* "Mocco/Scarpone Claims and Positions" from the

---

[4] See Chicago Title's Brief at 14. See also Exhibit 2, McCloskey Certification.

[5] Exhibit 1,Policy; Exhibit 2, McCloskey Certification.

Prior Knowledge Exclusion and to provide coverage over Mocco's adverse claims,

Chicago Title added Item 8 on Schedule B(I):

> 8. EXCLUSIONS FROM COVERAGE, ITEM #3b as set forth on the policy jacket to accompany said Final Title Policy, hereunder:
>
> Same will be omitted only as specific to said "Mocco"/"Scarpone" claims and positions challenging positions in and to said mortgage hereunder as per letter of February 23, 2006 from James A. Scarpone, Esq. to Alan J. Brady, Esq., et als." [sic]

The import of the language is clear and unambiguous: "Mocco/Scarpone

Claims and Positions" are omitted from the Prior Knowledge Exclusion and are

fully covered.

By the addition of the language referencing Mocco/Scarpone Claims and

Positions, Chicago Title also affirmed that these claims were "known to the

company". Thus, the Mocco/Scarpone Claims and Positions were covered in two

distinctly independent ways: First, by their omission from the Prior Knowledge

Exclusion and, Second, by Chicago Title's acknowledgement of their existence.

In order to satisfy Dare's demand for a warranty of the amount remaining

due under the Mortgage, Chicago Title confirmed the same in Item 9 of Schedule

B(I):

> The Company, through its due diligence, can verify that the amount due and owing on said mortgage being insured hereunder, at the date of this Commitment, is no less that [sic] $15,000,000.00.

Dare Investments relied on the coverages and representations contained in the Policy and funded the $5 million loan to SWJ[6].

Notably, Chicago Title's Brief does <u>not</u> discuss – or even mention – the express coverage provided in Schedule B(I)(8). The Brief completely ignores the express verification of the amount due in Schedule B(I)(9). This is not surprising. Chicago Title's <u>specific coverage</u> over the "Mocco / Scarpone Claims and Positions"; its <u>specific acknowledgement</u> of Mocco / Scarpone Claims and Positions; and its <u>specific warranty</u> of the amount due defeat its entire Motion to Dismiss and closes the book on the breach of contract claim and bad faith claims. Where, as here, "the policy is clear and unambiguous," a court is "bound to enforce" it. <u>President v. Jenkins</u>, 180 N.J. 550, 562 (2004) (quoting <u>Zacarias v. Allstate Ins. Co.</u>, 168 N.J. 590, 595 (2001)).

Chicago Title is fully aware of the language in its own Policy and the coverage it provides. In fact, in a letter dated August 14, 2007[7], Chicago Title specifically referenced coverage provided under Schedule B(I) Item 8. There is complete "absence of a reasonable basis for denying benefits of the policy". <u>Pickett v. Lloyd's</u>, 621 A.2d 445, 453 (N.J. 1993) There is specific acknowledgement of coverage in the August 17, 2007 letter. Therefore, there is bad faith. Id.

---

[6] Exhibit 2, McCloskey Certification.

[7] Exhibit 5, Denial of Coverage dated August 17, 2007, from Mr. O'Donnell to Mr. Pratt.

Interpretation of insurance policies is a matter of law particularly within the province of the Court. Therefore, Dare respectfully requests that the Court convert the Motion to Dismiss to one for Summary Judgment pursuant to Fed.R.Civ.P. 12(d) and enter judgment in favor of Dare on the issues of coverage and bad faith.

In the remainder of its Motion, Chicago Title desperately attempts to distance itself from its issuing agent, Horizon Title. No lesser authority than Judge Learned Hand has held that "an agent does not cease to be acting within the scope of his authority when he is engaged in a fraud on a third person." Ricketts v. Pennsylvania R. Co., infra.  Chicago Title further attempts to avoid liability by arguing that Dare had no right to rely on Horizon Title's / Chicago Title's representations and fraudulent concealment, but fails to discuss Dare's right to rely on the statements of Chicago Title as Dare's fiduciary.  Chcago Title also fails to address Dare's right to repose its reliance on Chicago Title's and Horizon Title's superior skill and knowledge.

Chicago Title then argues that a negligence action is unavailing in a breach of insurance contract case, but fails to recognize that a title insurer is subject to a negligence action if the negligence is a direct result of duties voluntarily assumed by the insurer. Walker Rogge, Inc. v. Chelsea Title & Guaranty Co., infra. Chicago Title also argues that insurer's are exempt from the NJCFA, but fails to recognize the persuasive analysis in Call v. Czaplicki, infra, where the Court reached just the

opposite conclusion. Lastly, Chicago Title argues that the RICO claim must be dismissed on the amorphous grounds of "exhaustion" of State Court remedies; at least two courts have found this argument "frivolous". <u>Gunther v. Dinger</u>, infra; <u>Glickstein v. Sun Bank/Miami, N.A.</u>, infra.

The remaining issues raised in Chicago Title's Motion along with a critical analysis of the Policy and Plaintiff's causes of action are more fully discussed below.

## II. STATEMENT OF FACTS

At the very heart of Chicago Title's Motion to Dismiss is the question of prior knowledge:  Who knew of the Mocco/Scarpone Claims and Positions, and when did they know of them?   Chicago Title claims that because Dare Investments had prior knowledge of Mocco/Scarpone Claims and Positions, there is no coverage.

Contrary to Chicago Title's basic premise, it is undisputed that effective March 30, 2006, Chicago Title insured Dare's interest in the Mortgage against, *inter alia*, "Mocco/Scarpone Claims and Positions". See Policy at B(I)(8). Additionally, Chicago Title affirmatively warranted that "[t]he Company, through its due diligence, can verify that the amount due and owing on said mortgage being insured hereunder, at the date of this Commitment, is no less that [sic] $15,000,000.00". Id. at B(I)(9).

Chicago Title, through its issuing Horizon Title, unquestionably knew that Mocco was making adverse claims to the Mortgage. This knowledge does not derive only from the disclosure of Mocco/Scarpone Claims and Positions in the February 23, 2006 letter, Exhibit 4, but from Horizon Title's own extensive investigations. The research (ostensibly) conducted by Horizon Title included "750 hours [of research] over 1½ year period" conducting "Bankruptcy Reviews" of the Mocco / Licata Bankruptcies at a cost of $71,250.00. Horizon title (ostensibly) conducted "title searches" at a cost of $44,000.00.  Horizon Title claims to have reviewed "Bankruptcy Documents, Prior Title Commitments and/or Policies, Supporting Opinions, etc") at a cost of $25,000.00.  Chicago Title invoiced SWJ almost a quarter of a million dollars ($218,651.00) for conducting coverage research[8].

What is peculiar about the April 17, 2006 invoice is that it was billed to SWJ, not to the insureds, and that it was paid by SWJ, and not by the insureds. The question whether this quarter-of-a-million dollar payment by SWJ to Horizon Title is a legitimate payment for research or a racketeering kickback remains subject to further discovery and investigation. For the purposes of this Brief, however, Dare is willing to accept that Horizon Title and Chicago Title fully and completely investigated the title to Mocco's properties, mortgages and bankruptcy

---

[8] Exhibit 6, April 17, 2006 invoice from Horizon Title to SWJ.

proceedings, and that they were fully aware of the "Mocco/Scarpone Claims and Positions".

Prior to litigation, Chicago Title denied coverage twice: First, on August 14, 2007[9] and then again on November 19, 2010[10]. In both cases Chicago Title denied coverage pursuant to Standard Exclusion 3(a) (Intentional Causation Exclusion), Standard Exclusion 3(b) (Prior Knowledge Exclusion), and item 7 on Schedule B(I).

In its Motion to Dismiss, Chicago Title no longer claims that coverage is excluded under the Prior Knowledge Exclusion 3(b). This is not surprising:  On January 24, 2011, counsel for Dare advised counsel for Chicago Title that under the terms of the Policy, Standard Exclusion 3(b) was not applicable. The January 24, 2011, letter from counsel provides the following analysis[11]:

> …Chicago Title's only substantive defense to payment is that Dare Investments was aware of the Mocco claims. But the Policy itself discloses that Chicago Title, too, was aware of Mocco's claims.
>
> Standard Exclusion 3(b) and item 8 in Schedule B make it strikingly clear that the entire basis of coverage was to protect against Mocco claims.
>
> Standard exclusion 3(b) excludes "adverse claims…**not known to the Company**…but known to the insured". (Emphasis supplied)

---

[9] Exhibit 5.

[10] Exhibit 7.

[11] Exhibit 8, January 24, 2011, letter from Mr. Strojnik to Mr. O'Donnell.

Item 8 on Schedule B confirms that Chicago Title knew of Mr. Mocco's adverse claims, specifically referencing claims made in the "letter of February 23, 2006 from James A. Scarpone, Esq. to Alan J. Brady, Esq. et al". Item 8 further clarifies that the exclusion in "ITEM #3b...**will be omitted** only as specific to the said 'Mocco'/'Scarpone' [sic] claims and positions." While the language in ¶8 is grammatically challenged and unnecessarily complex, it makes clear that (1) Chicago Title was aware of Mocco claims and, therefore, (2) agreed to omit Mocco Claims from the 3(b) exclusion. (emphasis in original)

The fact that Dare Investment's claim is specifically covered in Schedule B(I)(8) is not novel to Chicago Title. In its August 14, 2007 denial of coverage, Exhibit 5, Chicago Title made the arresting admission of coverage by pointing to the explicit agreement to cover "Mocco/Sacarpone claim and positions":

8. EXCLUSIONS FROM COVERAGE, ITEM #3b as set forth on the policy cover jacket to accompany said Final Title Policy, hereunder:

Same will be omitted only as specific to the said "Mocco"/"Scarpone" claims and positions challenging positions in and to said mortgage hereunder as per letter of February 23, 2006 from James A. Scarpone, Esq. to Alan J. Brady [sic], Esq., et als.

Chicago Title prepared and signed the Policy. It knew that the Policy covered "Mocco/Scarpone Claims and Positions". It (ostensibly) conducted more than $218,000.00 worth of due diligence. Chicago Title's subsequent denial of the claim was unconscionable and subjects Chicago Title to a claim for bad faith.

## III. POLICY ANALYSIS

### 1) THE INSURING CLAUSE COVERS THE LOSS OR DAMAGE SUSTAINED BY DARE INVESTMENTS

The Policy provides coverage "against loss or damage…sustained or incurred by the insured by reason of:

1. …
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. …;
5. The invalidity of unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. …:
8. The invalidity of unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure to the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear or all liens. (emphasis supplied)

### 2) CHICAGO TITLE SPECIFICALLY ASSUMED COVERAGE OVER MOCCO/SCARPONE CLAIMS AND POSITIONS

Item 8 provides coverage against loss or damage by reason of:

"Mocco"/"Scarpone" claims and positions challenging positions in and to said mortgage hereunder as per letter of February 23, 2006 from James A. Scarpone, Esq. to Alan J. Brady, Esq., et als." [sic]

"Mocco/Scarpone Claims and Positions" disclosed in the February 23, 2006 letter, Exhibit 4, render the Mortgage unmarketable, invalid and unenforceable. Under New Jersey law, the term "marketable title" has been defined as a title free from reasonable doubt, that which a reasonable buyer would be willing to accept, or which is "salable." Bier v. Walbaum, 102 N.J.L. 368, 370 (E. & A. 1926). Stated

10

differently, title is not marketable where there is a doubt concerning either the facts or law on which it is founded. <u>Webster-Art Strength B. & L. Ass'n v. Armando</u>, 128 N.J. Eq. 219 (Ch. 1940). If it is reasonably probable that the purchaser would be exposed to litigation not of a frivolous nature concerning the title, or would have to bring an action to quiet title, then specific performance would be denied to the prospective seller and the title would be considered unmarketable. <u>Tillotson v. Gesner</u>, 33 N.J. Eq. 313, 326-327 (E. & A. 1880); <u>Gaub v. Nassau Homes, Inc.</u>, 53 N.J. Super. 209, 223 (App. Div. 1958). See Scarpone Certification, Exhibit 3.

Now the question is whether coverage is defeated through the Intentional Causation Exclusion 3(a) as claimed by Chicago Title.

**3) INTENTIONAL CAUSATION EXCLUSION DOES NOT EXCLUDE THE LOSS OR DAMAGE TO DARE INVESTMENTS FROM COVERAGE, NOR DOES IT APPLY TO DARE'S CLAIM**

While Chicago Title (apparently) concedes that the Prior Knowledge Exclusion does not apply, it insists that coverage is excluded under the Intentional Causation Exclusion. The Intentional Causation Exclusion and the Prior Knowledge Exclusion are both set forth in Standard Exclusion 3 which states in its entirety:

> The following matters are expressly excluded from the coverage under this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
>
> 3. Defects, liens, encumbrances, adverse claims or other matters:
>
> (a) created, suffered, assumed or agreed to by the Insured claimant;

    (b)   not known to the Company, not recorded in the public records at Date of Policy, but known to the Insured claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the insured claimant became an Insured under this policy.

As more fully developed above, Standard Exclusion 3(b) is modified in Schedule B, Item 8 to provide coverage over "Mocco/Scarpone Claims and Positions.

   Chicago Title's Motion to Dismiss deals with the stark reality of coverage pursuant to Schedule B(I)(8) by simply pretending that it is not there. Instead of addressing – or even disclosing – the express assumption of coverage, Chicago Title misdirects its Motion to a discussion of the Intentional Causation Exception in 3(a).

Chicago Title argues that "3(a) precludes coverage based on 'defects, liens, encumbrances, adverse claims or other matters…created, suffered, assumed or agreed to by the insured claimant.'" See Brief at 27. Chicago Title then posits, "Courts have interpreted this standard Title Policy language to include defects arising from facts known to the insured", citing to <u>Feldman v. Urban Comm., Inc.,</u> 87 N.J. Super. 391, 404 (App. Div. 1965) and <u>Am. Sav. & Loan Ass'n v. Lawyers Title Ins. Corp.,</u> 793 F.2nd 780, 784 (6th Cir 1986) Chicago Title closes its argument like this:

    Here, Dare not only knew about all the matters at issue as explained above, but knew of the Moccos' adverse claims against the Sayerville Mortgage and knew that it would be buying into some amount of litigation.

> Dare believed that the transaction was a "huge risk" and assumed and agreed to that risk against the advice of its own counsel from both New Jersey and Utah. There could be no clearer case of title coverage being excluded under Section 3(a) than here, based upon Dare's admitted knowledge. See Fedlman, 87 N.J.Super. 391. (Brief at 27)

There are numerous flaws with Chicago Title's argument. First, the argument (again) fails to disclose that "Mocco/Scarpone claims and positions" are specifically covered in Schedule B(I), Item 8. Second, it fails to recognize that the "Mocco/Scarpone Claims and Positions" are specifically *omitted* from the Prior Knowledge Exclusion. Third, it fails to recognize that for the Prior Knowledge Exclusion to even apply, Chicago Title would have to show that the Mocco/Scarpone claims and positions "were not known to the Company". Fourth, it cites to cases that hold just the opposite of what it argues.

For example, Chicago Title cites to Feldman v. Urban Commercial, Inc., supra, for the proposition that Dare's prior knowledge of Mocco's claims defeats coverage under the Intentional Causation Exclusion. Feldman does not support Chicago Title's argument.

In Feldman, the Court found that the insured engaged in "deliberate, affirmative action, in pursuance of his unconscionable scheme", 87 N.J.Super at 408, and denied recovery under a provision in the policy similar to Standard Exception 3(a) here. Nowhere did the Court in Feldman indicate that mere knowledge of the adverse claim brings exclusion 3(a) to bear. The correct reading

of <u>Feldman</u> was analyzed by the New Jersey Appellate Division in <u>Keown v. West</u>

<u>Jersey Title and Guaranty Co.</u>, 390 A.2d 715, 721, 161 N.J.Super. 19, 25 (N.J.

App. Div. 1978) where the Court affirmatively held that the Intentional Causation

Exclusion requires "conscious or deliberate causation":

> In the only New Jersey case interpreting such a clause it was held that
> the word "create" connotes "the idea of knowledge, the performance
> of some affirmative act by the insured, a **conscious or deliberate**
> **causation**." <u>Feldman v. Urban Commercial, Inc.</u>, 87 N.J. Super. 391,
> 404 (App. Div. 1965). There the insured had taken part in an
> "unconscionable scheme" and had taken affirmative action which
> rendered his mortgage unenforceable so he was barred from collecting
> on the insurance policy. 87 N.J. Super. at 409; Feldman v. Urban
> Commercial, Inc. , 78 N.J. Super. 520, 532 (Ch. Div. 1963), aff'd 87
> N.J. Super. 391 (App. Div. 1965). (emphasis supplied)

Chicago Title then cites to <u>American Savings and Loan Association v.</u>

<u>Lawyers Title Insurance Corp</u>., 793 F.2d 780 (6th Cir. 1986) There again, the

Court rejected the very proposition Chicago Title offers in its Brief:

> The term "created" has generally been construed to require a
> **conscious, deliberate and sometimes affirmative act intended to**
> **bring about the conflicting claim**, in contrast to mere inadvertence
> or negligence. <u>Hansen v. Western Title Inc. Co.</u>, 220 Cal. App. 2d
> 531, 33 Cal. Rptr. 668, 671 (1963); see also <u>Arizona Title Ins. & Trust</u>
> <u>Co. v. Smith</u>, 21 Ariz. App. 371, 519 P. 2nd 860 (1974).[*fn1] Similarly,
> **the term "suffered" has been interpreted to mean consent with**
> **the intent that "what is done is to be done**," <u>First Nat. Bank & Trust</u>
> <u>Co. v. New York Title Ins. Co.</u>, 12 N.Y.S.2d 703, 171 Misc. 854
> (N.Y. Sup. Ct. 1939), **and has been deemed synonymous with**
> **"permit," which implies the power to prohibit or prevent the**
> **claim from arising**. <u>Arizona Title Ins. & Trust Co. v. Smith</u>, 21 Ariz.
> App. 371, 519 P.2nd 860 (1974). **Further, an insured does not**
> **assume an assessment against property "merely because he**

**agreed to take the property 'subject to' any assessments."** Id. at 863. "Assume," under this definition requires knowledge of the specific title defect assumed. See also <u>McLaughlin v. Attorneys Title Guaranty Fund</u>, 61 Ill. App. 3d 911, 378 N.E.2d 355, 18 Ill. Dec. 891 (1978). **And "agreed to" carries connotations of "contracted," requiring full knowledge by the insured of the extent and amount of the claim against the insured's title. As with the other terms, this definition implies some degree of intent.** (emphasis supplied; footnote omitted)

There is nothing in the record even suggesting that Dare engaged in a "conscious, deliberate" or "affirmative act intended to bring about [Mocco's] conflicting claim". The proposition that Mocco/Scarpone Claims and Positions were somehow caused by Dare is neither sensible nor supported by the facts[12].

**4) ITEM 7 TO SCHEDULE B IS INCOMPREHENSIBLE AND DOES NOT APPLY**

Chicago Title also argues that coverage is excluded pursuant to Item 7 of Schedule B: Item 7 states:

This policy does not insure against loss or damage by reason of the following:

7.    Subject to the terms, conditions, covenants, court orders, etc, as set forth in the United States Bankruptcy Court, District of Connecticut, Bridgeport Division Case No. 02-50851 (AHWS), and the Asset Purchase Agreement thereunder.

---

[12] The precise meaning of the phrase "created, suffered, assumed or agreed to" has been considered in the case of <u>Arizona Title Insurance & Trust Company v. Smith</u>, 21 Ariz. App. 371, 519 P. 2d 860 (1974) (cited in <u>American Savings and Loan</u>). That case, in accordance with the unanimity of authority, holds that the word "created" requires an affirmative act deliberately bringing about the defect. The word "suffered" implies a failure to exercise a power with the intention that the defect be created. Accord, <u>Hansen v. Western Title Insurance Company</u>, 220 Cal. App. 2d 531, 33 Cal. Rptr. 668 (1963). Chicago Title should know the speciousness of its position. See Chicago Title should know this. See <u>Bankruptcy Estate of Richard v. Chicago Title Insurance Co.</u>, No. 09-1776 (D.Minn. 2010).

Again, in its argument, Chicago Title fails to disclose that the "Mocco/Scarpone claims and positions" are specifically covered in Schedule B(I) Item 8. No exclusions, no backtracking, no denial and no repudiation can change this dispositive fact.

But even in the absence of Chicago Title's express assumption of coverage, Item 7 is conspicuous in its ambiguity: <u>First</u>, "the United States Bankruptcy Court, District of Connecticut, Bridgeport Division Case No. 02-50851 (AHWS)" relates to a bankruptcy proceeding regarding one Carmen M. Castro, a complete stranger to any issue here. Exhibit 9.  <u>Second</u>, read along with the lead clause, Item 7 makes no grammatical or logical sense whatsoever. ("This policy does not insure against loss or damage by reason of *subject to*…"). <u>Third</u>, Dare Investments does not seek compensation for "loss of damage [sustained] by reason of …the terms of … the terms, conditions, covenants, court orders"; Dare Investments seeks compensation for loss and damage by reason of the Mocco/Scarpone Claims and Positions disclosed in the February 23, 2006 letter. <u>Fourth</u>, there is nothing in any court proceeding that would represent the *reason* for the loss or damage; the *reason* for the loss or damage is Mocco's claim, not the Bankruptcy Proceeding.

Item 7 of Schedule B(I) does not except or exclude coverage.

**5) SPECIFIC WARRANTY OF THE AMOUNT DUE AND OWING ON THE SAYERVILLE MORTGAGE**

In its Brief, Chicago Title also completely ignores its own warranty of the amount due on the Mortgage. See Schedule B at Item 9:

> The Company, through its due diligence, can verify that the amount due and owing on said mortgage being insured hereunder, at the date of this Commitment, is no less that [sic] $15,000,000.00. (Policy at B(I)(9))

## III. ARGUMENT AND SUPPORTING LAW

**1) RULE 12(B)(6) STANDARD**

With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

**2) CONVERSION OF CHICAGO TITLE'S MOTION TO DISMISS TO ONE FOR SUMMARY JUDGMENT**

Chicago Title and Dare Investments both present matters outside the pleadings. These matters should not be excluded. Therefore, pursuant to

F.R.Civ.P. 12(d), Chicago Title's Motion "must be treated as one for summary judgment under Rule 56".

A summary disposition of a coverage issue is particularly appropriate. Under New Jersey law, "[t]he interpretation of an insurance contract is a question of law for the court to determine, and can be resolved on summary judgment." <u>Adron, Inc. v. Home Ins. Co.</u>, 292 N.J. Super. 463, 473 (App. Div. 1996); see also <u>Rao v. Universal Underwriters Ins</u>. Co., 228 N.J. Super. 396, 399 (App. Div. 1988) ("the interpretation of an insurance contract" is a legal issue, and therefore, it is "appropriate for summary judgment").

In the matter at hand, the Policy is before the Court.  The Policy is clear, unambiguous and explicit. The Court can well determine whether specific inclusion of coverage over Mocco's claims means what it says even at this early stage of the proceedings.

### 3)  CHICAGO TITLE BREACHED THE POLICY IN BAD FAITH

### a)  Chicago Title Breached the Express Terms of the Policy

Chicago Title's argument is pregnant with the admission of illusory coverage:  On the one hand, the Policy specifically covers against loss or damage by virtue of Mocco/Scarpone Claims and Positions, and on the other, it tries to take it away.  The very same argument advanced by Chicago Title in its Motion to

Dismiss (and in its prior denials of coverage) could have been made at the very inception of the Policy.

Chicago Title's prior denials of coverage were based on Dare's knowledge of Mocco/Scarpone Claims and Positions. Chicago Title knew from the very beginning that Dare (and Chicago Title) had prior knowledge of these claims. So why did Chicago Title agree to provide coverage over these known claims? The answer to this question leads to only one conclusion: Chicago Title issued the Policy covering these claims <u>knowing</u> that it could later deny coverage under Standard Exclusion 3(a).

It is well accepted that insurance contracts are to be interpreted to effectuate the reasonable expectations of the insured. <u>S.T. Hudson Eng'rs, Inc. v. Pa. Nat'l Mut. Cas. Co.</u>, 388 N.J. Super. 592, 603-04 (App. Div. 2006), cert. denied, 189 N.J. 647 (2007) (citations omitted). Here, Dare reasonably expected that Chicago Title would honor the policy and provide coverage against loss or damage caused by Mocco/Scarpone Claims and Positions. "Courts are bound to protect the insured to the full extent that any fair interpretation will allow." <u>Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, Switzerland</u>, 35 N.J. 1 at 7 (1961)

Here, the coverage is not even ambiguous. A genuine ambiguity arises "where the phrasing of the policy is so confusing that the average policy holder cannot make out the boundaries of coverage." <u>Weedo v. Vivino</u>, 81 N.J. 233, 247

(1979). There is nothing ambiguous about Chicago Title's affirmative assumption of risk over Mocco/Scarpone Claims and Positions.

### b) Chicago Title Breached The Covenant Of Good Faith And Fair Dealing; Coverage Is Not "Fairly Debatable"

"The duty of good faith and fair dealing pervades insurance contracts." Sears Mortg. Corp. v. Rose, 634 A.2d 74, 84 (N.J. 1993). In the context of first-party insurance claims, the Supreme Court of New Jersey has held that "[t]o show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." Pickett v. Lloyd's, 621 A.2d 445, 453 (N.J. 1993) (citation and internal quotation marks omitted); see Ketzner v. John Hancock Mut. Life Ins. Co., 118 Fed. Appx. 594, 599 (3d Cir. 2004) ("Under New Jersey law, to establish a claim for bad faith in the insurance context, a plaintiff must show two elements: (1) the insurer lacked a 'fairly debatable' reason for its failure to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim."). A plaintiff may also demonstrate an insurer's bad faith when the insurer unreasonably delays the processing of a valid claim, and the insurer knows or recklessly disregards the fact that the delay is unreasonable. Pickett, 621 A.2d at 473-74; see Enright v. Farm Family Cas. Ins. Co., 2005 U.S. Dist. LEXIS 37544, at *29 (D.N.J. Dec. 29, 2005) ("An insured can also establish bad faith by showing that

20

no valid reasons existed for a delay in processing the claim and that the insurer either knew of, or recklessly disregarded, the fact that no valid reasons supported the delay." (citing <u>Pickett</u>, 621 A.2d at 454)).

There is no valid reason for the denial of Dare's claim. As early as August of 2007, Chicago Title specifically acknowledges Schedule B(I)(8) assumption of coverage. Chicago Title cannot claim that it was merely negligent or that it did not read its own policy. It cannot claim ignorance. It knew the extent of specific coverage. The denial of coverage was intentionally and knowingly wrongful.

### 4) DARE HAD THE RIGHT TO RELY ON HORIZON TITLE'S AND CHICAGO TITLE'S REPRESENTATIONS

Chicago Title claims that Dare did not have the right to rely on Horizon's and Chicago Title's representations because Dare, through its counsel, conducted its own due diligence. Chicago Title's argument must be reviewed in light of the pleading requirement post-<u>Twomby</u>:

> The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest 'the required element.' This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element.'
>
> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (quoting

Twombly, 550 U.S. at 556).

Dare's fraud claims are based on three representations and omissions:  First, that Chicago Title induced Dare to make the SWJ loan by insuring unmarketable mortgage (Complaint at ¶¶78-84).  Second, that Chicago Title misrepresented the condition of the title to the Mortgage (¶¶33-53, 104-105); and Third, that Chicago Title misrepresented the "due diligence" through which it (falsely) "verif[ied] that the amount due and owing on said mortgage … is no less that [sic] $15,000,000.00." (Policy at Schedule B(I)(9))[13]

Chicago Title's entire "reliance" argument is based on the proposition that Dare investigated the SWJ Loan transaction.  Chicago Title argues "where a party chooses to conduct its own investigation or due diligence, it 'will be accountable for everything such party could have discerned by employing reasonable diligence'" (emphasis in original). Chicago Title Brief at 21.

Chicago Title's argument is unpersuasive on numerous levels:  First, Dare investigated SWJ's ability to repay the $5M loan, not the condition of the Mortgage and the amount still due under the Mortgage[14]. Horizon Title and Chicago Title conducted *that* investigation.  As Chicago Title likes to point out,

---

[13] The gist of Dare's fraud allegations is that (1) Chicago Title induced Dare to make the $5M loan "by a promise of a valid and enforceable policy of title insurance" (79); (2) by Chicago Title's knowledge and non-disclosure of the fact that the Mortgage was unmarketable (80(d)); (3) by Chicago Title's affirmative statement of Chicago Title's due diligence in confirming that the amount due on the Mortgage was no less than $15,000,000.00 (Policy at B(I)(9); (4) by Chicago Title's false representation of the condition of the title to the Sayerville Mortgage(104); (5) CT's failure to advise the true condition of the title to the Mortgage (105).

[14] See Exhibit 2, McCloskey Certification.

Dare knew that the SWJ Loan was a "huge risk", Brief at 14, and hired Chicago Title to hedge against that risk.

Second, Dare had the right to rely that Chicago Title's fiduciary obligation to exercise utmost honesty and good faith in its dealings with Dare. *See* Pickett v. Lloyd, 621 A.2d 445, 450 (N.J. 1993)[15]. "A fiduciary has a legal duty to disclose to the beneficiary those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection." Horvath v. Keystone Health Plan E., Inc., 333 F.3d 450, 461 (3d Cir. 2003).

Third, the duty to inform also "entails... a negative duty not to misinform." Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3d Cir. 1993). *See also* Restatement of Torts (Second) § 551.

Fourth, Dare had the right to repose its reliance on Chicago Title's and Horizon Title's superior knowledge[16].

---

[15] In Pickett, the Court cited a state appellate decision, Sobotor v. Prudential Property & Casualty Ins. Co., 200 N.J.Super. 333, 337-41 (N.J. Super. Ct. App. Div. 1984), for the proposition that the "relationship of insured and insurer , either agent or broker, is [a] fiduciary one, carrying with it affirmative duties toward the insured." See also Griggs v. Bertram, 88 N.J. 347, 361 (N.J. 1982) (noting "the overriding fiduciary duty of an insurer to deal with an insured fairly and candidly").

[16] A duty to disclose arises in situations in which "'either one or each of the parties, in entering . . . [the] transaction, expressly reposes . . . a trust and confidence in the other . . . or [because of the] circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence . . . is necessarily implied.'" Berman v. Gurwicz, 189 N.J. Super. 89, 93-94, 458 A.2d 1311 (Ch. Div. 1981), aff'd, 189 N.J. Super. 49, 458 A.2d 1289 (App. Div.), certif. denied, 94 N.J. 549 (1983). In such situations, the induced reliance is actionable. United Jersey Bank v. Kensey, 306 N.J. Super. 540, 554-55 (N.J. Super. 1997).

Dare's reliance on Horizon Title and Chicago Title have nothing to do with Dare's investigation of SWJ[17]. These allegations have to do with Chicago Title's affirmative representation of the title to the Mortgage, the affirmative representation of the amount remaining due on the Mortgage, and the non-disclosure of the SWJ – Horizon Title /Chicago Title ongoing fraudulent enterprise.

5) **CHICAGO TITLE IS LIABLE TO DARE FOR ITS OWN FRAUD AND FOR THE FRAUD BY HORIZON TITLE'S FRAUD UNDER THE "IMPUTATION DOCTRINE"**

In its Brief, Chicago Title attempts to distance itself from the frauds committed by its issuing agent, Horizon Title, and its partner, SWJ Holdings, LLC.

Dare's Complaint alleges that Chicago Title, Horizon Title and SWJ defrauded Dare Investments out of $5M. Dare alleges that as a part of the Chicago Title - Horizon Title - SWJ fraudulent scheme, Chicago Title and Horizon Title

---

[17] The Complaint alleges that Chicago Title induced Dare to make the $5M loan, specifically stating that (i) "Dare Investments was steered to Horizon Title and Chicago Title as the title insurer because Horizon Title and Chicago Title were members of the already existing Chicago Title RICO Enterprise" (Id. at ¶80(a)); (ii) "The individual members of the Chicago Title RICO Enterprise held Horizon Title and Chicago Title out as reputable insurers capable paying on a claim" (Id. at ¶80(b)); (iii) "The individual members of the Chicago Title RICO Enterprise did not disclose the existence of the Chicago Title RICO Enterprise to Dare Investments" (Id. at ¶80(c)); and "Chicago Title and Horizon Title had previously conducted extensive research regarding the title to the mortgages being sold in connection with the SkyLand Transaction and the Centrum Transaction, and knew that the insured Sayerville Mortgage and assignments were not marketable". (Id. at ¶80(d)) Dare alleges that it had the right to rely on Chicago Title's statements and omissions. Id. at ¶81, 106. Lastly, Dare alleges that Chicago Title represented that it had conducted "due diligence" and that it could "verify that the amount due and owing on said mortgage being insured hereunder, at the date of this Commitment, is no less that [sic] $15,000,000.00." Schedule B(I)(9).

secured coverage over Mocco/Scarpone Claims and Positions along with a verification of the amount remaining due on the Mortgage.

The Policy shows that Chicago Title knew that the Policy covered the Mocco/Scarpone Claims and Positions and that it warranted the amount still due and owing on the Mortgage. Dare alleges that Chicago Title signed the Policy, assumed the obligation to pay under the Policy, received the benefits of Policy through receipt of the policy premium, and then inexplicably denied coverage.

No lesser authority than Judge Learned Hand has held that "an agent does not cease to be acting within the scope of his authority when he is engaged in a fraud on a third person." Ricketts v. Pennsylvania R. Co., 153 F.2d 757 (2d Cir. 1946). This principle from Judge Hand stands for the proposition that an agent's fraudulent acts committed "in the scope of his authority" impute liability to the principal. See United States v. Fox Lake State Bank, 240 F. Supp. 720 (N.D. Ill. 1965), rev'd on other grounds, 366 F.2d 962 (7th Cir. 1966). See Gardner v. Rosecliff Realty Co., 41 N.J. Super. 1, 9 (App. Div. 1956) ("[A] principal may be held, in an action of deceit, for damages resulting from his agent's fraudulent representation, where the principal has put the agent in such a position that a person of ordinary prudence, conversant with business uses, would be justified in presuming that the agent has the authority to make the representation.") See also Restatement (Third) of Agency § 7.03 (2006); Bonnieview Homeowners

Association, LLC v. Woodmont Builders, L.L.C., 655 F.Supp.2d 473 (D.N.J. 2009) See also, generally, NCP Litigation Trust v. KPMG LLP, 187 N.J. 353, 361, 901 A.2d 871, 879 (2006) ([Through the invocation of the imputation doctrine], "Principals … are prevented 'from obtaining benefits through their agents while avoiding the consequences of agent misdeeds.'")

Here, Horizon Title held itself out as a captive insurance agent for Chicago Title; on its stationary, Horizon Title clearly identifies itself as the "Issuing Agent for Chicago Title Insurance Company".  Exhibit 10. Here, Chicago Title benefited by its own and Horizon Title's fraud.

### 6) DARE'S NEGLIGENCE CLAIMS ARE PROPERLY PLED

Chicago Title claims that the insured has no negligence claim against its insured, but the New Jersey Supreme Court disagrees.

In Walker Rogge, Inc. v. Chelsea Title & Guaranty Co., 116 N.J. 517, 535 (1989), the New Jersey Supreme Court noted that "a title company's liability is limited to the policy and... the company is not liable in tort for negligence in searching records." However, "[n]otwithstanding the essentially contractual nature of the relationship between a title company and its insured, the company could be subject to a negligence action if the 'act complained of was the direct result of duties voluntarily assumed by the insurer in addition to the mere contract to insure

title.'" Id. at 541 (quoting <u>Brown's Tie & Lumber Co. v. Chicago Title Co. of</u> <u>Idaho</u>, 764 P.2d 423, 426 (Idaho 1988)).

Here, Dare alleges (and indeed proves) that Chicago Title voluntarily assumed to conduct "due diligence" and "verify that the amount due and owing on said mortgage being insured hereunder, at the date of this Commitment, is no less that [sic] $15,000,000.00." Schedule B(I)(9). Horizon Title and Chicago Title voluntarily assumed to conduct due diligence of the amount due on the Mortgage, and did so negligently.  Under <u>Walker Rogge</u>, the negligence claim is permitted and well supported.

### 7)  DARE'S REFORMATION CLAIM IS PROPERLY PLED

Chicago Title further argues that the redemption claim is not available, but New Jersey Courts have acknowledged the availability of the reformation remedy in situations where the negligence of the insurer's agent has caused a policy to contain inadequate coverage. See <u>Weinisch v. Sawyer,</u> 123 N.J. 333, 336 (1991); <u>Sobotor v. Prudential Prop. & Cas. Ins. Co</u>., 200 N.J. Super. 333, 337-41 (App. Div. 1984). Because the remedy is not generally available when the error is due to the complaining party's negligence, New Jersey courts also recognizes a duty on the part of the insured as a factor in the availability of this equitable remedy. See e.g., in <u>New Jersey, Dancy v. Popp</u>, 114 N.J. 570, 572 (1989); <u>Millbrook Tax Fund, Inc. v. P.L. Henry & Assocs</u>., 344 N.J. Super. 49, 53 (App. Div. 2001);

Martinez v. John Hancock Mut. Life Ins. Co., 145 N.J. Super. 301, 310 (App. Div. 1976), certif. denied, 74 N.J. 253 (1977). As the Court observed in Martinez, "Consideration of the extent of an insured's duty to read an insurance policy is germane to the two theories upon which an insurer's liability can be expanded beyond" what is provided for in the policy itself: equitable estoppel of the insurer to deny coverage and reformation of the policy. 145 N.J. Super. at 312. See also Countryside Oil Co. v. Travelers Ins. Co., 928 F. Supp. 474, 481 (D.N.J. 1995)

Chicago Title's claim must be viewed in the context of a 12(b)(6) Motion. In this context, the reformation claim is properly and sufficiently pled.

### 8) DARE'S FRAUD CLAIMS ARE PLED WITH REQUISITE PARTICULARITY

Fed. R. Civ. P. Rule 9(b) commands that in all "averments of fraud … shall be stated with particularity". Pursuant to this heightened pleading standard, plaintiffs must plead with particularity the "circumstances" of the fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard against spurious charges of immoral and fraudulent behavior. Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984). This requires a description of the "who, what, when, where and how" of the events at issue. In re Rockefeller Ctr. Props. Secs. Litig., 311 F.3d 198, 217 (3d Cir. 2002).

Here, the Complaint alleges the frauds with the required particularity.  See Paragraphs 33-52 (relating to the Dare Investments Scam);  Paragraphs 72-76 (relating to Dare's Reliance on Defendants' representations and omissions) Paragraphs 77(a) – 77(r) (Relating to Chicago Title's Pattern of Racketeering Activity), Paragraphs 78-84 (relating to Chicago Title's Fraud in the Inducement) and Paragraphs 103 – 110 (relating to Chicago Title's Common Law Fraud And Failure To Disclose). Rule 9(b) is satisfied.

9) **DARE STATED A CLAIM UNDER THE NJCFA – INSURANCE BROKERS ARE OUTSIDE NJCFA WHILE THE INSURANCE COMPANIES ARE WITHIN THE NJCFA**

a) **Insurers Are Covered by NJCFA**

In 1960, the New Jersey legislature enacted the New Jersey Consumer Fraud Act to "'eliminat[e] sharp practices and dealings in the marketing of merchandise and real estate.'" Lee v. First Union Nat'l Bank, 971 A.2d 1054, 1058 (N.J. 2009). (quoting Channel Cos. v. Britton, 400 A.2d 1221 (N.J. Super. Ct. App. Div. 1979)). In order to effectuate its purpose, the Act provides "a remedy for any consumer who has suffered an 'ascertainable loss of moneys or property, real or personal, as a result of [a CFA violation],' including treble damages, costs, and attorneys fees." Id. Importantly, New Jersey courts have construed the statute "liberally, in favor of consumers." Cox. v. Sears Roebuck & Co., 647 A.2d 454, 461 (1994). Furthermore, the "scope of the CFA's proscriptions are both wide and

deep," and New Jersey courts have applied its provisions in "varied and eclectic" contexts. Real v. Radir Wheels, Inc., 969 A.2d 1069, 1076 (N.J. 2009). The Act prohibits:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby[.]

[N.J.S.A. 56:8-2.] The Act defines "merchandise" as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c).

In its Brief, Chicago Title asserts that the "learned professional exception"[18] excludes it from the NJCFA. Chicago Title cites to Plemmons v. Blue Chip Insurance Services, Inc., 387 N.J.Super 551, 904 A.2d 825 (N.J. Super. App. 2006) for this (false) proposition.

In Plemmons, the Court analogized insurance brokers to real estate brokers who are exempt from the provisions of the NJCFA because, as licensed semi-professionals, they are "subject to testing, licensing, regulations and penalties

---

[18]See Macedo v. Dello Russo, 840 A.2d 238, 242 (N.J. 2004), in which the New Jersey Supreme Court stated, "[w]e therefore must assume that the Legislature approves of the consistent judicial interpretation of the CFA that has been extant for four decades. Under that interpretation, advertisements by learned professionals in respect of the rendering of professional services are insulated from the CFA but subject to comprehensive regulation by the relevant regulatory bodies and to any common-law remedies that otherwise apply."

through other legislative provisions," and because "the nature of [a real estate broker's] activity is recognized as something beyond the ordinary commercial seller of goods or services-an activity beyond the pale of the [NJCFA]." 904 A.2d at 831 (quoting Neveroski v. Blair, 358 A.2d 473, 480-81 (N.J. Super. A.D. 1976)). However, in Plemmons, the Court expressly stated that "it is clear under Lemelledo [v. Beneficial Mgmt. Corp., 150 N.J. 255, 270 (1997)] that financial institutions and insurance companies that sell insurance policies 'as goods and services that are marketed to consumers' are subject to the CFA" Id. at 833 (citing Lemelledo, 696 A.2d at 551). Therefore, because insurance companies are not subject to the same licensing and registration mechanisms as insurance brokers, this Court should deny Defendants' motion to dismiss based on Plaintiffs' NJCFA claims.

Faced with the same issue presented here, the District of New Jersey court denied insurer's motion to dismiss the NJCFA claim against it:

> The "learned professionals" exemption applies only to insurance brokers and not insurance companies. Defendants do not argue that Defendant New England is a licensed insurance broker in the State of New Jersey. Thus, the rationales for the Court's decision in Plemmons do not apply to the sale of an insurance policy by an insurance company or a merchant who is not a licensed insurance broker. In Plemmons, the Court analogized insurance brokers to real estate brokers who are exempt from the provisions of the NJCFA because, as licensed semi-professionals, they are "subject to testing, licensing, regulations and penalties through other legislative provisions," and because "the nature of [a real estate broker's] activity is recognized as something beyond the ordinary commercial seller of goods or services-an activity beyond the pale of the [NJCFA]." 904 A.2d at 831 (quoting Neveroski v. Blair, 358 A.2d 473, 480-81 (N.J. Super. A.D.

1976)). Furthermore, in <u>Plemmons</u>, the Court expressly stated that "it is clear under <u>Lemelledo</u> that financial institutions and insurance companies that sell insurance policies 'as goods and services that are marketed to consumers' are subject to the CFA." Id. at 833 (citing <u>Lemelledo</u>, 696 A.2d at 551). **Therefore, because insurance companies … are not subject to the same licensing and registration mechanisms as insurance brokers, this Court finds that Defendants' motion to dismiss based on Plaintiffs' NJCFA claims against New England [Life Insurance Company] is denied.** (emphasis supplied)

See  <u>Call v. Czaplicki</u>, No. 09-6561 (D.N.J. 09/16/2010) at Doc 7. While Judge Kugler's opinion is unpublished, it is not offered as a precedent, it is offered the appropriate analysis of the application of NJCFA to insurance companies. Chicago Title's claim that NJCFA does not apply to insurers is not well grounded in law and should be denied.

### b) Non-Payment of a Claim, Coupled with Fraud, Misrepresentation or Misleading, is covered by the NJCFA

In its backup position, Chicago Title argues that the non-payment of insurance benefits is not within the NJCFA, citing to <u>Van Hold v. Liberty Mut. Fire Ins. Co.</u>, 163 F.3d 161, 168 (3rd Cit 1998) <u>Van Hold</u>, however, held that "mere denial" of insurance benefits does not constitute a violation of NJCFA. Id. The Court specifically based its decision on the fact that in that case, "[t]record [was] devoid of evidence that Liberty Mutual committed fraud, made misrepresentations, or misled the [insured]".

Dare's Complaint contains allegations of Chicago Title's involvement in an "unconscionable commercial practice" (issuing illusory coverage), "deception" (false verification of the amount due on the Mortgage), "concealment" (failing to disclose its relationship with SWJ) and "omission of material fact" (failure to disclose its one quarter million dollar investigation and its relationship with SWJ). These practices were performed with the intent that Dare rely thereon.

Unlike the factual background in <u>Van Hold</u>, the present case is replete with allegations of fraud, misrepresentations and intentional misleading of Dare by Horizon Title and Chicago Title. <u>Van Holt</u> does not help Chicago Title's cause.

### c)  Dare Did Not Extend a Hard Money Loan To Chicago Title

In its final attempt to avoid the application of NJCFA to its fraudulent, misleading and unconscionable misconduct, Chicago Title argues that Dare is attempting to recover a hard money loan to SWJ, and that the Dare – SWJ loan transaction is not subject to NJCFA.  That as may be, Dare is not suing SWJ in this action on the hard money loan. Dare is suing Chicago Title.

### 10)    DARE PROPERLY PLED RICO CLAIMS

### a) There Is No Requirement Of "Exhaustion" Of State Remedies Before Bringing a RICO Suit.

Chicago Title argues that before Dare can assert its RICO claims, it must exhaust all other legal claims to clearly and definitely determine its damages. See

Chicago Title Brief at 34.  In the words of the 11th Circuit Court of Appeals, this

proposition is "frivolous":

> The proposition that state "exhaustion" rules could bar the federal
> RICO claims is not one that requires much discussion. While Florida
> courts do have concurrent jurisdiction over RICO claims, see <u>Tafflin
> v. Levitt</u>, 493 U.S. 455, 110 S. Ct. 792, 795-99, 107 L. Ed. 2d 887
> (1990), the state does not have the power to impose a substantive
> exhaustion requirement on a federal claim. See <u>Felder v. Casey</u>, 487
> U.S. 131, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988). We find the
> reasoning of the court in <u>Gunther v. Dinger</u>, 547 F. Supp. 25
> (S.D.N.Y.1982), appropriate. In that case, the decedent's daughter
> brought a RICO action against several defendants alleging they had
> converted estate assets into personal assets. The court held that the
> defendants' contention that the plaintiff must exhaust state remedies
> before bringing a RICO claim "is frivolous on its face." Id. at 27.

> <u>Glickstein v. Sun Bank/Miami, N.A.</u>, 922 F.2d 666, 671 (11th Cir. 1991).

Chicago Title suggests that the parties waste the Court's time, litigate the

current action, commence a separate action in the Bankruptcy Court against SWJ,

commence yet a third action against Lorraine Mocco in a foreclosure action, and

then return to this Court and refile a RICO action. Chicago Title attempts to force

Dare into three additional pieces of litigation.  Dare respectfully declines to waste

its own time or the Court's time. There is nothing speculative about Dare's RICO

damages: Dare, as one of many victims in a continuing fraudulent misconduct by

Chicago Title involving at least two other victims, SkyLand and Centrum. Dare

paid out $5,000,000.00 to SWJ on the basis of Chicago Title's specific assumption

of coverage and upon its specific verification of the amount due on the Mortgage.

Dare's damages are clear and easily provable. There is no requirement that Dare "exhaust" any state remedies.

### b) Dare's RICO Allegations Clearly Allege Chicago Title's Mail And Wire Fraud Against Dare

Chicago Title avers that Dare's Complaint is inadequate because it (allegedly) fails "to identify any mail or wire fraud by Chicago Title aimed at Dare". See Chicago Title Brief at 36.

Plaintiff's Complaint is replete with allegations of fraud by Chicago Title toward Dare Investments. The Policy itself, property attached to the Complaint and becoming a part of it, discloses a fraudulent statement directed by Chicago Title to Dare Investments that Chicago Title conducted "due diligence" and that it could verify that the "amount due and owing on said Mortgage…is no less than $15,000,000.00". The Policy, issued by Chicago Title and directed to Dare, on its face covered "Mocco/Scarpone Claims and Positions" at a time when Chicago Title knew it had no intent of paying any claim involving "Mocco/Scarpone Claims and Positions". In ¶ 79, Dare alleges that "[t]he Chicago Title RICO Enterprise fraudulently induced Dare Investments into lending to SWJ the sum of $5,000,000.00 by a promise of a valid and enforceable policy of title insurance on the Sayerville Mortgage and assignments." In ¶ 80(a)-(d), Dare explains how and why the inducement was fraudulent.

35

In ¶77(p), Dare alleges that Chicago Title used the "United States Mail Service in [its] scheme". Chicago Title and Horizon Title submitted the Policy through the mails. The allegation of the use of the mails is not an allegation of fraud. No further allegation is required.

### c) Dare Properly Alleged Chicago Title's Participation In the RICO Enterprise.

Chicago Title argues that Dare inadequately alleges Chicago Title's participation in the Chicago Title RICO Enterprise. In particular, Chicago Title claims that the Complaint inadequately alleges the "operation and management test", citing to <u>Univ. of Md. at Baltimore</u>, 996 F. 2nd 1534, 1539 (3rd Cit. 1993) ("Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result.")

The allegations against Chicago Title are not limited to its participation as a passive stander by; the allegations against Chicago Title are premised on its direct, affirmative and express participation in the issuance of the fraudulent Policy and consequential inducement of Dare to part with $5 million <u>and</u> on the imputation liability. Dare alleges that Chicago Title issued the Policy by which Dare was fraudulently induced to part with $5 million. (See Complaint at ¶¶ 33 – 52; 77; 79-84; 103-108; 122-128)

In further analysis of Chicago Title's argument, Dare turns to the United States Supreme Court opinion in <u>Reves v. Ernst & Young</u>, 507 U.S. 170 (1993), as

interpreted by the Third Circuit in <u>United States v. Parise</u>, 159 F.3d 790 (3d Cir.

1998). There, the Court held:

> According to Reves, '[i]n order to 'participate, directly or indirectly, in the conduct of such enterprises affairs,' one must have some part in directing those affairs. However, one need not hold a formal position within the enterprise in order to 'participate' in its affairs. Further, the 'operational or management' test does not limit RICO liability to upper management because 'an enterprise is 'operated' not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management.' (Reves at 184). In so holding the [Supreme Court] made clear that RICO liability may extend to those who do not hold a managerial position within an enterprise, but who do nonetheless knowingly further the illegal aims of the enterprise by carrying out the directive of those in control. (<u>Parise</u> at 796)

Dare's allegations are sufficient under the <u>Reeves</u> United States Supreme

Court test as adopted by the 3rd Circuit Court of appeals in <u>Parise.</u>

### d) RICO Statute of Limitations Has Not Run

Under New Jersey's "discovery rule," the accrual of a cause of action is

delayed until the "plaintiff was aware, or reasonably should have been aware of the

existence of a state of facts that may equate in the law with a cause of action."

<u>Yarchak v. Trek Bicycle Corp.,</u> 208 F. Supp. 2d 470, 479 (D.N.J. 2002) The statute

of limitations inquiry under the federal and state statutes is aimed at answering the

same question: under both statutes, a claimant's cause of action begins to accrue

when he or she has a reasonable opportunity to discover that a violation occurred.

Here, Dare was not aware, or reasonably should have been aware, of facts that would put it on notice of the possible racketeering action. See McCloskey Certification, Exhibit 2. A statute of limitations issue may only be resolved on a motion to dismiss if it is clear from the face of the complaint that the statute of limitations bars the claim. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994). There is no requirement that a plaintiff affirmatively plead facts in the complaint showing that the statute of limitations has not run. Clark v. Prudential Insurance Company of America, No. 08-6197 (D.N.J. 2010)

Here, the Complaint does not disclose on its face that Dare became aware of its RICO claim at any time prior to September of 2010.  In fact, Dare did not become aware of its RICO claim until September of 2010. Exhibit 2, McCloskey Certification.

## 11)    CHICAGO TITLE RICO ENTERPRISE IS AN ENTITY CAPABLE OF BEING SUED

An "enterprise" is defined by RICO to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Thus, "The RICO Act encompasses two kinds of enterprises: legal entities, and 'associations in fact.'" United States v. Turkette, 452 U.S. 576, 581-82 (1981)).

Dare alleges that Chicago Title, Horizon Title and SWJ carried on the illegal business through which they induced numerous victims, including Dare, to pay

into a fraudulent scheme by which they (Chicago Title, Horizon Title and SWJ) profited. Under New Jersey's Uniform Partnership Law, their association represents a partnership; a partnership is "an association of two or more persons to carry on as co-owners a business for profit." N.J.S.A. 42:1-6. A partnership is created when "persons join together their money, goods, labor or skill for the purpose of carrying on a trade, profession, or business, and where there is a community of interest in the profits or losses." Farris v. Farris Engineering Corp, et al., 81 A.2d 731, 737 (1951). Chicago Title RICO Enterprise, as a partnership and a legal association, is a legal entity capable of suing and being sued.

## V. CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Dare Investments respectfully request that the Court deny Chicago Title Insurance Company's Motion to Dismiss; to convert the Motion to Dismiss to one for Summary Judgment, and to enter judgment in favor of Dare Investments on breach of contract and bad faith claims. To the extent that the Court finds technical insufficiencies or deficiencies in the Complaint, Dare respectfully requests leave to amend the Complaint to cure them.

RESPECTFULLY SUBMITTED this 4th day of March, 2011.

THE LAW FIRM OF PETER STROJNIK, P.C.

_____
Peter Strojnik, Esq.,
Attorney *pro hac vice* (pending) for Plaintiff