

**RIKER DANZIG SCHERER HYLAND PERRETTI**LLP

ATTORNEYS AT LAW

Michael R. O'Donnell
Partner

<u>Direct:</u>
t: 973.451.8476
f: 973.451.8700
modonnell@riker.com
Reply to: Morristown

June 2, 2011

<u>**VIA ELECTRONIC FILING**</u>

Honorable Dickinson R. Debevoise
U.S. District Court, District of New Jersey
Martin Luther King Jr. Federal Building and
  Courthouse, Room 5083
50 Walnut Street
Newark, New Jersey 07102

Re:   <u>**Dare Investments, LLC v. Chicago Title Insurance Co., et al.,**</u>
      **Case No. 10-6088**

Dear Judge Debevoise:

In further support of Chicago Title Insurance Company's ("Chicago Title") motion to dismiss, with particular regard to its contention that the plaintiff's contract claim is subject to Exclusion 3(a) of the Title Policy, I enclose a recent decision of the Appeals Court of Massachusetts rendered on May 16, 2011 in the matter styled <u>The Pump Shop, Inc. v. Lawyers Title Insurance Corporation</u>, Docket No. 10-P-973 (2011). In <u>Pump Shop</u>, the Massachusetts Appeals Court found that there was no coverage for a tax lien under the policy as it was barred by Exclusion 3(a), which exempts from coverage any loss as a result of "[d]efects, liens, encumbrances, adverse claims or other matters: (a) created, suffered, assumed or agreed to by the insured claimant." In that matter, the insured discovered the tax lien before the closing and proceeded with the purchase of the property. The Massachusetts Appeals Court found that the insured therefore "assumed" the risk presented by the tax lien. This was so even though the title company was also aware of the tax lien. The same principle applies here with regard to Dare's knowledge of the Moccos' claims to ownership of the collateral mortgage at issue.

Headquarters Plaza, One Speedwell Avenue, Morristown, NJ 07962-1981 • t: 973.538.0800 f: 973.538.1984
50 West State Street, Suite 1010, Trenton, NJ 08608-1220 • t: 609.396.2121 f: 609.396.4578
500 Fifth Avenue, New York, NY 10110 • t: 212.302.6574 f: 212.302.6628
London Affiliate: 33 Cornhill, London EC3V 3ND, England • t: +44 (0) 20.7877.3270 f: +44 (0) 20.7877.3271
www.riker.com

Honorable Dickinson R. Debevoise
June 2, 2011
Page 2


Thank you for your consideration.

Respectfully yours,

Michael R. O'Donnell

Enclosure
cc: Peter Strojnik, Esq. (via ECF)
    Christopher Humphrey, Esq. (via ECF)



3 of 3 DOCUMENTS

THE PUMP SHOP, INC.[1] vs. LAWYERS TITLE INSURANCE CORPORATION.

[1] Now known as The Clear Light Center, Inc.

10-P-973

APPEALS COURT OF MASSACHUSETTS

2011 Mass. App. Unpub. LEXIS 648

May 16, 2011, Entered

**NOTICE:** DECISIONS ISSUED BY THE APPEALS COURT PURSUANT TO ITS RULE 1:28 ARE PRIMARILY ADDRESSED TO THE PARTIES AND, THEREFORE, MAY NOT FULLY ADDRESS THE FACTS OF THE CASE OR THE PANEL'S DECISIONAL RATIONALE. MOREOVER, RULE 1:28 DECISIONS ARE NOT CIRCULATED TO THE ENTIRE COURT AND, THEREFORE, REPRESENT ONLY THE VIEWS OF THE PANEL THAT DECIDED THE CASE. A SUMMARY DECISION PURSUANT TO RULE 1:28, ISSUED AFTER FEBRUARY 25, 2008, MAY BE CITED FOR ITS PERSUASIVE VALUE BUT, BECAUSE OF THE LIMITATIONS NOTED ABOVE, NOT AS BINDING PRECEDENT.

**PRIOR HISTORY:** Pump Shop, Inc. v. Lawyers Title Ins. Corp., 2011 Mass. App. LEXIS 763 (Mass. App. Ct., May 16, 2011)

**DISPOSITION:** [*1] Judgment affirmed.

**JUDGES:** McHugh, Smith & Carhart, JJ.

**OPINION**

**MEMORANDUM AND ORDER PURSUANT TO RULE 1:28**

In this appeal, the plaintiff, The Pump Shop, Inc. (Pump Shop), challenges an order of the Superior Court granting the defendant's motion for summary judgment. We affirm.

Procedural history. Pump Shop initially filed suit against Lawyers Title Insurance Corporation (LTIC) alleging breach of contract, breach of the covenant of good faith and fair dealing, and violation of G. L. c. 93A in connection with a title insurance policy issued to Pump Shop by LTIC. LTIC thereafter moved for summary judgment. A judge granted LTIC's motion for summary judgment, and this appeal from Pump Shop followed.

Background. Pump Shop sought to purchase a piece of property from TLS Realty Corp. (TLS), whose owner, Thomas Sogard, provided financing for the purchase. Prior to closing, scheduled for November, 2005, Pump Shop learned that TLS had not filed Massachusetts income taxes for the years 2001 through 2004.[2]

[2] Under Massachusetts law, whenever a corporation sells or transfers all or substantially all of its assets located in the Commonwealth, a three-year lien on the assets for any State taxes owed by the corporation [*2] arises by operation of law in favor of the Commonwealth. G. L. c. 62C, § 51. The statute terminated the lien three years after the closing.

Worried about the possible consequences to itself due to the tax lien, Pump Shop executed an agreement with TLS and Sogard identified as the "Corporate Excise Tax Lien Indemnity and Escrow Agreement." This agreement required both TLS and Sogard to indemnify Pump Shop and LTIC for any damages resulting from the tax lien, and also required TLS to seek a waiver of the lien from the Commonwealth.

Case 2:10-cv-06088-DRD-PS   Document 41   Filed 06/02/11   Page 4 of 5 PageID: 1137

Page 2
2011 Mass. App. Unpub. LEXIS 648, *

Despite the fact that TLS had not obtained a waiver of the lien, Pump Shop went through with the closing on the property. LTIC issued a title insurance policy to Pump Shop at the time of closing. The policy's terms required LTIC to pay out within thirty days of when "liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations . . . ." Exclusions to the policy's payment terms exempted from coverage any loss as a result of "3. [d]efects, liens, encumbrances, adverse claims or other matters: (a) created, suffered, assumed or agreed to by the insured claimant . . . [or] (c) resulting in no loss or damage [*3] to the insured claimant."

Pump Shop made payments on its mortgage to TLS for the first four months, but made no payments after June, 2006. In the spring of 2006, Pump Shop sought to refinance its mortgage for the property with Athol Savings Bank, but the application was denied because of the cloud on the title caused by the outstanding tax lien. Sogard then agreed that Pump Shop could deduct from its mortgage payments any losses or expenses incurred as a result of Pump Shop's inability to refinance. Sogard further offered to permit Pump Shop to make no further mortgage payments until the three-year lien expired as a matter of law. However, Sogard later sought to foreclose on the mortgage in December, 2007. Pump Shop counterclaimed. In January, 2008, in the wake of the foreclosure filing, Pump Shop sought relief from LTIC through a claim under the policy. Pump Shop was unsatisfied with LTIC's actions and filed this suit, claiming that under the insurance policy LTIC had issued, LTIC was required to pay Pump Shop for the losses it had suffered as a result of the unmarketable title to the property. The tax lien expired by operation of law in November, 2008.

Discussion. Pump Shop argues [*4] that under the terms of the title insurance policy, LTIC is obligated to pay damages to Pump Shop for the loss occasioned by the defect in title to the premises as a result of the lien. LTIC argues that they are under no obligation to pay because of either of two stated exclusions within the policy: namely that Pump Shop expressly agreed to the encumbrance, invoking the exclusion described in paragraph 3(a) of the policy; and that Pump Shop has suffered no cognizable loss or damages, invoking the exclusion described by paragraph 3(c) of the policy. The Superior Court judge ordered summary judgment in favor of LTIC for these reasons. We agree.

When interpreting an insurance contract, we "consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." Hazen Paper Co. v. United States Fid. & Guar. Co., 407 Mass. 689, 700, 555 N.E.2d 576 (1990). Unambiguous terms are construed in their usual and ordinary sense.

Hakim v. Massachusetts Insurers' Insolvency Fund, 424 Mass. 275, 281, 675 N.E.2d 1161 (1997). "[A]mbiguous words or provisions are to be resolved against the insurer." City Fuel Corp. v. National Fire Ins. Co. of Hartford, 446 Mass. 638, 640, 846 N.E.2d 775 (2006).

Agreeing to [*5] the encumbrance. The language of the title insurance policy reads, "The following matters are expressly excluded from the coverage of the policy and [LTIC] will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of . . . 3. Defects, liens, encumbrances, adverse claims or other matters: (a) created, suffered, assumed or agreed to by the insured claimant."

There is nothing ambiguous about the language of paragraph 3(a). "Assume" means "to take to or upon oneself," "to invest oneself formally with," or "to take over as one's own." Webster's Third New Intl. Dictionary 133 (1993). When Pump Shop closed on the property, it assumed the lien. The facts admit to no other interpretation, despite Pump Shop's dubious arguments that the lien did not exist until after closing, and therefore could not have been taken on.[3] Pump Shop assumed the tax lien not only knowingly, but quite deliberately and with preparation, given that it entered into the separate indemnity agreement to protect itself from just such an eventuality. Pump Shop cannot now argue that it was unaware of the lien, and that this exclusion should not apply.

[3] Pump Shop's argument that the lien did not exist [*6] until after the closing was not raised at the trial court level. This issue is therefore waived, and need not be considered by us. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See Commonwealth v. Marchionda, 385 Mass. 238, 242, 431 N.E.2d 177 (1982) ("An issue not fairly raised before the trial judge will not be considered for the first time on appeal").

Whether damages have been fixed. Paragraph 3(c) of the insurance contract's "Exclusions from Coverage" section disclaims coverage for "3. Defects, liens, encumbrances, adverse claims or other matters . . . (c) resulting in no loss or damage to the insured claimant." Again, the language is unambiguous. Pump Shop admits in its brief that damages remain unfixed. However, its argument that this should require dismissal without prejudice, with the case to be refiled pending resolution of the underlying issues and cases, is inapposite. No damages will ever be fixed. The lien has expired by operation of law, meaning that the title on the property is now clear. Further, far from having any past damages as a result of the clouded title, the facts emerging from the dispute have led to Pump Shop's enjoying the use of the property for over three years [*7] without paying anything at all on its original mortgage to Sogard.[4]

4    We do not consider the arguments made in the plaintiff's reply brief, as those arguments were not raised below or in its principal brief.

Judgment affirmed.

By the Court (McHugh, Smith & Carhart, JJ.),

Entered: May 16, 2011.