| | |
|---|---|
| DARE INVESTMENTS, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>CHICAGO TITLE INSURANCE COMPANY, a Missouri domiciled insurer; HORIZON TITLE AGENCY, Inc., a New Jersey domiciled company; CHICAGO TITLE RICO ENTERPRISE, a racketeering enterprise,<br><br>Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>Case Action No.2:10-CV-06088(DRD)(MAS)<br><br>Hon. Dickenson Debevoise, U.S.D.J.<br>Hon. Michael A. Shipp, U.S.M.J. |

## CHICAGO TITLE INSURANCE COMPANY'S BRIEF IN SUPPORT OF MOTION FOR REVOCATION OF PRO HAC VICE ADMISSIONS AND DISQUALIFICATION OF COUNSEL

RIKER DANZIG SCHERER HYLAND &
  PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

Federal Bar No. 7088

Attorneys for Defendant,
Chicago Title Insurance Company

Of Counsel:
  Michael R. O'Donnell, Esq.

On the Brief:
  Derrick R. Freijomil, Esq.
  Joshua S. Jacobs, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ........................................................................................3

I.   STROJNIK SR.'S PRE-PRO HAC VICE APPLICATION DISCIPLINARY CHARGES AND COMPLAINTS ..................................................................3

    A.   The 2009 Claims ..................................................................................3

    B.   The 2010 Claim ....................................................................................4

II.  THE PRO HAC VICE APPLICATION HERE .............................................5

III. THE PRO HAC VICE APPLICATIONS IN THE UTAH ACTION ..............5

IV.  APRIL 2011 SANCTIONS ON THE 2009 CHARGES ...................................6

V.   MAY 2011 ETHICAL CHARGE ....................................................................6

VI.  OCTOBER/NOVEMBER 2011 SANCTIONS ON THE 2010 CHARGE .......6

VII. RELEVANT TRANSACTIONS IN THIS MATTER .....................................7

    A.   Strojnik Sr. Withholds Relevant Documents Without Any Plausible Justification ..........................................................................................7

    B.   Strojnik Sr. Attempts to Force Depositions of Witnesses Without Producing Any Documents ....................................................................8

    C.   Strojnik Sr. Concocts a Story to Avoid Disclosing His Suspension to Counsel and the Court ...........................................................................9

VIII. NOTICE OF STROJNIK SR.'S DISCIPLINARY SANCTIONS ...................10

ARGUMENT ............................................................................................................10

A.   LEGAL STANDARD ...................................................................................10

B.   STROJNIK SR.'S PRO HAC VICE ADMISSION MUST BE REVOKED ...12

C.   STROJNIK JR.'S ADMISSION SHOULD BE REVOKED, AND HUMPHREY SHOULD BE DISQUALIFIED AS COUNSEL IN THIS MATTER ...............15

CONCLUSION ........................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

In Re Caruso,
    414 F. Supp. 43 (D.N.J. 1976) ........................................................................10

Chambers v. Heidelberg, USA, Inc.,
    Civil No. 04-583 RBK, 2007 U.S. Dist. LEXIS 38819 (D.N.J. May 25, 2007) ........................................................................14

Chambers v. NASCO, Inc.,
    501 U.S. 32 (1991) ........................................................................10

Data Sys. Analysts, Inc. v. The Netplex Group, Inc.,
    187 F.R.D. 181 (D.N.J. 1999) ........................................................................11, 14

Johnson v. Trueblood,
    629 F.2d 302 (3d Cir. 1980) ........................................................................11

Kohlmayer v. Nat'l R.R. Passenger Corp.,
    124 F. Supp. 2d 877 (D.N.J. 2000) ........................................................................12

In re PMD Enters.,
    215 F. Supp. 2d 519 (D.N.J. 2002) ........................................................................10

**RULES**

Ariz. R. Sup. Ct. Rule 42, Ethical Rule 1.7(a) ........................................................................6

Ariz. R. Sup. Ct. Rule 42, Ethical Rule 1.8(a) ........................................................................6

Ariz. R. Sup. Ct. Rule 42, Ethical Rule 1.9(a) ........................................................................6

Ariz. R. Sup. Ct. Rule 42, Ethical Rule 1.9(c) ........................................................................6

Ariz. R. Sup. Ct. Rule 42, Ethical Rule 8.4(d) ........................................................................6

D.N.J. L. Civ. R. 101.1 ........................................................................1

D.N.J. L. Civ. R. 101.1(c) ........................................................................11, 12

D.N.J. L. Civ. R. 103.1 ........................................................................1, 5

D.N.J. L. Civ. R. 104.1 ................................................................................................1, 5

D.N.J. L. Civ. R. 104.1(b)(1) ......................................................................................11, 12

D.N.J. L. Civ. R. 104.1(d) ................................................................................................11

D.N.J. L. Civ. R. 104.2 .....................................................................................................5

RPC 3.1 ............................................................................................................................11

RPC 3.3(a)(1) ...................................................................................................................11

RPC 3.3(a)(5) ...................................................................................................................11

RPC 3.4(a) ........................................................................................................................11

RPC 3.4(c) ........................................................................................................................11

RPC 3.4(d) ........................................................................................................................11

RPC 8.1 ............................................................................................................................11

RPC 8.3(a) ........................................................................................................................11

RPC 8.4(a) ........................................................................................................................11

RPC 8.4(c) ........................................................................................................................11

RPC 8.4(d) ........................................................................................................................11

**PRELIMINARY STATEMENT**

Defendant Chicago Title Insurance Company ("Chicago Title") respectfully submits this brief in support of its motion for an Order pursuant to Rules 101.1, 103.1, and 104.1 of the Local Rules of the District Court for the District of New Jersey revoking the <u>pro</u> <u>hac</u> <u>vice</u> admission of Plaintiff's counsel, Peter Strojnik ("Strojnik Sr."). Because he is unable to show his lack of knowledge of Strojnik Sr.'s ethical transgressions, Chicago Title also moves to revoke the <u>pro</u> <u>hac</u> <u>vice</u> admission of Strojnik Sr.'s son, Peter K. Strojnik (Strojnik Jr."). Finally, local co-counsel for Dare Investments, LLC ("Dare"), Christopher Humphrey ("Humphrey"), should be disqualified from representing Dare, given that he, as local counsel, is responsible for the ethical transgressions of counsel that he sponsored for admission to this Court.

Since his very first involvement in this action, Strojnik Sr. has committed a series of acts that, at best, were clear misrepresentations or, at worst, a fraud on this Court. The number of infractions and the attempted cover-up are breathtaking in their scope:

- Despite his obligation to do so, Strojnik Sr. failed to disclose in his <u>pro hac vice</u> application the *two* disciplinary proceedings *pending* against him and the *three* sanctions *previously imposed* on him.

- Strojnik Sr. thereafter breached his duty to disclose a *new* disciplinary proceeding brought against him in May 2011 and his being *sanctioned* and put on probation in April 2011 for multiple ethical violations found by the Arizona Supreme Court.

- Strojnik Sr. further failed to "promptly" disclose *additional sanctions* against him. He waited until November 21, 2011 to notify this Court of his *thirty-day suspension from the practice of law* for other ethical violations in Arizona, despite having *signed an October 20, 2011 consent* to the sanction.

- Against this backdrop, Strojnik Sr. has continued his misconduct in this litigation:
    - In 2009, Dare turned over to the very party that sued it Dare's communications with its counsel in the underlying transaction. Yet, since the inception of this litigation, Strojnik Sr. has refused to produce those communications here, no doubt because those communications

- (subpoenaed from the third-party) completely undermine Dare's sole claim for title coverage here. It was not until recently that Strojnik Sr. agreed to produce those documents, but tried to condition the production upon an agreement as to their admissibility at trial, an unreasonable and illogical requirement that necessitated the Court's intervention to remove.

  o Strojnik Sr. further refused to produce *his* communications with the same party and its counsel, claiming that they were protected from disclosure by some, unidentified (but non-existent) privilege. These presumably will be produced with the above documents.

  o Strojnik Sr. *duped Chicago Title's counsel into submitting a request to this Court* for a thirty-day discovery extension based on his representation that he was taking a vacation (at his wife's request) for the entire month of December 2011. That was a clear misrepresentation, as he was suspended from the practice of law for those thirty days.

  o During a November 15, 2011 conference call – after Strojnik Sr. had consented to the thirty-day suspension on October 20, 2011, and the November 7, 2011 Final Judgment and Order confirming the suspension was issued by the Arizona Supreme Court – Strojnik Sr. *failed to disclose the true reason* for the discovery extension request, *despite this Court specifically asking him*.

All of the foregoing acts and omissions necessitate the immediate revocation of Strojnik Sr.'s pro hac vice admission.

Furthermore, there is more than ample basis to believe that Strojnik Jr. was aware at all times of the ethical violations and sanctions imposed against his father. Yet, he did nothing. In addition to being Strojnik Sr.'s son, Strojnik Jr. was brought into this action to "cover" for his father during his suspension, as he did in another federal action. Finally, as a matter of law, Humphrey, who, as local counsel, is legally responsible for the acts and omissions of Strojnik Sr. and Strojnik Jr., should be disqualified on that basis alone. Indeed, it is difficult to believe that Humphrey only first learned of Strojnik Sr.'s ethical infractions and sanctions when Strojnik Sr.'s November 21, 2011 letter was sent to this Court, which letter itself did not specify the *additional* ethical violations and

sanctions against Strojnik Sr. Accordingly, the pro hac admission of Strojnik Sr. and Strojnik Jr. should be revoked, and Humphrey should be disqualified.

## STATEMENT OF FACTS

I.  **STROJNIK SR.'S PRE-PRO HAC VICE APPLICATION DISCIPLINARY CHARGES AND COMPLAINTS**

Prior to his pro hac vice application having been filed on December 6, 2010, Strojnik Sr. was the subject of **18 public disciplinary charges and co mplaints in Arizona**. See Nov. 21, 2011 Discipline Records for Peter Strojnik, State Bar of Arizona ("Discipline Records") [Ex. 1].[1] Of those, one charge received in 1986 resulted in a censure, another charge received in 2006 resulted in diversion,[2] two charges received in 2009 were pending, and one received in June 2010 (based on two separate incidents) was pending. See id.

A.  **The 2009 Claims**

Two different disciplinary complaint charge forms were filed against Strojnik Sr. in 2009, one on February 23, 2009, and the other on July 31, 2009. See id. These two matters can be summarized as follows:

> Mr. Strojnik represented a party against a former client without the former client's appropriate consent. He also arranged the merger of his corporation with his client's company, which is a business transaction. He failed to appropriately advise the client to seek the advice of independent counsel and failed to get informed consent for the representation. He also engaged in conduct prejudicial to the administration of justice by filing a pleading and then negotiating with counsel for the withdrawal of that pleading based on the payment of his disputed fees.

---

[1] Exhibits are those attached to the Dec. 21, 2011 Certif. of Michael R. O'Donnell ("O'Donnell Cert.").
[2] The Arizona Attorney Diversion Guidelines explain that a diversion is an alternative disciplinary sanction designed to modify the attorney's conduct that failed to comply with its Rules of Professional Conduct.

> In the second matter, Mr. Strojnik created conflicts of interest by filing suit against persons whom he otherwise represented by being general counsel for a joint venture, and by filing suit on a matter directly arising from an amended joint venture that he prepared. He amended the joint venture, in part, in order to waive claims other joint venture members may have had against him and his wife. His status as lawyer for the joint venture allowed him to obtain confidential information about joint venture members. He then used this information to their disadvantage by filing a lawsuit against them.

See 09-0314 Disposition Summary [Ex. 2].

### B. The 2010 Claim

Another disciplinary charge against Strojnik Sr. was filed on June 28, 2010, based on two separate incidents that occurred in 2009-2010. See Discipline Records [Ex. 1]; Oct. 20, 2011 Agreement for Discipline by Consent [Ex. 5]. These two incidents are detailed in the Agreement for Discipline by Consent and are summarized as follows:

> Mr. Strojnik [Sr.] sent a letter to a represented person that had no purpose other than to embarrass, delay, or burden him, and resulted in the filing of a motion to remove Mr. Strojnik as counsel and made it necessary for the court to address the issue. He filed a motion to compel and for sanctions and a complaint for declaratory judgment, both of which were frivolous and prejudicial to the administration of justice. His treatment of deponent during deposition was "insulting and shockingly insensitive." Finally, Mr. Strojnik advised his client to not attend an IME, but he failed to advise her that she could be sanctioned for not attending. Her failure to attend the IME resulted in the defendant filing a motion to compel, the IME had to be reset, and his client was ordered to pay the costs incurred by the defense counsel.

See 10-1223 Disposition Summary [Ex. 4]; see also Oct. 20, 2011 Agreement for Discipline by Consent [Ex. 5] (detailing same).

II. **THE PRO HAC VICE APPLICATION HERE**

On December 6, 2010, Humphrey submitted pro hac vice applications on behalf of Strojnik Sr. and Strojnik Jr. Therein, Humphrey certified to this Court that it was "[his] understanding that mo [sic] disciplinary proceedings are pending against either attorney seeking admission pro hac vice and they are members in good standing of [sic] in which they are admitted." See Dec. 6, 2010 Humphrey Certif. [Ex. 7] at ¶ 4. Humphrey further certified that he "shall be held responsible for the conduct of the case" and "for the conduct of the attorneys admitted pro hac vice." See id. at ¶¶ 5-6. Strojnik Jr. certified: "I am in active status and in good standing in both jurisdictions and there are no disciplinary proceedings pending against me." See Dec. 5, 2010 Strojnik Jr. Certif. [Ex. 7] at ¶ 1. Notably, however, Strojnik Sr. merely certified: "I am on active status and in good standing." See Dec. 5, 2010 Strojnik Sr. Certif. [Ex. 7]. Strojnik Sr. thus failed to disclose the two disciplinary proceedings pending against him or three sanctions previously imposed on him. See id. Ignorant of these critical admissions, this Court granted Strojnik Sr. and Strojnik Jr. pro hac vice admission, confirming that (1) they were bound by Local Civil Rules 103.1 and 104.1 and (2) Humphrey would be held responsible for their conduct and the conduct of the case. See March 4, 2011 Order [Ex. 8].

III. **THE PRO HAC VICE APPLICATIONS IN THE UTAH ACTION**

In a different case that Dare brought against the law firm of Arent Fox LLP in the District of Utah (the "Utah Action"), Strojnik Sr. sought pro hac vice admission on March 18, 2011, in which he stated: "In 1990, Applicant [Strojnik Sr.] was censured by the Arizona Supreme Court for conflict of interest." See March 16, 2011 Strojnik Sr. PHV App. in Utah Action at ¶ 1 [Ex. 9]. No other disciplinary proceedings were

4188991.7                                            5

mentioned in Strojnik Sr.'s application to that Court. See id. On September 26, 2011, anticipating his father's forthcoming suspension, Strojnik Jr. filed for pro hac vice admission in the Utah Action. See Sept. 26, 2011 Strojnik Jr. PHV App. in Utah Action [Ex. 10].

## IV.  APRIL 2011 SANCTIONS ON THE 2009 CHARGES

As to the 2009 charges, the Arizona Supreme Court found that Strojnik Sr. violated Ethical Rules 1.7(a), 1.8(a) and (h)(1), 1.9(a) and (c)(1) and 8.4(d) of Rule 42, Ariz. R. Sup. Ct., which pertain to duties to former clients and conflicts of interest with current clients. See 09-0314 Disposition Summary [Ex. 2]. Pursuant to an April 30, 2011 Judgment and Order entered by consent, Strojnik Sr. agreed to (i) a reprimand of two years of probation, (ii) participate in Arizona State Bar programs, and (iii) pay the costs associated with disciplinary proceedings. See April 30, 2011 Judgment & Order [Ex. 3].

## V.  MAY 2011 ETHICAL CHARGE

Another disciplinary charge was filed against Strojnik Sr. on May 19, 2011 for "Trust Acct-Bank Error, State Bar of Ariz[.]" See Discipline Records, Ex. 1 to the O'Donnell Cert. That matter has been identified as dismissed. See id.

## VI.  OCTOBER/NOVEMBER 2011 SANCTIONS ON THE 2010 CHARGE

On October 20, 2011, Strojnik Sr. signed the Agreement for Discipline by Consent with regard to the two matters addressed in the 2010 ethical charge, wherein he consented to a 30-day suspension from the practice of law starting on December 3, 2011, for violating the Arizona Rules of Professional Conduct. See Oct. 20, 2011 Agreement for Discipline by Consent [Ex. 5]. On November 7, 2011, a Final Judgment and Order

was entered thereon, confirming the 30-day suspension, as well as two years of probation and payment of costs. See Nov. 7, 2011 Final Judgment & Order [Ex. 6].

VII.   RELEVANT TRANSACTIONS IN THIS MATTER

    A.   **Strojnik Sr. Withholds Relevant Documents Without Any Plausible Justification**

Apart from Strojnik Sr.'s multiple ethical violations and sanctions, his improper conduct has manifested itself in this action. First, in September 2011, Strojnik Sr. admitted that Dare possessed "a lot" of communications with counsel for Peter Mocco ("Mocco"), the party that had been suing Dare (which gave rise to Dare's title coverage claim that is the basis for this litigation). See Sept. 28, 2011 Letter of D. Freijomil to Strojnik Sr. [Ex. 11]. Despite acknowledging that initially he did not consider those communications privileged, Strojnik Sr. said he was considering whether joint defense protection applied to some of them. See id. Chicago Title disagreed and demanded that they be produced, but at a minimum expected the documents not at issue to be produced and the other documents to be logged. See id. No such documents or log have been produced by Dare. See O'Donnell Cert. at ¶3.

As set forth in Chicago Title's application to file an application to compel Dare to produce its attorney-client communications from the underlying transaction, Mocco produced, in response to a subpoena, communications Dare had with Mocco that Strojnik Sr. had refused to turn over. See Doc. No. 64. Those communications show that Dare's principal had also willingly turned over hundreds of attorney-client communications to Mocco, thereby waiving the attorney-client privilege that Dare has been asserting throughout this matter. See id. Nonetheless, Strojnik Sr. informed other parties subpoenaed by Chicago Title that Dare was asserting such protection, preventing those

deponents from producing some of the very same communications that Dare willingly had turned over to Mocco. See Oct. 18, 2011 Strojnik Sr. letter to G. Pratt, et al. [Ex. 12]. The recent productions by Mocco also included some communications Strojnik Sr. had with Mocco's counsel as to this litigation and the matters at issue, which communications have yet to be produced in this litigation. See O'Donnell Cert. at ¶4.

It was not until recently that Strojnik Sr. relented on his position and agreed to produce these documents, but only on the condition that Chicago Title stipulate now that all those documents are admissible at trial. See id. at ¶5. Given the current stage of the litigation (in the beginning of discovery) and that Chicago Title likely has not seen all these documents, it obviously could not so stipulate, requiring that it file an application with the Court to have the documents produced now. See id. at ¶5. On December 19, 2011, the Court ordered that those documents and any privilege log be produced now and that admissibility thereof would be decided at or shortly before trial. See id. at ¶6. Chicago Title awaits receipt of the same. See id. at ¶6.

### B. Strojnik Sr. Attempts to Force Depositions of Witnesses Without Producing Any Documents

Strojnik Sr. has also abused the discovery rules to gain an advantage in depositions. Specifically, the parties agreed to mutual document productions on November 11, 2011, and sought to exchange them electronically (as pushed by Strojnik Sr. early in this action) as the depositions of a Chicago Title representative and the title agent were scheduled for November 17 and 18. See O'Donnell Cert. at ¶2. Chicago Title's production was too voluminous to email, so it sent it by overnight mail on November 11, 2011. See Nov. 15, 2011 D. Freijomil Letter to Court with attachments [Ex. 15]. Strojnik Sr., however, sent Dare's documents "by US Mail in electronic form."

See id. at p.21 of the Nov. 11, 2011 Strojnik Sr. Letter. Strojnik Sr. said he would also produce about 5,500 emails "seasonably" (an undefined term), but did not identify what documents he was withholding, nor did he provide a privilege log. See id. at p.20. This necessitated an emergent call with the Hon. Michael A. Shipp, U.S.M.J. On November 15, 2011, Judge Shipp granted Chicago Title's request to have the depositions adjourned as Dare had not produced any documents at the time and directed the parties to complete all productions and resolve all discovery issues before proceeding with depositions. See Dec. 21, 2011 Cert. of Derrick R. Freijomil ("Freijomil Cert.") at ¶2. Judge Shipp also denied Strojnik Sr.'s request to email that evening the documents he chose to mail three days prior and force Chicago Title to go forward with the depositions in just 36 hours thereafter. See id. at ¶3. To date, Chicago Title has not received a privilege log or the referenced 5,500 emails. See O'Donnell Cert. at ¶3.

    C.    **Strojnik Sr. Concocts a Story to Avoid Disclosing His Suspension to Counsel and the Court**

During this same time, Strojnik Sr. also asked counsel that we not conduct any depositions in December 2011, because he was taking a vacation for the entire month at the behest of his wife. See O'Donnell Cert. at ¶7; see also Oct. 26, 2011 Letter from D. Freijomil to Strojnik Sr.[Ex. 13]; Nov. 17, 2011 Letter from Strojnik Sr. to M. O'Donnell [Ex. 16]. Taking Strojnik Sr. at his word, Chicago Title submitted an application to the Court requesting a thirty-day extension of discovery. See Nov. 7, 2011 M. O'Donnell Letter-Request [Ex. 14]. During the November 15, 2011 conference mentioned above, Judge Shipp specifically asked Strojnik Sr. if there was anything further he wished to add as to the application Strojnik Sr. provided no further information, failing to disclose that

he had just agreed to the sanction of a one-month suspension of his license to practice law. See Freijomil Cert. at ¶4.

### VIII. NOTICE OF STROJNIK SR.'S DISCIPLINARY SANCTIONS

By letter dated November 17, 2011, Strojnik Sr. informed Chicago Title's counsel that he was "tak[ing] this opportunity to suspend [his] practice for 30 days and thus resolve some festering issues with the Arizona State Bar." See Nov. 17, 2011 Strojnik Sr. Letter [Ex. 16]. Strojnik Sr. stated that Strojnik Jr. would be handling the "discovery and other issues." See id. In a November 21, 2011 letter to the Court, Strojnik Sr. merely enclosed "an order suspending [his] practice for 30 days beginning December 3, 2011" and stated that "[d]uring [his] absence, matters will be handled by [his] son and co-counsel in this matter," Strojnik Jr. See Nov. 21, 2011 Strojnik Sr. Letter [Ex. 17]. This is the only notice Strojnik Sr., Strojnik Jr., or Humphrey gave to this Court disclosing Strojnik Sr.'s ethical violations and sanctions. See O'Donnell Cert. at ¶8.

### ARGUMENT

#### A. LEGAL STANDARD

This Court has the inherent power "'to control admission to its bar and to discipline attorneys who appear before it.'" In re PMD Enters., 215 F. Supp. 2d 519, 530 (D.N.J. 2002) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)); see also Local Civ. R. 104.1. Such discipline includes revocation of pro hac vice admission, which "is a privilege, and as such, the privilege may be revoked as a sanction for unethical behavior." See PMD Enters., 215 F. Supp. 2d at 530-531 (citations omitted). Where an attorney is subject to discipline in another jurisdiction, this Court is not limited to the sanction issued by the other jurisdiction and may impose a greater sanction. See In Re Caruso, 414 F. Supp. 43 (D.N.J. 1976).

Local Civil Rule 104.1(d) permits this Court to sanction and suspend an attorney from practicing before it for misconduct, which includes any "act or omission" by an attorney that violates New Jersey's Rules of Professional Conduct, regardless of whether "the act or omission occurred in the course of an attorney-client relationship." See also Local Civil Rule 103.1(a); Johnson v. Trueblood, 629 F.2d 302, 304 (3d Cir. 1980) ("[A]t a minimum, a violation of any disciplinary standard applicable to members of the bar of the court would justify revocation of pro hac vice status."); Data Sys. Analysts, Inc. v. The Netplex Group, Inc., 187 F.R.D. 181, 183-184 (D.N.J. 1999) (same). There are a number of Rules of Professional Conduct implicated here. See RPCs 3.1 (frivolous legal positions), 3.3(a)(1) & (a)(5) (candor to Court), 3.4(a), (c), & (d) (concealing material information to opposing counsel, disobeying applicable Court Rules, and failing to make reasonably diligent effort to comply with discovery requests), 8.1 (affirmative statements/omissions on bar admission applications or concerning disciplinary matters), 8.3(a) (attorney obligation to give notice of RPC violations), and 8.4(a), (c), & (d) (violating RPCs or knowingly assisting another to do so).

Local Civil Rule 101.1(c) requires counsel seeking pro hac vice admission to certify as to all discipline previously imposed and all pending disciplinary proceedings, with greater detail needed for pending disciplinary proceedings and sanctions within the last five years. Once admitted, the attorney has the "continuing obligation" to "promptly" notify the court of "the disposition made of pending charges or of the institution of new disciplinary proceedings" and "upon being subjected to public discipline by any other court. . . ." See id.; Local Civil Rule 104.1(b)(1).

### B. STROJNIK SR.'S PRO HAC VICE ADMISSION MUST BE REVOKED

Strojnik Sr.'s actions warrant revocation of his pro hac vice admission as they evidence a series of RPC violations, not the least of which is a lack of candor to this Court and counsel. First, his pro hac vice admission was based on deliberate misrepresentations. Not only did Strojnik Sr.'s certification fail to provide the required sworn statement as to no pending ethics complaints and no prior disciplinary sanctions, it hid (i) his 1990 censure/reprimand; (ii) the 2006 complaint against him that resulted in a diversion; (iii) the two 2009 ethical complaints pending against him; and (iv) the one ethics complaint (based on two events) from 2010 also pending against him at the time. Further evidencing his intent to withhold such information are the facts that his son certified that "there are no disciplinary proceedings pending against [him]" – a statement conspicuously absent from Strojnik Sr.'s application. Humphrey, perhaps unwittingly but nevertheless inexcusably, further certified that there was "[no] disciplinary proceedings against either attorney." On this ground alone, Strojnik Sr.'s pro hac vice admission must be vacated and revoked. See Kohlmayer v. Nat'l R.R. Passenger Corp., 124 F. Supp. 2d 877 (D.N.J. 2000) (denying pro hac vice admission based on what court considered unprofessional, but not unethical, behavior even though attorney was in good standing and not suspended or disbarred).

Second, once admitted pro hac vice, Strojnik Sr. failed to satisfy his continuing obligation to "promptly" advise the Court as to "the disposition made of pending charges or of the institution of new disciplinary proceedings" and "upon being subjected to public discipline by any other court. . . ." See Local Civil Rules 101.1(c) & 104.1(b)(1). This cover-up continued when Strojnik Sr. failed to disclose the May 19, 2011 ethical charge

filed against him and failed to disclose the April 30, 2011 Judgment and Order, sanctioning him for ethical violations resulting from his 2009 charges. Moreover, **by October 20, 2011**, Strojnik Sr. had agreed to the imposition of a 30-day suspension and continued probation for his multiple violations of ethical rules, which were pending for quite some time. Yet, Strojnik Sr. **waited until November 21, 2011** to advise the Court of his suspension from the practice of law. Finally, Strojnik Jr.'s appearance in the Utah Action and assisting his father here during his suspension evidences that he was aware of his father's situation all along.

Third, as detailed above, Strojnik Sr.'s transgressions have continued to this day. Strojnik Sr. has knowingly withheld from production communications he has had with counsel for Mocco and attorney-client communications Dare had with its counsel in the underlying transaction that Dare's principal willingly turned over to Mocco in 2009. He continued to assert a bogus privilege claim to hide these documents, the disclosure of which would have shown no such privilege exists and revealed detailed factual admissions that rebut Dare's claim for title coverage here, and which required Chicago Title to file an application to compel with this Court. While he finally relented on this unsupportable position (after wasting significant time and effort of Chicago Title's counsel), he attempted to condition production on a stipulation as to the admissibility at trial of all the documents he was going to produce. This equally untenable position required Court intervention to remove.

Strojnik Sr. has further attempted to force depositions of Chicago Title's representative and the policy-issuing agent without having produced a single document, necessitating this Court's emergent intervention to halt such improper "deposition-by-

4188991.7                                  13

ambush" tactics. Indeed, Strojnik Sr.'s request to produce documents by email on the night of the conference call was an admission that he could have done so when they were due days before. Moreover, neither the 5,500 emails Strojnik Sr. identified, nor the required privilege log has been provided to date.

Strojnik Sr. also deceived Chicago Title into make a submission to this Court to request a discovery extension based on Strojnik Sr.'s lie, when he claimed he was taking a "vacation" for the month of December 2011, knowing all the while that he was prohibited from practicing law by reason of the sanction for his unethical behavior in Arizona. To make matters worse, when asked directly by the Court as to his input on the extension request during the November 15, 2011 conference call, **Strojnik Sr. said nothing. He didn't breathe a word of his ethical violations and suspension**. His "silence" was inexcusable.

Finally, the nature and severity of Strojnik Sr.'s actions with regard to the 2009 and 2010 charges, in which he was found to have violated multiple rules of professional conduct, further support revocation of his pro hac vice admission. This is particularly so where Strojnik Sr.'s prior infractions included improper submissions to the Court like those he made and orchestrated here. This type of repeat violations of New Jersey's Rules of Professional Conduct leaves no doubt that Strojnik Sr.'s pro hac vice admission must be revoked. See, e.g., Chambers v. Heidelberg, USA, Inc., Civil No. 04-583 RBK, 2007 U.S. Dist. LEXIS 38819 (D.N.J. May 25, 2007) (revoking pro hac vice admission appropriate where attorney filed motion with false electronic signature of local counsel, violating RPCs); Data Sys. Analysts, 187 F.R.D. 181 (revocation of pro hac vice admission proper where attorney violated RPCs, including duty of candor to the Court).

### C. STROJNIK JR.'S ADMISSION SHOULD BE REVOKED, AND HUMPHREY SHOULD BE DISQUALIFIED AS COUNSEL IN THIS MATTER

Strojnik Jr.'s involvement in the Utah Action and here shows that he knew of the ethical charges and sanctions imposed against Strojnik Sr. well before the November 21, 2011 letter was sent to the Court. Indeed, Strojnik Jr. has been filling in for his father during his thirty-day suspension and sought pro hac vice admission in the Utah Action back on September 26, 2011 (with Strojnik Sr. having signed the agreement consenting to the thirty-day suspension less than a month later). Strojnik Jr. was no less obligated to have disclosed these matters to the court. His failure to have done so also warrants the revocation of his pro hac vice admission.

Humphrey submitted the pro hac vice applications on behalf of Strojnik Sr. and Strojnik Jr., certifying it was "[his] understanding that mo [sic] disciplinary proceedings are pending against either attorney[.]" As local counsel, he is legally responsible for the conduct of Strojnik Sr. and Strojnik Jr. in this matter and for the papers filed by them. Accordingly, Humphrey should be disqualified as counsel in this action.

### CONCLUSION

For the foregoing reasons, defendant Chicago Title respectfully requests that this Court revoke Strojnik Sr.'s and Strojnik Jr.'s pro hac vice admission and disqualify Humphrey from acting as counsel in this matter.

Respectfully submitted,

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Attorneys for Chicago Title Ins. Co.

By:    /s/ Michael R. O'Donnell
             Michael R. O'Donnell

Date: December 21, 2011