| | |
|---|---|
| DARE INVESTMENTS, LLC, a Utah limited liability company,<br><br><br>Plaintiff,<br><br>vs.<br><br>CHICAGO TITLE INSURANCE COMPANY, a Missouri domiciled insurer; HORIZON TITLE AGENCY, Inc., a New Jersey domiciled company; CHICAGO TITLE RICO ENTERPRISE, a racketeering enterprise,<br><br>Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br><br>Case Action No.2:10-CV-06088(DRD)(MAS)<br><br><br>Hon. Dickenson Debevoise, U.S.D.J.<br>Hon. Michael A. Shipp, U.S.M.J. |

---

## CHICAGO TITLE INSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION FOR REVOCATION OF PRO HAC VICE ADMISSIONS AND DISQUALIFICATION OF COUNSEL

---

RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

Federal Bar No. 7088

Attorneys for Defendant,
Chicago Title Insurance Company

Of Counsel:
    Michael R. O'Donnell, Esq.

On the Brief:
    Derrick R. Freijomil, Esq.
    Joshua S. Jacobs, Esq.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................1

SUPPLEMENTAL STATEMENT OF FACTS ......................................................3

I.    HIGHLIGHTS OF THE UNDISPUTED FACTS FROM MOVING PAPERS AS TO THE PHV APPLICATION ......................................................................3

II.    MORE ON THE 2009 CLAIMS .......................................................................3

III.    MORE ON THE 2010 CLAIMS .......................................................................5

IV.    MORE ON THE COVER-UP STORY .............................................................6

LEGAL ARGUMENT ............................................................................................7

I.    THE STANDING TO BRING THE APPLICATION TO REVOKE AND DISQUALIFY .................................................................................................7

A.    THE COURT HAS AUTHORITY TO HEAR THIS APPLICATION AND SHOULD ..............................................................7

B.    STANDARD FOR PHV COUNSEL CERTIFICATION AND ADMISSION .........................................................................................10

II.    ADMITTED, UNREBUTTED, AND NEWLY DISCOVERED FACTS MANDATE REVOKING STROJNIK SR.'S PHV APPLICATION ..............12

A.    THE FRAUDULENT PHV APPLICATION AND COVER-UP THEREAFTER ...........................................................................12

B.    STROJNIK SR.'S TRANSGRESSIONS CONTINUE IN DARE'S LITIGATION TACTICS ................................................................15

C.    NOTHING THAT STROJNIK SR. CAN DO JUSTIFIES A "SECOND CHANCE" DESPITE DARE'S CLAIMED NEED FOR HIM ALONE TO SERVE AS COUNSEL ..................................17

**TABLE OF CONTENTS**
**(CONTINUED)**

III.    STROJNIK JR. AND HUMPHREY SHOULD LIKEWISE BE DISQUALIFIED
        FROM REPRESENTING DARE HERE GIVEN THEIR KNOWLEDGE AND
        INVOLVEMENT ...........................................................................................................19

IV.     THERE IS NO BASIS FOR SANCTIONS AGAINST CHICAGO TITLE OR
        ITS COUNSEL ...........................................................................................................23

CONCLUSION...........................................................................................................................23

# TABLE OF AUTHORITIES

## CASES

Chambers v. Nasco, Inc.,
     501 U.S. 32 (1991) ................................................................7, 8

Data Sys. Analysts, Inc. v. Netplex Group, Inc.,
     187 F.R.D. 181 (D.N.J. 1999).............................................9, 10, 17

Dewey v. R. J. Reynolds Tobacco Co.,
     109 N.J. 201 (1988) .........................................................18

Itel Containers Int'l Corp. v. Puerto Rico Marine Mgmt, Inc.,
     108 F.R.D. 96 (D.N.J. 1985)..............................................22

Johnson v. Trueblood,
     629 F.2d 302 (3d Cir. 1980)..............................................9

In re PMD Enters.,
     215 F. Supp. 2d 519 (D.N.J. 2002) ..................................8, 9, 10

Republic of the Phil. v. Westinghouse Elec. Corp.,
     43 F.3d 65 (3d Cir. 1995)..................................................7, 8

Steel v. General Motors,
     912 F. Supp. 724 (D.N.J. 1995) .......................................18

U.S. v. Miller,
     624 F.2d 1198 (3d Cir. 1980)...........................................8, 10

## STATUTES

17A A.R.S. Sup. Ct. Rules, R. 55(a)(2)(B)..........................................13

17A A.R.S. Sup. Ct. Rules, R. 58 .......................................................13

18 U.S.C. §401 .................................................................................8

28 U.S.C. §1927 ...............................................................................8

D.N.J. L. Civ. R. 101.1 ...................................................................20, 21

D.N.J. L. Civ. R. 101.1(c)(1) ..........................................10, 11, 12, 14

D.N.J. L. Civ. R. 104.1 ...................................................................7, 22

D.N.J. L. Civ. R. 104.1(b)(1) ................................................................14

D.N.J. L. Civ. R. 104.1(d) ..................................................................9

D.N.J. L. Civ. R. 104.1(e) ..................................................................22

Fed. R. Civ. P. 11 ..........................................................................8

Fed. R. Civ. P. 37 ..........................................................................8

RPC 1.9 .................................................................................18

RPC 1.10 ................................................................................18

RPC 3.1 ...............................................................................9, 10

RPC 3.3(a)(1) .........................................................................9, 10

RPC 3.3(a)(5) ...........................................................................10

RPC 3.4(a) ..............................................................................10

RPC 3.4(c) ..............................................................................10

RPC 3.4(d) ............................................................................9, 10

RPC 8.1 ................................................................................10

RPC 8.3(a) ..............................................................................10

RPC 8.4(a) ..............................................................................10

RPC 8.4(c) ............................................................................9, 10

RPC 8.4(d) ..............................................................................10

## PRELIMINARY STATEMENT

Defendant Chicago Title Insurance Company ("Chicago Title") submits this reply brief in further support of its motion for an Order revoking the pro hac vice ("PHV") admissions of Peter Strojnik ("Strojnik Sr.") and his son, Peter K. Strojnik (Strojnik Jr."), and to disqualify local co-counsel for Dare Investments, LLC ("Dare"), Christopher Humphrey ("Humphrey").

First, as to Strojnik Sr., he is unable to rebut the overwhelming claims against him. Even taking his factual assertions at his word, he failed to disclose two prior sanctions against him in his certification seeking admission to this Court. Further, he was heavily involved in the two disciplinary proceedings admittedly pending against him at the time of his PHV application. In what has to be the definition of chutzpah, he now claims he had no obligation to disclose these two proceedings because no formal complaint had been filed at the time of his PHV application. While such a position fails as a matter of law, it still does nothing to address his wholesale failure to discharge his continuing obligation to "promptly" notify the Court of new disciplinary charges and the disposition thereof. Strojnik Sr. is also unable to rebut his continued ethical transgressions in this case, not the least of which is his undisputed failure to inform the Court of his suspension when asked point blank the basis for the requested discovery extension. Each and all these matters warrant his PHV admission being withdrawn.

Strojnik Jr. was also involved in and aware of his father's ethical improprieties since at least August 2010, but did nothing here. Instead, he, along with Humphrey, put their imprimatur on Strojnik Sr's. actions and have asserted frivolous positions of their own. Their latest involved a bizarre series of applications for sanctions that are submitted without basis.

Unable to rebut the above, Dare challenges the legal grounds for this motion and complains that the prejudice it will suffer by loss of counsel is too great. These claims, however, do not withstand serious scrutiny. First, this case has not progressed past paper discovery due to Dare's counsel's tactics. It has time to find new counsel if its case has any merit, which it does not. Second, and more importantly, this Court has authority to stop the fraud perpetrated upon it no matter what stage the litigation is in.

Finally, Dare's request for sanctions is grounded on the frivolous position that Chicago Title's motion was seeking an ethics proceeding and thus should have been sealed. This position was dismissed out-of-hand by this Court during the January 6, 2012 conference call with counsel. No more need be said.

4198587.6

## SUPPLEMENTAL STATEMENT OF FACTS

Since filing its motion, Chicago Title has uncovered additional facts pertinent here, which are set forth below.

### I.    HIGHLIGHTS OF THE UNDISPUTED FACTS FROM MOVING PAPERS AS TO THE PHV APPLICATION

The PHV application of Strojnik Sr. and Strojnik Jr. was filed by Humphrey on December 6, 2010. That application did not reference any pending disciplinary proceedings against Strojnik Sr. or any prior discipline imposed against him. At the time the PHV application was submitted, Strojnik Sr. had been subject to two attorney disciplines – the 1990 censure and 2006 diversion – and was the subject of two disciplinary proceedings – the "2009 Claims" and the "2010 Claims," resulting in four separate counts based on three different transactions. The PHV application was not granted until March 4, 2011.

### II.    MORE ON THE 2009 CLAIMS

On December 12, 2008, Strojnik Sr. was disqualified from representing parties in the underlying litigation giving rise to the 2009 Claims. See Dec. 12, 2008 Disqualification Order, Ex. 1.[1] Strojnik Jr. represented his father on the appeal of that disqualification decision. See Jan. 22, 2009 Appeal Papers, Ex. 2.

---

[1] Unless otherwise specified, the Exhibits cited herein are to the Jan. 10, 2012 Certification of Michael R. O'Donnell, Esq.

4198587.6

The charge complaint forms establishing the basis for the 2009 Claims were filed on February 23, 2009, and July 31, 2009. Strojnik Sr. was aware of the proceedings essentially from their inception, to wit.

- On March 10, 2009, counsel for the State Bar of Arizona ("SBA Counsel") sent Strojnik Sr. one of the bar charge disciplinary complaints for investigation and screening. See March 10, 2009 Letter, Ex. 3. Strojnik Sr. responded two days later. See March 12, 2009 Letter, Ex. 4.

- Thereafter, Strojnik Sr. and SBA Counsel communicated on a regular basis throughout 2009 and 2010. See June 12, 2009 Letter & June 23, 2009 Letter, Exs. 5-6; June 30, 2009 Letter & July 6, 2009 Letter, Ex. 7-8; Aug. 18, 2009 Letter, Ex. 9; Aug. 31, 2009 Letter, Ex. 10; Sept. 16 & 18, 2009 Letters & Sept. 22, 2009 Letter, Ex. 11-13; April 7 & 13, 2010 Letters & May 11 & 12, 2010 Letters, Ex. 14-17.

- On May 13, 2010, SBA Counsel sent Strojnik Sr. a document subpoena regarding the charge complaints. See May 12 & 13, 2010 Subpoena & Cover Letter, Ex. 18; see also May 18, 2010 Letter, Ex. 19. Strojnik Sr.'s objection to the subpoena was denied by Order dated June 18, 2010. See June 18, 2010 Order, Ex. 20.

- On August 19, 2010, two Probable Cause Orders were issued as to the 2009 Claims finding that probable cause existed to issue a complaint against Strojnik Sr. for violating rules of professional conduct. See Aug. 19, 2010 Probable Cause Orders, Ex. 21. Said order stated that motions for reconsideration may not be filed and ordered the State Bar to prepare and file a disciplinary complaint. See id. Copies of the Probable Cause Orders were sent to Strojnik Sr. on August 20, 2010. See id.

In between the PHV application being filed on December 6, 2010, and the PHV admission being granted on March 4, 2011, the disciplinary Complaint was filed on December 17, 2010. See Dec. 17, 2010 Compl., Ex. 22. As set forth in Chicago Title's moving papers, the Consent Disciplinary

- 4 -

Agreement was signed by Strojnik Sr. on April 21, 2011, and the Judgment and Order as to the same was entered on April 30, 2011.

## III.    MORE ON THE 2010 CLAIMS

Similar to the 2009 Claims, Strojnik Jr. was copied on the motion to disqualify his father as counsel in the underlying litigation that gave rise to the 2010 Claims. See Def.'s Mot. to Disqualify Strojnik Sr. as Pl.'s Counsel, Ex. 23.

The charge complaint form establishing the basis for the 2010 Claims was filed on June 28, 2010. Strojnik Sr. and Strojnik Jr. knew of the charges virtually from their inception, to wit.

- On July 22, 2010, SBA Counsel sent Strojnik Sr. the bar charge disciplinary complaint for investigation and screening. See July 22, 2010 Letter, Ex. 24. The next day, Strojnik Sr. responded. See July 23, 2010 Letter, Ex. 25.

- On August 23, 2010, Strojnik Jr. responded to the inquiry from SBA Counsel as to these matters. See Aug. 23, 2010 Email, Ex. 26.

- On November 29, 2010, a Probable Cause Order was issued as to the 2010 Claims finding that probable cause existed to issue a complaint against Strojnik Sr. for violating rules of professional conduct. See Nov. 29, 2010 Probable Cause Order, Ex. 27. Copies of said Orders were sent to Strojnik Sr. on December 1, 2010. See id.; Dec. 1, 2010 Letter, Ex. 28.

- On June 15, 2011, an Amended Probable Cause Order was filed, and a copy thereof was mailed to Strojnik Sr.'s counsel two days later. See June 15, 2011 Am. Probable Cause Order, Ex. 29.

- On July 29, 2011, the disciplinary Complaint was filed. See July 29, 2011 Compl., Ex. 30.

- August 24, 2011, Strojnik Sr. answered the Complaint, and on September 26, 2011, a Notice of Settlement was filed. See Pleading Index, Ex. 31.

As set forth in Chicago Title's moving papers, the Consent Agreement as to the 2010 Claims was signed by Strojnik Sr. on October 20, 2011, and the Judgment and Order thereon was entered on November 7, 2011.

## IV.    MORE ON THE COVER-UP STORY

Strojnik Sr.'s claim that he told Chicago Title's counsel that he could not litigate this case in December because his wife was having surgery and recuperating on the Mexican Riviera is simply not true.    Three attorneys for Chicago Title have now submitted certifications confirming that Strojnik Sr. informed them that he asked them to refrain from deposing witnesses in this litigation during the month of December 2010, because he was asked by his wife to take a vacation during that month.    See Jan.10, 2012 Certifs. of Michael R. O'Donnell, Esq. at ¶2, Derrick R. Freijomil, Esq. at ¶2, & Jonathan Sandler, Esq. at ¶2.    As set forth in the moving papers, it was on this basis that the application to the Court requesting a 30-day discovery extension was submitted.    As further evidence of same, on November 22, 2011, counsel informed Strojnik Sr. in an email: "Indeed, when we sent our letter to the Court several weeks ago asking for another 30 days for discovery, [i]t was because you told us that your wife told you that you had to take the month of December off, not that you were being suspended from the practice of law." See Nov. 22, 2011 Email Chain pp.2-3, Ex. 32.    Strojnik

4198587.6

Sr. did not deny or respond to the email. See id. Nor did he tell Magistrate Shipp anything when asked why discovery could not proceed in December.

## LEGAL ARGUMENT

I. **THE STANDING TO BRING THE APPLICATION TO REVOKE AND DISQUALIFY**

A. **The Court Has Authority to Hear this Application and Should**

Defendants' efforts to characterize this application as an alleged "ethics complaint" limited to a request for a Local Civil Rule 104.1 hearing, not disqualification of counsel, are, in a word, absurd. Subsection (m) of the Rule provides: "Nothing contained in these Rules shall be construed to deny to this Court such powers as are necessary for the Court to maintain control over proceedings conducted before it[.]" Thus, the Rule does not inhibit this Court from granting the relief Chicago Title requests here, nor is the Court bound by the procedure set forth in Subsection (e) thereof. See Chambers v. Nasco, Inc., 501 U.S. 32, 42-43 (1991) (rejecting argument that "28 U.S.C. §1927 and the various sanctioning provisions in the Federal Rules of Civil Procedure reflect a legislative intent to displace the inherent power" of the District Court); Republic of the Phil. v. Westinghouse Elec. Corp., 43 F.3d 65, 73 (3d Cir. 1995) (recognizing same).

Indeed, it has long been recognized that the District Court's inherent "powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as so to achieve the orderly and

expeditious disposition of cases."[2] Chambers, 501 U.S. at 43 (quoting 1962 United States Supreme Court Case); In re PMD Enters., 215 F. Supp. 2d 519, 526 (D.N.J. 2002). These powers include the "power to control admission to its bar and to discipline attorneys who appear before it[,]" which power is "incidental to all Courts." Chambers, 501 U.S. at 43 (citations omitted).

In that vein, the Third Circuit has held that the "district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it" and that the "exercise of this authority is committed to the sound discretion of the district court. . . ." U.S. v. Miller, 624 F.2d 1198, 1201 (3d Cir. 1980) (citations omitted). In determining whether disqualification is the appropriate sanction, the Court "should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." See id. Of course, choosing one's counsel is not an absolute right. See id. at 1203; accord Republic of the Phil., 43 F.3d at 74 (same).

---

[2] Of course, there are statutes and Rules that provide additional authority under which this Court could sanction, including possible monetary sanctions, Strojnik Sr., Strojnik Jr., and Humphrey here. See, e.g., 18 U.S.C. §401; 28 U.S.C. §1927; Fed. R. Civ. P. 11 & 37; Chambers, 501 U.S. at n.8 (citing same for imposition of attorney's fees as a sanction); Republic of the Phil., 43 F.3d at 73 (acknowledging above-referenced rules and statutes).

With regard to revoking an attorney's PHV admission, the Third Circuit specifically addressed the procedure required for the same. See Johnson v. Trueblood, 629 F.2d 302 (3d Cir. 1980). The Third Circuit instructs that "some type of notice and an opportunity to respond are necessary when a district court seeks to revoke an attorney's [PHV] status." Id. at 303. The attorney at issue "should be notified of two things: the conduct of the attorney that is subject of the inquiry, and the specific reason this conduct may justify revocation." Id. at 304. Whether a full scale hearing is appropriate is left to the Court's discretion, as it is not required in every case, particularly as to PHV attorneys whose "status as a member of the court is limited in time to one case, which places certain time constraints on the court." Id. Thus, all that is required is that "the attorney be given a meaningful opportunity to respond to identified charges." Id.

"At a minimum, a violation of any disciplinary standard applicable to members of the bar of the court would justify revocation of [PHV] status." Id.; Data Sys. Analysts, Inc. v. Netplex Group, Inc., 187 F.R.D. 181, 183-184 (D.N.J. 1999) ("Revocation of [PHV] admission is a recognized sanction for violation of court orders or disciplinary rules."); PMD Enters., 215 F. Supp. 2d at 531 (same); accord Local Civ. R. 104.1(d) (attorney may be suspended or sanctioned for misconduct that includes any "act or omission" violating New Jersey's RPCs). Indeed, violations of RPCs 3.3(a)(1), 3.4(d), and 8.4(c) for lack of candor to the

Court have resulted in revocation of PHV admission. See, e.g., Data Sys., 187 F.R.D. at 184; see also Miller, 624 F.2d 1198 (district court did not abuse its discretion in disqualifying plaintiff's chosen lawyer and his firm on defendant's motion); PMD Enters., 215 F. Supp. 2d 519 (revoking PHV admission where attorney violated RPCs, including candor to Court).

Here, a number of RPCs are at issue here: RPCs 3.1 (frivolous legal positions), 3.3(a)(1) & (a)(5) (candor to Court), 3.4(a), (c), & (d) (concealing material information to opposing counsel, disobeying applicable Court Rules, and failing to make reasonably diligent effort to comply with discovery requests), 8.1 (affirmative statements/omissions on bar admission applications or concerning disciplinary matters), 8.3(a) (attorney obligation to give notice of RPC violations), and 8.4(a), (c), & (d) (violating RPCs or knowingly assisting another to do so).

Dare and its counsel have notice of the application and the opportunity and ability to respond. The Rules of Professional Conduct at issue are clear. Finally, as shown below, the application is based essentially on undisputed facts showing a fraud perpetrated on the Court starting with the PHV application.

## B.    Standard for PHV Counsel Certification and Admission

Local Civil Rule 101.1(c)(1), governing PHV motions, plainly states: "The motion shall contain a statement certifying that [i] no disciplinary proceedings are pending against the attorney in any jurisdiction and [ii] no

<u>discipline</u> has <u>previously</u> <u>been</u> <u>imposed</u> on the attorney in any jurisdiction."
(Emphasis added.) The Rule requires disclosure of "disciplinary proceedings" – a
very broad term – and does not limit the disclosure to "formal bar proceedings" or
the filing of an ethics complaint, as Dare would suggest. <u>See</u> Jan. 3, 2012 Dare Br.
at 6. Indeed, had the Rule been so limited, it simply would have said so. To the
contrary, the Rule further requires additional detail for pending disciplinary
proceedings and further repeats the phrase "proceedings" without any limitation.
<u>See</u> Local Civ. R. 101.1(c)(1). Similarly, the Rule does not limit the disclosure of
disciplines to only those within the five years prior to the PHV application,
contrary to Dare's unsupported claim. <u>See</u> Jan. 3, 2012 Dare Br. at 6-7. Instead,
the Rule mandates <u>additional</u> disclosure as to discipline imposed within five years
prior to the PHV application. <u>See</u> Local Civ. R. 101.1(c)(1). Finally, the Rule
imposes a continuing disclosure obligation on attorneys admitted PHV: "An
attorney admitted [PHV] shall have the continuing obligation during the period of
such admission <u>promptly</u> to advise the court [i] of the disposition made of pending
charges or [ii] of the institution of new disciplinary proceedings." (Emphasis
added.) As set forth below, Dare's counsel has made a mockery of this Rule.

## II. ADMITTED, UNREBUTTED, AND NEWLY DISCOVERED FACTS MANDATE REVOKING STROJNIK SR.'S PHV APPLICATION

### A. The Fraudulent PHV Application and Cover-Up Thereafter

In a carefully-designed certification, Strojnik Sr. attempts to admit as little as possible, ignore as much as possible (hoping, presumably, no one will notice), and twist the very bounds of logic to justify his actions here. This Court should not countenance such outright deceit.

First, Strojnik Sr. does not dispute that in his PHV application he failed to certify that "no disciplinary proceedings [we]re pending against [him] in any jurisdiction and no discipline has previously been imposed on [him] in any jurisdiction." It is now obvious why he failed to do so and equally obvious that the certification failed to meet the requirements of Local Civil Rule 101.1(c)(1).

Second, Strojnik Sr. admits, as he must, that he failed to disclose the 1990 censure on his PHV application here. His attempted explanation for not disclosing it apparently is because it was not within the last five years. See Jan. 3, 2012 Strojnik Sr. Cert. at ¶10 & n.1. Local Civil Rule 101.1(c)(1), however, requires disclosure of all discipline against the attorney seeking PHV admission (not just those within the past five years, for which greater detail is required).

Third, even if the Rule required disclosure of disciplines only within the last five years (which it does not), the 2006 diversion was not disclosed: The Arizona Attorney Diversion Guidelines explain that a diversion is an alternative

disciplinary sanction designed to modify the attorney's conduct that failed to comply with its Rules of Professional Conduct.  By its very nature, a diversion must be agreed to by the attorney being disciplined.  See also 17A A.R.S. Sup. Ct. Rules, R. 55(a)(2)(B) (referring to "diversion agreement").  Strojnik Sr. offers no explanation for failing to disclose this 2006 diversion.

Fourth, Strojnik Sr. suggests that he had no knowledge of the 2009 and 2010 Claims, without specifically stating same, by claiming:  "A filing of an ethics charge does not commence a formal proceeding because, in most cases, the bar charge is dismissed outright and the attorney may not ever become aware of it."  See Jan. 3, 2012 Strojnik Sr. Cert. at ¶9.  Such an assertion is a continuation of the fraud on the Court and counsel here.  Strojnik Sr. was well aware of these claims shortly after they were first made and continued to correspond with SBA Counsel throughout the matters.  Strojnik Sr.'s current failure to disclose his extensive involvement and attempt to mislead is itself actionable here and is further evidence of his continued misconduct.

Fifth, Strojnik Sr.'s attempt to explain his admitted failure to disclose the 2009 and 2010 Claims, by claiming that no "formal Complaint" had been pending per Rule 58 of the Arizona Rules of the Supreme Court at the time of his application, is pathetic.  See Jan. 3, 2012 Strojnik Sr. Cert. at ¶¶9-10.  Local Civil

Rule 101.1(c)(1) requires their disclosure and is not limited to "formal complaints" under Arizona's or any other jurisdiction's rules.

Sixth, Strojnik Sr.'s post-PHV application transgressions are even more spectacular and are wholly avoided in his certification, presumably because they are so defenseless. The most obvious is that the formal Complaint as to the 2009 Claims was filed on December 17, 2010 – just after he filed his PHV application on December 6, 2010, but well before he was granted PHV admission on March 4, 2011. Yet, he never amended or supplemented his PHV application. Not surprisingly, he failed to disclose any of this in his recent certification submitted to this Court. Again, the implications are obvious.

Finally, once admitted PHV, Strojnik Sr. had the "continuing obligation" to "promptly" notify the court of "the disposition made of pending charges or of the institution of new disciplinary proceedings" and "upon being subjected to public discipline by any other court. . . ." Local Civ. R. 101.1(c) & 104.1(b)(1). Strojnik Sr. does not even address his patent failure to fulfill this obligation, failing to explain how he gave "prompt notice" of all "pending charges," or at least when the "formal" Complaints were, filed against him. The Complaint on the 2009 Claims was filed on December 17, 2010. By March 25, 2011, he had reached a consent agreement on those claims and had signed that consent agreement on April 21, 2011; and on April 30, 2011, the Judgment and

4198587.6

Order was entered as to the 2009 Claims. As to the 2010 Claims, he answered the July 29, 2011 Complaint on August 24, 2011, and a Notice of Settlement was filed on September 26, 2011. Yet, he waited until November 21, 2011, to notify the Court of the 2010 Claims. He provides no explanation for this delay.

Any of the above bases compels revocation of PHV admission. In toto, they paint a picture of deliberately deceiving the Court and opposing counsel.

### B.    Strojnik Sr.'s Transgressions Continue in Dare's Litigation Tactics

Strojnik Sr. does not even bother to address his actions in this litigation. First, he says nothing as to the detailed proofs as to his actions in asserting a bogus privilege claim to hide from Chicago Title in this litigation the same type of documents Dare willingly produced to the party who sued it before this litigation began. Even when this undisputed disclosure was brought to his attention, Strojnik Sr. would not agree to produce the documents without attempting to improperly condition production on a stipulation as to trial admissibility. This has required repeated Court intervention and has prevented Chicago Title from obtaining these documents to date. He similarly did not respond to the detailed assertion as to his deposition-by-ambush tactics and withholding of documents and a privilege log, all of which has also required repeated Court involvement (and some of which remains unresolved). Finally, this Court should not overlook that he filed a ten-count Complaint and cross-moved for

summary judgment in response to a motion to dismiss that resulted in nine of the ten counts being dismissed. The Court's Opinion leaves no doubt that many of the factual allegations in the Complaint were false.

Moreover, Strojnik Sr.'s response to the story he concocted to trick Chicago Title into requesting a discovery extension to hide his thirty-day suspension is itself another story crafted from whole cloth. First, Strojnik Sr. never told anyone that his "vacation" and need for a thirty-day extension was due to his wife being ill. On that point, Strojnik Sr.'s response ventures into the surreal given the October 26, 2011 letter to him acknowledging his referenced "vacation schedule" and his November 17, 2011 letter also referencing the same "vacation time during the month of December." See Exs. 13 & 16 to the Dec. 21, 2011 Certif. of Michael R. O'Donnell, Esq. Further, the three attorneys for Chicago Title who heard Strojnik Sr. state that he was taking vacation for the entire month of December 2011 as requested by his wife submit herewith certifications stating that was all he said. Moreover, in a November 22, 2011 email chain, counsel recounted to Strojnik Sr. this prior representation he made, which Strojnik Sr. did not deny. Third, Strojnik Sr. does not rebut that **when questioned directly by the Court** during the November 15, 2011 conference call as to the basis for requesting the thirty-day discovery extension, **he failed to disclose his suspension**.

As set forth above, this Court has ample bases upon which to revoke Strojnik Sr.'s PHV admission.  It is also patently clear that Strojnik Sr. will continue this behavior if left in this case and that revocation of his PHV admission is the appropriate and necessary sanction here.

### C.    Nothing That Strojnik Sr. Can Do Justifies a "Second Chance" Despite Dare's Claimed Need for Him Alone to Serve as Counsel

There is no reason to give Strojnik Sr. a "second chance" despite Dare's claim that he is the only counsel available to it.  First, Strojnik Sr.'s attempt to use his medical condition, grossly overstating that the "likelihood of any type of a relapse is zero," as a basis to preclude revocation of his PHV admission or to avoid sanction is unavailing here.  See Dare Br. at 5-6 & 8; Jan. 3, 2012 Strojnik Sr. Cert. at ¶¶18-19.  In addition to the obvious fact that the risk of relapse could never be zero, such an argument is not a defense.  In Data Sys., the PHV attorney raised depression and related mental illness as an explanation for his RPC violations, asserting that he was "now fit to practice law" and that his prior conduct was "aberrational."  See 187 F.R.D. at 183.  The Court explained:  "Even in those cases where the Court concluded the conduct was 'aberrational and not likely to occur again,' that mitigation only serves to prevent the imposition of the most severe sanctions."  Id. at 184 (citation omitted).  Thus, the Court found that despite these assertions, revocation of the attorney's PHV admission was appropriate and left the more severe sanctions to the attorney's home jurisdiction.  Id. at 185.

- 17 -

Here, not only is revocation of Strojnik Sr.'s PHV admission appropriate for the same reason, but his repeated and continued infractions as set forth above require it despite any asserted medical condition. Indeed, either Strojnik Sr. has relapsed given his violating the RPCs in this matter, starting with his PHV application through his most recent certification, or he simply has continued to commit RPC violations despite maintaining his treatment. Either way, his condition would not prevent revocation of his PHV admission here.

Second, while Dare may claim that it cannot find new counsel and thus the prejudice is too great to disqualify Strojnik Sr., that may speak more to the lack of merit of its claim than to Strojnik Sr.'s "expertise." Indeed, Dare's reliance on Steel v. General Motors, 912 F. Supp. 724, 733 (D.N.J. 1995) (quoting Dewey v. R. J. Reynolds Tobacco Co., 109 N.J. 201, 205 (1988)), is misplaced. See Dare Br. at 8. Not only were RPCs 1.9 and 1.10 (conflict of interest RPCs) involved therein, but the Court made clear that only in "extraordinary circumstances" would a client's right to its counsel of choice outweigh "the need to maintain the highest standards of the profession." See Steel, 912 F. Supp. at 745-746. Such "extraordinary circumstances" existed where discovery in the litigation had been ongoing for several years, counsel had participated in virtually all the depositions, the disqualification would occur on the eve of trial, and the case was complex. See id. Moreover, the Court explained: "A person's right to retain counsel of his or

her choice is limited in that there is no right to demand to be represented by an attorney disqualified because of an ethical requirement." Id. at 746.

At issue here are much more significant violations of RPCs, including breach of the duty of candor to the Court on multiple occasions, the only appropriate sanction for which must be removal from the case. Further, only paper discovery has begun here (and is not complete), and no depositions have yet to be taken (and we are not on the eve of trial). Moreover, this coverage matter is not of such a significantly complex nature that no other counsel could be obtained on behalf of Dare. Strojnik Jr. admittedly just got involved in the litigation only after his father was disqualified in the beginning of December 2011, and he informed the Court during our call on January 6, 2012, that he was prepared to go forward with depositions on January 9 and 16-18, 2012 in this matter. Obviously, then, Dare should be able to obtain other counsel, and it will not suffer any loss of any current counsel fees as it entered into a contingency fee arrangement with counsel.

## III.  STROJNIK JR. AND HUMPHREY SHOULD LIKEWISE BE DISQUALIFIED FROM REPRESENTING DARE HERE GIVEN THEIR KNOWLEDGE AND INVOLVEMENT

Strojnik Jr. and Humphrey, when given the opportunity to respond as to their involvement in this matter, provide no explanation, in particular as to when they first knew of Strojnik Sr.'s disciplinary transgressions and what they did with that knowledge. While they both should have been alerted at least to potential

- 19 -

4198587.6

issues given Strojnik Sr.'s limited certification in his PHV application (in stark comparison to that of his son and to what is required by Local Civil Rule 101.1), they apparently turned a blind eye to the matter.   While Strojnik Jr.'s parallel involvement in the Utah Action strongly suggested his knowledge of his father's disciplinary shortcomings and that he was filling in there like he was here for those reasons, the recently-acquired documents leave no doubt that he was involved in the Arizona disciplinary matters since at least August 2010.

Moreover, Strojnik Jr. and Humphrey have continued the improper behavior initiated by Strojnik Sr. in this matter.   When presented with the option of withdrawing the bogus privilege claim as to the communications Dare turned over to its adversary in 2009, they both chose to continue to maintain this frivolous privilege position.   This required additional submissions to the Court, in which Strojnik Jr.[3] and Humphrey both signed a submission to the Court asking for sanctions on a matter in which the parties came to an impasse on language and needed the Court to resolve the same.   See Dec. 29, 2011 M. O'Donnell Letter, Dec. 30, 2011 Strojnik Jr. & Humphrey Letter, & Jan. 4, 2012 M. O'Donnell Letter, Exs. 33-35.   In addition, Strojnik Jr. and Humphrey both signed a submission to the Court seeking to compel discovery from Chicago Title without

---

[3] Strojnik Jr. also asked permission from Magistrate Shipp to file a motion for sanctions for having to participate in a conference call with the Court on this matter.

- 20 -

providing Chicago Title's prior response to the claimed deficiency, claiming that Chicago Title had not produced a privilege log when it had, without having attempted to meet-and-confer as to any remaining disputed items, and while having outstanding discovery for Dare. See Dec. 26, 2011 Strojnik Jr. & Humphrey Letter & Dec. 27, 2011 M. O'Donnell Letter, Exs. 36-37.

They have continued this inappropriate behavior in Dare's January 3, 2012 Brief they submitted in opposition to this motion. First, for the reasons expressed above, their maintaining that Strojnik Sr.'s PHV "Application was correct in all respects" (Dare Br. at 6) is actionable here, particularly given the requirements of Local Civil Rule 101.1 and Strojnik Sr.'s own admissions. Second, to suggest that Strojnik Sr. may not have been aware of the ethics charges against him before a formal complaint was filed (Dare Br. at 6), at least as to Strojnik Jr., is improper for the same reasons set forth above, namely that Strojnik Sr. was in fact aware of them virtually since their inception. Third, Strojnik Jr. and Humphrey make the flatly incorrect statement that the "State Bar of Arizona did not sanction [Strojnik Sr.] for any intentional or grossly negligent misconduct." See Dare Br. at 5. As set forth in the pages 10-11 of the Discipline Agreement they submitted (Ex. 8 in their submission), Strojnik Sr. was found to have committed **knowing** violations of RPCs. Fourth, their claims that Chicago Title lacked standing as to the current motion and/or Mr. O'Donnell should be

sanctioned for not filing the motion under seal were based on their specious and frivolous position that Chicago Title's motion was being brought under Local Civil Rule 104.1(e). Despite the fact that Chicago Title's motion was clearly labeled as one seeking to disqualify counsel and said that it was asking the Court to do the same based on its inherent power, Strojnik Jr. and Humphrey tried to seize on the mere cite to Local Rule 104.1 to assert that this was an improper disciplinary proceeding and should have been sealed. Such a position is frivolous, especially given that the Court has not yet made a referral under Local Civil Rule 104.1(e), which is a prerequisite to triggering that provision. Indeed, the Court rejected this meritless argument by Dare in its January 6, 2012 conference call.

For all these reasons, Strojnik Jr.'s PHV admission should also be revoked, and Humphrey should be disqualified from representing Dare in this matter. See Itel Containers Int'l Corp. v. Puerto Rico Marine Mgmt, Inc., 108 F.R.D. 96, 104-05 (D.N.J. 1985) (sanctioning local counsel and lead counsel, finding "New Jersey counsel are not without responsibilities in complying with the rules and statutes" and "[local counsel] joined in and effectuated [the strategy of the lead counsel] and thus his firm is liable for sanctions penalties to the same extent as are the Washington lawyers."); see also Mov. Br. [Doc. 67] at 5.

- 22 -

## IV.   THERE IS NO BASIS FOR SANCTIONS AGAINST CHICAGO TITLE OR ITS COUNSEL

Dare provides no basis for sanctions against Chicago Title or its counsel.  As set forth above, Chicago Title was not required to file its motion under seal, which this Court also determined during the January 6, 2012 conference call with counsel.  Moreover, there are more than ample good faith bases supporting Chicago Title's motion.  For these, and all the other reasons set forth herein, any request by Dare for sanctions should be denied.

## CONCLUSION

For the foregoing reasons, Chicago Title Insurance Company respectfully requests that the pro hac vice admissions of Peter Strojnik and Peter K. Strojnik be revoked and that Christopher Humphrey be disqualified as counsel for Dare Investments, LLC in this matter.

Respectfully submitted,

RIKER, DANZIG, SCHERER, HYLAND
& PERRETTI LLP
Attorneys for Chicago Title Ins. Co.

By:   ____/s/ Michael R. O'Donnell____
Date: January 10, 2012          Michael R. O'Donnell

4198587.6