# Exhibit 16


## STATE BAR OF ARIZONA

Assistant's Direct Dial 602-340-7244

May 11, 2010

**<u>Personal and Confidential</u>**

Peter Strojnik
Peter Strojnik, PC
3030 N. Central Avenue, Suite 1401
Phoenix, Arizona 85012-2720

Re:    File No. 09-1451
       Jack San Felice, Complainant

Dear Mr. Strojnik:

I am getting ready to summarize your file, however, I need additional information from you before I can do so. Please provide answers to the following questions.

 1)  Why did you sue Jack San Felice and Ron Deen for malicious prosecution?

 2) Did you violate ERs 1.9 when you filed suit against them when you had previously represented the Joint Venture and they were parties to the Joint Venture?

 3) Did you write a letter or letters on behalf of Silver King Mine to the forest service? If so, for what purpose?

 4) Were you representing Silver King Mine when you wrote the letter or letters to the Forest Service?

 5) Did you write letters to any one else on behalf of the Silver King Mine? If so, to whom did you correspond?

 6) Did you attempt to settle the Funding Group lawsuit with Mr. Ritter after a court appearance in Judge Figueroa's courtroom on the malicious prosecution lawsuit even though you were no longer representing the Funding Group because Judge O'Neil found you had a conflict of interest? Please explain.

 7) Why did you decide to not continue the prosecution of the malicious prosecution lawsuits against Deen and San Felice? Please explain.

Peter Strojnik
May 11, 2010
Page 2

8) In the lawsuit where the Funding Group is the plaintiff, you failed to file a response to a Motion for Summary Judgment filed by Mr. Ritter? Please explain.

9) The Judge has awarded attorneys' fees in the lawsuit where the Funding Group was the Plaintiff. Do you know if those attorneys' fees have been paid? If not, please explain why not?

10) Silver King Mine, Jack San Felice, and Ronald Deen were included in the minutes of the meetings and memorandum were provided to them? Why were these meetings held? How many meetings were held? Why were Jack San Felice and Ronald Deen included on the minutes of these meetings?

**I would appreciate it if you could type out the questions and provide your answers beneath the questions.** Please provide your response to these questions within ten days from the date your receive this letter.

Sincerely,

Harriet M. Bernick
Staff Bar Counsel

HMB/lmc

# Exhibit 17

THE LAW FIRM OF

# PETER STROJNIK
### ATTORNEY AT LAW

Peter Strojnik
Arizona Bar No 006464
Arizona Insurance Producer License
L169: 951512
Direct Dial: 602-524-6602

May 12, 2010

Harriett M. Bernick, Esq.
Staff Bar Counsel
4201 N. 24th Street, Suite 200
Phoenix, Arizona 85016-6288

Re:    File No. 09-1451
       Jack San Felice, Complainant

Dear Ms. Bernick:

This responds to your questions raised in the May 11, 2010 correspondence. I have cut and pasted the question into this response for ease of review.

1) Why did you sue Jack San Felice and Ron Deen for malicious prosecution?

ANSWER: Jack San Felice and Ron Deen committed malicious prosecution by filing a falsely sworn Petition for Injunction against Harassment. They initiated a civil action which was motivated by malice, begun without probable cause, terminated in my favor and caused me damage. I exercised my 1st Amendment Right to redress.

2) Did you violate ERs 1.9 when you filed suit against them when you had previously represented the Joint Venture and they were parties to the Joint Venture?

ANSWER: No.

3) Did you write a letter or letters on behalf of Silver King Mine to the forest service? If so, for what purpose?

ANSWER: Silver King Mine is a familiar name for the El Medico 2052 Mining Claim; therefore, one cannot write letters on its "behalf". I do believe I wrote a letter to the Forest Service on or about November 8, 2006. See attached. The purpose of the letter is self explanatory.

4) Were you representing Silver King Mine when you wrote the letter or letters to the Forest Service?

**RECEIVED**

MAY 1 3 2010

STATE BAR OF ARIZONA

3030 NORTH CENTRAL AVENUE · SUITE 1401 · PHOENIX, ARIZONA 85012
TEL: 602.297.3019 · FAX: 602.296.0135
E-MAIL: PS@STROJNIK.COM · WEB: WWW.STROJNIK.COM

**ANSWER:** Silver King Mine is not an entity capable of representation. Silver King Mine is a familiar name for the El Medico 2052 Mining Claim.

5) Did you write letters to any one else on behalf of the Silver King Mine? If so, to whom did you correspond?

**ANSWER:** Silver King Mine is not an entity capable of representation. Silver King Mine is a familiar name for the El Medico 2052 Mining Claim.

There could have been times when I used the name "Silver King Mine" to reflect my representation of the joint venture or its interest in the Silver King Mine. The name "Silver King Mine" was used quite often to reflect representation of the purported owner of the Silver King Mine: the SKM – APM Joint Venture.

6) Did you attempt to settle the Funding Group lawsuit with Mr. Ritter after a court appearance in Judge Figueroa's courtroom on the malicious prosecution lawsuit even though you were no longer representing the Funding Group because Judge O'Neil found you had a conflict of interest? Please explain.

**ANSWER:** I do not recall any such attempts to settle.

7) Why did you decide to not continue the prosecution of the malicious prosecution lawsuits against Deen and San Felice? Please explain.

**ANSWER:**

I grew tired.

8) In the lawsuit where the Funding Group is the plaintiff, you failed to file a response to a Motion for Summary Judgment filed by Mr. Ritter? Please explain.

**ANSWER:**

I was not the attorney for The Funding Group at this time.

9) The Judge has awarded attorneys' fees in the lawsuit where the Funding Group was the Plaintiff. Do you know if those attorneys' fees have been paid? If not, please explain why not?

**ANSWER:**

I am not aware of any judgment for attorney's fees (or costs for that matter). My understanding is that judge O'Neil granted attorney's fees, but Mr. Ritter failed to file a timely application pursuant to ARCP 54(g), thus losing his right to claim any attorney's fees.

10) Silver King Mine, Jack San Felice, and Ronald Deen were included in the minutes of the meetings and memorandum were provided to them?  Why were these meetings held? How many meetings were held? Why were Jack San Felice and Ronald Deen included on the minutes of these meetings?

**ANSWER:**

The meetings were held in the ordinary course of business.  Messrs. San Felice and Deen were included because they were members of the policy committee. My records indicate that there were meetings of the policy committee held on 09-12-06; 02-05-07; and 07-05-07.  There was an update memorandum issued on 06-22-07.

Please do not hesitate to contact me with any additional questions.

Sincerely,

Peter Strojnik

PS: pjs
Encls. *as indicated*

# Exhibit 18



Author Direct Dial: (602) 340-7276

May 13, 2010

MAY 17 2010

**Personal and Confidential**

Peter Strojnik
Peter Strojnik PC
3030 N Central Ave Suite 1401
Phoenix, AZ 85012-2720

Re:    File No. 09-1451
Jack San Felice, Complainant

Dear Mr. Strojnik:

Enclosed please find the issued Subpoena Duces Tecum requesting various documents. A courtesy copy was mailed to you yesterday.

I have also enclosed an Acceptance of Service form. If you are willing to accept service of the Subpoena Duces Tecum, please sign the Acceptance of Service in front of a notary and return it to me in the enclosed, self-addressed, stamped envelope.

If you have any questions regarding the Subpoena Duces Tecum, please do not hesitate to contact me at the phone number listed above.

Sincerely,

Carol D. Stiles, Paralegal
State Bar of Arizona

```
FILED
MAY 1 2 2010
STATE BAR OF ARIZONA
BY
```

## BEFORE THE PROBABLE CAUSE PANELIST
## OF THE STATE BAR OF ARIZONA

| | |
|---|---|
| IN THE MATTER OF A OF THE STATE BAR OF ARIZONA, | No. 09-1451 |
| Peter Strojnik,<br>      Bar No. 006464 | **SUBPOENA DUCES TECUM** |
| Respondent. | |

**STATE OF ARIZONA**

**TO:  Peter Strojnik**
    Peter Strojnik PC
    3030 N Central Ave Suite 1401
    Phoenix AZ 85012-2720

You are hereby directed to produce for inspection and copying at the State

Bar of Arizona, at 4201 N. 24th Street, Suite 200, Phoenix, Maricopa County, **on**

**June 4, 2010,** at 10:00 a.m., the following:

1.  Any and all records related to the "Arizona Precious Metal – Silver King Joint Venture" including, but not limited to:

    a.  Documents, emails, correspondence, memorandum, pleadings, agreements, minutes of the policy committee and minutes of any other committee whether in written or electronic form.

2.    Any and all records and your complete case file, including but not limited to all email, correspondence, memorandum, pleadings, documents, agreements and billing statements whether in written or electronic form regarding your representation of Arizona Precious Metals and the Funding Group both before and after the lawsuit filed by the Funding Group against

1

the Estate of Freddy Joe Deen, Case No. CV 2007-01884, (Pinal County Superior Court).

3. Any and all records and your complete case file, including but not limited to all email, correspondence, memorandum, pleadings, documents, agreements and billing statements whether in written or electronic form for the following lawsuits:

    a. Jack San Felice v. Peter Strojnik – Case No. J-1107CV-2008-1403, (Apache Junction Justice Court)

    b. Ronald Deen v. Peter Strojnik – Case No. J-1107CV 2008-1404, (Apache Junction Justice Court)

    c. Peter Strojnik v. Ronald Deen and Merlene Deen; Giacomo Jack San Felice and Wynne San Felice – Case No. CV2008 –12473, (Maricopa County Superior Court)

    d. Peter Strojnik v. Giacomo Jack San Felice and Wynee San Felice – Case No. CV 2009-000117, (Maricopa County Superior Court)

    e. Peter Strojnik v. Ronald Deen – Case No. S-1100-CV200900095, ( Pinal County Superior Court)

4. Any and all correspondence you wrote on behalf of the Silver King Mine.

**You are also directed** to produce the documents stated above in separate boxes, binders or files, labeled or otherwise clearly marked as specified above.

    **IN LIEU OF YOUR APPEARANCE** at the date and time specified above you may **mail or deliver** the listed documents to designated Bar Counsel **prior to the end of business day on June 3, 2010.**

2

**BE WARNED THAT** for failure to appear and attend as herein required, you will be deemed to be in contempt and answerable in court as provided by operation of law.

By order of The Probable Cause Panelist of the State Bar of Arizona.

Issued on _MAY 12_, 2010 at Phoenix, Arizona.

Probable Cause Panelist

Richard T. Platt

3

# Exhibit 19

THE LAW FIRM OF

# PETER STROJNIK
### ATTORNEY AT LAW

Peter Strojnik
Arizona Bar No 006464
Arizona Insurance Producer License
L169: 951512
Direct Dial: 602-524-6602

May 18, 2010

Harriett M. Bernick, Esq.
Staff Bar Counsel
4201 N. 24th Street, Suite 200
Phoenix, Arizona 85016-6288

Re:    File No. 09-1451
       Jack San Felice, Complainant

Dear Ms. Bernick:

This responds to your questions raised in the May 13, 2010 correspondence. I have cut and pasted the question into this response for ease of review.

1) You were previously disciplined for a violation of ER 1.9. What were the facts of that case? Why were you disciplined?

ANSWER: As I recall, the events giving rise to the previous charge occurred sometime in 1985 -25 years ago. I simply do not remember.

2) I don't understand what you mean when you state Silver King Mine is not an entity capable of representation. Please explain.

ANSWER: Silver King Mine is a mine. One cannot represent a mine.

3) Please explain why you did not violate ER 1.9 when you sued Jack San Felice and Ron Deen when you represented them as part of the Joint Venture?

ANSWER:

I never represented Jack San Felice or Ron Deen. A lawyer representing an entity represents only the entity (Joint Venture in this case), not its officers, directors, or shareholders, and not any related entities such as parents, subsidiaries or sister companies. Restatement (Third) of the Law Governing Lawyers § 131 cmt. b (2000); *Boyd v. Second Judicial District Court*, 51 Nev. 264, 269-70, 274 P. 7. 8-9 (1929) (dismissing challenge to disqualification of lawyer who had worked for company with its

former officer from representing the officer against the company); *Waid v. Eighth Judicial District Court of the State of Nevada*, 119 P.3d 1219, 121 Nev. 605 (Nev. 2005); *Bobbitt v. Victorian House, Inc.*, 545 F. Supp. 1124 (N.D. Ill. 1982); *BNYCP v. Superior Court (Parsons Corp.)*, 70 Cal. Rptr. 2d 419 (Ct. App. 1997); *Jesse v. Danforth*, 485 N.W.2d 63 (Wis. 1992)

4) Did you violate ER 1.8 (a) (1) by obtaining an interest in APM? If not, please explain. Do you have writing setting forth your agreement with APM other than the fee agreement you previously provided?

**ANSWER:**   No. I am not certain how I would violate ER 1.8(a)(1) vis-à-vis the complainant when he had nothing to do with APM.  Please explain. All my dealings with APM were conducted in accordance with the ER's.

5) Do you have a fee agreement for representing the Joint Venture other than the one with APM?

**ANSWER:** I charged the JV no fee.

6) Was it your understanding that APM would pay all of the legal fees for the Joint Venture?

**ANSWER:** My understanding was that I would serve free of charge.

7) Who did you bill when you sent the letters to the Forest Service on behalf of Silver King Mine?

**ANSWER:** I do not recall billing anyone.

I have filed objection to the subpoena.  Perhaps you and I should attempt a good faith discovery resolution with respect to the subpoena.  Call me if you wish to do so.

Sincerely,

Peter Strojnik

PS: pjs
Encls. *as indicated*

# Exhibit 20

FILED

JUN 1 8 2010

STATE BAR OF ARIZONA
BY _Sandra Montoya_

# BEFORE THE PROBABLE CAUSE PANELIST
## OF THE STATE BAR OF ARIZONA

| | |
|---|---|
| IN THE MATTER OF A MEMBER OF THE STATE BAR OF ARIZONA, | File No. 09-1451 |
| **PETER STROJNIK,** **Bar No. 006464** | **ORDER DENYING RESPONDENT'S OBJECTION TO SUBPOENA DUCES TECUM** |
| Respondent. | |

On May 19, 2010, Respondent, **PETER J. STROJNIK,** filed an objection to the Subpoena Duces Tecum issued by the Probable Cause Panelist on May 12, 2010.

The State Bar has filed a Response to Respondent's Objection and Additional Support for Subpoena.

Having considered the objection and response, **IT IS HEREBY ORDERED** that the subpoena duces tecum will stand and Respondent is ordered to produce the records requested therein on or before July 2, 2010.

Issued on _June 18, 2010_, at Phoenix, Arizona.

Probable Cause Panelist

1

Original filed this 18th day of
June, 2010, with:

Lawyer Regulation Records Department
State Bar of Arizona
4201 N. 24th St., Suite 200
Phoenix, Arizona 85016-6288


Copies were mailed this 18th day of
June, 2010, to:

Peter Strojnik
Attorney at Law
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012-2720
Respondent


Copies of the foregoing hand-delivered
this 18th day of June, 2010, to:

Shauna R. Miller
State Bar of Arizona
4201 North 24th Street, Suite 200
Phoenix, Arizona 85016-6288

Lawyer Regulation Records Department
State Bar of Arizona
4201 North 24th Street, Suite 200
Phoenix, Arizona 85016-6288


by: _____
        SRM/rr

# Exhibit 21

```
                                    ┌─────────────────────────────┐
                                    │    FILED                    │
                                    │    AUG 1 9 2010              │
                                    │  STATE BAR OF ARIZONA       │
                                    │ BY  [signature]             │
                                    └─────────────────────────────┘
```

## BEFORE THE PROBABLE CAUSE PANELIST
## OF THE STATE BAR OF ARIZONA

IN THE MATTER OF A MEMBER
OF THE STATE BAR OF ARIZONA,

No. 09-1451

PETER STROJNIK,
Bar No. 006464

PROBABLE CAUSE ORDER

Respondent.

The Probable Cause Panelist of the State Bar, having reviewed this matter pursuant to Rule 54(b), Ariz. R. Sup. Ct., finds that probable cause exists to issue a complaint against Respondent for violations of Rule 42, Ariz. R. Sup. Ct., including but not limited to ERs 1.6, 1.7, 1.8, 1.9, and 8.4(d).

Parties may not file motions for reconsideration of this order.

**IT IS THEREFORE ORDERED** that the State Bar prepare and file a complaint with the Disciplinary Clerk.

DATED this _18th_ day of _August_, 2010.

_____
Probable Cause Panelist
State Bar of Arizona

Richard T. Platt

Original of the foregoing filed this
__19th__ day of August, 2010, with:

Lawyer Regulation Records Department
State Bar of Arizona
4201 N. 24th Street, Suite 200
Phoenix, Arizona 85016-6288

Copy was mailed this __20th__
day of August, 2010, to:

Peter Strojnik
Attorney at Law
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012-2720
Respondent

Copy was hand-delivered this __20th__ day
of August, 2010, to:

Lawyer Regulation Records Manager
State Bar of Arizona
4201 N. 24th Street, Suite 200
Phoenix, Arizona 85016-6288


by: __Rose Riley__
     SRM/rr

2

**FILED**

AUG 19 2010

STATE BAR OF ARIZONA

BY _____

**BEFORE THE PROBABLE CAUSE PANELIST**
**OF THE STATE BAR OF ARIZONA**

IN THE MATTER OF A MEMBER
OF THE STATE BAR OF ARIZONA,

No. 09-0314

PETER STROJNIK,
Bar No. 006464

**PROBABLE CAUSE ORDER**

Respondent.

The Probable Cause Panelist of the State Bar, having reviewed this matter pursuant to Rule 54(b), Ariz. R. Sup. Ct., finds that probable cause exists to issue a complaint against Respondent for violations of Rule 42, Ariz. R. Sup. Ct., including but not limited to ERs 1.6, 1.7, 1.8(a), 1.9, 3.3(a), 8.1(a), 8.4(c) and (d).

Parties may not file motions for reconsideration of this order.

**IT IS THEREFORE ORDERED** that the State Bar prepare and file a complaint with the Disciplinary Clerk.

DATED this _18th_ day of August, 2010.

Probable Cause Panelist
State Bar of Arizona
Richard T. Platt

Original of the foregoing filed this
__19th__ day of August, 2010, with:

Lawyer Regulation Records Department
State Bar of Arizona
4201 N. 24th Street, Suite 200
Phoenix, Arizona 85016-6288

Copy was mailed this __20th__ day
of August, 2010, to:

Peter Strojnik
Peter Strojnik PC
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012-2720
Respondent

Copy was hand-delivered this __20th__ day
of August, 2010, to:

Lawyer Regulation Records Manager
State Bar of Arizona
4201 N. 24th Street, Suite 200
Phoenix, Arizona 85016-6288

by: __Rose Riley__
     SRM/rr

# Exhibit 22

1  Shauna R. Miller, Bar No. 015197
2  Senior Bar Counsel
   State Bar of Arizona
3  4201 N. 24th Street, Suite 200
   Phoenix, Arizona 85016
4  Telephone (602) 340-7278
5  Email: LRO@staff.azbar.org

```
 F I L E D
   DEC 17 2010
HEARING OFFICER OF THE
SUPREME COURT OF ARIZONA
BY_____
```

6                **BEFORE A HEARING OFFICER**
7          **OF THE SUPREME COURT OF ARIZONA**

8  IN THE MATTER OF A MEMBER        File Nos. 09-0314 and 09-1451
   OF THE STATE BAR OF ARIZONA,
9
10 **PETER STROJNIK**                **COMPLAINT**
   **Bar No. 006464**
11                                   (Assigned to Hearing Officer ____,
   Respondent.                       _____)
12

13        Complaint is made against Respondent as follows:

14              **GENERAL ALLEGATIONS**

15        1.    At all times relevant, Respondent was a lawyer licensed to practice
16
17 law in the state of Arizona having been first admitted to practice in Arizona on
18 October 4, 1980.

19              **COUNT ONE**
20         **(File No. 09-0314/Richardson)**

21        2.    Alejandro Reynoso and his wife were owners and shareholders in
22
   AR Utilities Specialists, Inc. (ARUSI). Mr. Reynoso was ARUSI's President and
23
24 Chief Executive Officer.
25

                            -1-

RJB
12/17/2010
heo

3.      Later the management structure of ARUSI changed and Mr. Reynoso was appointed Chairman of the Board, Ray Cabreja (Mr. Cabreja) was made President and Tom Kummer (Mr. Kummer) became Treasurer.

4.      Respondent was retained as ARUSI's general counsel on May 10, 2005 and later became Secretary for ARUSI.

5.      CSK Partnership (CSK) is a consulting business that assisted in the management restucturing of ARUSI.  Mr. Cabreja (C), Respondent (S) and Mr. Kummer (K) were general partners in CSK.

6.      Respondent prepared a consulting agreement between CSK and ARUSI.  In the consulting agreement, Respondent identifies Mr. Cabreja and Mr. Kummer as general partners in CSK, but fails to identify himself as a general partner.

7.      At the time he was retained by ARUSI, Respondent was also the president and CEO of Binary Mass Propulsion Systems, Inc. (Binary Mass).

8.      While acting as general counsel and secretary for ARUSI, Respondent arranged the merger of Binary Mass with ARUSI.

9.      On June 10, 2005, ARUSI filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.  This occurred after Mr. Reynoso filed for divorce from his wife and Mrs. Reynoso began withdrawing assets out of ARUSI.

-2-

10.    William Richardson (Mr. Richardson) represented (ARUSI) as the debtor in the Chapter 11 bankruptcy proceeding filed in the United States Bankruptcy Court for the District of Arizona, Case No. 2:05-10489-PHX-GBN (ARUSI bankruptcy).

11.    Dale Ulrich (the Trustee) was appointed as the Chapter 11 Trustee in the ARUSI bankruptcy.  The Trustee was represented by attorney Terry Dake (Mr. Dake).

12.    Mr. Dake, being newly appointed with approaching deadlines, requested that Mr. Richardson file adversary proceedings on behalf of the Trustee.

13.    On or about June 11, 2007, Mr. Richardson filed three adversary proceedings on behalf of ARUSI and the Trustee against several defendants.

14.    One of the adversary proceedings was filed against Edmundo Uribe, his wife, and Mr. Uribe's company MCC Technology (Uribe adversary proceedings).

15.    The purpose of the adversary proceedings was to recover what the Trustee determined to be preferential and fraudulent transfers made to several different people and entities, including Mr. Uribe and MCC.

16.    In the Uribe adversary proceedings, it was alleged that Mr. Uribe had received numerous transfers of assets from debtor ARUSI during the year

-3-

previous to the filing of the bankruptcy case. These assets allowed Mr. Uribe or his companies to benefit at the hands of the debtor and left ARUSI in worse condition, making it appropriate for the Trustee to seek recovery of those funds.

17.    Respondent represented Mr. Uribe and MCC in the adversary proceedings against ARUSI and the Trustee.

18.    On June 27, 2007, Respondent filed a Motion to Dismiss Adversary Complaint for Failure to State a Claim, alleging that Mr. Richardson was not authorized by the Trustee to bring the action.

19.    Prior to filing his motion to dismiss, Respondent contacted the Trustee to find out if Mr. Richardson had the Trustee's authorization to file the adversary proceedings. The Trustee told Respondent that he had authorized Mr. Richardson to file the adversary proceedings.

20.    Respondent made false statements in his motion to dismiss by claiming that the adversary proceedings were not authorized by the Trustee.

21.    On August 15, 2007, Mr. Dake on behalf of the Trustee filed a Motion to Disqualify Respondent from representing Mr. Uribe and MCC in the adversary proceedings based on conflicts of interests.

22.    Respondent represented the debtor ARUSI as general counsel, served as secretary to ARUSI and arranged the merger of his corporation, Binary Mass,

-4-

1  to ARUSI, creating conflicts of interest regarding his representation of Mr. Uribe
2  and MCC against ARUSI in the adversary proceedings.

3      23.    During the ARUSI bankruptcy proceedings, debtor ARUSI filed an
4
5  objection to Respondent's First and Final Application for Compensation (the Fee
6  Application).

7      24.    Respondent filed a response to the objection to the Fee Application
8
9  which included an Emergency Application for the Appointment of Trustee –
10  Alternatively – For Conversion to Chapter 7 (the Emergency Application).  In the
11  Emergency Application, Respondent revealed confidential client communications
12  and financial information regarding debtor ARUSI.

13      25.   After filing the Emergency Application, Respondent began
14
15  negotiations for the withdrawal of said application predicated on the payment of
16  his disputed fees.

17      26.   In an April 21, 2006, email from Respondent to Mr. Reynoso's
18
19  attorney Henk Taylor, Respondent negotiated for the payment of $10,000.00 from
20  Mr. Reynoso in exchange for the withdrawal of his Fee and Emergency
21  Applications.

22      27.   The same day that Respondent received his payment of $10,000.00
23
24  from Mr. Reynoso, Respondent withdrew his Fee Application and his Emergency
25  Application.

-5-

28.    Respondent misrepresented his involvement with CSK to the State Bar by stating that CSK was a consulting group that consisted of Mr. Cabreja and Mr. Kummer and that Respondent's role was only procedural in preparing the consulting agreement at the direction of Messrs. Reynosos, Cabreja and Kummer.

29.    Mr. Cabreja confirmed that Respondent was a partner of CSK and a Verified Statement made by Respondent[1] states that "[Respondent] is also a general partner of an entity called CSK Partnership, an Arizona general partnership."

30.    Respondent knowingly made a false statement of fact when he stated in his motion to dismiss that Mr. Richardson was not authorized by the Trustee to file the adversary proceedings, in violation of Rule 42, ERs 3.3(a)(1) and 8.4(c), Ariz. R. Sup. Ct.

31.    Respondent's representation of Mr. Uribe and MCC in the adversary proceedings against ARUSI conflicted with his duty of loyalty to ARUSI in violation of Rule 42, ER 1.7(a), Ariz. R. Sup. Ct.

32.    Respondent's position as general counsel and secretary to ARUSI and his arrangement of the merger of his corporation with ARUSI constitutes a business transaction for which Respondent failed to appropriately advise ARUSI

---

[1] "Verified statement of Peter Strojnik Required by 11 U.S.C. §329 and Bankruptcy rules 2014(a) and 2016" dated June 28, 2005.

to seek the advice of independent counsel and failed to get informed consent for the representation, in violation of Rule 42, ER 1.8(a), Ariz. R. Sup. Ct.

33.   Respondent revealed confidential client communications and financial information in his fee application regarding debtor ARUSI to ARUSI's disadvantage in violation of Rule 42, ERs 1.6(a) and 1.9(c)(1), Ariz. R. Sup. Ct.

34.   Respondent engaged in conduct that was prejudicial to the administration of justice by filing the Motion to Dismiss Adversary Complaint for Failure to State a Claim, in violation of Rule 42, ER 8.4(d), Ariz. R. Sup. Ct.

35.   Respondent engaged in conduct that was prejudicial to the administration of justice by filing the Emergency Application and then negotiating with counsel for the withdrawal of the application based on the payment of his disputed fees, in violation of Rule 42, ER 8.4(d), Ariz. R. Sup. Ct.

36.   Respondent knowingly made a false statement of material fact when he misrepresented to the State Bar that he had no involvement with CSK other then to prepare the consulting agreement, in violation of Rule 42, ER 8.1(a), Ariz. R. Sup. Ct.

37.   Respondent's conduct as described in this count violated Rule 42, specifically ERs 1.6(a), 1.7(a), 1.8(a), 1.9(c)(1), 3.3(a)(1), 8.1(a), 8.4(c) and (d), Ariz. R. Sup. Ct.

## COUNT TWO
### (File No. 09-1451/Deen and San Felice)

38.    On or about August 22, 2006, Respondent prepared and executed a Joint Venture Agreement (the Joint Venture) between Silver King Mining Company of America, LLC (Silver King) and Arizona Precious Metals, Inc. (APM).

39.    Silver King is an Arizona Limited Liability Company that owns certain mining and mineral rights.  Ronald Deen, Sr. (Mr. Deen) and Jack San Felice (Mr. San Felice) are members and directors of Silver King.

40.    Richard Campbell (Mr. Campbell), Hans Hüning (Mr. Hüning) and Respondent are members and directors of APM, a Nevada corporation. Respondent is also corporate counsel of APM.

41.    The purpose of the Joint Venture was for the mining of precious metals and for APM to provide the necessary funding for the reopening of the Silver King Mine.  Silver King was not represented by separate counsel during the formation of the Joint Venture.

42.    Respondent represented the Joint Venture on a continuing basis as its general counsel.

43.    A Policy Committee of five members was established to manage the Joint Venture.  Mr. Deen, Mr. San Felice, Mr. Campbell and Mr. Hüning were appointed as non-permanent members of the committee.

-8-

44.   Respondent was appointed as a permanent member of the Joint Venture with the power to break tie votes between the other four members. The committee members entered into a covenant agreeing to the ownership and non-disclosure of confidential information.

45.   Respondent, as general counsel for the Joint Venture and counsel for APM, prepared an amended joint venture agreement (the Amended Joint Venture) that was executed on November 27, 2006 between APM, Silver King, the Joint Venture, and the Funding Group.

46.   The Funding Group was comprised of Mr. Campbell (CEO of APM), Mr. Hüning (CFO of APM) and TCMS Investments, Inc. (owned by Respondent's wife, Tanya Strojnik).

47.   The Amended Joint Venture was prepared as a result of APM's inability to provide funding pursuant to its contractual obligations under the original Joint Venture.

48.   The Amended Joint Venture obliged the Funding Group to pay a Reclamation Bond to the U.S. Forest Service and modified the terms and conditions of the original Joint Venture.

49.   The Funding Group became a party to the original Joint Venture and the percentage allocations of interest were modified to include the Funding Group.  Mr. Deen, Mr. San Felice and Silver King were not represented by

-9-

counsel during the preparation and implementation of the Amended Joint Venture.

50.    Respondent included mutual releases between APM, Silver King and the Joint Venture in the Amended Joint Venture to release certain parties from any actions or claims that could arise.

51.    Respondent included in the Amended Joint Venture a term releasing APM from any prior violation for its failure to fund under the original Joint Venture agreement and releasing TCMS Investments from any actions or claims.

52.    Respondent also included in the Amended Joint Venture a release for himself as general counsel from any claims arising from the funding of the reclamation bond by the Funding Group.  Both Respondent and his wife were designated as third party beneficiaries of the release.

53.    Respondent included in the Recitals to the Amended Joint Venture, "parties waive any conflict of interest, any commercial or civil tort, any breach of contract, or any breach of duty, that may arise out of this Agreement, and to release one another from any claim whatever for conduct occurring to the effective date of this Agreement."

54.    Although the Reclamation Bond was paid by the Funding Group, APM failed to provide any further funding pursuant to its obligations under the original Joint Venture.

55.   When the Amended Joint Venture failed to perform as planned, Respondent filed suit against Mr. Deen and Mr. San Felice on behalf of the Funding Group to recover the Reclamation Bond and for other claims.   Pinal County Superior Court, *The Funding Group v. Ronald Dean et al.*, cause no. CV2007-01884 (The Funding Group lawsuit).

56.   Respondent had a conflict of interest in filing the Funding Group lawsuit and took undue advantage of his position as attorney for all parties and as the drafter of the Joint Venture and the Amended Joint Venture.

57.   Respondent was acting as a policy making tie breaker and counsel for APM while advising the other member of the original Joint Venture, Silver King, to waive any claims against APM and against Respondent and his wife.

58.   Respondent as general counsel for the Joint Venture failed to clearly outline the benefits and hazards to each of those entities through their named representatives.

59.   In the Funding Group lawsuit, Defendants Deen and San Felice filed a Motion for Determination of Counsel.   The motion was granted on December 12, 2008, by Judge William O'Neal.   Judge O'Neil found Respondent needed to be removed from the case because of serious conflicts of interest and failure to disclose intertwined relationships.

-11-

60.    Respondent's status as lawyer for the Joint Venture allowed him to obtain confidential information about Mr. San Felice, Mr. Deen, and Silver King. The use of this information to file a lawsuit against them violated Rule 42, ER 1.6(a), Ariz. R. Sup. Ct.

61.    Respondent had an absolute duty of loyalty and confidentiality to the Joint Venture itself, including advising the Joint Venture of what legal action to take regarding the defaulting action of one of its members (APM).  There was no informed consent to waive any conflict by Silver King regarding Respondent's duty and representation, in violation of Rule 42, ER 1.7(a), Ariz. R. Sup. Ct.

62.    Respondent created conflicts of interest by filing suit against persons whom he otherwise represented by being general counsel for the Joint Venture, and by filing suit on a matter directly arising from the Amended Joint Venture that he prepared, in violation of Rule 42, ER 1.7 (a), Ariz. R. Sup. Ct.

63.    Respondent's actions in amending the Joint Venture in order to waive claims other Joint Venture members may have had against him and his wife constitutes a business transaction for which Respondent failed to appropriately advise the Joint Venture to seek the advice of independent counsel and failed to get informed consent for the representation in writing, in violation of Rule 42, ER 1.8(a), Ariz. R. Sup. Ct

-12-

1    64.    Respondent's status as lawyer for the Joint Venture allowed him to

2  obtain confidential information about Mr. San Felice, Mr. Deen, and Silver King.

3  Using this information to their disadvantage by filing a lawsuit against them

4  violated Rule 42, ER 1.9(c)(1), Ariz. R. Sup. Ct.

5

6    65.    Respondent engaged in conduct that was prejudicial to the

7  administration of justice by filing a lawsuit against his clients and by taking

8  undue advantage of his position as attorney for all parties and as the drafter of the

9  Amended Joint Venture upon which he sought to benefit himself and his marital

10  community, in violation of Rule 42, ER 8.4(d) Ariz. R. Sup. Ct.

11

12    66.    Respondent's conduct as described in this count violated Rule 42,

13  specifically ERs 1.6(a), 1.7(a), 1.8(a), 1.9(c)(1), and 8.4(d), Ariz. R. Sup. Ct.

14    **DATED** this _17_ day of November 2010.

15

16                              **STATE BAR OF ARIZONA**

17

18

19                              Shauna R. Miller
                                Senior Bar Counsel
20

21  Original filed with the Disciplinary Clerk
    of the Supreme Court of Arizona
22  this 17th day of November, 2010.

23

24

25  by: _____
        SRM:rr

-13-

# Exhibit 23

1   L. Eric Dowell, SBN 011458
2   Caroline Larsen, SBN 022547
    Monique Young, SBN 025121
3   Ogletree, Deakins, Nash, Smoak & Stewart, P.C., SBN 00504800
    2415 East Camelback Road, Suite 800
4   Phoenix, Arizona 85016
5   Telephone:    (602) 778-3700
    Facsimile:    (602) 778-3750
6   Eric.Dowell@ogletreedeakins.com
    Caroline.Larsen@ogletreedeakins.com
7   Monique.Young@ogletreedeakins.com
8
    Attorneys for Defendants STATS ChipPAC, Inc.
9   and STATS ChipPAC, Ltd.

10              UNITED STATES DISTRICT COURT
11              FOR THE DISTRICT OF ARIZONA
12

13  Diane Sahakian, a single woman,          CV08-241-PHX-HRH

14              Plaintiff,                    DEFENDANTS' MOTION FOR
                                             SANCTIONS AGAINST PLAINTIFF'S
15      vs.                                   COUNSEL

16  STATS ChipPAC, Inc., a foreign
17  corporation; STATS ChipPAC Ltd, a
    foreign corporation; Temasek Holdings
18  Private Limited, a foreign corporation;
    Singapore Technologies Semiconductors
19  Private Limited, a foreign corporation,
20
                Defendants.
21

22          Plaintiff's counsel, Peter Strojnik, has contacted Eric Gongora (a current STATS

23  employee whom Mr. Strojnik has repeatedly characterized as a "star witness" in this

24  matter) without the consent of the STATS Defendants' ("Defendants") attorneys in clear

25  violation of Ethical Rule 4.2.  Additionally, the letter Mr. Strojnik sent to Mr. Gongora

26  appears to be designed to impact his testimony in this case via a bizarre mix of threats,

27  disparagement of Defendants and their counsel, and an offer to resolve the state court

28  action against Mr. Gongora in exchange for his cooperation with Plaintiff in this case.

1  Accordingly, Defendants respectfully move the Court to issue sufficient sanctions to

2  prevent further improper conduct by Mr. Strojnik including, but not limited to,

3  disqualifying Plaintiff's counsel.

## I.  MR. STROJNIK IS WELL AWARE THAT HIS EX PARTE CONTACT WITH MR. GONGORA VIOLATES ETHICAL RULE 4.2.

6  Attorneys practicing in the District of Arizona are bound by the Arizona Rules of

7  Professional Conduct and are subject to the regulation of their conduct by this Court.  *See*

8  L.R.Civ. 83.2(e); *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980) ("The primary

9  responsibility for controlling the conduct of lawyers practicing before the district court

10  rests with that court.") (citation omitted).

11  Under Arizona Rule of Professional Conduct 4.2, a lawyer shall not communicate

12  with a party the lawyer knows to be represented by another lawyer without the consent of

13  the representing lawyer.  Where, as here, a corporation is a defendant in a lawsuit, Rule

14  4.2 prohibits contact with any employee who has managerial responsibility, whose acts or

15  omissions relate to the matter in dispute and may be imputed to the corporation, and/or

16  who occupies a high-ranking position such that any statement by the employee would

17  constitute an admission on behalf of the company.  *See* Ariz. R. of Prof'l Conduct 4.2,

18  cmt. 2; *Kaiser v. Am. Tel. & Tel.*, 2002 WL 1362054, *5 (D. Ariz. Apr. 5, 2002); *Lang v.*

19  *Superior Court*, 826 P.2d 1228, 1231 (Ariz. Ct. App. 1992).  According to Plaintiff, Mr.

20  Gongora is a "star witness" who not only purportedly sexually harassed her, but

21  encouraged or enticed other employees to do so as well.  *See* Docs. 198, 210, 220.  Thus,

22  Plaintiff is clearly attempting to impute Mr. Gongora's purported conduct to Defendants,

23  thereby placing Mr. Gongora squarely within the scope of Ethical Rule 4.2.

24  In fact, on March 3, 2009, Defendants' counsel reminded Mr. Strojnik of the

25  prohibitions set forth in Ethical Rule 4.2 and informed Mr. Strojnik that he did not have

26  permission to contact Mr. Gongora.  *See* email dated March 3, 2009, attached hereto as

27  Attachment 1.  Defendants' counsel again reminded Mr. Strojnik of the Ethical Rule 4.2

28  prohibition against contacting Defendants' current employees in a letter dated April 20,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

2009.  *See* Attachment 2.  Thus, it is impossible that Mr. Strojnik was unaware of the prohibitions imposed by Ethical Rule 4.2 and that Defendants did not consent to him contacting any employee or former employee, including Mr. Gongora, covered thereunder.  This notwithstanding, Mr. Strojnik, in complete disregard for Ethical Rule 4.2, sent Mr. Gongora a letter on July 10, 2009 (the "Letter").  *See* Attachment 3.

## II.    THE CONTENTS OF MR. STROJNIK'S LETTER WARRANT SUFFICIENT SANCTIONS TO DETER SUCH CONDUCT, INCLUDING DISQUALIFICATION.

### A.    *Mr. Strojnik's Conduct Is Egregious.*

Not only has Mr. Strojnik clearly violated E.R. 4.2 by contacting Mr. Gongora, the contents of the Letter reveal an improper attempt to affect the testimony of a witness Mr. Strojnik has repeatedly characterized as a "star witness" in this case.  Indeed, Mr. Strojnik both threatens Mr. Gongora with a perjury claim[1] if he does not cooperate and offers to resolve the state court action against him in exchange for him divulging privileged communications with Defendants' counsel.

Mr. Strojnik further attempts to intimidate Mr. Gongora by making the unsubstantiated statement that Mr. Gongora should not be surprised if STATS terminates his position after he testifies in this case.  *See* Attachment 3, pp. 1-2.  Equally disconcerting, Mr. Strojnik also states that "good attorneys always coach their witnesses prior to giving testimony."  While such a statement may be illustrative of Mr. Strojnik's ethical compass, the insinuation that Defendants' counsel "coached" Mr. Gongora is unfounded, disparaging, and another attempt to intimidate and mislead this witness.

---

[1] To the extent Mr. Strojnik's reference to perjury and extortion are construed by Mr. Gongora as a threat of criminal prosecution, such conduct also is prohibited by Ethical Rule 4.4(a).  Given Mr. Strojnik's penchant for referencing Arizona's extortion statute (he also cited it in the cover letter transmitting his baseless claim against Defendants' counsel that has been dismissed), he should be well aware that Arizona law prohibits an attempt to gain services by threatening criminal charges or subjection to contempt or ridicule.  *See* A.R.S. § 13-1804.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

**B.    Disqualification Is Warranted In This Case.**

When an ethics violation has occurred, the Court has discretion to impose sanctions, including the disqualification of counsel. *See Eaton v. Siemens*, 2007 WL 2318531, *4 (E.D. Cal. Aug. 10, 2007) (finding that a district court has authority under its inherent power to disqualify counsel because of a violation of professional ethics); *Kaiser v. Am. Tel & Tel.*, 2002 WL 1362054, at *5 (D. Ariz. Apr. 5, 2002) (finding that although disqualification is an extreme sanction, it should be used to preserve the integrity of the judicial system).    To determine whether Plaintiff's counsel should be disqualified in this case, the Court should consider the following factors:

1.    The client's interest in being represented by counsel of her choice;

2.    The opposing party's interest in a trial free from prejudice due to disclosures of confidential information; and

3.    The public's interest in the scrupulous administration of justice.

*Kaiser*, 2007 WL 1362054, at *7 (*citing Complaint of Korea Shipping Corp.*, 621 F.Supp. 164 (D. Alaska 1985)).

An analysis of these factors in this case weigh heavily in favor of disqualifying Plaintiff's counsel.    While Defendants acknowledge that Plaintiff has an interest in being represented by counsel of her choosing, Plaintiff has voluntarily switched counsel once in this case and her current counsel has only been involved in this case for nine months. *Id.* at *7-8 (disqualifying counsel where the case had been pending for two years). Moreover, discovery is closed, motions in limine are fully briefed, and dispositive motions will be fully briefed by the time this Motion is fully briefed and ready for consideration by the Court.    Accordingly, Plaintiff will have sufficient time to find new counsel and allow him or her to get up to speed before trial, while the dispositive motions are pending.

More importantly, the outrageousness of Plaintiff's counsel's conduct far outweighs Plaintiff's interest in proceeding with counsel of her choice.    As the court in *Kaiser* observed, a defendant's interest in a trial free of prejudice is "very significant" in

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

4

1  a case where the illicit contact was with a "central figure in the dispute." *Id.* at *8. Here,

2  Mr. Strojnik has contacted the alleged harasser and both threatened him with personal

3  liability if he does not cooperate and offered to resolve the state court action against him

4  in exchange for his disclosure of privileged information. Mr. Strojnik also insinuated that

5  Defendants would fire Mr. Gongora once this case was over and that Defendants' counsel

6  had engaged in conduct that, while lauded by Mr. Strojnik, is improper. One would be

7  hard pressed to come up with conduct that could be more prejudicial to Defendants or is a

8  more egregious affront to the public's interest in the scrupulous administration of justice

9  than attempting to intimidate a witness in this manner. Thus, Plaintiff's counsel should

10  be disqualified.

11      In addition to disqualification, Defendants also respectfully request that the Court

12  (1) direct Plaintiff's counsel to disclose any other contacts (and documents evidencing the

13  same) they have had with individuals that fall under Ethical Rule 4.2; (2) order that

14  Plaintiff's counsel have no further contact with Mr. Gongora (or any other individual

15  covered by Ethical Rule 4.2); and (3) award Defendants their attorneys' fees and costs

16  incurred in connection with this Motion.

17

18      DATED this 21st day of August, 2009.

19                          OGLETREE, DEAKINS, NASH,
20                          SMOAK & STEWART, P.C.

21

22                          By: s/ Caroline Larsen
                               L. Eric Dowell
23                             Caroline Larsen
                               Monique Young
24                             2415 East Camelback Road, Suite 800
25                             Phoenix, Arizona 85016
                               Attorneys for Defendants STATS ChipPAC,
26                             Inc. and STATS ChipPAC, Ltd.

27

28

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

5

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21st, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Peter Strojnik
Peter Strojnik, P.C.
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Attorney for Plaintiff

Peter K. Strojnik
The Law Firm of Peter Strojnik
3030 North Central Avenue, Suite 1401B
Phoenix, Arizona 85012


s/ Debra Perkins


7591230.1 (OGLETREE)

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

# Exhibit 24



**STATE BAR OF ARIZONA**

Assistant's Direct Dial (602) 340-7278

July 22, 2010

<u>**Personal and Confidential**</u>

Peter Strojnik, Esquire
Peter Strojnik, PC
3030 N. Central Ave., Suite 1401
Phoenix, Arizona 85012-2720

Re:    File No.         10-1223
       Complainants    L. Eric Dowell and Caroline Larsen

Dear Mr. Strojnik:

Information concerning your professional conduct has come to the attention of the State Bar. Rule 51(b)(1), Ariz. R. Sup. Ct. requires Bar Counsel to investigate all information coming to the attention of the State Bar that, if true, would be grounds for discipline. This includes information from any source, whether or not they were a party to the underlying action or conduct. There is no standing requirement to submit information or initiate a disciplinary charge.

At this point, the matter is not considered a formal complaint, but rather a "bar charge" that is being investigated through a "screening investigation." Your participation in the screening investigation is extremely important, as Bar Counsel will make a recommendation at the end of the investigation as to whether the matter should be dismissed, resolved via informal means, or referred for formal disciplinary action. Pursuant to ER 8.1(b) and Rule 53(d) & (f), Ariz. R. Sup. Ct., you have a duty to cooperate with this investigation. Failure to fully and honestly respond to, or cooperate with, the investigation is, in itself, grounds for discipline. I also refer you to Rule 48(g) Ariz. R. Sup. Ct. regarding non-abatement in disciplinary matters.

A copy of the information received by the State Bar has been included with this letter. Please submit a written response to the enclosed information, directed to my office, within 20 days of the date of this letter. Do not send your response or a copy of your response directly to the Complainants. If you cannot file a timely response, you should contact my office immediately. Please also include the above-referenced file number on all correspondence concerning this matter. You must submit **an original and one copy** of your written response. If you do not submit a copy with your response you will be charged $.20 per page for copying your response.

The ethical rules that should be addressed in your response include, <u>but are not limited to</u>: ERs 4.2, 4.4(a) and 8.4(c) and (d), Ariz. R. Sup. Ct.

Peter Strojnik, Esquire
July 22, 2010
Page 2

A copy of your response will be sent to the Complainants and will become public record upon disposition of the matter. You may make a request that certain information in your response remain confidential pursuant to Rule 70(g) Ariz. R. Sup. Ct. **Any such request must be made in a letter separate from your response** and must set forth the factual and legal basis therefore. You must specify whether you want to keep the information from the public, but not the complainants, or from both the public and the complainants. At the time you make such a request, you must submit the information for which confidentiality is requested as part of your request. You should also submit a redacted copy to remain in the public portion of the file, as the rules require some type of response to remain in the public portion of the file. Requests for confidentiality are only granted sparingly and only upon good cause shown. If your request for confidentiality is denied, the information or documents in question will not be returned to you, but will become public upon disposition of the matter.

The State Bar has a diversion program that, in some cases, may provide an alternative to traditional discipline. Diversion is a rehabilitative program available to lawyers whose ethical misconduct is of a non-serious nature and who may benefit from one or more of the State Bar's remedial programs, such as the Member Assistance Program (MAP) or the Law Office Management Assistance Program (LOMAP). Diversion is not available in cases of serious misconduct or for conduct involving dishonesty, self-dealing, or breach of a fiduciary duty. Participation in diversion is voluntary. If you would like more information about the State Bar's diversion program, you may review the Diversion Guidelines on-line at:

http://www.myazbar.org/LawyerRegulation/DiversionGuidelines2004.pdf

or you may request a hard copy by contacting me at the number above. If, after reviewing the guidelines, you believe your case may qualify for diversion, please submit a written request with a statement of why you believe diversion is appropriate along with your response.

Thank you for your anticipated cooperation.

Sincerely,

Shauna R. Miller
Senior Bar Counsel

SRM/cam

Enclosure