# Exhibit 25

THE LAW FIRM OF

# PETER STROJNIK
## ATTORNEY AT LAW

Peter Strojnik
Arizona Bar No 006464
Arizona Insurance Producer License
L169: 951512
Direct Dial: 602-524-6602

July 23, 2010

Shauna R. Miller, Esq.
Senior Bar Counsel
4201 N. 24th Street, Suite 200
Phoenix, Arizona 85016-6288

      Re:    File No. 10-1223
             Eric Dowell and Caroline Larsen, Complainants

Dear Ms. Miller:

The factual and legal issues are adequately addressed in the submission by the complainants. However, what the complainants fail to address is the fact the their Motion for Sanctions filed in the District Court was denied by Judge Holland, and that the current complaint is no more than an attempt to second guess Judge Holland's decision.

The district court has a duty and responsibility to control and supervise the conduct of the attorneys practicing before it. *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996). As the Ninth Circuit Court of Appeals has noted:

> Whenever an allegation is made that an attorney has violated his moral and ethical responsibility, an important question of professional ethics is raised. ***It is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar.*** (Emphasis supplied.)

Judge Holland examined the charges and chose not to impose sanctions. This should be the end of it.

                         Sincerely,

                         Peter Strojnik

PS: pjs

RECEIVED

JUL 27 2010

STATE BAR OF ARIZONA

RECEIVED

JUL 2 7 2010

STATE BAR OF ARIZONA
LAWYER REGULATION

3030 NORTH CENTRAL AVENUE · SUITE 1401 · PHOENIX, ARIZONA 85012
TEL: 602.297.3019 · FAX: 602.296.0135
E-MAIL: PS@STROJNIK.COM · WEB: WWW.STROJNIK.COM

# Exhibit 26

## Rose Riley

| | |
|---|---|
| **From:** | strojnik@skplaw.com |
| **Sent:** | Friday, August 27, 2010 11:55 AM |
| **To:** | Shauna Miller |
| **Cc:** | Rose Riley |
| **Subject:** | [FWD: File No. 10-1222 - Eric Dowell Complainant] |

Ms. Miller:

I just received an "undeliverable" e-mail for the e-mail below. I made an error and sent the e-mail to azbar.staff.org instead of staff.azbar.org. Would you kindly consider the below e-mail and confirm a courteous extension. Have a good afternoon and weekend.

Peter

Peter Kristofer Strojnik
**The Strojnik Firm LLC**
3030 North Central Avenue
Suite 1401
Phoenix, Arizona 85012
Phoenix Tel. 602.297.3019
Phoenix Fax. 602.264.1441
Direct Dial. 602.510.9409

Confidentiality Notice: The information contained in this electronic e-mail and any accompanying attachment is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

-------- Original Message --------
Subject: File No. 10-1222 - Eric Dowell Complainant
From: <strojnik@skplaw.com>
Date: Mon, August 23, 2010 11:43 am
To: shauna.miller@azbar.staff.org

Ms. Miller:

I received your correspondence dated August 17, 2010 in the File number above. I will be submitting my response shortly. However, I ask that you extend the time for my father to respond by five calendar days. He has been out of the office since the date of the letter and will be so after the 15-day deadline outlined in the correspondence. Please extend this courtesy and confirm. Thank you and good morning.

Peter

Peter Kristofer Strojnik
**The Strojnik Firm LLC**
3030 North Central Avenue
Suite 1401
Phoenix, Arizona 85012
Phoenix Tel. 602.297.3019
Phoenix Fax. 602.264.1441
Direct Dial. 602.510.9409

Confidentiality Notice: The information contained in this electronic e-mail and any accompanying attachment is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

8/27/2010

# Exhibit 27

FILED

NOV 29 2010

STATE BAR OF ARIZONA

BY [signature]

**BEFORE THE PROBABLE CAUSE PANELIST**
**OF THE STATE BAR OF ARIZONA**

IN THE MATTER OF A MEMBER
OF THE STATE BAR OF ARIZONA,

No. 10-1223

PETER STROJNIK,
Bar No. 006464

**PROBABLE CAUSE ORDER**

Respondent.

The Probable Cause Panelist of the State Bar, having reviewed this matter pursuant to Rule 54(b), Ariz. R. Sup. Ct., finds that probable cause exists to issue a complaint against Respondent for violations of Rule 42, Ariz. R. Sup. Ct., including but not limited to ERs 4.2, 4.4(a), 8.4(c), and 8.4(d).

Parties may not file motions for reconsideration of this order.

**IT IS THEREFORE ORDERED** that the State Bar prepare and file a complaint with the Disciplinary Clerk.

**DATED** this 24 day of November, 2010.

[signature]

Probable Cause Panelist
State Bar of Arizona
Richard T. Platt

Original of the foregoing filed this
*29th* day of *November*, 2010, with:

Lawyer Regulation Records Department
State Bar of Arizona
4201 N. 24th Street, Suite 200
Phoenix, Arizona 85016-6288

Copy was mailed this *1st* day
of *December*, 2010, to:

Peter Strojnik
Peter Strojnik PC
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012-2720
Respondent

Copy was hand-delivered this *1st* day
of *December*, 2010, to:

Lawyer Regulation Records Manager
State Bar of Arizona
4201 N. 24th Street, Suite 200
Phoenix, Arizona 85016-6288

by: *Rose Riley*
SRM/rr

2

# Exhibit 28



**STATE BAR OF ARIZONA**

Assistant's Direct Dial: (602) 340-7278

December 1, 2010

**Personal and Confidential**

Peter Strojnik
Peter Strojnik PC
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012-2720

Re: File No. 10-1223
L. Eric Dowell, Complainant
Caroline Larsen, Co-complainant

Dear Mr. Strojnik:

The Probable Cause Panelist of the State Bar has entered the enclosed **Order of Probable Cause** directing the filing of a formal complaint against you in the above matter.

The filing of a formal complaint is the beginning of the formal disciplinary process. Please refer to Rules 57 through 59, Ariz. R. Sup. Ct., which governs the formal disciplinary process and outlines your responsibilities therein. When the formal complaint is filed, the State Bar will serve you with the complaint by certified mail or by personal service pursuant to Rule 57(a)2, Ariz. R. Sup. Ct. Enclosed for your review is a copy of the cost schedule adopted by the Supreme Court of Arizona; costs may be imposed in this matter pursuant to Rule 60(b), Ariz. R. Sup. Ct.

Should you wish to meet with me to discuss settlement options or if you have questions regarding the process, please feel free to contact me at the above number.

If you have not already done so, you may consider consulting with an attorney knowledgeable in the disciplinary process to assist you in this matter.

Sincerely,

Shauna R. Miller
Senior Bar Counsel

SRM/rr

Enclosure

# Exhibit 29



Direct Line: (602) 340-7278

June 17, 2011

**<u>Personal and Confidential</u>**

Nancy A. Greenlee
Attorney at Law
821 East Fern Drive North
Phoenix, Arizona 85014-3248

Re:    File No. 10-1223
        Peter Strojnik, Respondent
        L. Eric Dowell, Complainant
        Caroline Larsen, Co-complainant
        Stephen G. Montoya, Co-Complainant

Dear Ms. Greenlee:

Enclosed is an Amended Order of Probable Cause issued by the Attorney Discipline Probable
Cause Committee of the Supreme Court of Arizona in the above matter.

Sincerely,

Shauna R. Miller
Senior Bar Counsel

SRM/rr

Enclosure

BEFORE THE ATTORNEY DISCIPLINE
PROBABLE CAUSE COMMITTEE
OF THE SUPREME COURT OF ARIZONA

```
FILED
JUN 1 5 2011
STATE BAR OF ARIZONA
BY _____
```

| | |
|---|---|
| IN THE MATTER OF A MEMBER OF THE STATE BAR OF ARIZONA | No. 10-1223 |
| PETER STROJNIK Bar No. 006464 | AMENDED PROBABLE CAUSE ORDER |
| Respondent | |

The Probable Cause Panelist of the State Bar of Arizona entered an Order of Probable Cause on November 28, 2010, based upon the Report of Investigation prepared by State Bar Counsel on November 18, 2010. After the Order of Probable Cause, State Bar Counsel conducted further investigation and updated the Report of Investigation on January 26, 2011 and May 5, 2011.

The Attorney Discipline Probable Cause Committee of the Arizona Supreme Court ("Committee") reviewed this matter on June 10, 2011, pursuant to Rules 50 and 55, Ariz. R. Sup. Ct., for consideration of the State Bar's Updated Report of Investigation and Recommendation. This updated Report included additional allegations of rule violations by the Respondent.

By a vote of 6 to 0,[1] the Committee finds, for good cause shown and in the interest of justice, to amend the Probable Cause Order filed by the Probable Cause Panelist of the State Bar of Arizona, on November 29, 2010, and that probable cause exists to file a complaint against Respondent in File No. 10-1223 for all the allegations cited in the Updated Report of Investigation.

**IT IS THEREFORE ORDERED** pursuant to Rule 47(j), Ariz. R. Sup. Ct., amending the Probable Cause Order filed on November 29, 2010.

---

[1]    Committee member Jeffrey Pollitt did not participate in this matter. Committee members Jeffrey Messing and Richard Segal recused in this matter.

IT IS FURTHER ORDERED, pursuant to Rules 55(c) and 58(a), Ariz. R. Sup. Ct., authorizing State Bar Counsel to prepare and file a complaint against Respondent with the Disciplinary Clerk.

Parties may not file motions for reconsideration of this Order.

DATED this 13 day of June, 2011.

_Michael D. Ryan_
Justice Michael D. Ryan (retired)
Chair, Attorney Discipline Probable Cause Committee
of the Supreme Court of Arizona

Original filed this 15th day
of June, 2011, with:

Lawyer Regulation Records Department
State Bar of Arizona
4201 N. 24th Street, Suite 200
Phoenix, Arizona 85016-6288

Copy mailed this 17th day
of June, 2011, to:

Nancy A. Greenlee
821 East Fern Drive North
Phoenix, Arizona 85014-3248
Respondent's Counsel

Copy hand-delivered this 17th day
of June, 2011 to:

Lawyer Regulation Records Manager
State Bar of Arizona
4201 N. 24th St., Suite 200
Phoenix, Arizona 85016-6288

2

Copy emailed this 17th day
of June, 2011 to:

Attorney Discipline Probable Cause Committee
of the Supreme Court of Arizona
1501 West Washington Street, Suite 104
Phoenix, Arizona 85007
E-mail:  ProbableCauseComm@courts.az.gov


by:  _Rose Riley_

3

# Exhibit 30

Shauna R. Miller, Bar No. 015197
Senior Bar Counsel
State Bar of Arizona
4201 N. 24th Street, Suite 200
Phoenix, Arizona 85016
Telephone (602) 340-7278
Email: LRO@staff.azbar.org

OFFICE OF THE
PRESIDING DISCIPLINARY JUDGE
SUPREME COURT OF ARIZONA

JUL 29 2011

FILED _____
BY _____

## BEFORE THE PRESIDING DISCIPLINARY JUDGE
## OF THE SUPREME COURT OF ARIZONA

IN THE MATTER OF A MEMBER OF THE
STATE BAR OF ARIZONA,

**PETER STROJNIK**
**Bar No. 006464**

Respondent.

PDJ-2011-_9044_

**COMPLAINT**

[SBA File No. 10-1223]

Complaint is made against Respondent as follows:

### GENERAL ALLEGATIONS

1.    At all times relevant, Respondent was a lawyer licensed to practice law in Arizona, having been first admitted to practice on October 4, 1980.

### COUNT ONE (Dowell)

2.    L. Eric Dowell ("Mr. Dowell") represents STATS ChipPAC ("STATS") in a District Court matter ("the federal complaint" or "federal litigation") where STATS is the defendant and Respondent's client, Diane Sahakian ("Ms. Sahakian") is the plaintiff.

3.    The federal complaint alleges that Eric Gongora ("Mr. Gongora"), a STATS employee, sexually harassed Ms. Sahakian and encouraged or enticed other employees to do so as well.

-1-

4. During the federal litigation, Mr. Dowell informed Respondent on more than one occasion that Respondent could not talk to certain STATS employee, including Mr. Gongora, without Mr. Dowell's permission.

5. Respondent tried to amend the federal complaint to add a claim for intentional infliction of emotional distress, but was not allowed to do so.

6. Respondent then personally sued Mr. Gongora in state court alleging intentional infliction of emotional distress, civil conspiracy and common design, aiding and abetting, and defamation.

7. Respondent then contacted Mr. Gongora without Mr. Dowell's consent.

8. Respondent sent a letter to Mr. Gongora that offered to resolve the state court action against Mr. Gongora in exchange for his cooperation in the federal litigation.

9. In the letter, Respondent tells Mr. Gongora that he believes Mr. Gongora was coached to give false testimony in his deposition in the federal litigation.

10. Respondent threatened Mr. Gongora with a perjury claim if he did not cooperate with Respondent.

11. Respondent also offered to resolve the state court action filed against Mr. Gongora in exchange for Mr. Gongora divulging privileged communications he had with Mr. Dowell in the federal litigation.

12. Respondent tried to intimidate Mr. Gongora by making unsubstantiated statements that Mr. Gongora should not be surprised if he is terminated after he testifies in the federal litigation.

13. On August 21, 2009, Mr. Dowell filed a Motion for Sanctions Against Plaintiff's Counsel ("the motion") because of the unauthorized contact with his client.

Mr. Dowell moved to have Respondent removed as Ms. Sahakian's counsel and moved that Respondent be ordered to pay his fees and costs for having to bring the motion.

14. The court left Mr. Dowell's motion pending until March 22, 2010, "lest there be the necessity of re-briefing the matter should the court encounter further difficulty with counsel."

15. Respondent communicated with Mr. Gongora who was represented by counsel, in violation of ER 4.2.

16. Respondent's letter to Mr. Gongora had no substantial purpose other than to embarrass, delay, or burden Mr. Gongora in violation of ER 4.4(a).

17. Respondent's letter to Mr. Gongora was conduct prejudicial to the administration of justice in violation of ER 8.4(d), in and of itself, and because it led to the filing of a motion to remove Respondent as counsel and made it necessary for the court to address the issue.

18. Respondent's conduct in this count violation Rule 42 Ariz. R. Sup. Ct., specifically ERs 4.2, 4.4(a), and 8.4(d).

## COUNT TWO (Montoya)

19. Respondent hired Stephen Montoya ("Mr. Montoya") to be lead trial counsel in the Sahakian case discussed in count one. Discovery had already closed by the time Mr. Montoya was retained.

20. Respondent did not tell Mr. Montoya when he was retained that a Motion to Disqualify the Strojniks as Ms. Sahakian's counsel was pending before Judge Holland.

21. Respondent did not tell Mr. Montoya when he was retained that Respondent, as the plaintiff, had filed a complaint for declaratory judgment ("Respondent's complaint" or "his complaint") against STATS, the Attorney General of the United States, the State Bar of Arizona, the Republic of Singapore, Carolyn Larsen (STATS counsel) and many others, in federal court.

22. Set forth in Respondent's complaint are his opinions on: the Sahakian case, Madam Ho Ching and the Singaporean oligarchy, the Singaporean Government's human rights and free speech abuses, STATS immigration abuses, and the danger posed to the American workers by the Singaporean Government, among other things.

23. Respondent's requested relief was that he be "constitutionally protected in his anticipated, widely distributed press releases" from actions any of the people and entities he talks about in the press release may initiate.

24. Respondent further requested that the publication of his opinions be held not to violate the ethical rules governing the conduct of Arizona lawyers.

25. Respondent did not obtain Ms. Sahakian's informed consent before filing his complaint and she was unaware of its negative implications. Respondent's credibility with opposing counsel was undermined and he materially damaged Ms. Sahakian's lawsuit when he filed his complaint.

26. Respondent filed a motion to compel and for sanctions on behalf of Ms. Sahakian. On July 27, 2009, regarding Respondent's motion, Judge Holland states in part:

> [Respondent] has not made wise and efficient use of all of the discover mechanisms available under the rules. ... The huge laundry

-4-

list set forth in plaintiff's amended notice is "over the top" on the reasonable to unreasonable scale.

27. The motion to compel and for sanctions was denied and cost Ms. Sahakian $5,000.00 in opposing counsel's fees.

28. Respondent noticed the deposition of Dr. B.J. Han, Ms. Sahakian's supervisor with STATS. Defense counsel terminated the deposition prior to the allotted time because he believed Respondent was being abusive in asking a particular set of questions.

29. Respondent moved for an order to complete the deposition, but the court denied the motion. The court stated in part:

> The Han deposition appeared to be more about irrelevant business practices and customs of Asian business mangers that the plaintiff's Arizona workplace. The line of questioning that resulted in the Han deposition being terminated should have ended when Han denied consorting with prostitutes. What followed was insulting and shockingly insensitive and impresses the court as being unreasonably annoying, embarrassing, and oppressive to Dr. Han.

30. Ms. Sahakian was set to participate in an independent medical exam in connection with her lawsuit, but at the last minute Respondent told her not to attend. Respondent did not tell her that she could or would be sanctioned for failing to attend. The cost to Ms. Sahakian for missing the initial exam was $1,200.00.

31. Respondent failed to inform Ms. Sahakian about the complaint for declaratory judgment or about the possible effect it could have on her lawsuit, in violation of ER 1.4.

32. Respondent advised Ms. Sahakian to not attend the IME, but he did not advise her that she could be sanctioned as a result of not attending, in violation of ER 1.4.

33. The declaratory action was filed to benefit Respondent, which conflicted with his duty of loyalty to Ms. Sahakian in violation of ER 1.7(a).

34. Respondent's motion to compel and for sanctions and his complaint for declaratory judgment were frivolous, in violation of ER 3.1.

35. Respondent's treatment of Dr. B. J. Han during Dr. Han's deposition was "insulting and shockingly insensitive" in violation of ER 4.4(a).

36. Respondent's treatment of Dr. B. J. Han during Dr. Han's deposition was "insulting and shockingly insensitive" in violation of Rule 41(g) Ariz. R. Sup Ct.

37. Respondent's motion to compel and for sanctions and the complaint for declaratory judgment was prejudicial to the administration of justice in violation of ER 8.4(d).

38. Respondent's conduct with regard to the IME violated ER 8.4(d) because the defendant's had to file a motion to compel and had to reset the IME. Additionally, Ms. Sahakian was order to pay the costs incurred by defense counsel.

39. Respondent's conduct in this count violated Rule 42, Ariz. R. Sup. Ct., specifically ERs 1.4(a), 1.7(a), 3.1, 4.4(a), 8.4(d), and Rule 41(g) Ariz. R. Sup. Ct.

**DATED** this 27 day of _July_, 2011.

STATE BAR OF ARIZONA

Shauna R. Miller
Senior Bar Counsel

-6-

Original filed with the Disciplinary Clerk
of the Office of the Presiding Disciplinary Judge
of the Supreme Court of Arizona
this 29th day of July, 2011.


by: _Rose Riley_____
    SRM:rr

# Exhibit 31

Shauna R Miller, Bar No. 015197
Senior Bar Counsel
State Bar of Arizona
4201 N. 24th Street, Suite 200
Phoenix, Arizona 85016-6288
Telephone (602) 340-7278
Email: LRO@staff.azbar.org

## BEFORE THE PRESIDING DISCIPLINARY JUDGE
## OF THE SUPREME COURT OF ARIZONA

| IN THE MATTER OF A MEMBER OF THE STATE BAR OF ARIZONA, | PDJ-2011-9044 |
|---|---|
| **PETER STROJNIK** **Bar No. 006464** | **PLEADING INDEX** [10-1223] |
| Respondent. | |

| Tab | Filed By | Document | Date Filed | Mailed / Received |
|---|---|---|---|---|
| 1 | SB | Complaint | 07/29/11 | |
| 2 | SB | Notice of Service of Complaint | 08/01/11 | |
| 3 | PDJ | Notice of Assignment and Initial Case Management Conference | 08/09/11 | 08/09/11 |
| 4 | Respondent | Respondent's Answer | 08/24/11 | 08/25/11 |
| 5 | PDJ | Order RE Initial Case Management Conference Pursuant to Rule 58(c) | 09/01/11 | 09/01/11 |
| 6 | SB | Notice of Service of the State Bar of Arizona's Rule 58(e) Disclosure Statement | 09/08/11 | |
| 7 | SB | Notice of Settlement | 09/26/11 | |
| 8 | PDJ | Order Re: Case Management Deadlines | 09/27/11 | 09/27/11 |
| 9 | SB | Agreement for Discipline by Consent | 10/21/11 | |
| 10 | SB | Order RE Agreement for Discipline By Consent | 11/07/11 | 11/07/11 |
| 11 | SB | Final Judgment and Order | 11/07/11 | 11/07/11 |
| 12 | Respondent | Rule 72 Affidavit | 11/21/11 | 11/22/11 |

# Exhibit 32

**O'Donnell, Michael**

| | |
|---|---|
| **From:** | Strojnik@aol.com |
| **Sent:** | Tuesday, November 22, 2011 7:29 PM |
| **To:** | O'Donnell, Michael |
| **Subject:** | Re: Chicago Title v. Dare |

Thanks.

Peter Strojnik
STROJNIK, P.C.
2415 East Camelback Road Suite 700
Phoenix, Arizona 85016
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail ps@strojnik.com

Confidentiality Notice: The information contained in this electronic e-mail and any accompanying
attachment(s) is intended only for the use of the intended recipient and may be confidential and/or
privileged. If any reader of this communication is not the intended recipient, unauthorized use,
disclosure or copying is strictly prohibited, and may be unlawful. If you have received this
communication in error, please immediately notify the sender by return e-mail, and delete the original
message and all copies from your system. Thank you.

In a message dated 11/22/2011 5:25:14 P.M. US Mountain Standard Time,
MODONNELL@RIKER.com writes:

We can use my call-in 866-268-1911 Pass code 743 389

-----Original Message-----
**From:** Strojnik@aol.com [mailto:Strojnik@aol.com]
**Sent:** Tuesday, November 22, 2011 7:22 PM
**To:** O'Donnell, Michael; chumphreylaw@gmail.com
**Cc:** strojnik@skplaw.com; Freijomil, Derrick
**Subject:** Re: Chicago Title v. Dare

Can you patch me in on the call?

Peter Strojnik
STROJNIK, P.C.
2415 East Camelback Road Suite 700
Phoenix, Arizona 85016
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail ps@strojnik.com

Confidentiality Notice: The information contained in this electronic e-mail and any
accompanying attachment(s) is intended only for the use of the intended recipient and
may be confidential and/or privileged. If any reader of this communication is not the
intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may
be unlawful. If you have received this communication in error, please immediately notify
the sender by return e-mail, and delete the original message and all copies from your
system. Thank you.

In a message dated 11/22/2011 5:19:21 P.M. US Mountain Standard Time,
MODONNELL@RIKER.com writes:

Chris:

Let's talk Monday, at 1:15PM EST.  We can go over our Dare issues in short order and Peter K can drop the call and we can address Skyland.  Tomorrow, I will email you and Peter, Sr. the emails that Mocco produced on Skyland.

Mike

-----Original Message-----
**From:** Chris Humphrey [mailto:chumphreylaw@gmail.com]
**Sent:** Tuesday, November 22, 2011 6:16 PM
**To:** Strojnik@aol.com
**Cc:** O'Donnell, Michael; strojnik@skplaw.com
**Subject:** Re: Chicago Title v. Dare

Mike:

I would be happy to discuss the alleged breach you mentioned.  Before our call kindly disclose what you believe is the nature of the breach.  As I stated, I have my children for Thanksgiving and will be traveling this weekend.  I am free Monday before 2 or Wed. am. for a call.

Thanks

-Chris

On Tue, Nov 22, 2011 at 5:56 PM, <Strojnik@aol.com> wrote:
   Thank you, Mike.  I will call you next week to discuss all these issues.

   Peter Strojnik
   STROJNIK, P.C.
   2415 East Camelback Road Suite 700
   Phoenix, Arizona 85016
   Telephone: 602-524-6602
   Facsimile: 602-296-0135
   e-mail ps@strojnik.com

   Confidentiality Notice: The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

   In a message dated 11/22/2011 3:54:09 P.M. US Mountain Standard Time, MODONNELL@RIKER.com writes:

   Rather than an endless trail of emails, just give us a time to talk on all issues next week.  As to the disclosure of allegedly privileged materials, see the May 22, 2009 emails from Rick McCloskey to Peter Mocco in Mr. Mocco's recent production.  With regard to Skyland, Chris, you and I need to talk.  That can be a separate call.

   Finally, as to your implication that our email traffic is somehow designed to take advantage of your suspension, it is, in a word, insulting.  Your suspension is something that we were not aware of and felt compelled to advise the Court.  Indeed, when we sent our letter to the Court several weeks ago asking for another 30 days for discovery, It was because you

told us that your wife told you that you had to take the month of December off, not that you were being suspended from the practice of law.  In that vein, we are still weighing our options as to this development.  As to the pace of the litigation, I need to remind you that Magistrate Shipp denied our request for an extension of discovery at that time.  Thus, our discovery disputes have to be teed up now.

Mike

-----Original Message-----
**From:** Strojnik@aol.com [mailto:Strojnik@aol.com]
**Sent:** Tuesday, November 22, 2011 5:03 PM
**To:** O'Donnell, Michael; strojnik@skplaw.com
**Cc:** Freijomil, Derrick; chumphreylaw@gmail.com
**Subject:** Re: Chicago Title v. Dare

Gentlemen, please see my comments in red.

Peter Strojnik
STROJNIK, P.C.
2415 East Camelback Road Suite 700
Phoenix, Arizona 85016
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail ps@strojnik.com

Confidentiality Notice: The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

In a message dated 11/22/2011 1:43:43 P.M. US Mountain Standard Time, MODONNELL@RIKER.com writes:

Peter:

I will respond as follows per our bullet points:

1.  The knowing disclosure to a third party of attorney-client privilege communications is a waiver as to all.  See In re Chevron Corp., 633 F.3d 153, 165 (3d Cir. 2011) .  We would like to meet and confer with you on this point before we file a motion to compel.  But if you feel that effort would be fruitless, so be it. We would like to discuss this issue with you and will do so.  However, we must first determine the scope of the issue, the precise disclosures that Mr. O'Donnell claims have been made to Mr. Mocco, and then respond to his concerns. It is impossible for us to do this in light of the amount of discovery that CT has provided us with and the issues that CT's production may entail. We will get back to Mr. O'Donnell on this issue as soon as we have had the opportunity to review and analyze the matter.  It is unreasonable to demand a conference on such a short notice, or demand a resolution at this time.

2.  We believe the additional documents further expose the weakness of your position and there are grounds for counterclaim for insurance fraud.  If you do not wish to have a conversation about same, so be it. This, of course, is complete and utter nonsense.  If CT feels it has an insurance fraud issue it should bring it on. The fact of the matter is that CT issued a $5.5 million policy, it knew that it was intended to cover the Mocco claims, and now it is attempting to skirt its contractual responsibility.  All this will become painfully clear as soon as we have deposed Mr. Cohn, CT representative, Mr. Duval and others.

3.  You are right that the Skyland settlement does not involve Dare.  But it involves Chris, Peter and their client Skyland.  We would like to talk to them about the breach and ascertain if we can uncover how it happened.  There is no reason for you to be on the call and you should not as you were not a party to the settlement.  That is why I referred to the "senior Strojnik".  Chris and Peter, Sr., please give a time next week to talk as Chris is on the road tomorrow. This is a completely separate matter that we cannot address in the current case.  If there is a claim that a breach of the confidentiality agreement, the proper forum is the Skyland case. We would certainly appreciated the issues raised by Mr. O'Donnell to remain within the scope of the Dare Investments claim against CT.  Can I solicit an agreement on this?

4.   My client has a vacation in Mexico in January and is checking with his wife as to when.  I have calls into David Cohn's counsel as to his availability.  I should have an answer at least as to my client by tomorrow. Vacations do not come often and when they do, we will respect them and work around them to the best of our ability.  At the same time, we would appreciate if CT would respect our vacations schedules and my suspension during the month of December. Everyone knows that I am the lead counsel in this case.  It is my hope that the current e-mail activity is not intended to take advantage of this unfortunate circumstance.

This is why the scheduling of depositions is so important at this time.  Derrick will recall that the reason why Mr. Cohn's and CT's depositions were canceled by Magistrate Shipp is because Derrick claimed that he did not have the necessary documents to defend the depositions even though CT received 4 CD's of disclosures. On the other hand, even a cursory review of CT production discloses its inadequacy that will require reading every page of approximately 35 megabytes of information and, potentially, a further discussion and a motion to compel.

If all agree, let us attempt to handle this matter cooperatively, amicably, without threats, and with a view of a legal and equitable resolution. I request that all agree to cooperate in this matter.

Mike

-----Original Message-----

1/3/2012

**From:** strojnik@skplaw.com
[mailto:strojnik@skplaw.com]
**Sent:** Tuesday, November 22, 2011 12:51 PM
**To:** O'Donnell, Michael
**Cc:** Freijomil, Derrick; 'Strojnik@aol.com';
'chumphreylaw@gmail.com'
**Subject:** RE: Chicago Title v. Dare

Mr. O'Donnell:

Thank you for your e-mail. While I am generally agreeable
to meeting to resolve issues between counsel/parties
informally, I am not exactly sure the purpose is of a
conference tomorrow. Is this a meet and confer on a
potential discovery dispute? If it is, there is no need for us
to meet and confer on point No.1 because I glean that you
claim a privilege has been waived based on your erroneous
inference that a waiver of a privilege as to one person is a
waiver as to all. I believe you state that allegedly Dare
waived its privilege as to Mocco, and therefore it waived its
privilege as to CT. Wrong. If you feel my assumptions of
what you argue are erroneous or, based on these
assumptions, my statement of law is erroneous, please
correct me.

As to point No. 2, thank you for elucidating what you
advocate. We are ware of what your defenses and denials
are.

On point No. 3, what does that have to do with this case?

Please allow me to add a point No. 4. **What is the status of
dates on depositions?**

Peter Kristofer Strojnik, Esq.
THE STROJNIK FIRM L.L.C.
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, Arizona 85016
Phoenix Tel. 602.510.9409
Phoenix Fax. 602.264.1441

# THE STROJNIK FIRM LLC

http://www.skplaw.com
Employment Law & Commercial Litigation

**Confidentiality Notice:** The information contained in this
electronic e-mail and any accompanying attachment is
intended only for the use of the intended recipient and may
be confidential and/or privileged. If any reader of this
communication is not the intended recipient, unauthorized
use, disclosure or copying is strictly prohibited, and may be
unlawful. If you have received this communication in error,
please immediately notify the sender by return e-mail, and
delete the original message and all copies from your system.
Thank you.

1/3/2012

-------- Original Message --------
Subject: Chicago Title v. Dare
From: "O'Donnell, Michael"
<MODONNELL@RIKER.com>
Date: Tue, November 22, 2011 9:48
am
To: "strojnik@skplaw.com"
<strojnik@skplaw.com>,
"'Strojnik@aol.com'"
<Strojnik@aol.com>,
"'chumphreylaw@gmail.com'"
<chumphreylaw@gmail.com>
Cc: "Freijomil, Derrick"
<dfreijomil@RIKER.com>

Gentlemen:

I write to ask for your availability Wednesday
for a brief conference to address three issues
raised by the Mocco's production of
documents responsive to our subpoena and
also provided to the other parties in the
Mocco State Court Action.

1.  The documents produced show that in
May 2009, Dare's principal Rick McCloskey
emailed Peter Mocco essentially all of his
communications with his attorneys
concerning Dare's involvement in the
Bankruptcy Sale and concerns with the
enforceability of the Sayreville Mortgage.
Thus, the continuation assertion of
privilege on these communications by Dare
and its counsel (Jones Waldo and LeClair
Ryan) is no longer plausible.  We need to
have a conversation about this taking into
account the new developments before we
have to address this issue with the
Magistrate.

2.  The communications, as well as other
evidence that we have developed, cast grave
doubts about the validity of Dare's claim that
Chicago Title insured that $15 million or any
amount for that matter was owed on the
Sayreville Mortgage.

3.  Documents further reveal that someone
has breached the confidentiality provision of
the Skyland Settlement.  We need to discuss
this with the senior Strojnik and Chris.

You have the subpoena and documents by
now and any review of them will leave no
doubt as to the above.

May I hear from you?

Mike



**RIKER
DANZIG
SCHERER
HYLAND
PERRETTI**LLP

Michael R. O'Donnell | Partner
Riker Danzig Scherer Hyland & Perretti LLP
Headquarters Plaza | One Speedwell Avenue
| Morristown, NJ 07962-1981
t: 973.451.8476 | f: 973.451.8700 |
modonnell@riker.com | www.riker.com

IRS CIRCULAR 230 DISCLOSURE:
To ensure compliance with requirements
imposed by the IRS, we inform you that any
U.S. federal tax advice contained in this
communication (including any attachments) is
not intended or written to be used, and
cannot be used, for the purpose of (I)
avoiding penalties under the Internal
Revenue Code or (II) promoting, marketing or
recommending to another party any
transaction or matter addressed herein.

CONFIDENTIALITY NOTICE: This e-mail
contains information that is privileged and
confidential and subject to legal restrictions
and penalties regarding its unauthorized
disclosure or other use. You are prohibited
from copying, distributing or otherwise using
this information if you are not the intended
recipient. If you have received this e-mail in
error, please notify us immediately

# Exhibit 33



**RIKER
DANZIG
SCHERER
HYLAND
PERRETTI**LLP

ATTORNEYS AT LAW

**Michael R. O'Donnell**
Partner

Direct:
t: 973.451.8476
f: 973.451.8700
modonnell@riker.com
Reply to: Morristown

December 29, 2011

**Via E-Filing**

Hon. Michael A. Shipp, U.S.M.J.
U.S. District Court, District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

Re:    **Dare Investments, LLC v. Chicago Title Ins. Co.,** Case No.: 10-
6088

Dear Judge Shipp:

We represent Chicago Title Insurance Company ("Chicago Title") in the above matter.
We make this submission as a follow up to Chicago Title's December 13, 2011 application
and the December 19, 2011 telephone conference Your Honor had with counsel, in
which Chicago Title sought to have the privilege waived with regard to communications
Dare Investments, LLC ("Dare") had with its counsel prior to August 14, 2007. The
parties have agreed on the form of the order except as to the language in Paragraph 3
thereof, in which Dare seeks to remove the following language: "or their production made
lead to the discovery of relevant and material information pertinent." The parties have
come to an impasse on this language, which concerns whether the parties agreed and
Your Honor found that the documents at issue are admissible at trial. It is Chicago Title's
position that the answer is, no. Attached hereto as Exhibit A is a copy of the proposed
order that Chicago Title requests be the form ordered entered by the Court.

As Your Honor undoubtedly recalls, Chicago Title sought to compel production of these
attorney-client communications over the objection and assertion of privilege by Dare
based on, among other things, the fact that Dare had waived any such protection by
turning over the same type of documents to its adversary in another litigation in 2009.
Dare agreed to turn over the documents, but would only do so willingly if Chicago Title
agreed to stipulate to the admissibility at trial of the documents it was going to produce.
Given the early stage of this litigation and that Chicago Title had not seen all the

Headquarters Plaza, One Speedwell Avenue, Morristown, NJ 07962-1981 • t: 973.538.0800 f: 973.538.1984
50 West State Street, Suite 1010, Trenton, NJ 08608-1220 • t: 609.396.2121 f: 609.396.4578
500 Fifth Avenue, New York, NY 10110 • t: 212.302.6574 f: 212.302.6628
London Affiliate: 33 Cornhill, London EC3V 3ND, England • t: +44 (0) 20.7877.3270 f: +44 (0) 20.7877.3271
www.riker.com

Hon. Michael A. Shipp, U.S.M.J.
December 29, 2011
Page 2

documents at issue, it could not agree to do so at this juncture. Accordingly, Chicago Title submitted the December 13th application, which is incorporated herein. It was our understanding of the December 19th conference that Your Honor found that the parties had agreed that the privilege had been waived, that Dare was required to produce the attorney-client communications at issue, that the admissibility at trial of such documents (like any other document obtained during discovery) would be decided at or shortly before trial, and that the parties should submit a consent order to that effect, but were free to include any other matters to which they wished to stipulate. During that conference, Dare sought to argue that Chicago Title had agreed to admissibility at trial of the documents at issue by the submission of its December 13 letter brief seeking the turnover of the attorney-client communications, which Chicago Title vehemently disputed.

Attached hereto as Exhibit B is the December 5, 2011 email chain between counsel, in which Chicago Title stated on December 4th: "To be clear, we are not stipulating that attorney-client communications are admissible at trial. They very well may be, but that is something to be determined after the communications are turned over and reviewed. Our agreement is that documents are relevant in the context of discovery only in that they are either relevant or may lead to the discovery of relevant evidence." (Emphasis added.) Dare's counsel stated that admissibility at trial was a "condition of the proposal," to which Chicago Title's counsel responded: "Then we are not in agreement and we will have to file a motion to compel." Dare's counsel then replied: "So, file your Motion, and we will defend in which case you risk not receiving any documents." (Emphasis in original.) This exchange unequivocally shows that there was never any agreement as to the admissibility at trial of such documents and that Dare recognized this and was going to object to any motion to produce the documents. It was not until the December 19th conference that Dare reversed its position and claimed that Chicago Title's application was unnecessary because there was an agreement to produce the documents and a supposed agreement on their admissibility at trial. Such a position flies in the face of the December 5th email exchange and Chicago Title's December 13th application.

Moreover, as set forth above, the Court specifically stated during the December 19th conference that admissibility would be determined at or shortly before trial and did not require that the parties agree now on admissibility of such documents at trial. The language that Chicago Title submits as to Paragraph 3 of the proposed order would read as follows: "The documents and communications between Plaintiff and its counsel prior to August 14, 2007 are relevant and material or their production made lead to the discovery of relevant and material information pertinent to Plaintiff's claims in this action and Defendant's defenses thereto, but the Court has not determined admissibility of such documents and communications for trial at this time and the parties reserve their rights regarding same." Dare's counsel seeks to remove the language that makes clear that Chicago Title only agreed that the documents at issue were relevant for discovery

Hon. Michael A. Shipp, U.S.M.J.
December 29, 2011
Page 3


purposes ("or their production made lead to the discovery of relevant and material information pertinent"), which can only be interpreted as an attempt to argue at a later date that Chicago Title agreed that the documents at issue were relevant for purposes at trial.    On this dispute, the parties agree that Your Honor should determine the appropriate language.  See December 28, 2011 email chain, attached as Exhibit C hereto.

Thank for your consideration.


Respectfully,

Michael R. O'Donnell

# Exhibit 34

# THE STROJNIK FIRM LLC

### ATTORNEYS AT LAW

ESPLANADE CENTER III, 2415 EAST CAMELBACK ROAD, SUITE 700, PHOENIX, ARIZONA 85016

PHONE: 602.510.9409 | FAX: 602.264.1441 | WEBSITE: WWW.SKPLAW.COM

**December 30. 2011**

The Honorable Michael A. Shipp, U.S.M.J.
United States District Court, District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

**VIA ELECTRONIC FILING**

> Re:   Plaintiff's Response to Defendant's 12.29.11 Letter (Doc. 71)
> <u>Dare Investments LLC v. Chicago Title Insurance Company,</u>
> No. 2:10-cv-06088-DRD-MAS

Dear Judge Shipp:

My Firm represents the interests of Plaintiff Dare Investments LLC in the matter above styled. Please allow this correspondence to serve as Plaintiff's Response in Opposition to Defendant Chicago Title Insurance Co.'s correspondence filed on December 29, 2011 (Doc. 71). It should be noted that Doc. 71 was <u>not</u> a joint filing, as Chicago Title unusually references. Plaintiff also respectfully requests this honorable Court sanction Defendant and its counsel for this unnecessary filing, the subject of which breaches previous open court agreements and Doc. 64 representations made by Chicago Title.

**I.   <u>SUMMARY OF CHICAGO TITLE'S BREACH OF 12-19-11 OPEN COURT AGREEMENT AND RECANTATION OF DOC. 64 REPRESENTATION TO THE COURT</u>**

Chicago Title sought attorney-client privileged documents in its Doc. 64 filing. In its enthusiastic argument seeking the documents, Chicago Title argued that the documents are "*obviously relevant and material to the veracity of Dare's coverage claims and Chicago Title's defenses thereto.*" <u>See</u> Doc. 64 at 5 (emphasis supplied). On December 19, 2011, this Court heard the parties' discussion on the issue and noted that the parties appeared to already be in agreement. Indeed, the parties were. As the Court witnessed in open Court, Dare agreed to produce the privileged documents and Chicago Title agreed the documents were "relevant and material" to Dare's coverage claims. The Court thereafter instructed the Parties to produce a written agreement stating the same.

12.30.11 to the Honorable Michael A. Shipp | 2
Dare Investments LLC v. Chicago Title Insurance Company |

Since the 12-19-11 Conference, the parties have agreed on a written Consent Order except for Paragraph 3. Dare proposes a paragraph 3 that reflects the Parties open court agreement and Chicago Title's Doc. 64 representations to the Court, to wit:

> The documents and communications between Plaintiff and its counsel prior to August 14, 2007 *are relevant and material to Plaintiff's claims in this action and Defendant's defenses thereto*, but the Court has not determined admissibility of such documents and communications for trial at this time and the parties reserve their rights regarding the same.

(emphasis supplied); accord Doc. 64 at 5 (Chicago Title's argument the documents are relevant and material to Dare's coverage claims and Chicago Title's defenses thereto).

However, Chicago Title now breaches the open court agreement and recants its Doc. 64 representations to the Court by claiming the documents only "may lead to" relevant and material information instead of simply being relevant. See Doc. 71 at Ex. A at ¶3 ("their production made [sic] lead to the discovery of relevant and material information...").

As will be discussed below, Chicago Title's open court agreement and Doc. 64 representation that the documents are "relevant and material", as opposed to "*may lead to*" relevant and material documents, has a very specific meaning pursuant to Rule 401, Federal Rules of Evidence. Furthermore, Chicago Title's purported, alleged concerns of admissibility are strange because these irrational concerns are alleviated by FRE 402-403 and the language "but the Court has not determined admissibility..." Dare agrees to in Paragraph 3.

## II. ARGUMENT AND SUPPORTING LAW

### A. Chicago Title Agreed the Privileged Documents Are Relevant

In Doc. 64 and again in open Court, Chicago Title agreed that the privileged documents are "*obviously relevant and material to the veracity of Dare's coverage claims and Chicago Title's defenses thereto*." Doc. 64 at 5 (emphasis supplied).

### B. The Term "Relevant" Has a Specific Legal Meaning

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and the "fact is of consequence in determining the action." Rule 401, Federal Rules of Evidence.

In their enthusiasm to acquire the privileged documents, Defendant conceded the privileged documents are "obviously relevant to the veracity of Dare's coverage claims and Chicago Title's defenses thereto." Doc. 64 at 5. Defendant agreed in open court the documents are relevant, not that they "may lead to" relevant documents.

PHOENIX | SAN FRANCISCO BAY AREA

**C.** **Chicago Title Changes Its Written Statements and Oral Open Court Agreement From "Relevance" To "May Lead to the Discovery of Relevant Information"**

Defendant Chicago Title seeks the Court to sign off on the following language in Paragraph 3 of their proposed Order:

> 3.    The documents and communications between Plaintiff and its counsel prior to August 14, 2007 are relevant and material or their production made lead to the discovery of relevant and material information pertinent to Plaintiff's claims in this action and Defendant's defenses thereto, but the Court has not determined admissibility of such documents and communications for trial at this time and the parties reserve their rights regarding same;

Chicago Title's suggested language that the documents "may lead to the discovery of relevant and material information" is not what they argued in Doc. 64 and not what they agreed to in open Court.   This added language changes their agreement that the documents are relevant to a new, unilateral agreement that the documents are only discoverable.

**D.** **Chicago Title's Concern the Language To Which They Agreed Could Be Interpreted to Mean Admissibility Is Unreasonable and Unwarranted for Two Reasons**

In Chicago Title's Doc. 71 filing, it outlines its main concern: "The parties have come to an impasse on this language, which concerns whether the parties agreed and Your Honor found that the documents at issue are admissible at trial." It is paradoxical why Chicago Title has this concern, but Dare suspects Chicago Title is attempting the old "hi-low" on this honorable, federal Court by having the Court focus on Chicago Title's unreasonable concern of admissibility when it attempts to stealthily slip "may lead to" language into Paragraph 3. See *supra*.

The first reason Chicago Title's alleged[1] concern of admissibility is unreasonable is because both Parties agree to the language "but the Court has not determined admissibility of such documents and communications for trial and this time…" *Supra*.

The second reason Chicago Title's purported concerns are strange is because relevance is but one factor in a Court's determination of admissibility of evidence.   As FRE 402-403 outlines, relevant evidence may not be admissible based upon other Rules of Evidence or upon other factors.

---

[1] The term "alleged" is used because Doc. 71 is no doubt a delay tactic used as a precursor to delay discovery in an attempt to postpone the January 9 depositions.   This "dispute" was brought up during Christmas and at a time when Defendant knew Plaintiff's counsel was on holiday with his family.   Plaintiff has no doubt the next Chicago Title filing will be requesting to postpone the January 9 depositions.

12.30.11 to the Honorable Michael A. Shipp | 4
Dare Investments LLC v. Chicago Title Insurance Company |

**E.** **Chicago Title's "May Lead To" Language Should Be Stricken As Not Part of the Parties Open Court Agreement and Contrary to Chicago Title's Prior Representations (Doc. 64) to this Honorable Court**

Since Chicago Title cannot honor their prior agreements, Plaintiff Dare Investments LLC respectfully requests the Court sign a consent Order reflecting the agreement. Since the parties agree to the language in Paragraphs 1-2, and 4 in the Consent Order, paragraph 3 should read as follows (which simply strikes the "may lead to" language):

> The documents and communications between Plaintiff and its counsel prior to August 14, 2007 are relevant and material to Plaintiff's claims in this action and Defendant's defenses thereto, but the Court has not determined admissibility of such documents and communications for trial at this time and the parties reserve their rights regarding the same.

A proposed form of Order reflecting the same is attached as Exhibit 1.

**F.** **Plaintiff Humbly Requests Chicago Title's Counsel Be Sanctioned For This Unnecessary Use of Court Resources**

The Doc. 71 filing has been thoroughly dissected and concisely demonstrated to be unwarranted as a breach of the Parties' agreement. It is nothing more than a delay tactic and a precursor to a future filing to postpone the January 9, 2012 depositions. There is no doubt Chicago Title will attempt to use the contingent resolution of this non-issue as a reason to postpone a second round of attempted depositions.

By his signature below, Plaintiff's Counsel Peter Kristofer Strojnik certifies under penalty of perjury that he is currently on holiday with his family and spent eight (8) hours (while on holiday) reviewing Chicago Title's 19-page submission and responding to the same. Counsel bills out at $350.00 per hour for his Arizona (as opposed to California) cases. Chicago Title's counsel should be sanctioned in the amount of $2,800.00.

**III.** **CONCLUSION AND PRAYER FOR RELIEF**

Plaintiff believes the transparency of Doc. 71 does not warrant a telephonic conference, and respectfully requests this honorable Court sign the attached proposed Order. However, if the Court believes a conference is appropriate, the undersigned humbly asks it be postponed until 2012 after counsel's brief holiday has ended.

Very Truly Yours,                                   Very Truly Yours,

                                                    /s/ Christopher Humphrey

Peter Kristofer Strojnik                            Christopher Humphrey

PHOENIX | SAN FRANCISCO BAY AREA

12.30.11 to the Honorable Michael A. Shipp    | 5
Dare Investments LLC v. Chicago Title Insurance Company |

CC:

Mike O'Donnell
Derick Freijomil
Jonathan Sandler
Via e-mail and ECF

# Exhibit 35

Case 2:10-cv-06088-DRD -MAS   Document 75    Filed 01/04/12   Page 1 of 5 PageID: 2159



**RIKER**
**DANZIG**
**SCHERER**
**HYLAND**
**PERRETTI**LLP

ATTORNEYS AT LAW

**Michael R. O'Donnell**
Partner

Direct:
t: 973.451.8476
f: 973.451.8669
modonnell@riker.com
Reply to: Morristown

January 4, 2012

**VIA ELECTRONIC FILING**
Hon. Michael A. Shipp, U.S.M.J.
U.S. District Court, District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

Re:    **Dare Investments, LLC v. Chicago Title Ins. Co.**, Case No.: 10-6088

Dear Judge Shipp:

We represent Chicago Title Insurance Company ("Chicago Title") and write in response to the December 30, 2011 submission on behalf of Dare Investments, LLC ("Dare"). We also write to catalogue the issues pending before Your Honor and to note additional scheduling and related issues given the motion pending before the Court seeking to preclude Dare's current counsel from representing Dare in this matter.

<u>Response to Dare's December 30th Submission</u>

But for Dare's unfounded and improper request for sanctions, Chicago Title would not even respond to Dare's submission as it raises no meritorious response to Chicago Title's December 29, 2011 application [Doc. No. 71].[1]  The first sentence of the last paragraph on page 3 of Dare's December 30th submission [Doc. No. 72] now makes clear that Dare is seeking to conjure up some farcical agreement that Chicago Title agreed that the documents at issue (Dare's communications with its counsel) are all relevant for trial purposes – when Chicago Title had never even seen many of those documents at the time and a large number of those documents <u>still have not been produced</u>.  Such a claim is flatly incorrect as Chicago Title never agreed to trial relevance as to those documents.

First, as set forth in Chicago Title's December 29th submission and the attached email chain (Exhibit B thereto), Chicago Title explicitly told Dare on December 4, 2011, that it was <u>not</u> agreeing to admissibility <u>at trial</u>, <u>nor</u> agreeing that the documents were <u>relevant for trial purposes</u>.  Chicago Title, in fact, specifically clarified in its email that the documents were

---

[1] To be clear, Chicago Title's December 29th submission was not styled as a joint submission and clearly states that the parties dispute the portion of Paragraph 3 of the proposed Order.  Dare's suggestion to the contrary just further evidences the impropriety of its response.

Headquarters Plaza, One Speedwell Avenue, Morristown, NJ 07962-1981 • t: 973.538.0800 f: 973.538.1984
50 West State Street, Suite 1010, Trenton, NJ 08608-1220 • t: 609.396.2121 f: 609.396.4578
500 Fifth Avenue, New York, NY 10110 • t: 212.302.6574 f: 212.302.6628
London Affiliate: 33 Cornhill, London EC3V 3ND, England • t: +44 (0) 20.7877.3270 f: +44 (0) 20.7877.3271
www.riker.com

Hon. Michael A. Shipp, U.S.M.J.
January 4, 2012
Page 2

"relevant in the context of discovery only in that they are either relevant or may lead to the discovery of relevant evidence."  (Emphasis added.)  This latter phrase is what distinguishes discovery relevance from trial relevance and is the language that Dare seeks to omit from the proposed order.  Clearly, then, Chicago Title only agreed to discovery relevance as to the documents at issue.

Second, Chicago Title's December 13, 2011 submission [Doc. No. 64] was a pretrial application (made pursuant to Your Honor's requirements) that sought to compel discovery.  Relevance for discovery purposes is obviously broader than for trial purposes and includes not only documents that are relevant, but those that may lead to the discovery of relevant evidence. See Fed. R. Civ. P. 26(b)(2) ("Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.") (emphasis added).  Chicago Title's statement on page 5 of its December 13th submission that the documents at issue were material and relevant to the claims and defenses in this matter was obviously made in the context of discovery as the application itself was one to compel discovery.  Moreover, Dare knew at least as of December 4th that it was Chicago Title's position that it only agreed to discovery relevance (and did not agree to trial relevance).

Third, Chicago Title repeated this position during the conference before Your Honor on December 19, 2011.  Indeed, as Your Honor undoubtedly recalls, Chicago Title again clarified during the conference call that it was not agreeing to and could not agree to trial relevance of these documents, many of which it had not seen.  In fact, Your Honor readily acknowledged that admissibility at trial of such documents (and any other documents) would be decided at or shortly before trial.  Dare's attempt to suggest that Chicago Title made an "open court agreement" as to the relevancy at trial of such documents is fanciful at best.

Finally, this issue is largely academic and irrelevant to the order here.  As set forth in Chicago Title's December 29th submission (to which Dare did not respond), Your Honor determined that the parties could include any additional agreement they had in the order, but were not required to do so.  Chicago Title obviously does not agree to trial relevance of the documents at issue for much the same reasons it could not at this juncture agree to their admissibility at trial.  Thus, the parties agree on the important and necessary portions of the proposed Order (Paragraphs 1-2), and Paragraph 3 of the proposed Order is simply unnecessary and causing further delay in the production of documents that Chicago Title needs in discovery and has been requesting since the beginning of September 2011 in this matter.  Accordingly, Chicago Title requests that either the proposed Order it submitted be entered or the same version of the Order striking Paragraph 3 be entered as soon as possible.

Dare's December 26th Submission & Chicago Title's December 27th Response Thereto

There are three requests outstanding in these submissions.  The first is Dare's December 26, 2011 submission seeking to compel discovery [Doc. No. 69], which Chicago Title opposed in

Hon. Michael A. Shipp, U.S.M.J.
January 4, 2012
Page 3

its December 27, 2011 response submission [Doc. No. 70]. Suffice it to say that Chicago Title maintains that Dare's request is premature, unfounded, and improper given its outstanding discovery for the reasons set forth in Chicago Title's response.

The second is Chicago Title's request (in its December 27th submission) that Dare cure its discovery deficiencies and respond to Chicago Title's deficiency letter in writing. In particular, Dare must (a) provide supplemental interrogatory responses, (b) identify whether it has produced all the requested documents or is withholding any documents based on objections or its efforts to unilaterally restrict the scope of discovery, and (c) provide a privilege log as to all documents being withheld. As to (b) above, this requires Dare to respond in writing to Chicago Title's December 22, 2011 deficiency letter.[2]

The third is Chicago Title's request (in its December 27th submission) that the January 9, 2012 deposition of Gordon Duval in Utah be adjourned until certain fundamental paper discovery issues are resolved. A preliminary review of Dare's supplemental production made clear that Dare still has not produced (1) all its communications with its counsel prior to August 17, 2007 (and has not logged any that it may be withholding), something it agreed to do since December 19, 2011, or (2) the approximately 5,500 emails it referenced in its November 11, 2011 production letter. Nor did Dare produce the communications its current counsel, Peter Strojnik, had with counsel for Peter Mocco, James Scarpone, which communications Chicago Title sought in discovery and detailed in its December 22nd deficiency letter. In addition, Dare's former counsel (the law firms of Jones Waldo and LeClair Ryan) have not produced attorney-client communications Chicago Title subpoenaed from them based on Dare's assertion of the privilege, which it now has waived. Obviously, Chicago Title needs the order entered to present to those attorneys to produce the subpoenaed documents. Moreover, but less pressing, Chicago Title has outstanding subpoenas for documents to deponents (William Mournes and Cobra/Ventura, Proskauer Rose, Gary Clark and Clark Real Estate, Dan Torkelson, and Shandon Gubler) that it is trying to resolve informally, but may need to seek the assistance of the appropriate Federal Court to enforce. Yet, Dare wants to force Chicago Title proceed with depositions while it has failed to produce these documents and additional discovery remains outstanding. As Your Honor repeatedly has informed the parties, no depositions are to occur until all these paper discovery issues are resolved and documents produced. Conducting the January 9th deposition with these matters outstanding may prejudice the non-party witness in having to appear for another deposition and prejudice Chicago Title in having to fly to Utah for the same. This is particularly so where there are other Utah witnesses

---

[2] During the holiday break last week, Chicago Title received Dare's supplemental document production, which Chicago Title is reviewing. Chicago Title will try to resolve any further deficiencies evidenced by that production with Dare directly before raising the same with the Court. As set forth in Chicago Title's December 27th submission, Dare's supplemental document production does not obviate its obligation to respond in writing to the deficiencies set forth in Chicago Title's December 22nd letter – Chicago Title is not required to decipher whether Dare is correcting the asserted deficiencies or disagreeing with Chicago Title's position, which may require an application to compel.

Hon. Michael A. Shipp, U.S.M.J.
January 4, 2012
Page 4

(principally Dare's counsel in 2006, attorneys from the Jones Waldo firm) who have to be deposed, but their documents are yet to be turned over.

<u>January 16-18, 2012 Depositions of David Cohn, Richard McCloskey, and Chicago Title Representative & the Discovery End Date</u>

Dare's communications with its counsel prior to August 14, 2007 are critically important to Chicago Title's preparation for these depositions. There, Chicago Title needs sufficient time before these depositions are scheduled to begin on January 16th to have a fair opportunity to review these and other outstanding documents and prepare for these depositions. Thus, if Dare has not produced responsive documents by January 9th, those depositions should also be adjourned. Further, discovery is scheduled to end February 9, 2012, which date should be extended for at least another thirty days given these outstanding issues and that Chicago Title has not proceeded with its depositions in light of the same.

<u>Chicago Title's Motion to Revoke Pro Hac Vice Admissions & Disqualify Counsel</u>

Chicago Title filed the above-motion [Doc. No. 67] seeking to preclude current counsel from representing Dare in this matter based on serious and substantial grounds that started with the application for counsel to appear <u>pro hac vice</u> and has continued into additional proceedings in this matter. The Court has scheduled oral argument on that motion for January 17, 2012. Given this pending motion and the gravity of the matters at issue, Chicago Title believes it is likely that Dare's current counsel will not be permitted to continue as counsel here. Currently, as set forth above, David Cohn of Horizon Title Agency, the policy-issuing agent for Chicago Title, is scheduled to be deposed on January 16th, with Dare's principal, Richard McCloskey, and Chicago Title's 30(b)(6) witness being deposed on January 17 and 18, 2012 respectively. If Chicago Title's motion is granted, the parties will not be able to complete the depositions of Mr. McCloskey and Chicago Title's 30(b)(6) witness. Since the motion is to be heard in less than two weeks, and in light of the serious nature of the ethics claims at issue, Chicago Title suggests that it may be in all parties' interest not to conduct any further depositions until that motion is decided.

Finally, the urgency of this issue has increased in light of Dare's January 3, 2011 submission to Judge Debevoise seeking to adjourn the return date of Chicago Title's motion for more than a month from January 17th to February 21, 2012 (skipping the intervening February 6th motion day). Chicago Title was never asked to and certainly would not agree to adjourn the return date of its motion, and Dare's request to do so is a transparent attempt to have it returnable well after the current discovery cut-off of February 9th. For the reasons set forth above, Chicago Title's motion needs to be decided as soon as possible. Indeed, it will be imperative in this litigation that only counsel permitted to continue litigating this action be the same counsel participating in the depositions in this matter, further supporting the need to have Chicago Title's motion decided before depositions in this matter are conducted.

Hon. Michael A. Shipp, U.S.M.J.
January 4, 2012
Page 5


Thank you for your consideration.

Respectfully,

Michael R. O'Donnell
cc:    All counsel of record via ECF
4196895.1

1/4/2012