# THE STROJNIK FIRM LLC

### ATTORNEYS AT LAW

ESPLANADE CENTER III, 2415 EAST CAMELBACK ROAD, SUITE 700, PHOENIX, ARIZONA 85016

PHONE: 602.510.9409 | FAX: 602.264.1441 | WEBSITE: WWW.SKPLAW.COM

**January 13. 2012**

The Honorable Dickinson R. Debevoise
United States District Court, District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

**<u>VIA ELECTRONIC FILING</u>**

> Re:   Plaintiff's *Supplemental* Response in Opposition to Doc. 67
> <u>Dare Investments LLC v. Chicago Title Insurance Company,</u>
> No. 2:10-cv-06088-DRD-MAS

Dear Judge Debevoise:

My Firm represents Plaintiff Dare Investments LLC in the matter above. Plaintiff respectfully submits this Supplemental Response to Doc. 67 per Your Honor's permission given at the 1-6-12 Conference.   As discussed below, a "painstaking analysis" of the facts will demonstrate Mr. Strojnik has <u>not</u> violated any RPCs.  When dissected and after review of supported fact and applicable law, <u>Riker Danzig asks the Court to deprive Plaintiff of its chosen counsel based on Mr. Strojnik's inadvertent failure to list a two decade-old censure based on conduct that occurred in the 1980s</u>.  The real motivation for Riker Danzig's Motion is delay and to rid itself of its adversary from prior actions.  Based on the pendency of this Motion and Riker Danzig's unsavory pre-trial practice, depositions originally scheduled for November will <u>not</u> occur until February…if then.  Whatever the Court decides on this issue, <u>Riker Danzig has already succeeded in delaying the depositions in this matter twice</u>.

# I.  <u>INTRODUCTION AND FACTUAL SUMMARY</u>

Riker Danzig's allegations that Mr. Strojnik violated RPCs <u>3.1</u> (meritorious contentions), <u>3.3(a)(1) & (a)(5)</u> (false statement of material fact), <u>3.4(a), (c) & (d)</u> (obstructing discovery), and <u>8.1</u> (knowingly making false statement in admission to bar) completely ignore the supported facts and applicable law and is based upon outright false and misleading statements to this Court.  <u>See</u> Doc. 67-1 at 15 (Riker Danzig citation to RPCs they allege Strojnik violated).  Confronted with Plaintiff's right to "*freely choose its counsel*", the "*heavy burden*" on the movant, and the Third Circuit's view of these Motions as a "*drastic measure*" that should be granted only "*when absolutely necessary*", it is clear the Motion should be <u>denied</u>.  <u>American Cyanamid</u>, *infra*.  Riker Danzig's Motion is nothing more than a "dangerous game" used solely for tactical reasons to delay this action and rid itself of a former adversary.  <u>See</u> <u>In</u> <u>re</u> <u>Congoleum Corp</u>., 426 F.3d 675, 686 (3d Cir. 2005).

As discussed below, Riker Danzig's nearly fifty (50) pages of dastardly misrepresentations, outright lies, use of ominous adjectives, and erroneous assumptions and misleading statements about hundreds upon hundreds of documents they attached as exhibits, can be summarized down to the following:

**1.** Mr. Strojnik's *pro hac vice* Certification was absolutely true, and there was no intent to mislead the Court or intentionally withhold any information;

**2.** Mr. Strojnik inadvertently omitted a 1990 censure because he did not review the Local Rule;

**3.** The 2006 diversion is <u>not</u> discipline;

**4.** The so called "2009 Claims" is actually one disciplinary proceeding that was initiated after Mr. Strojnik submitted his Certification;

**5.** The so called "2010 Claims" is actually one disciplinary proceeding that was initiated well after Mr. Strojnik submitted his Certification;

**6.** Mr. Strojnik inadvertently failed to give notice of the two post-Certification proceedings because he erroneously relied on Arizona Rules of the Supreme Court which do not require such notice; Mr Strojnik practiced under the Arizona Rules of the Supreme Court for over thirty (30) years;

**7.** Mr. Strojnik promptly notified this Court of his suspension.

In summary, Mr. Strojnik's inadvertent omissions can be boiled down to (i) his inadvertent omission of the 1990 censure on the Certification, and (ii) his erroneous reliance on Arizona Rules of Supreme Court regarding notice of post-Certification proceedings.

## Mr. Strojnik's *Pro Hac Vice* Certification Was Fully True

When Mr. Strojnik submitted his December 5, 2010 Certification in support of *pro hac vice* admission (doc. 5-2), he truthfully stated that he was active and in good standing with the Arizona State Bar.  See Exhibit 1 at ¶16 (Strojnik Certification).  Riker Danzig's claim that the Certification was knowingly false is false itself.

## A Timeline Is Productive to Clarify Riker Danzig's Lies, Misrepresentations and Unsavory Spin

- **1990:**  Mr. Strojnik is censured by the Arizona State Bar.  As discussed below, Mr. Strojnik inadvertently omitted this censure in his Certification because he did not review the Local Rule.  *Infra*.

- **2006:**  Mr. Strojnik enters diversion. The diversion matter involves client complaint regarding fees.  The matter is arbitrated pursuant to the Arizona State Bar Fee Arbitration and Mr. Strojnik's fees are determined to be ethical and proper. As discussed below, diversion is not discipline.  *Infra*.

- **December 5, 2010:**  Mr. Strojnik submits his certification in support of *pro hac vice* admission in this action.  Doc. 5-2.  It is fully accurate and true.

- **December 17, 2010:**  A disciplinary proceeding is initiated against Mr. Strojnik by the Arizona State Bar <u>after</u> *pro hac vice* application.  Riker Danzig dishonestly refers to this single proceeding as the so called "2009 Claims".

- **May 2, 2011:**  The December 17 proceeding results in a reprimand.  Mr. Strojnik incorrectly relies on Rule 72, Arizona Rules of Supreme Court in failing to advise Court of this reprimand.  *Infra*.

- **July 17, 2011:**  A disciplinary proceeding is initiated against Mr. Strojnik by the Arizona State Bar <u>after</u> *pro hac vice* application.  Riker Danzig dishonestly refers to this single proceeding as the so called "2010 Claims".  *Infra*.

- **November 7, 2011:**  The July 17 proceeding results in suspension for 30 days. *Infra*.

- **November 21, 2011:**  Still relying on Rule 72, Arizona Rules of Supreme Court, which requires notice about suspensions but not reprimands, Mr. Strojnik promptly notifies the Court and counsel of the suspension.  *Infra*.

### <u>Mr. Strojnik Inadvertently Neglected to Advise This Court of Discipline Based on Conduct That Occurred 25 Years Ago</u>

Exhibit 1 at ¶¶14-20.  Mr. Strojnik did not list the 1990 censure because he carelessly did not review the Local Rule.  Id.  Mr. Strojnik did <u>not</u> intend to mislead this Court or opposing counsel by neglecting to list this two-decade old censure.  Id. at ¶¶19-21.

### <u>The 2006 Diversion Is Not Discipline</u>

"Diversion" in the State of Arizona is an "Alternative to Discipline".  Rule 56(a), Arizona Rules of Supreme Court, *infra*. Here, the client filed a complaint arguing that Mr. Strojnik's fees were not reasonable. The State Bar diverted the matter to the State Bar Fee Arbitration which found that every line item of Mr. Strojnik's fees was reasonable and ethical.

## At the Time of Mr. Strojnik's Certification, There Were "No Disciplinary Proceedings Pending" Against Him

LRCiv 101.1(c) requires the disclosure of "pending disciplinary proceedings." A "disciplinary proceeding" in the State of Arizona begins with the filing of a Complaint. Rule 58(a), Arizona Rules of Supreme Court, *infra*. The December 17, 2010 disciplinary proceeding to which Riker Danzig misleadingly refers to as the so called "2009 Claims" was not an LRCiv 101.1 "disciplinary proceeding" pending against Mr. Strojnik at the time of his Doc. 5-2 certification because the Complaint was filed after Mr. Strojnik's Certification. Id.; Exhibit 1 at ¶¶14-20. Additionally, the July 17, 2011 disciplinary proceeding to which Riker Danzig misleadingly refers to as the so called "2010 Claims" was also not an LRCiv. 101.1 "disciplinary proceeding" pending against Mr. Strojnik at the time of his Certification because the Complaint was filed well after the Certification. Accordingly, there were no pending disciplinary proceedings to disclose.

## Mr. Strojnik Erroneously Relied on Rule 72(a) In Not Advising of Disciplinary Proceedings That Were Initiated *After* His Certification Was Submitted

Rule 72(a), Arizona Rules of Supreme Court, requires attorneys to disclose only a disbarment, suspension, resignation or transfer to inactive status to clients, counsel and the Court. Mr. Strojnik did not intend to mislead this Court or any person when he incorrectly relied on Rule 72(a). Exhibit 1 at ¶¶17-22. Mr. Strojnik relied on Arizona Rules that he has been relying on for over 30 years in his practice of law.

## Mr. Strojnik Promptly Notified This Court and Counsel of His Suspension

On November 7, 2011, the Arizona State Bar filed the Final Judgment and Order suspending Mr. Strojnik's practice for 30 days. Doc. 67-3 at 35-36. Ten days later Mr. Strojnik advised Michael O'Donnell, counsel for Chicago Title, of the suspension. Doc.

67-4 at 51.  Mr. Strojnik specifically advised Mr. O'Donnell that the former would be suspended and he would notify the Court shortly.  Exhibit 1 at ¶26.  Only 10 business days after the suspension, Mr. Strojnik promptly notified this Court. Id. at 55.  See Rule 72, Arizona Rules of Supreme Court, *infra*.

Furthermore, at no time did Mr. Strojnik "concoct a story" that he was vacationing to avoid disclosure of his suspension.  Exhibit 1 at ¶¶26-27.  As discussed above, Mr. Strojnik promptly advised everyone of his suspension.  Additionally, Mr. Strojnik had planned to take time off in December with his wife (undersigned's mother) to allow her to recover after a very serious surgical procedure. Exhibit 1 at ¶¶28-30.  Indeed, Mrs. Strojnik underwent a serious surgical procedure in late October and took convalescence time with Mr. Strojnik in December. Id.  It should also be noted that at no time did Mr. Strojnik fail to advise the Court of his suspension in the context of obtaining a 30-day discovery extension.  Exhibit 1 at ¶30.  Riker Danzig's allegation of the same is false and is supported by false certifications.

### The Conduct Relating to Mr. Strojnik's Recent Discipline Related to His Untreated Medical Disorder and Is Not Likely to Recur

See Doc. 67-3 at 24 ("Respondent is being treated for bipolar disorder.  His doctor and his counselor concur that his conduct as described herein was a symptom of his untreated disorder…there is little likelihood this type of conduct will recur").

It should be noted the case Data Sys. Analysts to which Riker Danzig points for the proposition that medical disorders do not preclude sanctions is misleading.  In Data Sys. Analysts, Inc. v. Netplex Group, Inc., 187 F.R.D. 181 (D.N.J. 1999), the Court addressed whether the conduct subject of the Motion to Revoke *Pro Hac Vice* status, which occurred in *that* case, could be defended against by claiming it was due to a

medical disorder.   In the case at bar, the conduct complained of, and for which Mr. Strojnik is now receiving treatment, did not occur in this case.  He is now being treated for *past* misconduct, which will <u>not</u> translate into this matter because of treatment.

**<u>Mr. Strojnik Has Acted Lawfully In the Disclosure of Documents; Judge Shipp Will Be Deciding Pending Discovery Matters Shortly (Doc. 81)</u>**

Mr. Strojnik has <u>not</u> unlawfully or frivolously withheld documents or "forced depositions" as Riker Dangiz claims.   A laborious review of the timeline not only discloses that Mr. Strojnik's actions were professionally warranted, but that it was *Strojnik Jr.* who legally and ethically conducted the discovery issues about which Riker Danzig complains.

- **October 26, 2011:**  Neither party had disclosed any documents because both Plaintiff and Chicago Title "have had some difficulty in compiling its [document] production, which Chicago Title has also experienced."  Doc. 67-4 at 20.  The Parties agreed to exchange discovery by November 11, 2011.  Id. at 26.

- **November 11, 2011:**   Plaintiff, through Mr. Strojnik, mails Chicago Title "everything except privileged information" and neatly organized the documents by category.   Id. at 29-46.   In return, Chicago Title produced 24 pages of objections.

- **November 15, 2011:**  Judge Shipp vacates November depositions, which were previously agreed to by Chicago Title, because Chicago Title insisted on obtaining the withheld privileged documents.  Doc. 81.  Thereafter, the Parties mutually agreed to take the depositions of Duval and three others in January.

- **November 30, 2011:**  Chicago Title admits the alleged "forced" depositions were not vacated but simply "cannot go forward at this time due to the dispute relating to whether communications between Dare and its counsel need to be turned over."  <u>See</u> Exhibit 2 (O'Donnell e-mail to LeClair Ryan law firm).

- **December 2, 2011:**  Mr. Strojnik voluntarily agrees to waive attorney-client privilege on condition that Chicago Title concedes the documents are relevant.  Exhibit 3.

- **December 3, 2011:**  Strojnik Jr. takes over the case during Mr. Strojnik's suspension.  *<u>Henceforth, Mr. Strojnik does not participate in the case until January 3, 1012</u>*.  Exhibit 6 at ¶14.

- **December 19, 2011:**  The Parties agree that Plaintiff will voluntarily waive the attorney-client privilege and the privileged documents are relevant and material to Dare's coverage claims.  (12-19-11 Conference, No Doc. Number); Doc. 64 at 5.

- **December 23, 2011:**  Plaintiff, through Strojnik Jr., mails O'Donnell <u>all privileged documents in Plaintiff's possession, 144 files</u>.  This disclosure was made in reliance that O'Donnell would not thereafter renege on his agreement the documents are "relevant and material to the veracity of Dare's coverage claims and Chicago Title's defenses thereto."  Id.

- **December 13 – January 4, 2012:**  Once Chicago Title receives Plaintiffs' privileged documents, O'Donnell reneges on his agreement the privileged documents are "relevant and material", which was a condition to turning over the privileged documents.  <u>See generally</u> Docs. 70-72, 75, 77 and 80.  The basis for Mr. O'Donnell's breach of the agreement – that there is a alleged difference between "trial relevance" and "discovery relevance".  Id.; Doc. 81 at 2.

- **January 5, 2012:** Judge Shipp vacates the January 9, 2012 deposition of Gordon Duval, which was originally set by Strojnik Jr., because Strojnik Jr. and O'Donnell cannot come to an agreement of the terms of a Consent Order due to O'Donnell's renege on the open Court agreement and Doc. 64 representation to the Court.  Doc. 81 at 2; Doc. 64 at 5.  O'Donnell continues to insist he never agreed to "relevance and materiality" but caveats it that they are only "discovery relevant" and "may only lead to the discovery or relevant evidence."  Id.; Doc. 81; Docs. 70-72, 75, 77 and 80.

- **January 6, 2012:**  LeClair Ryan, the law firm in possession of the remaining privileged materials (which apparently precluded Chicago Title from defending the deposition of Gordon Duval on January 9), refuses to disclose privileged documents to Riker Danzig pending an Order from the Court, reiterates that it has fully complied with the subpoena, and that Riker Dangiz already has over 3500 of their documents.  <u>See</u> Exhibit 5 (1-5-11 Correspondence from Paul Drobbin, Esq.).

In summary, Plaintiff has fully complied with its discovery obligations pending Judge Shipp's decision on the attorney-client privilege issue.  <u>Plaintiff simply wants to take some depositions</u>, but Riker Danzig has been successful in staying the revelation of the facts.

## The United States District Court Determined There Is No Need for Discipline

Subj:       **OSC deemed Moot**
Date:       1/11/2012 10:42:32 A.M. US Mountain Standard Time
From:       attyadmin@azd.uscourts.gov
To:         strojnik@aol.com

Dear Mr. Strojnik:

Judge Bolton has reviewed your response to the Order to Show Cause, as well as the reinstatement order issued by the Arizona Supreme Court, and has deemed that the OSC is now moot. Your status will remain active and in good standing with the U.S. District Court.

Beth Stehpenson
Attorney Disciplinary Clerk
602-322-7106

<u>See</u> Exhibit 8.

## Strojnik *Jr.* Was Associated Into This Case To Provide "Associate" Type Support

In the past four years, Strojnik Jr. has been associated with Mr. Strojnik in scores of cases to provide "associate" type support. <u>See</u> Exhibit 6 at ¶4 (Strojnik Jr. Certification). In this litigation, Strojnik Jr. has provided the same "associate" type support. Id. at ¶5, 8. Strojnik Jr.'s involvement in this case is <u>not</u> to "cover" for Mr. Strojnik's suspension as Riker Danzig falsely represents as alleged fact. Id. at ¶12.

## Strojnik *Jr.* Had No Knowledge of the Reasons for Mr. Strojnik's Suspension or His Past Discipline Until Riker Danzig's Filing; That is Confidential

<u>See</u> Exhibit 6 at ¶¶ 9-13 (Strojnik Jr. certifying to his lack of knowledge).

## Local Counsel Was Unaware of Any Past Discipline or Pending Disciplinary Proceedings (Of Which There Were None as to the Latter)

Local Counsel Christopher Humphrey was unaware of any prior discipline or pending disciplinary proceedings for Mr. Strojnik or Strojnik Jr. upon submission of the *pro hac vice* application. <u>See</u> Exhibit 7 at ¶4 (Humphrey Certification). Indeed, there was no pending disciplinary proceeding to know of. *Supra*.

## II. <u>SPECIFICALLY CORRECTING RIKER DANZIG'S FALSE AND MISLEADING STATEMENTS</u>

Riker Danzig submitted nearly fifty (50) pages of outright lies to this Court in their zeal to rid itself of Mr. Strojnik. In its Reply brief, Riker Danzig suggests that Mr. Strojnik attempts to "twist the very bounds of logic to justify his actions here. This Court should not countenance such outright deceit." Doc. 83 at 17. While Riker Danzig's chosen language is more apt for a mystery novel, the above demonstrates Mr. Strojnik was honest with the Court at all times. However, the below will demonstrate, with specific cite to the record, that it is Riker Danzig's deceit that knows no bounds. Riker Danzig's advocacy has transmuted into dastardly lies and misleading statements. Plaintiff will attempt to correct a few of the major ones, and it is our hope the Court will recognize the deceit.

### <u>The So Called "2009 Claims" Are Termed As Such To Mislead The Court Into Believing They Predated *Pro Hac Vice* Application</u>

The so called "2009 Claims" actually refer to one post-Certification disciplinary proceeding. Exhibit 1 at ¶16. Terming this single disciplinary proceeding as the "2009 Claims" is outright dishonest for two reasons. <u>See</u> Doc. 83 at 8 ("MORE ON THE 2009 CLAIMS") (emphasis in original). First, it is <u>one</u> disciplinary proceeding that was initiated <u>after</u> the *pro hac vice* Certification was submitted. Id. at ¶16; Rule 58(a), Arizona Rules Supreme Court. This is a single disciplinary proceeding, <u>not</u> plural as Riker Danzig dishonestly misrepresents. Second, this single disciplinary proceeding was dated December 17, 2010, <u>not in the year 2009</u> as Riker Danzig again dishonestly misrepresents. Exhibit 1 at ¶16.

As discussed above, Mr. Strojnik correctly and honestly did not include the so called "2009 Claims" in his *pro hac vice* Certification since this single proceeding was initiated after the Certification was submitted. However, in his erroneous reliance on Arizona Rule of Supreme Court 72(a), Mr. Strojnik inadvertently did not advise the Court of this proceeding when it was initiated. *Supra*; *Infra*.

### The So Called "2010 Claims" Is Actually One Disciplinary Proceeding That Was Filed Well After Mr. Strojnik's *Pro Hac Vice* Application

Once again, Riker Danzig dishonestly pluralizes a single disciplinary proceeding that was initiated <u>after</u> the Certification. <u>See</u> Doc. 83 at 10 ("MORE ON THE 2010 CLAIMS") (emphasis in original). The so called "2010 Claims" refer to the single disciplinary proceeding filed against Mr. Strojnik in July 2011 that resulted in the recent suspension. Exhibit 1 at ¶16. Referring to this single proceeding in the plural using the wrong year is a transparent attempt to mislead a federal Court.

As discussed above, Mr. Strojnik correctly and honestly did not include the so called "2010 Claims" in his *pro hac vice* Certification since this single proceeding was initiated <u>after</u> the Certification was submitted. However, in his erroneous reliance on Arizona Rule of Supreme Court 72(a), Mr. Strojnik inadvertently did not advise the Court this proceeding when it was initiated. *Supra*; *Infra*.

### Riker Danzig Lied To This Court About a 2006 Diversion

Riker Danzig lied to this Court when it said "at the time the PHV application was submitted, Strojnik Sr. has been subject to two disciplines – the 1990 censure and 2006 diversion." Doc. 83 at 8. Diversion is an "alternative to discipline". Rule 56(a), Arizona Rules Supreme Court. Riker Danzig knows that diversion is <u>not</u> discipline because it read the Arizona Rules of Supreme Court. Doc. 83 at 18.

**Riker Danzig Attempts to Mislead the Court into Believing Strojnik Jr. Knew of Mr. Strojnik's Discipline**

Riker Danzig points to "recently-acquired documents" that they state "leave no doubt that he [Strojnik Jr.] was involved in the Arizona disciplinary matters since at least August 2010." Doc. 83 at 25. Riker Danzig also states that "Strojnik Jr. knew of the charges virtually from their inception." Id. at 10. These "recently acquired documents" refer to Exhibits 2 and 23 to the Reply brief. Id. at 8, 10.

Exhibit 23 is a Motion to Disqualify Mr. Strojnik in a case. Strojnik Jr. was copied on the Motion. This exhibit merely shows Strojnik Jr. was aware of a party's contentions, not that there were disciplinary proceedings or discipline.

Exhibit 2 is a document that demonstrates Strojnik Jr. represented Mr. Strojnik on his appeal to the Order disqualifying Mr. Strojnik in the case. It does not show that Strojnik Jr. knew of disciplinary proceedings or discipline. It merely shows Strojnik Jr.'s representation in an appellate matter.

As discussed above, Strojnik Jr. first became aware of the recent disciplinary proceedings when Riker Danzig filed its Motion.

## III. ARGUMENT AND SUPPORTING LAW

**The Court's Inherent Powers Are Potent and Sanctions Should Be Tailored to Address the Harm Identified**

Courts have the "inherent authority to impose sanctions upon those who would abuse the judicial process." Republic of the Philippines v. Westinghouse Elec., 43 F.3d 65, 73 (3d Cir. 1995). "Because of their very potency, inherent powers must be exercised with restraint and discretion." Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991). In this light, the Third Circuit requires Courts "ensure that the sanction is tailored to address

the harm identified." <u>Republic of Philippines</u>, 43 F.3d at 74. In tailoring the sanction, the Court must consider whether the conduct is "part of a pattern of wrongdoing", the "severity of the infraction", and the "level of harm or prejudice to the adversary." <u>In re PMD Enters</u>., 215 F. Supp. 2d 519, 526 (D.N.J. 2002).

As discussed above and in more detail below, Mr. Strojnik's inadvertent omissions are summarized as (i) his inadvertent omission of a 1990 censure based on his failure to review the Local Rule, and (ii) his erroneous reliance on Rule 72(a), Arizona Supreme Court, in not advising the Court of two post-Certification disciplinary proceedings. Mr. Strojnik is embarrassed by his omissions and incorrect reliance on Rule 72(a), but revocation of his *pro hac vice* status would severely outweigh his inadvertent omissions. There is no showing of a pattern or practice of inadvertent omissions, and there has been no showing that these inadvertent omissions have caused any harm to Chicago Title.

## The Legal Standard for Disqualification of Counsel Carries a 'Heavy Burden' of Proof That Is Granted Only 'When Absolutely Necessary'

"It is well settled that because motions to disqualify can have such drastic consequences, courts disfavor such motions and grant them only '*when absolutely necessary*'". <u>Rohm and Hass Co. v. American Cyanamid Co.</u>, 187 F.Supp. 2d 221, 226 (D.N.J. 2001) (emphasis supplied) (citing <u>Alexander v. Primerica Holdings, Inc.</u>, 822 F. Supp. 1099, 1114 (D.N.J. 1993). "A party seeking disqualification must meet a '*heavy burden*' of proof before a court will disqualify an attorney." <u>American Cyanamid</u>, 187 F. Supp. 2d at 226-27. "Motions to disqualify are *viewed with disfavor* and disqualification is considered a *drastic measure* which courts should hesitate to impose except when absolutely necessary." <u>Alexander</u>, 822 F. Supp. At 1114 (D.N.J. 1993) (emphasis

supplied) (internal quotation marks omitted).   In determining whether to disqualify counsel, "close judicial scrutiny of the facts of each case is required to prevent unjust results." <u>Montgomery Acad. v. Kohn</u>, 50 F. Supp. 2d 344, 349 (D.N.J. 1999); <u>see also</u> <u>Dewey v. R.J. Reynolds Tobacco Co.</u>, 109 N.J. 201, 218 (1988) (Courts must engage in a "*painstaking analysis of the facts*" when addressing motions for disqualification). Indeed, "disqualification questions are intensely fact-specific, and it is essential to *approach such problems with a keen sense of practicality* as well as a precise picture of the underlying facts." <u>Montgomery Acad.</u>, 50 F. Supp. 2d at 350 (emphasis supplied).

In determining whether counsel has violated the RPCs, the Court must "balance the need to maintain the highest standards of the profession against a *client's right to freely choose his counsel*." <u>Steel v. General Motors</u>, 912 F. Supp. 724, 733 (D.N.J. 1995) (emphasis supplied).   "The ethical rules should not be blindly applied without consideration of relative hardships." <u>Montgomery Acad.</u>, 50 F. Supp. 2d at 350.

Mr. Strojnik's two inadvertent omissions do not rise to a violation of any of the Rules of Professional Conduct.   There was no willfulness, intent to deceive, or intent to mislead.   Mr. Strojnik failed to review the Local Rule and erroneously relied on Arizona Rules that he has been following for over thirty (30) years of practice in Arizona. Assuming Mr. Strojnik's inadvertent omissions did violate the RPCs, the sanction of disqualification would severely outweigh Dare's chosen counsel in this action.   *Infra*.

### <u>Mr. Strojnik's Inadvertent Failure to Disclose a Censure Based on Conduct That Occurred 25 Years Ago Does Not Rise to a Violation of RPC 8.1</u>

RPC 8.1 reads in relevant part:

> An applicant for *admission to the bar*, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter shall not: (a) *knowingly make a false statement of material fact*; or (b) fail to

disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter…

RPC 8.1 only applies to "admission to the bar" and requires "knowingly make a false statement of material fact." Neither of these elements is present here. Mr. Strojnik sought *pro hac vice* admission to practice before a federal Court, not the New Jersey State Bar and he did not "knowingly make a false statement of material fact." Doc. 5.

Furthermore, Mr. Strojnik did not make any false statements, much less knowingly doing so. Exhibit 1 at ¶¶14-20. His Certification was accurate and truthful that he was active and in good standing with the Arizona State Bar. Id. at ¶15. Mr. Strojnik inadvertently failed to list a censure based on conduct that occurred 25 years ago. Id. This inadvertent error was not a "deliberate misrepresentation" as Riker Danzig falsely claims and is not the "extraordinary circumstances" that warrant disqualification of Plaintiff's chosen counsel. Id. at ¶¶15-20.

## Mr. Strojnik Correctly Did Not Include the 2006 Diversion

LRCiv. 101.1(c) requires the disclosure of past discipline. Rule 56(a), Arizona Rules of Supreme Court, states diversion is an "alternative to discipline". Accordingly, Mr. Strojnik correctly did not include the 2006 diversion in his Certification.

## Mr. Strojnik Did Not Fail to Include Any Other Necessary Information in His Certification Pursuant to LRCiv. 101.1(c)

LRCiv. 101.1(c) requires attorneys seeking *pro hac vice* admission to certify that (i) "no discipline has previously been imposed on the attorney", (ii) "no disciplinary proceedings are pending against the attorney", and to list the particulars of discipline within the past five years. The initiation of a "disciplinary proceeding" occurs at the time a Complaint is filed. Rule 58(a), Arizona Rules of Supreme Court.

Both the December 17, 2010 and July 2011 disciplinary proceedings against Mr. Strojnik (the so called "2009 Claims" and "2010 Claims") occurred after he submitted his Certification. Exhibit 1 at ¶16. Accordingly, Mr. Strojnik's nondisclosure of these post-Certification proceedings was correct, and not "pathetic" as Riker Danzig so classily claims. Doc. 83 at 18. Riker Danzig's citation to correspondence and letters exchanged between Mr. Strojnik and the State Bar are part of an investigation that precedes the initiation of any disciplinary proceedings. See e.g. Rule 55(a), Arizona Rules of Supreme Court. Riker Danzig hopes the Court will rely on the latter's unfamiliarity with Arizona State Bar procedures in disqualifying Mr. Strojnik.

## Mr. Strojnik Mistakenly Followed The Arizona Supreme Court's Disclosure Requirements in Not Disclosing the Two Post-Certification Disciplinary Proceedings

Rule 72(a), Arizona Rules of Supreme Court states in full:

**(a) Recipients of Notice; Contents.** Within ten (10) days after the date of an order or judgment issued by the presiding disciplinary judge, a hearing panel, or the court imposing discipline or transfer to disability inactive status, or the date of resignation, *a respondent suspended, disbarred, transferred to disability inactive status, or who has resigned, shall notify the following persons by registered or certified mail, return receipt requested, of the order or judgment*, and of the fact that the lawyer is disqualified to act as lawyer after the effective date of same:

1. all clients being represented in pending matters; and
2. any co-counsel in pending matters; and
3. any opposing counsel in pending matters, or in the absence of such counsel, the adverse parties; and
4. each court and division in which respondent has any pending matter, whether active or inactive.

(emphasis supplied). As is clear, the Rule only requires the disclosure of suspension, transfer to inactive status, resignation or disbarment. Mr. Strojnik has been practicing in the State of Arizona since 1980. The knowledge of the Rules of the Arizona Supreme Court have become engrained and intuitive in his over thirty (30) years of

experience in Arizona.  As a result, Mr. Strojnik erroneously followed the disclosure requirements of Rule 72(a), which does not require the disclosure of the initiation of the December 17, 2010 and July 2011 disciplinary proceedings (the so called "2009 Claims" and "2010 Claims".

   Mr. Strojnik recognizes that the Arizona Rules of the Supreme Court regarding discipline in Arizona may not apply in this Honorable Court. He recognizes that he should have followed the Local Rules of this Honorable Court. However, Mr. Strojnik's error was unintentional, accidental and understandable. Exhibit 1 at ¶¶14-20.  <u>Mr. Strojnik's good faith is clearly demonstrated by his timely and full disclosure of the 30 day suspension commencing on December 3, 2011 by registered mail to this Honorable Court, to the opposing counsel, to the Chief Judge, to his client and to his co-counsel</u>…*even though Exhibit 8 demonstrates the U.S. District Court did not believe suspension from federal Court was warranted.*

**<u>Plaintiff's Withholding of Attorney-Client Privileged Documents and Seeking Depositions is not a Violation of RPC 3.1 and 3.4</u>**

   RPC 3.1 states a lawyer may not assert any issue that he "knows or reasonably believes that there is a basis in law and fact for doing so that is not frivolous…"  RPCs 3.4(a)(c) & (d) prohibit a lawyer from unlawful obstruction of evidence and from making a frivolous discovery request.

   Riker Danzig bases its RPC 3.1 and 3.4 claims on their allegations that "Strojnik Sr. has knowingly withheld from production communications he has had with counsel for Mocco and attorney-client communications Dare had with its counsel…"  Doc. 67-1 at 17.  Not only can Riker Danzig <u>not</u> demonstrate Plaintiff's withholding of privileged material is frivolous, Judge Shipp has not even decided the issue.  Doc. 81.

As noted above, Mr. Strojnik's production of discovery as of November 11, 2011 was cooperative and only withheld attorney-client privileged documents. *Supra*, timeline. As of November 30, 2011, Riker Danzig confirmed all that was needed were attorney-client privileged documents. *Supra*, timeline. Plaintiff went so far as voluntarily agree to waive the privilege so long as O'Donnell agreed the documents were relevant, which the latter did. *Supra*, timeline; Doc. 64 at 5. As of December 23, 2011, Plaintiff has disclosed all of its privileged material in reliance of O'Donnell's agreements (later reneged). *Supra*, timeline. All of these actions have had merit in law and fact and fall woefully short of being frivolous.

Furthermore, it is impossible to conclude Mr. Strojnik's position on withholding privileged documents is frivolous or obstructionist when Plaintiff has disclosed every single document, including 144 privileged files, in its possession. *Supra*, timeline. The only documents Chicago Title does not have are those from LeClair Ryan and Jones Waldo, and these are subject to Judge Shipp's anticipated Order that was argued by Strojnik Jr. *Supra*, timeline; <u>see</u> <u>also</u> Plaintiff's 1-13-12 Submission to Judge Shipp. <u>Plaintiff is very eager to take depositions.</u>

## <u>Mr. Strojnik's Prompt 11-21-11 Notice to the Court Advising of His Suspension Does Not Come Anywhere Close to a Violation of RPC 3.3(a)</u>

RPCs 3.3(a)(1) & (5) prohibits a lawyer from knowingly making a false statement to the Court and from failing to disclose a material fact "knowing that the omission is reasonably certain to mislead the tribunal…"

Riker Danzig bases its RPC 3.3(a) claim on the unsupported allegation that:

[Mr. Strojnik] deceived Chicago Title into making a submission to the Court to request a discovery extension based on Strojnik Sr.'s lie, when he claimed he was taking a vacation for the month of December 2011,

knowing all the while that he was prohibited from practicing law by reason of the sanction for his unethical behavior in Arizona.

Mr. Strojnik clearly notified everyone of his suspension a mere two weeks after the Final Judgment and Order in accordance with LRCiv. 101.1 and Rule 72(a), Arizona Rules of Supreme Court. *Supra.* Prior to that, he privately advised Mr. O'Donnell a few days prior to Mr. Strojnik's formal notice that he would be suspended. *Supra.* He also had planned a period of convalescence with Mrs. Strojnik during the month of December, which coincided with Mr. Strojnik's suspension. *Supra.* There are no failures to disclose or false statements, much less knowing ones. Considering the "heavy burden" on Riker Danzig, their speculations framed as alleged fact should be cast aside.

**Plaintiff Freely Chose Mr. Strojnik Based On His Past Successes and Experiences Against Chicago Title and Michael O'Donnell on the Same "Unmarketability" Issues**

[A] party's choice of counsel is entitled to substantial deference." Alexander (quotations and citations omitted). Hamilton, 645 F. Supp. at 61 ; Nemours Found. v. Gilbane, Aetna, Federal Ins. Co., 632 F. Supp. 418, 431 (D.Del. 1986); see also United States v. Miller, 624 F.2d 1198, 1201 (3d Cir. 1980) (stating that permitting litigant to retain choice of counsel is important countervailing policy to disqualification).

Dare chose Mr. Strojnik as counsel based on a word of mouth recommendation (ex. 1) and Dare's favorable view of Mr. Strojnik's past experiences against Chicago Title and Mr. O'Donnell. See e.g. Sky Land Investments LLC v. Chicago Title Insurance Company, U.S.D.C. (N.J.) Cause No. 2:07-cv-05844-KSH-PS (*insurance litigation dealing with same "unmarketability" issue in which Mr. Strojnik was counsel for Plaintiff, Michael O'Donnell was counsel for Chicago Title, Dare has favorable view of Mr. Strojnik's representation of Sky Land against Chicago Title and Michael O'Donnell*).

Mr. Strojnik is not only readily familiar with Chicago Title's and Michael O'Donnell's practices, but has also succeeded in the past on the same issues against the same "players". Despite Riker Danzig's speculative allegations, Dare is currently aware of Mr. Strojnik's past State Bar matters and wishes Mr. Strojnik to continue representation. Indeed, Dare, a *Utah company*, continues to choose an *Arizona lawyer* to represent them in a *New Jersey action*.

Mr. Strojnik is supremely aware of the facts, thousands of documents, and has a special understanding of insurance law because of his vast experience in insurance litigation but also because of his status as a licensed insurance adjuster. Exhibit 1 at ¶¶11-13. He has spent over 1,000 hours of time reviewing thousands of documents in the FCCG Bankruptcy, documents in the Vermont Bankruptcy and the documents filed in Mocco et al v. Licata et al Action 2, consolidated and filed under Consolidated Docket No. ESX-C-280-98, Superior Court of New Jersey, Chancery Division, Essex Count involving 33 lawyers and parties, including the Riker Danzig law firm. Id. Mr. Strojnik has reviewed thousands of pages of discovery produced by subpoenaed third parties. Id. Indeed, his meticulous review and knowledge of this case is a tremendous asset to Dare.

Mr. Strojnik also has the ability to represent Dare on a contingency agreement and advance supremely expensive litigation costs, which Dare does not have the ability to do on its own. Id. at ¶8.

**Dare would suffer irreparable prejudice if Mr. Strojnik were unable to continue**.

Mr. Strojnik's experience in insurance litigation, experience against Chicago Title, experience against Riker Danzig and his meticulous review and knowledge of this case is a tremendous asset to Dare Investments' ultimate success on this meritorious

claim.  The replacement of counsel now would work a huge prejudice on Dare, while

Chicago Title has not shown any prejudice to them if Mr. Strojnik were to continue.

### IV. RIKER DANZIG'S "DANGEROUS GAME" IS UNDERSTANDABLE

In Baxt v. Liloia, 714 A.2d 271, 274-75, 155 N.J. 190, 197 (N.J., 1998), the New

Jersey Supreme Court cautioned against the use of motions to disqualify as procedural

weapons:

> Violation of a Rule should not give rise to a cause of action nor should it
> create any presumption that a legal duty has been breached. The Rules are
> designed to provide guidance to lawyers and to provide a structure for
> regulating conduct through disciplinary agencies. They are not
> designed[714 A.2d 275] to be a basis for civil liability. Furthermore, the
> purpose of the Rules can be subverted when they are invoked by opposing
> parties as procedural weapons. The fact that a Rule is a just basis for a
> lawyer's self-assessment, or for sanctioning a lawyer under the
> administration of a disciplinary authority, does not imply that an
> antagonist in a collateral proceeding or transaction has standing to seek
> enforcement of the Rule.

In Wyeth v. Abbott Laboratories, 692 F. Supp.2d 453, 457-58 (D.N.J., 2010), the

Court also cautioned:

> "[M]odern approach is for courts… to carefully examine the totality of the
> circumstances, taking a balanced approach that includes evaluating the
> impact, nature and degree of a conflict, see, e.g., Boston Scientific Corp.,
> 647 F.Supp.2d at 374; Elonex I.P. Holdings, Ltd. v. Apple Computer, 142
> F.Supp.2d 579, 583-584 (D. Del. 2001) (balancing factors to find
> disqualification unwarranted); University of Rochester v. G.D. Searle &
> Co., Inc., 2000 WL 1922271 (W.D.N.Y. Dec.11, 2000) (requiring moving
> party to "come forward with facts tending to show that the concurrent
> representation has tainted the trial by affecting counsel's presentation of
> the case, by placing counsel in a position to use privileged information, or
> by otherwise allowing counsel to gain an unfair advantage"). …
> [D]isqualification may serve to encourage the use of disqualification
> motions solely for tactical reasons—a use courts have repeatedly
> expressed concerns about. See, e.g., In re Congoleum Corp., 42,6 F.3d 675
> (3d Cir.2005) (noting the existence of "concerns about the tactical use of
> disqualification motions to harass opposing counsel.") (citing Richardson-
> Merrell, Inc. v. Koller, 472 U.S. 424, 436, 105 S.Ct. 2757,

1985)) (expressing the same concern and referring to this practice as a "dangerous game.").

Aside from Riker's Danzig's obvious profit of ridding itself of a former adversary, its nearly fifty (50) pages of lies, misrepresentations, and sickening spin is understandable because it has taken focus off of the principal issue in this case: <u>Whether the intent of the policy is to cover the Mocco claims</u>.    One of the manners to discover the answer to this question is to depose Gordon Duval, which has been indefinitely postponed in part by this Motion and Riker Danzig's insistence that it obtains documents it already has.    However, Riker Danzig does not want Gordon Duval's deposition to occur, and this Motion is targeted at precluding Mr. Strojnik from taking it.    The reason why Riker Danzig does not want Mr. Strojnik to take Mr. Duval's deposition is because Mr. Strojnik learned on January 9, 2012 (the date Mr. Duval's deposition was set for) on a trip to visit Mr. Duval in Utah that <u>Michael O'Donnell spoke with Mr. Duval in December immediately after the scheduling of the deposition</u>, and <u>Mr. Duval said he would testify that the precise intent of the policy was to provide coverage for Mocco claims</u> because there were no other possible claims that could have been made by any party, entity or person.    The proverbial cat is out of the bag.    <u>MOCCO CLAIMS ARE COVERED</u>.    <u>The policy would be unnecessary otherwise because all other claims had been scrubbed clean by the 363 Sale Order</u>.    Now, Riker Danzig must do everything in its power, including filing nearly fifty (50) pages and hundreds upon hundreds of exhibits dedicated to disqualifying the lawyer who flew to several states, interviewed witnesses, interviewed Gordon Duval, interviewed George Pratt of Jones of Waldo, interviewed Rick Knuth, is familiar with the FCCG Court Orders and their clarity.    This case is not in

its inception.  It is at its conclusion.  <u>MOCCO CLAIMS ARE COVERED</u>…*and Mr. O'Donnell knows this*.

Riker Danzig's Motion is full of misrepresentations and false statements, approaches nearly fifty (50) pages of repetition of these misrepresentations, attaches hundreds upon hundreds of documents as misleading exhibits (sometimes twice), makes unusual and fallacious assumptions of what Strojnik Jr. and local counsel allegedly knew, makes false, unsupported conclusions about Arizona Bar documents and correspondence, and intentionally omits law and fact that negate their false statements and erroneous conclusions.  This is just part of a pattern of Riker Danzig's pretrial practice of delay, which includes their renege of an open court Agreement.  This Motion and Riker Danzig's entire pretrial practice should be submitted to the Clerk on ethics charges.  <u>In order to maintain the "integrity of this profession", an investigation into Messrs. O'Donnell and Frejomil should be initiated</u>.

## V.  <u>CONCLUSION</u>

It is our hope the Court views Riker Danzig's Motion for what it is…a house of cards.  For the foregoing reasons, Plaintiff respectfully requests Mr. O'Donnell's Motion be <u>denied</u>.

Very Truly Yours,                          Very Truly Yours,

                                          */s/ Christopher Humphrey*

Peter Kristofer Strojnik                   Christopher Humphrey

CC:
Michael O'Donnell, Esq.
Derick Freijomil, Esq.
Counsel for Defendant Chicago Title Ins. Co.
Via e-mail and ECF