DARE INVESTMENTS, LLC, a Utah limited liability company,

        Plaintiff,

    vs.

CHICAGO TITLE INSURANCE COMPANY, a Missouri domiciled insurer; HORIZON TITLE AGENCY, Inc., a New Jersey domiciled company; CHICAGO TITLE RICO ENTERPRISE, a racketeering enterprise,

        Defendants.

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

Civil Action No. 2:10-cv-06088-DRD-MAS

**Honorable Dickinson R. Debevoise**

---

## SUPPLEMENTAL CERTIFICATION OF PETER STROJNIK

Peter Strojnik, AZ Bar No 006464, certifies to this Court under the penalty of perjury as follows:

1. This Supplemental Certification of Peter Strojnik is intended to provide the Court with further information in connection with Chicago Title's Motion to Disqualify Counsel. In order for the Court and the Parties to differentiate between the original Certification and the Supplemental Certification, the supplemental statements will be in Arial font.

2. I am licensed to practice law in all State and Federal Courts in the State of Arizona since 1980 and in the 9th Circuit Court of Appeals.

3. I am a licensed Arizona insurance adjuster.

4.  During his tenure as a lawyer, I have practiced before various jurisdictions in the United States pursuant to local pro hac vice admissions.

5.  I focus my practice primarily to insurance litigation. I recognize that many insureds whose claims are unjustly denied do not have the deep purse of insurers, and many seek representation under a contingency fee arrangement.

6.  I currently represent Dare Investments in the above cause; I am Plaintiff's lead counsel.

7.  Dare's principal Mr. McCloskey retained my services through a word of mouth recommendation.

8.  Mr. McCloskey requested that I represent Dare Investments under a contingency fee arrangement. I consented.

9.  On October 21, 2010, I entered into a fee agreement with Dare Investments.

10. I appeared in this case pursuant to a *pro hac vice* admissions under LRCiv. 101.1 (c).

11. I am responsible to Dare Investments for the overall case management, litigation strategy and trial. Mr. Humphrey has been primarily involved as the local counsel advising me on local rules, standards and practices, and for ECF filings with the Court. Mr. Peter K. Strojnik, my son, has helped me primarily during the term of suspension, and will assist me at trial.

12. This is a complicated and document intensive case. In order to provide adequate representation to Dare Investments, I spent over 1,000 hours of time reviewing

2000± documents in the FCCG Bankruptcy, the documents in the Vermont Bankruptcy and the documents filed in the <u>Mocco, et al. v. Licata, et al</u>, Action 2, consolidated and filed under Consolidated Docket No. ESX-C-280-98, Superior Court of New Jersey, Chancery Division, Essex County (pending) involving 33 lawyers and parties, including Messrs. O'Donnell and Freijomil, preparing for and filing dispositive motions, traveling to and from New Jersey, Arizona and Utah, preparing for depositions, and presenting oral arguments on motions.

13. I reviewed thousands if not tens of thousands of pages of discovery produced by the parties and subpoenaed third parties.

14.    On December 5, 2010, I executed a Certification in support of my Application for Admission Pro Hac Vice. I stated:

> I, Peter Strojnik, do hereby certify that I am licensed to practice in the State of Arizona, Bar Number 006464. I am on active status and in good standing.
>
> I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false that I am subject to punishment.

15.    I did not read local rule 101.1 at the time of the Certification. I erroneously believed that a declaration confirming my status as a lawyer in good standing with the Supreme Court of the State of Arizona was sufficient. I was negligent in my assumption.

16.    The December 5, 2010 Certification is true in all respect, but it is not complete. If I had read local rule 101.1, I would not have inadvertently

omitted the 1990 censure, which was based on conduct that occurred in 1986.

17.    My failure to familiarize myself with local rule 101.1 also resulted in my inadvertent failure to give notice to this Honorable Court of two formal disciplinary proceedings initiated *after* I signed the Certification.    Two complaints by the State Bar of the State of Arizona were filed against me: One on December 17, 2010, Exhibit 1, and another on July 29, 2011. Exhibit 2.  The first was concluded by a Judgment and Order of reprimand on May 2, 2011.  Exhibit 3. The second was concluded by Judgment and Order of 30 day suspension on November 7, 2011. Exhibit 4.  However, neither of these matters were formal disciplinary proceedings at the time I executed my Certification.

18.    With respect to my disclosure requirements, I incorrectly, negligently and inadvertently applied the disclosure requirements of the Arizona Supreme Court Rule 72(a) which requires me to issue notices of discipline only in the matters resulting in suspension or disbarment[1]. I inadvertently

---

[1] **(a) Recipients of Notice; Contents.** Within ten (10) days after the date of an order or judgment issued by the presiding disciplinary judge, a hearing panel, or the court imposing discipline or transfer to disability inactive status, or the date of resignation, a respondent suspended, disbarred, transferred to disability inactive status, or who has resigned, shall notify the following persons by registered or certified mail, return receipt requested, of the order or judgment, and of the fact that the lawyer is disqualified to act as lawyer after the effective date of same:

1. all clients being represented in pending matters; and

2. any co-counsel in pending matters; and

failed to advise this Honorable Court of the filing of the Complaints by the State Bar because I negligently failed to read local rule 101.1. I immediately advised all counsel, co-counsel, my client and this Honorable Court, by Certified Mail Return Receipt Requested, of the Suspension as required by Arizona Supreme Court Rule 72. Exhibit 5. I also advised the United States District Court for the District of New Jersey Chief Judge. Exhibit 6.

19.     I also timely and fully advised the Unites States District Court for the District of Arizona of my suspension. The United States District Court here took no action against me, nor did it impose concurrent suspension. Exhibit 7.

20.     I regret my inadvertent failure to familiarize myself with local rule 101.1 and the subsequent unknowing error. It was not my intent, nor would it ever be my intent, to mislead anyone, least of all this Honorable Court. I made a mistake. I meant no harm.

21.     I apologize with sincerity for my error in failing to read local rule 101.1. I am embarrassed by my mistake. I respectfully ask this Honorable

---

3. any opposing counsel in pending matters, or in the absence of such counsel, the adverse parties; and

4. each court and division in which respondent has any pending matter, whether active or inactive.

Court to consider that my error and embarrassing mistake was completely unintentional, unknowing and innocent of any ill intent.

22.    While I do not mean to diminish my own fault, the Arizona State Bar specifically found that my errors were caused by my untreated medical condition, and that there is little likelihood that this type of conduct will recur.

23. My disqualification would effectively deny Dare Investments' adequate and competent representation.

24. My disqualification would irreparably damage Dare Investments while my retention would not prejudice Chicago Title.

25. I suffer from a bipolar disorder. All ethics matters resulting in discipline in by the Arizona State have resulted from the untreated bipolar disorder. However, I am now under appropriate medical treatment for this disorder and there is no likelihood of a relapse.

26. At page 12 of Agreement for Discipline by Consent, Exhibit 8 to Brief, the following statements confirm that the genesis of misconduct resulting in a 30 day suspension was my untreated medical condition:

> Respondent is being treated for a bipolar disorder. His doctor and his counselor concur that his conduct as described herein was a symptom of his untreated disorder. With appropriate treatment, there is little likelihood that this type of conduct will recur.
>
> ***
>
> Respondent has been proactive in recognizing that he needed medical treatment and is committed to ensuring no further relapses due to a lack of treatment.

*\*\*\**

> Respondent has apologized for his conduct and expresses great regret that his untreated medical condition impacted his handling of this matter.

27. I certify that my continued representation of Dare Investments:

    a.  would <u>not</u> violate the disciplinary rules;

    b.  would not legally prejudice Chicago Title; and

    c.  would irreparably prejudice Plaintiff Dare Investments LLC.

28. On page 9 of his ethics complaint, Mr. O'Donnell alleges that I "concoct[ed] a story to avoid disclosing his suspension to Counsel and the Court." On the following page, O'Donnell freely admits that I disclosed the suspension to him *personally* on November 17, 2011 and that he issued a formal notice to him *personally* on November 21, 2011. There is no explanation how a full and complete disclosure of the suspension amounts to "concocting" a story "to avoid disclosure".

29. In his Brief, Mr. O'Donnell takes the opportunity to disparage my wife of 36 years. O'Donnell alleges that I was taking "a vacation for the entire month at the behest of his wife". This is untrue. In private conversations, I disclosed to O'Donnell that Mrs. Strojnik had undergone an unexpected but potentially life threatening major surgery and spent days in the hospital, and that she required time to convalesce and recuperate. Indeed, Mrs. Strojnik convalesced in the Mexican Riviera in early December, and in Santa Barbara, California, in mid-

7

December. Mr. Strojnik convalesced at home during the remainder of the month of December. Just yesterday, Mrs. Strojnik underwent additional corrective medical procedures that again require convalescence and my full attention. However, my full attention to Mrs. Strojnik's convalescence will not impede my continued passionate representation of Dare Investments in this case.

30. At no time did I withhold any information from the Court or refuse to answer a direct question concerning my suspension in order to obtain a discovery extension.

I CERTIFY UNDER THE PENALTY OF PERJURY THAT THE ABOVE IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGTE, INFORMATION AND BELIEF.

RESPECTFULLY SUBMITTED this 13th day of January 2012.

8

# Exhibit 1

1  Shauna R. Miller, Bar No. 015197
2  Senior Bar Counsel
   State Bar of Arizona
3  4201 N. 24th Street, Suite 200
   Phoenix, Arizona 85016
4  Telephone (602) 340-7278
5  Email: LRO@staff.azbar.org



6             **BEFORE A HEARING OFFICER**
7          **OF THE SUPREME COURT OF ARIZONA**

8  IN THE MATTER OF A MEMBER          File Nos. 09-0314 and 09-1451
   OF THE STATE BAR OF ARIZONA,
9

10 **PETER STROJNIK**                  **COMPLAINT**
   **Bar No. 006464**
11                                     (Assigned to Hearing Officer ___,
   Respondent.                        _____ )
12

13         Complaint is made against Respondent as follows:

14                    **GENERAL ALLEGATIONS**

15         1.    At all times relevant, Respondent was a lawyer licensed to practice

16 law in the state of Arizona having been first admitted to practice in Arizona on

18 October 4, 1980.

19                         **COUNT ONE**
20               **(File No. 09-0314/Richardson)**

21         2.    Alejandro Reynoso and his wife were owners and shareholders in

22 AR Utilities Specialists, Inc. (ARUSI).  Mr. Reynoso was ARUSI's President and

23 Chief Executive Officer.

24

25

                              -1-

3.   Later the management structure of ARUSI changed and Mr. Reynoso was appointed Chairman of the Board, Ray Cabreja (Mr. Cabreja) was made President and Tom Kummer (Mr. Kummer) became Treasurer.

4.   Respondent was retained as ARUSI's general counsel on May 10, 2005 and later became Secretary for ARUSI.

5.   CSK Partnership (CSK) is a consulting business that assisted in the management restructuring of ARUSI.  Mr. Cabreja (C), Respondent (S) and Mr. Kummer (K) were general partners in CSK.

6.   Respondent prepared a consulting agreement between CSK and ARUSI. In the consulting agreement, Respondent identifies Mr. Cabreja and Mr. Kummer as general partners in CSK, but fails to identify himself as a general partner.

7.   At the time he was retained by ARUSI, Respondent was also the president and CEO of Binary Mass Propulsion Systems, Inc. (Binary Mass).

8.   While acting as general counsel and secretary for ARUSI, Respondent arranged the merger of Binary Mass with ARUSI.

9.   On June 10, 2005, ARUSI filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.  This occurred after Mr. Reynoso filed for divorce from his wife and Mrs. Reynoso began withdrawing assets out of ARUSI.

-2-

10.    William Richardson (Mr. Richardson) represented (ARUSI) as the debtor in the Chapter 11 bankruptcy proceeding filed in the United States Bankruptcy Court for the District of Arizona, Case No. 2:05-10489-PHX-GBN (ARUSI bankruptcy).

11.    Dale Ulrich (the Trustee) was appointed as the Chapter 11 Trustee in the ARUSI bankruptcy.    The Trustee was represented by attorney Terry Dake (Mr. Dake).

12.    Mr. Dake, being newly appointed with approaching deadlines, requested that Mr. Richardson file adversary proceedings on behalf of the Trustee.

13.    On or about June 11, 2007, Mr. Richardson filed three adversary proceedings on behalf of ARUSI and the Trustee against several defendants.

14.    One of the adversary proceedings was filed against Edmundo Uribe, his wife, and Mr. Uribe's company MCC Technology (Uribe adversary proceedings).

15.    The purpose of the adversary proceedings was to recover what the Trustee determined to be preferential and fraudulent transfers made to several different people and entities, including Mr. Uribe and MCC.

16.    In the Uribe adversary proceedings, it was alleged that Mr. Uribe had received numerous transfers of assets from debtor ARUSI during the year

-3-

previous to the filing of the bankruptcy case. These assets allowed Mr. Uribe or his companies to benefit at the hands of the debtor and left ARUSI in worse condition, making it appropriate for the Trustee to seek recovery of those funds.

17. Respondent represented Mr. Uribe and MCC in the adversary proceedings against ARUSI and the Trustee.

18. On June 27, 2007, Respondent filed a Motion to Dismiss Adversary Complaint for Failure to State a Claim, alleging that Mr. Richardson was not authorized by the Trustee to bring the action.

19. Prior to filing his motion to dismiss, Respondent contacted the Trustee to find out if Mr. Richardson had the Trustee's authorization to file the adversary proceedings. The Trustee told Respondent that he had authorized Mr. Richardson to file the adversary proceedings.

20. Respondent made false statements in his motion to dismiss by claiming that the adversary proceedings were not authorized by the Trustee.

21. On August 15, 2007, Mr. Dake on behalf of the Trustee filed a Motion to Disqualify Respondent from representing Mr. Uribe and MCC in the adversary proceedings based on conflicts of interests.

22. Respondent represented the debtor ARUSI as general counsel, served as secretary to ARUSI and arranged the merger of his corporation, Binary Mass,

-4-

to ARUSI, creating conflicts of interest regarding his representation of Mr. Uribe and MCC against ARUSI in the adversary proceedings.

23.    During the ARUSI bankruptcy proceedings, debtor ARUSI filed an objection to Respondent's First and Final Application for Compensation (the Fee Application).

24.    Respondent filed a response to the objection to the Fee Application which included an Emergency Application for the Appointment of Trustee – Alternatively – For Conversion to Chapter 7 (the Emergency Application).  In the Emergency Application, Respondent revealed confidential client communications and financial information regarding debtor ARUSI.

25.    After filing the Emergency Application, Respondent began negotiations for the withdrawal of said application predicated on the payment of his disputed fees.

26.    In an April 21, 2006, email from Respondent to Mr. Reynoso's attorney Henk Taylor, Respondent negotiated for the payment of $10,000.00 from Mr. Reynoso in exchange for the withdrawal of his Fee and Emergency Applications.

27.    The same day that Respondent received his payment of $10,000.00 from Mr. Reynoso, Respondent withdrew his Fee Application and his Emergency Application.

28.    Respondent misrepresented his involvement with CSK to the State Bar by stating that CSK was a consulting group that consisted of Mr. Cabreja and Mr. Kummer and that Respondent's role was only procedural in preparing the consulting agreement at the direction of Messrs. Reynosos, Cabreja and Kummer.

29.    Mr. Cabreja confirmed that Respondent was a partner of CSK and a Verified Statement made by Respondent[1] states that "[Respondent] is also a general partner of an entity called CSK Partnership, an Arizona general partnership."

30.    Respondent knowingly made a false statement of fact when he stated in his motion to dismiss that Mr. Richardson was not authorized by the Trustee to file the adversary proceedings, in violation of Rule 42, ERs 3.3(a)(1) and 8.4(c), Ariz. R. Sup. Ct.

31.    Respondent's representation of Mr. Uribe and MCC in the adversary proceedings against ARUSI conflicted with his duty of loyalty to ARUSI in violation of Rule 42, ER 1.7(a), Ariz. R. Sup. Ct.

32.    Respondent's position as general counsel and secretary to ARUSI and his arrangement of the merger of his corporation with ARUSI constitutes a business transaction for which Respondent failed to appropriately advise ARUSI

---

[1] "Verified statement of Peter Strojnik Required by 11 U.S.C. §329 and Bankruptcy rules 2014(a) and 2016" dated June 28, 2005.

to seek the advice of independent counsel and failed to get informed consent for the representation, in violation of Rule 42, ER 1.8(a), Ariz. R. Sup. Ct.

33.    Respondent revealed confidential client communications and financial information in his fee application regarding debtor ARUSI to ARUSI's disadvantage in violation of Rule 42, ERs 1.6(a) and 1.9(c)(1), Ariz. R. Sup. Ct.

34.    Respondent engaged in conduct that was prejudicial to the administration of justice by filing the Motion to Dismiss Adversary Complaint for Failure to State a Claim, in violation of Rule 42, ER 8.4(d), Ariz. R. Sup. Ct.

35.    Respondent engaged in conduct that was prejudicial to the administration of justice by filing the Emergency Application and then negotiating with counsel for the withdrawal of the application based on the payment of his disputed fees, in violation of Rule 42, ER 8.4(d), Ariz. R. Sup. Ct.

36.    Respondent knowingly made a false statement of material fact when he misrepresented to the State Bar that he had no involvement with CSK other then to prepare the consulting agreement, in violation of Rule 42, ER 8.1(a), Ariz. R. Sup. Ct.

37.    Respondent's conduct as described in this count violated Rule 42, specifically ERs 1.6(a), 1.7(a), 1.8(a), 1.9(c)(1), 3.3(a)(1), 8.1(a), 8.4(c) and (d), Ariz. R. Sup. Ct.

## COUNT TWO
### (File No. 09-1451/Deen and San Felice)

38.    On or about August 22, 2006, Respondent prepared and executed a Joint Venture Agreement (the Joint Venture) between Silver King Mining Company of America, LLC (Silver King) and Arizona Precious Metals, Inc. (APM).

39.    Silver King is an Arizona Limited Liability Company that owns certain mining and mineral rights.  Ronald Deen, Sr. (Mr. Deen) and Jack San Felice (Mr. San Felice) are members and directors of Silver King.

40.    Richard Campbell (Mr. Campbell), Hans Hüning (Mr. Hüning) and Respondent are members and directors of APM, a Nevada corporation. Respondent is also corporate counsel of APM.

41.    The purpose of the Joint Venture was for the mining of precious metals and for APM to provide the necessary funding for the reopening of the Silver King Mine.  Silver King was not represented by separate counsel during the formation of the Joint Venture.

42.    Respondent represented the Joint Venture on a continuing basis as its general counsel.

43.    A Policy Committee of five members was established to manage the Joint Venture.  Mr. Deen, Mr. San Felice, Mr. Campbell and Mr. Hüning were appointed as non-permanent members of the committee.

44.    Respondent was appointed as a permanent member of the Joint Venture with the power to break tie votes between the other four members. The committee members entered into a covenant agreeing to the ownership and non-disclosure of confidential information.

45.    Respondent, as general counsel for the Joint Venture and counsel for APM, prepared an amended joint venture agreement (the Amended Joint Venture) that was executed on November 27, 2006 between APM, Silver King, the Joint Venture, and the Funding Group.

46.    The Funding Group was comprised of Mr. Campbell (CEO of APM), Mr. Hüning (CFO of APM) and TCMS Investments, Inc. (owned by Respondent's wife, Tanya Strojnik).

47.    The Amended Joint Venture was prepared as a result of APM's inability to provide funding pursuant to its contractual obligations under the original Joint Venture.

48.    The Amended Joint Venture obliged the Funding Group to pay a Reclamation Bond to the U.S. Forest Service and modified the terms and conditions of the original Joint Venture.

49.    The Funding Group became a party to the original Joint Venture and the percentage allocations of interest were modified to include the Funding Group.  Mr. Deen, Mr. San Felice and Silver King were not represented by

counsel during the preparation and implementation of the Amended Joint Venture.

50.    Respondent included mutual releases between APM, Silver King and the Joint Venture in the Amended Joint Venture to release certain parties from any actions or claims that could arise.

51.    Respondent included in the Amended Joint Venture a term releasing APM from any prior violation for its failure to fund under the original Joint Venture agreement and releasing TCMS Investments from any actions or claims.

52.    Respondent also included in the Amended Joint Venture a release for himself as general counsel from any claims arising from the funding of the reclamation bond by the Funding Group.  Both Respondent and his wife were designated as third party beneficiaries of the release.

53.    Respondent included in the Recitals to the Amended Joint Venture, "parties waive any conflict of interest, any commercial or civil tort, any breach of contract, or any breach of duty, that may arise out of this Agreement, and to release one another from any claim whatever for conduct occurring to the effective date of this Agreement."

54.    Although the Reclamation Bond was paid by the Funding Group, APM failed to provide any further funding pursuant to its obligations under the original Joint Venture.

55.    When the Amended Joint Venture failed to perform as planned, Respondent filed suit against Mr. Deen and Mr. San Felice on behalf of the Funding Group to recover the Reclamation Bond and for other claims. Pinal County Superior Court, *The Funding Group v. Ronald Dean et al.*, cause no. CV2007-01884 (The Funding Group lawsuit).

56.    Respondent had a conflict of interest in filing the Funding Group lawsuit and took undue advantage of his position as attorney for all parties and as the drafter of the Joint Venture and the Amended Joint Venture.

57.    Respondent was acting as a policy making tie breaker and counsel for APM while advising the other member of the original Joint Venture, Silver King, to waive any claims against APM and against Respondent and his wife.

58.    Respondent as general counsel for the Joint Venture failed to clearly outline the benefits and hazards to each of those entities through their named representatives.

59.    In the Funding Group lawsuit, Defendants Deen and San Felice filed a Motion for Determination of Counsel. The motion was granted on December 12, 2008, by Judge William O'Neal. Judge O'Neil found Respondent needed to be removed from the case because of serious conflicts of interest and failure to disclose intertwined relationships.

60. Respondent's status as lawyer for the Joint Venture allowed him to obtain confidential information about Mr. San Felice, Mr. Deen, and Silver King. The use of this information to file a lawsuit against them violated Rule 42, ER 1.6(a), Ariz. R. Sup. Ct.

61. Respondent had an absolute duty of loyalty and confidentiality to the Joint Venture itself, including advising the Joint Venture of what legal action to take regarding the defaulting action of one of its members (APM). There was no informed consent to waive any conflict by Silver King regarding Respondent's duty and representation, in violation of Rule 42, ER 1.7(a), Ariz. R. Sup. Ct.

62. Respondent created conflicts of interest by filing suit against persons whom he otherwise represented by being general counsel for the Joint Venture, and by filing suit on a matter directly arising from the Amended Joint Venture that he prepared, in violation of Rule 42, ER 1.7 (a), Ariz. R. Sup. Ct.

63. Respondent's actions in amending the Joint Venture in order to waive claims other Joint Venture members may have had against him and his wife constitutes a business transaction for which Respondent failed to appropriately advise the Joint Venture to seek the advice of independent counsel and failed to get informed consent for the representation in writing, in violation of Rule 42, ER 1.8(a), Ariz. R. Sup. Ct

64. Respondent's status as lawyer for the Joint Venture allowed him to obtain confidential information about Mr. San Felice, Mr. Deen, and Silver King. Using this information to their disadvantage by filing a lawsuit against them violated Rule 42, ER 1.9(c)(1), Ariz. R. Sup. Ct.

65. Respondent engaged in conduct that was prejudicial to the administration of justice by filing a lawsuit against his clients and by taking undue advantage of his position as attorney for all parties and as the drafter of the Amended Joint Venture upon which he sought to benefit himself and his marital community, in violation of Rule 42, ER 8.4(d) Ariz. R. Sup. Ct.

66. Respondent's conduct as described in this count violated Rule 42, specifically ERs 1.6(a), 1.7(a), 1.8(a), 1.9(c)(1), and 8.4(d), Ariz. R. Sup. Ct.

**DATED** this _17_ day of November 2010.

**STATE BAR OF ARIZONA**

Shauna R. Miller
Senior Bar Counsel

Original filed with the Disciplinary Clerk
of the Supreme Court of Arizona
this \17th day of November, 2010.

by: _____
SRM:rr

-13-

FILED

AUG 1 9 2010

STATE BAR OF ARIZONA

BY *[signature]*

## BEFORE THE PROBABLE CAUSE PANELIST
## OF THE STATE BAR OF ARIZONA

IN THE MATTER OF A MEMBER
OF THE STATE BAR OF ARIZONA,

PETER STROJNIK,
Bar No. 006464

             Respondent.

No. 09-0314

**PROBABLE CAUSE ORDER**

The Probable Cause Panelist of the State Bar, having reviewed this matter pursuant to Rule 54(b), Ariz. R. Sup. Ct., finds that probable cause exists to issue a complaint against Respondent for violations of Rule 42, Ariz. R. Sup. Ct., including but not limited to ERs 1.6, 1.7, 1.8(a), 1.9, 3.3(a), 8.1(a), 8.4(c) and (d).

Parties may not file motions for reconsideration of this order.

**IT IS THEREFORE ORDERED** that the State Bar prepare and file a complaint with the Disciplinary Clerk.

**DATED** this ___18th___ day of August, 2010.

*[signature]*

Probable Cause Panelist
State Bar of Arizona
Richard T. Platt

Original of the foregoing filed this
19th day of August, 2010, with:

Lawyer Regulation Records Department
State Bar of Arizona
4201 N. 24th Street, Suite 200
Phoenix, Arizona 85016-6288

Copy was mailed this 20th day
of August, 2010, to:

Peter Strojnik
Peter Strojnik PC
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012-2720
Respondent

Copy was hand-delivered this 20th day
of August, 2010, to:

Lawyer Regulation Records Manager
State Bar of Arizona
4201 N. 24th Street, Suite 200
Phoenix, Arizona 85016-6288


by: _Rose Riley_____
SRM/rr

**FILED**

AUG 19 2010

STATE BAR OF ARIZONA

BY _Dana Oxbahn_

## BEFORE THE PROBABLE CAUSE PANELIST
## OF THE STATE BAR OF ARIZONA

IN THE MATTER OF A MEMBER
OF THE STATE BAR OF ARIZONA,

PETER STROJNIK,
Bar No. 006464

Respondent.

No. 09-1451

**PROBABLE CAUSE ORDER**

The Probable Cause Panelist of the State Bar, having reviewed this matter pursuant to Rule 54(b), Ariz. R. Sup. Ct., finds that probable cause exists to issue a complaint against Respondent for violations of Rule 42, Ariz. R. Sup. Ct., including but not limited to ERs 1.6, 1.7, 1.8, 1.9, and 8.4(d).

Parties may not file motions for reconsideration of this order.

**IT IS THEREFORE ORDERED** that the State Bar prepare and file a complaint with the Disciplinary Clerk.

**DATED** this _18th_ day of _August_, 2010.

Probable Cause Panelist
State Bar of Arizona
Richard T. Platt

Original of the foregoing filed this
_19th_ day of August, 2010, with:

Lawyer Regulation Records Department
State Bar of Arizona
4201 N. 24th Street, Suite 200
Phoenix, Arizona 85016-6288

Copy was mailed this _20th_
day of August, 2010, to:

Peter Strojnik
Attorney at Law
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012-2720
Respondent

Copy was hand-delivered this _20th_ day
of August, 2010, to:

Lawyer Regulation Records Manager
State Bar of Arizona
4201 N. 24th Street, Suite 200
Phoenix, Arizona 85016-6288

by: _Rose Riley_
SRM/rr

2

# Exhibit 2

Shauna R. Miller, Bar No. 015197
Senior Bar Counsel
State Bar of Arizona
4201 N. 24th Street, Suite 200
Phoenix, Arizona 85016
Telephone (602) 340-7278
Email: LRO@staff.azbar.org



OFFICE OF THE
PRESIDING DISCIPLINARY JUDGE
SUPREME COURT OF ARIZONA

JUL 2 9 2011

FILED /

BY _____

## BEFORE THE PRESIDING DISCIPLINARY JUDGE
## OF THE SUPREME COURT OF ARIZONA

IN THE MATTER OF A MEMBER OF THE
STATE BAR OF ARIZONA,

**PETER STROJNIK**
**Bar No. 006464**

Respondent.

**PDJ-2011-** *9044*

**COMPLAINT**

[SBA File No. 10-1223]

Complaint is made against Respondent as follows:

### GENERAL ALLEGATIONS

1. At all times relevant, Respondent was a lawyer licensed to practice law in Arizona, having been first admitted to practice on October 4, 1980.

### COUNT ONE (Dowell)

2. L. Eric Dowell ("Mr. Dowell") represents STATS ChipPAC ("STATS") in a District Court matter ("the federal complaint" or "federal litigation") where STATS is the defendant and Respondent's client, Diane Sahakian ("Ms. Sahakian") is the plaintiff.

3. The federal complaint alleges that Eric Gongora ("Mr. Gongora"), a STATS employee, sexually harassed Ms. Sahakian and encouraged or enticed other employees to do so as well.

-1-

4.  During the federal litigation, Mr. Dowell informed Respondent on more than one occasion that Respondent could not talk to certain STATS employee, including Mr. Gongora, without Mr. Dowell's permission.

5.  Respondent tried to amend the federal complaint to add a claim for intentional infliction of emotional distress, but was not allowed to do so.

6.  Respondent then personally sued Mr. Gongora in state court alleging intentional infliction of emotional distress, civil conspiracy and common design, aiding and abetting, and defamation.

7.  Respondent then contacted Mr. Gongora without Mr. Dowell's consent.

8.  Respondent sent a letter to Mr. Gongora that offered to resolve the state court action against Mr. Gongora in exchange for his cooperation in the federal litigation.

9.  In the letter, Respondent tells Mr. Gongora that he believes Mr. Gongora was coached to give false testimony in his deposition in the federal litigation.

10.  Respondent threatened Mr. Gongora with a perjury claim if he did not cooperate with Respondent.

11.  Respondent also offered to resolve the state court action filed against Mr. Gongora in exchange for Mr. Gongora divulging privileged communications he had with Mr. Dowell in the federal litigation.

12.  Respondent tried to intimidate Mr. Gongora by making unsubstantiated statements that Mr. Gongora should not be surprised if he is terminated after he testifies in the federal litigation.

13.  On August 21, 2009, Mr. Dowell filed a Motion for Sanctions Against Plaintiff's Counsel ("the motion") because of the unauthorized contact with his client.

-2-

Mr. Dowell moved to have Respondent removed as Ms. Sahakian's counsel and moved that Respondent be ordered to pay his fees and costs for having to bring the motion.

14. The court left Mr. Dowell's motion pending until March 22, 2010, "lest there be the necessity of re-briefing the matter should the court encounter further difficulty with counsel."

15. Respondent communicated with Mr. Gongora who was represented by counsel, in violation of ER 4.2.

16. Respondent's letter to Mr. Gongora had no substantial purpose other than to embarrass, delay, or burden Mr. Gongora in violation of ER 4.4(a).

17. Respondent's letter to Mr. Gongora was conduct prejudicial to the administration of justice in violation of ER 8.4(d), in and of itself, and because it led to the filing of a motion to remove Respondent as counsel and made it necessary for the court to address the issue.

18. Respondent's conduct in this count violation Rule 42 Ariz. R. Sup. Ct., specifically ERs 4.2, 4.4(a), and 8.4(d).

## COUNT TWO (Montoya)

19. Respondent hired Stephen Montoya ("Mr. Montoya") to be lead trial counsel in the Sahakian case discussed in count one. Discovery had already closed by the time Mr. Montoya was retained.

20. Respondent did not tell Mr. Montoya when he was retained that a Motion to Disqualify the Strojniks as Ms. Sahakian's counsel was pending before Judge Holland.

21.  Respondent did not tell Mr. Montoya when he was retained that Respondent, as the plaintiff, had filed a complaint for declaratory judgment ("Respondent's complaint" or "his complaint") against STATS, the Attorney General of the United States, the State Bar of Arizona, the Republic of Singapore, Carolyn Larsen (STATS counsel) and many others, in federal court.

22.  Set forth in Respondent's complaint are his opinions on: the Sahakian case, Madam Ho Ching and the Singaporean oligarchy, the Singaporean Government's human rights and free speech abuses, STATS immigration abuses, and the danger posed to the American workers by the Singaporean Government, among other things.

23.  Respondent's requested relief was that he be "constitutionally protected in his anticipated, widely distributed press releases" from actions any of the people and entities he talks about in the press release may initiate.

24.  Respondent further requested that the publication of his opinions be held not to violate the ethical rules governing the conduct of Arizona lawyers.

25.  Respondent did not obtain Ms. Sahakian's informed consent before filing his complaint and she was unaware of its negative implications. Respondent's credibility with opposing counsel was undermined and he materially damaged Ms. Sahakian's lawsuit when he filed his complaint.

26.  Respondent filed a motion to compel and for sanctions on behalf of Ms. Sahakian. On July 27, 2009, regarding Respondent's motion, Judge Holland states in part:

> [Respondent] has not made wise and efficient use of all of the discover mechanisms available under the rules. ... The huge laundry

-4-

list set forth in plaintiff's amended notice is "over the top" on the reasonable to unreasonable scale.

27.   The motion to compel and for sanctions was denied and cost Ms. Sahakian $5,000.00 in opposing counsel's fees.

28.   Respondent noticed the deposition of Dr. B.J. Han, Ms. Sahakian's supervisor with STATS. Defense counsel terminated the deposition prior to the allotted time because he believed Respondent was being abusive in asking a particular set of questions.

29.   Respondent moved for an order to complete the deposition, but the court denied the motion. The court stated in part:

> The Han deposition appeared to be more about irrelevant business practices and customs of Asian business mangers that the plaintiff's Arizona workplace. The line of questioning that resulted in the Han deposition being terminated should have ended when Han denied consorting with prostitutes. What followed was insulting and shockingly insensitive and impresses the court as being unreasonably annoying, embarrassing, and oppressive to Dr. Han.

30.   Ms. Sahakian was set to participate in an independent medical exam in connection with her lawsuit, but at the last minute Respondent told her not to attend. Respondent did not tell her that she could or would be sanctioned for failing to attend. The cost to Ms. Sahakian for missing the initial exam was $1,200.00.

31.   Respondent failed to inform Ms. Sahakian about the complaint for declaratory judgment or about the possible effect it could have on her lawsuit, in violation of ER 1.4.

32.   Respondent advised Ms. Sahakian to not attend the IME, but he did not advise her that she could be sanctioned as a result of not attending, in violation of ER 1.4.

-5-

33.  The declaratory action was filed to benefit Respondent, which conflicted with his duty of loyalty to Ms. Sahakian in violation of ER 1.7(a).

34.  Respondent's motion to compel and for sanctions and his complaint for declaratory judgment were frivolous, in violation of ER 3.1.

35.  Respondent's treatment of Dr. B. J. Han during Dr. Han's deposition was "insulting and shockingly insensitive" in violation of ER 4.4(a).

36.  Respondent's treatment of Dr. B. J. Han during Dr. Han's deposition was "insulting and shockingly insensitive" in violation of Rule 41(g) Ariz. R. Sup Ct.

37.  Respondent's motion to compel and for sanctions and the complaint for declaratory judgment was prejudicial to the administration of justice in violation of ER 8.4(d).

38.  Respondent's conduct with regard to the IME violated ER 8.4(d) because the defendant's had to file a motion to compel and had to reset the IME. Additionally, Ms. Sahakian was order to pay the costs incurred by defense counsel.

39.  Respondent's conduct in this count violated Rule 42, Ariz. R. Sup. Ct., specifically ERs 1.4(a), 1.7(a), 3.1, 4.4(a), 8.4(d), and Rule 41(g) Ariz. R. Sup. Ct.

**DATED** this 29 day of ___July___, 2011.

**STATE BAR OF ARIZONA**

Shauna R. Miller
Senior Bar Counsel

-6-

Original filed with the Disciplinary Clerk
of the Office of the Presiding Disciplinary Judge
of the Supreme Court of Arizona
this 29th day of July, 2011.

by: Rose Riley
    SRM:rr

# Exhibit 3

OFFICE OF THE
PRESIDING DISCIPLINARY JUDGE
SUPREME COURT OF ARIZONA

MAY 0 2 2011

FILED

## BEFORE THE PRESIDING DISCIPLINARY JUDGE
## OF THE SUPREME COURT OF ARIZONA

IN THE MATTER OF A MEMBER OF THE
STATE BAR OF ARIZONA,

**PETER STROJNIK,**
**Bar No. 006464**

Respondent.

PDJ-2011   BY _____

Nos. 09-0314, 09-1451

JUDGMENT AND ORDER

The undersigned Presiding Disciplinary Judge of the Supreme Court of Arizona has reviewed the parties' agreement for discipline by consent. Accordingly,

**IT IS ORDERED** that Respondent is hereby Reprimanded for conduct in violation of his duties and obligations as a lawyer, as disclosed in the agreement for discipline by consent.

**IT IS FURTHER ORDERED** that Respondent shall be placed on two (2) years of probation and participate in the LOMAP and MAP programs as follows:

a. Respondent shall contact the director of the State Bar's Law Office Management Assistance Program (LOMAP), at 602-340-7332, within thirty (30) days of the date this order. Respondent shall submit to a LOMAP examination of his office's procedures, including, but not limited to, compliance with ERs 1.7, 1.8, and 1.9. The director of LOMAP shall develop "Terms and Conditions of Probation", and those terms shall be incorporated herein by reference. The probation period will commence at the time of the entry of the judgment and order and will conclude two years from that date. Respondent shall be responsible for any costs associated with LOMAP.

-1-

b. Lynda Shely has agreed to be Respondent's conflicts advisor. Ms. Shely shall initially examine Respondent's office procedures relevant to conflict of interest issues, and then shall discuss with Respondent, on a monthly basis, any potential conflicts in any new cases being considered for representation by Respondent, for a period of one year. The period of time for this term shall begin upon the filing of the Judgment and Order.

c. Respondent shall contact the director of the State Bar's Member Assistance Program (MAP), at 602-340-7332, within thirty (30) days of the date of this order. Respondent shall submit to a MAP assessment. The director of MAP shall develop "Terms and Conditions of Probation" if he determines that the results of the assessment so indicate, and the terms shall be incorporated herein by reference. The probation period will begin to run at the time of the entry of the final judgment and order and will conclude two years from that date. Respondent shall be responsible for any costs associated with MAP.

**IT IS FURTHER ORDERED** that in the event Respondent fails to comply with any of the foregoing probation terms, and information thereof is received by the State Bar of Arizona, Bar Counsel shall file a notice of noncompliance with the Presiding Disciplinary Judge, pursuant to Rule 60(a)(5), Ariz. R. Sup. Ct. The Presiding Disciplinary Judge may conduct a hearing within 30 days to determine whether a term of probation has been breached and, if so, to recommend an appropriate sanction. If there is an allegation that Respondent failed to comply with any of the foregoing terms, the burden of proof shall be on the State Bar of Arizona to prove noncompliance by a preponderance of the evidence.

-2-

**IT IS FURTHER ORDERED** that Respondent shall pay all costs incurred by the State Bar in connection with these disciplinary proceedings in the amount of $ 1,230.27 .

**IT IS FURTHER ORDERED** that Respondent shall pay all costs incurred by the Office of the Presiding Disciplinary Judge in connection with these disciplinary proceedings in the amount of $ .

**DATED** this 30th day of April , 2011.

Presiding Disciplinary Judge
of the Supreme Court of Arizona

Original filed with the Disciplinary Clerk
of the Office of the Presiding Disciplinary Judge
of the Supreme Court of Arizona
this 2nd day of May , 2011.

Copies mailed/emailed this 2nd day
of May , 2011, to:

Nancy A. Greenlee
821 East Fern Drive North
Phoenix, Arizona 85014-3248
Email: nancy@nancygreenlee.com

Shauna R. Miller
Senior Bar Counsel
State Bar of Arizona
4201 N. 24th Street, Suite 200
Phoenix, Arizona 85016 Email:
LRO@staff.azbar.org

By:

-3-

# Exhibit 4

OFFICE OF THE
PRESIDING DISCIPLINARY JUDGE
SUPREME COURT OF ARIZONA

NOV 0 7 2011

FILED

BY _____

**BEFORE THE PRESIDING DISCIPLINARY JUDGE**
**OF THE SUPREME COURT OF ARIZONA**

IN THE MATTER OF A MEMBER OF THE
STATE BAR OF ARIZONA,

**PETER STROJNIK**
**Bar No. 006464**

Respondent.

PDJ-2011-9044

**FINAL JUDGMENT AND ORDER**

[SBA File No. 10-1223]

The undersigned Presiding Disciplinary Judge of the Supreme Court of Arizona, having reviewed the Agreement for Discipline by Consent filed on *10/21/11* pursuant to Rule 57(a), Ariz. R. Sup. Ct., hereby accepts the parties' proposed agreement. Accordingly:

**IT IS HEREBY ORDERED** that Respondent, **Peter Strojnik**, is hereby suspended for 30 days for his conduct in violation of the Arizona Rules of Professional Conduct, as outlined in the consent documents, effective December 3, 2011.

**IT IS FURTHER ORDERED** that Respondent continue on probation that was instituted in File Nos. 09-0314 and 09-1451 and shall continue for a period of two years from September 20, 2011.

Respondent shall be responsible for any costs associated with State Bar's Member Assistance Program.

**IT IS FURTHER ORDERED** that, pursuant to Rule 72 Ariz. R. Sup. Ct., Respondent shall immediately comply with the requirements relating to notification of clients and others.

**IT IS FURTHER ORDERED** that Respondent pay the costs and expenses of the State Bar of Arizona in the amount of $ 1,213.06.

1

**IT IS FURTHER ORDERED** that Respondent shall pay the costs and expenses incurred by the disciplinary clerk and/or Presiding Disciplinary Judge's Office in connection with these disciplinary proceedings in the amount of _____.

**DATED** this ____ day of _____, 2011.

The Honorable William J. O'Neil
Presiding Disciplinary Judge

Original filed with the Disciplinary Clerk
of the Office of the Presiding Disciplinary Judge
of the Supreme Court of Arizona
this ____ day of _____, 2011.

Copies of the foregoing mailed/emailed
this ____ day of _____, 2011, to:

Nancy A. Greenlee
Attorney and Counsel at Law
821 East Fern Drive North
Phoenix, Arizona 85014-3248
Email: nancy@nancygreenlee.com
Respondent's Counsel

Copy of the foregoing emailed
this ____ day of _____, 2011, to:

Shauna R. Miller
Senior Bar Counsel
State Bar of Arizona
Email: lro@staff.azbar.org

Copy of the foregoing hand-delivered
this ____ day of _____, 2011, to:

Lawyer Regulation Records Manager
State Bar of Arizona
4201 North 24th Street, Suite 200
Phoenix, Arizona 85016-6288

by: _____

2

# Exhibit 5

Peter Strojnik
STROJNIK, P.C.
Arizona Bar No 006464
Direct Dial: 602-524-6602

# STROJNIK, P.C.
## L A W Y E R S

Peter K. Strojnik
THE STROJNIK FIRM, LLC
Arizona Bar No 026082
California Bar No 242728
Of Counsel

November 21, 2011

Honorable Dickinson R. Debevoise
Judge of the District Court
Martin Luther King, Jr. Federal Building &
U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

Michael O'Donnell, Esq.
Derrick Freijomil, Esq.
Riker, Danzig, et al
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981

Peter Kristofer Strojnik, Esq.
The Strojnik Firm, LLC
2415 East Camelback, Suite 700
Phoenix, Arizona 85016

Chris Humphrey, Esq.
Humphrey Law LLC
7 Lothrop Lane
Cohasset, MA 02025

**ALL BY CERTIFIED MAIL RETURN RECEIPT REQUESTED**

   Re:   *Dare Investments, LLC  v. Chicago Title*
         NO. 2:10-cv-06088-DRD-MAS

Dear Judge Debevoise and Gentlemen:

I represent Dare Investments in the above captioned matter. Please find enclosed an order suspending my practice for 30 days beginning December 3, 2011.

During my absence, matters will be handled by my son and co-counsel in this matter, Peter K. Strojnik, whose information is set forth below:

Peter K. Strojnik, Esq.
2415 East Camelback, Suite 700
Phoenix, Arizona 85016
e-mail: strojnik@skplaw.com
Phone: 602-510-9409

Very Truly Yours,

Peter Strojnik

PJS: ps
Encls

# Exhibit 6

# STROJNIK, P.C.
## L A W Y E R S

Peter Strojnik
**STROJNIK, P.C.**
Arizona Bar No 006464
Direct Dial: 602-524-6602

Peter K. Strojnik
**THE STROJNIK FIRM, LLC**
Arizona Bar No 026082
California Bar No 242728
Of Counsel

November 21, 2011

Chief Judge of the District Court
Martin Luther King, Jr. Federal Building &
U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

**ALL BY CERTIFIED MAIL RETURN RECEIPT REQUESTED**

    Re:    Suspension

Dear Judge Debevoise and Gentlemen:

Please find enclosed an order suspending my practice for 30 days beginning December 3, 2011.

           Very Truly Yours,

           Peter Strojnik

PJS: ps
Encls

# Exhibit 7

Subj:       **OSC deemed Moot**
Date:       1/11/2012 10:42:32 A.M. US Mountain Standard Time
From:       attyadmin@azd.uscourts.gov
To:         strojnik@aol.com

Dear Mr. Strojnik:

Judge Bolton has reviewed your response to the Order to Show Cause, as well
as the reinstatement order issued by the Arizona Supreme Court, and has
deemed that the OSC is now moot.  Your status will remain active and in
good standing with the U.S. District Court.

Beth Stehpenson
Attorney Disciplinary Clerk
602-322-7106