|  |  |
|---|---|
| DARE INVESTMENTS, LLC, a Utah limited liability company,<br><br>        Plaintiff,<br><br>        vs.<br><br>CHICAGO TITLE INSURANCE COMPANY, a Missouri domiciled insurer; HORIZON TITLE AGENCY, Inc., a New Jersey domiciled company; CHICAGO TITLE RICO ENTERPRISE, a racketeering enterprise,<br><br>        Defendants. | **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**<br><br>Civil Action No. 2:10-cv-06088-DRD-MAS<br><br>**PETER KRISTOFER STROJNIK'S CERTIFICATION IN SUPPORT OF PLAINTIFF'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO RIKER DANZIG'S MOTION TO DISQUALIFY COUNSEL** |

Peter Kristofer Strojnik hereby certifies as follows:

1. I am an adult resident of the State of Arizona. I am competent to testify as to all of the facts set forth herein and will so testify if called upon to do so. I have personal knowledge of the matters set forth herein, based upon my observations and personal participation in the events described below.

2. I am an attorney at law admitted to practice before all federal and state courts in the States of California and Arizona, and I am specially admitted to practice in this Court as counsel of record for Plaintiff Dare Investments LLC in the matter above styled.

3. I was admitted to practice law in California in 2006 and initially began my practice with a law firm in the San Francisco area. While I was practicing in California, I studied for and passed the Arizona Bar Exam in anticipation of permanently moving back

to my home state. In July 2008, I resigned my position in California and began my own practice in Phoenix while still handling Bay Area and California matters.

4. Since my return to Arizona, I have worked with my father, Peter Strojnik, Sr., on several different matters. Generally, Mr. Strojnik would have a client, and he would associate me as counsel into the case to provide limited "associate" type support, e.g. motion writing, discovery, review of documents, but primarily to assist him at trial.

5. In or around November 2010, Mr. Strojnik approached me about the possibility of associating me into this matter. I agreed to be associated into the case, and my participation has been the same as in prior cases, e.g. "associate" type support. I also do not have a direct contractual relationship with Plaintiff Dare Investments, LLC.

6. Since neither I nor my father are licensed to practice in the State of New Jersey, we both had to file an Application for *pro hac vice* admission. (Doc. 5). At the time of our Application on December 5, 2010, I had no knowledge of my father's past discipline, or lack thereof, with the Arizona State Bar other than that I knew "something" had occurred back in the 1980s when I was extremely young.

7. On December 5, 2010, I submitted my Certification in support of *pro hac vice* admission. (Doc. 5-1). In the Certification, I truthfully state that I was active and in good standing in California and Arizona, and that there was no history of discipline for me. To this day, this remains to be true. I also have no pending disciplinary proceedings. Admittedly, however, prior to my submission of the Certification in support of *pro hac vice* admission, I neglected to review the Local Rules of Practice for the United States District Court for the District of New Jersey.

8. During this litigation, prior to my father's 30-day suspension, I provided limited "associate" type support. For example, I conducted limited legal research and document writing, but my main involvement was intended to provide assistance at trial.

9. In or around July 2011, I discovered that my father was dealing with a State Bar matter of some kind, but I never knew exactly what it was, e.g whether it was an investigation, a Complaint, formal disciplinary proceedings, etc. However, in or around early November 2011, my father advised me that he would be suspended from the practice of law for 30 days and that during this suspension, I would have to be the sole and primary counsel for Plaintiff Dare Investments in this litigation. Mr. Strojnik advised me that he would be alerting the Court after the Final Judgment and Order was issued by the State Bar, which was ultimately issued on November 7, 2011. I never became aware (until Riker Dangiz's Motion) of why my father had been suspended.

10. On December 21, 2011, during the pendency of my father's suspension, the law firm of Riker Danzig filed a Motion to Disqualify me and my father as counsel of record for Plaintiff. (Doc. 67).

11. In its Motion, Riker Danzig claims that I was aware of my father's ethical violations and sanctions. Doc. 67-1 at 6. This is false. As I described above, I first became aware of my father's disciplinary history when Doc. 67 was filed.

12. Riker Danzig also claims that I was "brought into this action to cover for his father during his suspension." This is also false. As in all of prior instances in which I was associated into my father's cases, I was associated into this one to provide "associate" type support.

13. Riker Danzig claims that "Strojnik Jr.'s involvement in the Utah action and here shows that he knew of the ethical charges and sanctions imposed against Strojnik Sr. well before the November 21, 2011 letter was sent to the Court." Doc. 67-1 at 19. This is also false. I was associated into the "Utah action" to provide my customary "associate" type support. Furthermore, as stated above, I did not become aware of my father's suspension until November 2011, and I did not become aware of his disciplinary history nor the reasons for his suspension until Riker Danzig's Doc. 67 filing.

14. Riker Dangiz also claims that my father should be disqualified, in part, because of alleged "forcing" of depositions and the withholding of documents. See generally Doc. 67-1. Plaintiff's Supplemental Response will address this allegation in more detail, but I would like to note that as of **November 11, 2011**, Plaintiff had disclosed all documents in their possession except for attorney-client privileged documents. Between **November 11, 2011** and the beginning of my father's suspension on **December 3, 2011**, the scheduled depositions were postponed because Riker Danzig insisted on obtaining attorney-client privileged documents (some of which were not in Plaintiff's possession, but in their former counsel's possession) before depositions occurred. From **December 3, 2011 until January 3, 2012**, I have been personally handling the litigation as well as most of the discovery issues about which Riker Danzig complains in its Doc. 67-1 filing. I note this because Riker Danzig seeks to disqualify my father based upon lawful acts *I* have taken in the representation of Plaintiff.

15. I pride myself on my ethical practice and to avoid at all costs any act that would have the slightest impropriety. I have conducted myself with the utmost integrity and

professionalism in this action and all other actions in which I have been involved, as reflected by my clean disciplinary history.

16. The foregoing statements made by me are true and correct. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

FURTHER THE DECLARANT SAYETH NAUGHT.

DATED this 13th day of January, 2012.

*/s/ Peter Kristofer Strojnik*
Peter K. Strojnik