| | | |
|---|:---:|---:|
| Peter Strojnik<br>STROJNIK, P.C.<br>Arizona Bar No 006464<br>Direct Dial: 602-524-6602 | **STROJNIK, P.C.**<br>L A W Y E R S | Peter K. Strojnik<br>THE STROJNIK FIRM, LLC<br>Arizona Bar No 026082<br>California Bar No 242728<br>Of Counsel |

January 13, 2012

Honorable Michael A. Shipp
Magistrate Judge of the United States District Court
United States District Court, District of New Jersey
50 Walnut Street
Newark, New Jersey 97102
**BY ECF FILING**

  Re: *Dare Investments, LLC v. Chicago Title*
     NO. 2:10-cv-06088-DRD-MAS

Dear Judge Shipp:

We represent Dare Investments, LLC ("Dare") in the above-matter and make this joint submission with Chicago Title Insurance Company ("Chicago Title") as directed by Your Honor in his January 5, 2012 Letter-Order (the "Order").

### A. MATTERS AGREED UPON/UNDISPUTED/RESOLVED

1. <u>Dare's Supplemental Responses to Interrogatories</u>:

  a. <u>Waiver of Attorney-Client Privilege</u>: Dare has waived the attorney-client privilege as to its counsel in the underlying transaction prior to August 14, 2007. Accordingly, Dare will supplement its responses to Interrogatory Numbers 5, 15-16, and 18-22 in which it invoked said privilege.

  b. <u>Business Records Reference</u>: Chicago Title asserted objections to Dare's responses to Interrogatory Numbers 2-4, 6-10, 17-22, and 25 based on Dare's alleged improper references to business records. Dare will supplement its responses to these Interrogatories.

  c. <u>Clarification</u>: Dare asserted that it did not understand Interrogatory Numbers 8-10 and 17. Chicago Title clarified them. Dare will supplement its responses to these Interrogatories.

2415 EAST CAMELBACK ROAD · SUITE 700 · PHOENIX, ARIZONA 85016
TEL: 602.553.1112 · FAX: 602.296.0135
E-MAIL: PS@STROJNIK.COM · WWW.STROJNIK.COM

d. <u>Communications and Documents</u>: As to Interrogatory Numbers 11-14, Chicago Title asserted that Dare failed to properly identify the referenced communications, including those with Horizon Title Agency and/or its representatives and employees (such as David Cohn), and documents regarding such communications. For example, Chicago Title asserted that the responses failed to identify with detail (i) the requested communications, including without limitation the date of each communication, the parties involved in each communication, and the substance of each communication, and (ii) the documents regarding such communications. Dare will supplement its responses to these Interrogatories.

<u>The Parties agree</u> that these supplemental responses shall be provided by Friday, January 20, 2012.

2. <u>Dare's Damages Computations and Documents</u>: In its amended complaint, Dare seeks damages allegedly incurred "for the costs of defense (including attorney's fees pursuant to NJ Statutes and R. 4:42-9(a)(6)), loss of time, [and] loss of business[.]" Pursuant to Rule 26, Dare will provide a "computation of each category of damages" and make available for inspection and copying "the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]" <u>The Parties agree</u> that this information shall be provided by Friday, January 20, 2012.

3. <u>Drafts, Memoranda, Etc.</u>: Document Demand Number 53 requested "all negotiations, discussions, contracts, and or agreements, settlement or otherwise, with Chicago Title." Chicago Title would not have in its possession Dare's "drafts," "memoranda, notes, letter, and/or emails" regarding any such documents as called for by the request. Dare will supplement its response and production as to Document Demand Number 53. <u>The Parties agree</u> that these supplemental responses shall be provided by Friday, January 20, 2012.

4. <u>Pages Missing from Dare's Production</u>: Dare will provide allegedly missing pages identified below or identify what happened to them and when and where they may be found:

   a. In the documents referred to as "Relating to Clark" in the file titled "07-26-07 Mugleston to Clark re Subordination" several pages of the subordination agreement are missing.

    b. In the "Documents Sent to Buckman," the files entitled "Title-Timeline" and "Trustees Authorization to Conduction Auction" contain only copies of the first page of these documents.

    c. In Files 1, 23, and 25 of "Scans 2" various pages from the emails are missing.

The Parties agree that these supplemental responses shall be provided by Friday, January 20, 2012.

5. <u>Items in Dare's Initial Disclosures</u>: Dare will produce Items 13 and 18-28 identified in its Initial Disclosures and identify which document is each such Item. <u>The Parties agree</u> that these supplemental responses shall be provided by Friday, January 20, 2012.

6. <u>The Approximately 5,500 emails Referenced in Dare's November 11, 2011 Letter</u>: Dare has represented that said reference was to such emails in the possession of its former counsel, the Jones Waldo firm.

7. <u>"Informal" Production "Minus Privileged Matters"</u>: In response to Document Demand Numbers 5-11, 13-34, 42-47, 49-50, 54-83 and 85-89, Dare states that "Dare Investments has informally indicated to Chicago Title, through counsel, that Dare Investments will produce its file, minus privileged matters, to Chicago Title." Dare has represented that it now has "formally" produced all documents in its possession, custody, and control responsive to these Document Demands and has not withheld any based on a claim of privilege or otherwise.

8. <u>Subpoena to James Licata</u>: Chicago Title subpoenaed documents from James Licata, whose counsel responded by giving Chicago Title, and numerous other parties, access to a general database of documents of approximately 155,000 pages. Dare's counsel, Peter Strojnik, was given this access, as well. Accordingly, Chicago Title is not required to produce those 155,000 pages to Dare.

9. <u>Horizon Title Agency, Inc. ("Horizon Title") Documents</u>: In a supplemental response dated January 12, 2012, Chicago Title identified the bates range for Horizon Title files as to the Dare matter that Horizon had given to Chicago Title. Chicago Title states that these are Horizon's documents and were produced in the manner given to Chicago Title. Chicago Title also represented in the January 12, 2012 conversation that there are other Horizon files in its possession involving unrelated transactions that have not been produced. Dare addresses these files below.

10. <u>Reproduction of Chicago Title's Supplement Production</u>: Also by letter dated January 12, 2012, Chicago Title reproduced its supplemental production of November 29, 2011, which included documents responsive to Dare's Document Request Number 2.

11. <u>Documents bates stamped "LAMI" previously produced by Dare Invesments</u>: A file entitled "Scan_Document_46" in Dare's production contains numerous documents bates-stamped with the moniker "LAMI" followed by a number and a designation of "Attorney's Eyes Only." Obviously, Dare believes these documents are responsive and relevant for discovery purposes here. Chicago Title requested that Dare identify the litigation or proceeding to which these documents pertain and any applicable protective or confidentiality order for which the "Attorney's Eyes Only" designation was made. Dare has no objection to inquiring the reference to LAMI and providing such information to Chicago Title by Friday, January 20, 2012.

## B. MATTERS RAISED BY THE PARTIES

1. Dare's Contention that Chicago Title has Failed to Produce Horizon Title's Policy File.

    a. Dare's Position: As this Court is aware, Plaintiff made a $5M loan to SWJ Holdings to purchase certain Bankruptcy Assets ("Assets") from the bankruptcy estate in the Connecticut Bankruptcy Proceeding no. 02-50852 ("FCCG Bankruptcy")[1]. Dare loan to SWJ was secured by the Assets one of which is the Sayreville Mortgage in issue here.

The sale of the Assets was made pursuant to 11. U.S.C. § 363 "free and clear of all encumbrances, liens, claims, liabilities, causes of action, chooses of action, pledges, offsets, set-offs, recoupments, right, title and interest of any kind, type, description or nature whatsoever". The Bankruptcy Court excepted only one potential claim from the 363 scrub down: The claim made by one Peter Mocco ("Mocco Claim").

Based on the exception of the Mocco Claim from the 363 "free and clear" sale of the Assets, Dare needed a title policy only for Mocco Claim. All other claims and liens had been fully extinguished by the 363 Order. In order to protect its interest against this one remaining claim, Dare Investments purchased a $5.5M policy from Chicago Title.

---

[1] Plaintiff requests that this Honorable Court take judicial notice of the FCCG Bankruptcy Docket, particularly Orders in docket numbers 716, 844, 866, 897 and 917.

The Policy confirms that it is "subject to the terms, conditions, covenants, court orders, etc…in the FCCG Bankruptcy". Policy at B-I (7). Mocco Claim is not excluded from coverage in Schedule B-II, but it is specifically omitted from the prior knowledge exclusion in order to provide coverage. Policy at B-1(8). Exhibit 1.

In its August 17, 2007 denial letter, Exhibit 2, Chicago Title admits that the Policy was subject to the FCCG Court Orders, but misrepresents the effect of these orders. The denial letter asserts that "whatever interest the bankruptcy debtor held was eventually assigned to Dare, and to the extent the bankruptcy debtor held no interest, Dare received nothing." Id. at 19. This is a misrepresentation of the FCCG Court Proceedings. The FCCG Orders show that Dare received a collateral interest in the Sayreville Mortgage free and clear of all claims other than the Mocco Claim. They do not show that Dare received "whatever interest the bankruptcy debtor held".

The question whether Chicago Title knew that the FCCG Bankruptcy Orders scrubbed down all claims other than Mocco Claim, or whether it believed that Dare received only "whatever interest the bankruptcy debtor held" as asserted in the Denial Letter, is an important element of proof that requires disclosure of the Horizon Title files and the Chicago Title claim files.

At present, there are two issues before the Court. The first is whether the Policy covers the Mocco Claim. The second is whether Dare's claim is defeated by its alleged non-cooperation.

The question of Horizon Title's actual intent to cover Mocco Claims can be proven, in part, by showing that Horizon Title was aware of the FCCG Bankruptcy Orders. Horizon Title admittedly conducted in depth investigations. The April 17, 2006 Invoice to Mr. Duval, Exhibit 3, shows $218,651.00 worth of investigations, title searches, historical analysis and due diligence. The 02-09-06 Invoice for $41,087.50, Exhibit 4, shows $26,987.50 worth of investigations specific to the Sayreville Mortgage. But Chicago Title has not produced that part of the file that contains the results of its investigations – including the investigation into the FCCG Bankruptcy and the 363 sale orders.

These documents are critical. Horizon Title's actual knowledge of the 363 scrub down and the exclusion of the Mocco Claim tends to prove Horizon Title's knowledge that the Policy was purchased solely for coverage of the Mocco Claim.

Chicago Title has admitted that Riker Danzig now controls **all** of Horizon Title's files. These files regard numerous title policies issued by Chicago Title in connection with the

FCCG Bankruptcy[2]. Chicago Title produced 2235 pages of documents that it claims come from Horizon Title "in a manner given to Chicago Title". Exhibit 5. These documents do not include any discussion or analysis of the FCCG Bankruptcy or even copies of the FCCG Bankruptcy Court Orders. Chicago Title's attorneys have admitted that the file produced to Dare Investments is only one of many files. Exhibit 6.

Therefore, Plaintiff respectfully requests an order from this Court directing Chicago Title to produce:

1. All of the Horizon Title's documents compiled as part of Horizon Title's Investigations referenced in the Invoices and in the Policy itself; and

2. All of Horizon Title's documents compiled as part of Horizon Title's review of the FCCG Bankruptcy; and

3. Copies of FCCG Bankruptcy Orders, notes, memos, communications and all other information regarding or relating to the Sayreville Mortgage in Horizon Title's files; and

4. A confirmation that Horizon Title had produced to Chicago Title all its files, and that Chicago Title has in turn produced all these files to Dare Investments; and

5. Supplement its Answers to Interrogatories, Responses to Requests for Production of Documents and Responses to Requests for Admissions.

   b.   Chicago Title's Position: Chicago Title completely disagrees with Dare's recitation of the facts above and will address them in detail when and if the matter is briefed. Chicago Title reiterates that it has produced all of Horizon Title's documents in its possession related to the Dare transaction. By letter dated January 12, 2012, Chicago Title provided Dare with the bates-range of those documents.

Horizon Title was Chicago Title's policy-issuing agent and issued the title policy at issue in this case back in 2006. Dare does not identify any specific discovery request here. It has, for example, asked Chicago Title for factual information learned prior to the title policy being issued, at which time Chicago Title was not involved in the Dare transaction. Dare sued Horizon Title as a defendant in this action. It is Chicago Title's understanding that Horizon Title is no longer doing business, but, just before then,

---

[2]Such as the Centrum Policy, the Skyland Policy, the Licata Policy, and others.

Horizon Title provided some of its files to Chicago Title. Chicago Title has produced to Dare those Horizon Title documents that Horizon Title gave to it regarding the Dare matter. Dare has subpoenaed David Cohn of Horizon Title and presumably will obtain the information it seeks from him or can seek from any other current or former owner, employee, etc. of Horizon Title. Chicago Title is unaware of any obligation to obtain documents or information from another party sued in the litigation, particularly where that party is believed to be defunct. Chicago Title objected to Dare's discovery requests seeking the same in Chicago Title's responses to discovery served on Dare in October 2011. Chicago Title has also asserted privileges and protections to the extent Dare is seeking documents and information obtained well after the underlying transaction and in anticipation of or during pending litigation. Dare first raised this specific issue during the parties first meet-and-confer on January 11, 2011, and as of the meet-and-confer the next day provided no legal basis for its assertion.

2.  Dare's Allegation that Chicago Title Failed to Produce its Own File

   a. Dare's Position: During Chicago Title's claim investigation, Mr. McCloskey (Dare's principal) submitted to a deposition by Riker Danzig. Dare's attorney, Mr. Williams (Dare's Attorney) also submitted to a deposition. Dare provided all documents requested by Chicago Title. Dare provided all information other than privileged information. Still, Chicago Title claims that Dare breached the cooperation clause.

By claiming a breach of the cooperation clause, Chicago Title has placed the contents of its entire file in issue. New Jersey law provides that an insurance carrier may disclaim coverage pursuant to a cooperation clause only if it proves (1) that the insured breached the cooperation clause and (2) that the carrier suffered a likelihood of appreciable prejudice as a result of this breach. Solvents Recovery Serv. v. Midland Ins. Co., 218 N.J.Super. 49, 54, 526 A.2d 1112 (App.Div.1987). Prejudice will not be presumed but must be proved, and the burden of proof is on the insurer. Aetna Casualty & Surety Co. v. Farrell, 855 F.2d 146, 151 (3d Cir.1988) Proof of "appreciable prejudice" - or lack thereof – depends on whether the information in Chicago Title's possession and control was inadequate to make an informed coverage decision.

In order to show "appreciable prejudice", Chicago Title must prove, in part, that it did not have a document, interview or information that would aid it in the coverage decision. In order to show breach, Chicago Title must show that it requested information from Dare, that Dare had the information, and that Dare did not produce the information. In order to show "prejudice", Chicago Title must show that lack of information caused it some type of appreciable harm. Obviously, if Chicago Title had the same information from a different source, it cannot claim prejudice. The question is, what information did Chicago Title have and what information did it not have at the time it denied coverage.

The knowledge regarding Chicago Title's information is strictly within its own control. The information is contained in Chicago Title's files, notes, interviews, statements, investigations, conclusions and findings. It is contained in the knowledge and memory of the investigators, interviewers and reviewers. For example, if Chicago Title's file contains copies of the FCCG Bankruptcy Court Orders, CT cannot claim that it denied coverage because it did not that the only possible purpose of the Policy was to cover Mocco Claim. Similarly, if Chicago Title's file contains statements by David Cohn that the intent of the Policy was to cover Mocco Claims, it cannot claim prejudice regarding the parties' intent. If its files contain the entire FCCG Debtor – SWJ sale file, it cannot claim that it was prejudiced by not knowing the details of the sale[3].

---

[3] To the extent that Chicago Title claims attorney work product privilege based on Fed. R. Civ. P. 26(3) (litigation or work product privilege), it should be noted that the very nature of the insurance business is such that an insurance company must investigate a claim prior to determining whether to pay its insured, and thus pre-litigation investigation is the routine business of insurance companies. Therefore, the work-product privilege does not apply.

Third Circuit have applied a two-part test for determining whether the documents at issue should be protected under the attorney work product doctrine. Pursuant to Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp., 253 F.R.D. 300, 306 (D.N.J. 2008), the "work-product doctrine requires that the materials at issue be prepared or obtained: (1) in anticipation of litigation; and (2) primarily for the purpose of litigation". Id. More specifically, the "anticipation of litigation element requires more than the inchoate possibility or likely chance of litigation" and "is satisfied only if the withholding party can establish an identifiable specific claim of pending litigation". Id. The "purpose of the litigation prong requires that the specific facts and circumstances of a given case establish that the document was prepared or obtained because of litigation and not for business or other reasons". Id. According to United States v. Rockwell Int'l, 897 F.2d 1255, 1266 (3d Cir. 1990), "[d]ocuments created in the ordinary course of business, even if they prove useful in subsequent litigation, are not protected by the work product doctrine". Id. Chicago Title put the content of its own files, its own investigations and its own knowledge and opinions in issue. Chicago Title claims that Plaintiff breached the cooperation clause.

In determining whether a document or other tangible item is protected work product, courts consider the nature of the document and the factual circumstances of the particular case. Martin v. Bally's ParkPlace Hotel and Casino, 983 F.2d 1252, 1260 (3d Cir. 1993) (citing In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir. 1979)). After considering those factors, the court must determine whether the document can be fairly identified as prepared in anticipation of litigation. Id. Litigation need not be imminent . . . as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation."United States v. Rockwell, 897 F.2d 1255, 1266 (3d Cir. 1990) (citingUnited States v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982)). The party claiming work product immunity has the burden of proving that the materials were in fact prepared in anticipation of litigation. Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 138 (3d Cir. 2000).Holmes,213 F.3d at 138. Work product prepared in the ordinary course of business is not protected from discovery. Id.

By placing its own knowledge and its own files in issue, CT cannot now deny Dare Investments access to the same information. Plaintiff respectfully requests an order from this Court directing Chicago Title to produce:

1. CT's entire Sayreville Mortgage and Policy file including, without limitation:

    a. The documenting of any statements, interviews and conferences with any persons regarding the Sayreville Policy, Mocco Claims or coverage; and

    b. All of Horizon Title's documents compiled as part of Horizon Title's review of the FCCG Bankruptcy and its findings and conclusions relative to the effect of the 363 sale; and

    c. The documenting of any statements, interviews and conferences with any persons regarding the FCCG Bankruptcy; and

    d. The documenting of any statements, interviews and conferences with any persons regarding the Sayreville Mortgage Policy; and

    e. A privilege log describing the privileged, non produced documents; and

    f. Supplement its Answers to Interrogatories, Responses to Requests for Production of Documents and Requests for Admissions

Plaintiff further requests that this Court grant Plaintiff leave to seek production of information claimed to be privileged once the privilege log has been produced. To the extend relevant facts were known to the attorneys investigating the claim, such notice is imputed to Chicago Title. Knowledge of agent imputed to principal. See, e.g., Veal v. Geraci, 23 F.3d 722, 725 (2d Cir.1994) (holding that an attorney's knowledge of matters related to the representation is generally imputed to the client because of the agency relationship). The Restatement (Third) of Agency, section 5.03, states that "[i]f an agent has actual knowledge of a fact, the principal is charged with the legal consequences of having actual knowledge of the fact."

   b.   Chicago Title's Position: Once again, Chicago Title completely disagrees with Dare's recitation of the facts and the application of the law cited to above. Chicago Title will respond as necessary if and when these matters are briefed. Nevertheless, Chicago Title maintains that it has produced all non-privileged documents responsive to

Dare's requests and has produced a privilege log for the documents being withheld. Moreover, Dare presumably is referring to what it referred to in its November 29, 2011 letter to Chicago Title as the coverage investigation file of Chicago Title's counsel in response to Dare's notice of claim, dated April 25, 2007. In response thereto, Chicago Title explained that Dare's bad faith claim previously asserted in this matter has been dismissed with prejudice. Chicago Title further responded: "Chicago Title further notes that the documents Dare references here, to the extent they were even requested in Dare's discovery requests, are subject to privilege and protection from disclosure to Dare. Nonetheless, to the extent Dare wishes to discuss this further, we can make ourselves available. Before doing so, we ask that you please provide us with a copy of any decision you are referring to in the matter styled MorEquity v. Chicago Title, Civil Action No. 2:06-cv-05890. We also note that your reference to Hatco Corp. v. W.R. Grace & Co., 1991 WL 83126 (D.N.J. May 10, 1991), does not support your position here. In fact, Hatco explicitly recognizes that where an insurer's report is prepared in anticipation of litigation, it is privileged and protected from disclosure. Id. at *7. Only those reports in Hatco which did not deal with coverage or liability issues were found to be discoverable. Id. at *6. Chicago Title's claim investigation file as referenced by Dare deals specifically with coverage and liability relating to specific pending and threatened actions. Therefore, under Hatco, such files are privileged. Moreover, as you know, Chicago Title's coverage investigation was conducted at a time where there were numerous pending and threatened litigations, including those by Dare, and the investigation documents as referenced by Dare were created during that time. Therefore, all such documents are privileged and protected from disclosure based upon the attorney-client and work-product privileges. See, e.g., Coregis Ins. Co. v. Law Offices of Carole F. Kafrissen, et al., 57 Fed.Appx. 58, 60 (3d Cir. 2003) (finding that "disclosure is inappropriate because the documents anticipate coverage litigation and relate primarily to the mental impressions and legal opinions on how to proceed with the coverage litigation."); United Coal Co. v. Powell Constr. Co., 839 F.2d 958, 966 (3d Cir. 1988) ("Counsel for an insurer may invoke work product protection in favor of documents prepared by it in anticipation of litigation.")." Prior to the meet-and-confer sessions on January 11 and 12, 2012, Dare did not provide Chicago Title with the above-referenced MorEquity decision and during those sessions did not wish to discuss the matters any further.

3. <u>Pending Order Regarding Waiver of Attorney-Client Privilege</u>

On December 13, 2011, Chicago Title submitted a letter to the Court seeking the production of documents that Dare withheld and directed subpoenaed parties to withhold on attorney-client privilege. The Order states that Chicago Title's submission will be treated as an "application to compel and for reasonable costs and fees associated with the application" and ordered Dare to respond to the same by January 13, 2012, with Chicago

Title submitting a reply thereto by January 20, 2012. On January 11, 2012, Peter Strojnik, Esq., acting as Dare's counsel, stated in relevant part: "Regardless, we waive the privilege. ... I am forwarding a copy of this letter to Messrs. Drobbin and Pratt to affirm that the attorney-client privilege has been waived." The Jones Waldo law firm and LeClair Ryan law firm were copied on the January 11, 2012 letter, and Chicago Title asked that both firms produce documents withheld on this basis as soon as possible. The LeClair Ryan firm said that given all that has happened here on this issue, it was not going to produce the documents at this time as it was "waiting for a clear unequivocal privilege waiver from our former client Dare Investments, LLC."

    a.    Dare's Position: The parties held a telephonic conference on November 30, 2011 regarding the waiver issue. Chicago Title represented to Dare that the attorney-client communications are both relevant and admissible and that the attorney client privilege should be waived. Dare responded that it would get back to Chicago Title on Friday, December 2, 2011 with its position. On said date, Dare Investments wrote a letter to Chicago Title advising that it waives the attorney client privilege because – s previously asserted by Chicago Title – such communications are relevant and admissible. Nonethtless, Chicago Title responded that the attorney-client privileged matters are "relevant and material", and moved the Court to pierce the attorney-client privilege. Dare again confirmed that it had waived the attorney client privilege on the presiece terms requested by Chicago Title. Chicago Title rejected its own stipulation and again urged the Court to not sign the order confirming the waiver on the basis that the communications are relevant and material. Ultimately, Dare Investments agreed to release Chicago Title from its own stipulation and agreed to waive the privilege on January 11, 2011. Dare requests that the Court sanction Chicago Title for creating an unnecessary discovery dispute on regarding Dare's waiver of the attorney-client privilege. On December 2, 2011, Dare advised Chicago Title that it was waiving the attorney-client privilege. All subsequent correspondence, court involvement, arguments and issues have been designed by Chicago Title to delay depositions of key witnesses. Counsel has learned that a key witness, Gordon Duval, will testify that the Policy was intended to cover Mocco Claim. Counsel has also learned that Mr. Duval reported his anticipated testimony to Mr. O'Donnell. Dare believes that attorney-client privilege issue has been used by Chicago Title to unnecessarily delay the proceedings and cause unnecessary costs and inconvenience to Dare and its attorneys. Dare requests that the Court sanction Chicago title for its unconscionable abuse of the discovery process.

    b.    Chicago Title's Position: Chicago Title requests that the Court issue the proposed order requested in its papers (with paragraph 3 excluded) and decide its application as set forth in the Order. It is clear that subpoenaed parties are hesitant to produce documents without a level of certainty as to waiver. We believe the Court's

order on this issue will provide that, and Dare's January 11th letter unequivocally confirms the waiver. In addition, per the Order, the pending application includes a request "for reasonable costs and fees associated with the application." For the reasons set forth in Chicago Title's application (and as will be included in its submission due on January 20th), Chicago Title believes that this portion of its pending application should be heard. A notable, though not the only, reason for granting such relief is the undisputed fact that the basis for waiver here was Dare's having sent the communications at issue to the party that sued it back in 2009 and then refusing to produce the same communications in this litigation it filed in 2010 when requested by Chicago Title.

4. <u>Discovery Extension</u>: The current fact discovery deadline is February 9, 2012. The parties agree that it needs to be extended under the circumstances, but disagree on how long.

   a. Dare's Position: Dare believes an additional 30 days are necessary. However, since Chicago title requests a 60 day extension, Dare suggests middle ground and extend the discovery deadline for 45 days.

   b. Chicago Title's Position: Chicago Title believes an additional 60 days are necessary for fact discovery, which would require extension of all remaining deadlines accordingly. As set forth herein, there are discovery responses, documents, and privilege logs that still have not been provided and which are needed before depositions. So far, Chicago Title is seeking seven depositions, and Dare is seeking three. Chicago Title believes it is being aggressive in seeking only 60 days to complete the same as several of the depositions are going to take place out of state, including Utah and possible Idaho.

5. <u>Extension of Other Deadlines</u>: As a result of the requested extension of the discovery deadline, other deadlines also need to be extended.

   a. Dare's Position: Dare proposes that the deadline for amending pleadings be extended to 30 days following the discovery deadline and that the deadline for filing dispositive motions be extended to 60 days following the discovery deadline. Dare further recommends that the currently scheduled settlement conference be vacated. Dare notes that Chicago Title has not filed its Answer to date.

   b. Chicago Title's Position: Chicago Title does not believe that it is appropriate, as Dare suggests, to permit pleadings to be amended 30 days after the close of discovery. The Court's August 10, 2011 Scheduling Order

provided Dare with more than four and a half months to seek leave to amend, which it failed to do or seek an extension thereof before that deadline expired. Thus, Dare should be precluded from seeking leave to amend. Further, said order never permitted pleading amendments <u>after</u> the close of discovery, an unheard of practice that Dare suggests here. As such, Chicago Title believes that a 60 day extension of all remaining deadlines in the Court's August 10, 2011 Scheduling Order is appropriate at this time. Chicago Title has no objection to the Court vacating the scheduled settlement conference.

6. <u>Dare's Privilege Log</u>: The Order requires Dare to provide a privilege log on January 13, 2012. Dare's counsel has claimed that Dare is not withholding any documents on the basis of privilege or other grounds.

    a. Dare's Position: Dare has advised Chicago Title that its counsel on countless occasions that he has produced to Chicago Title's counsel every piece of documentation relative to this litigation in his possession, including privileged materials. Counsel has repeatedly advised Chicago Title that there can be no privilege log because he withheld no documents. Dare has further advised Chicago Title that additional privileged documents may reside with Messrs. Pratt and Williams, and has instructed Messrs., Pratt and Williams to produce all documents including otherwise privileged documents. Dare believes that Chicago Title has created a discovery dispute where there is none, and that this issue is yet another attempt by Chicago title to unnecessarily delay this proceeding and unnecessarily increase the cost of this litigation.

    b. Chicago Title's Position: Throughout its responses to Chicago Title's document requests, Dare states that it is withholding documents that are privileged or protected. Dare should submit amended responses signed by Dare's principal removing all such references, thereby confirming that it is not withholding any such documents that are responsive to each and every document requested by Chicago Title. Chicago Title further maintains that it is Dare's obligation to produce the documents it is now alleging are in the possession of its prior counsel and that to simply instruct prior counsel to produce them is insufficient to meet Dare's discovery burden,

7. <u>Date Cut-Off of Both Parties' Production</u>:

    a. Dare's Position: Dare's position is that it is the relevancy of a documents, not the date the document was created, that governs production. Therefore,

the cut-of- date has little relevance to any discovery issues. Dare did indicate that the waiver of the attorney-client privilege extends only to the date of Chicago Title's denial letter, August 14, 2007, and this Court so found.

Chicago Title has informally requested that Dare and Dare's counsel provide all their communications with James Scarpone, the attorney for Peter Mocco, and Peter Mocco. Chicago Title has already subpoenaed the Mocco documents and Mr. Scarpone has provided them. Dare does not recognize the relevance of counsel's communications with Mr. Scarpone during the pendency of this litigation. Dare cannot identify the relevance of these communications. Dare believes that this is yet another issue raised by Chicago Title as a prelude to yet another round of disagreeability and letter writing.

    b. Chicago Title's Position: Dare indicated during the meet-and-confer session on January 12, 2012, that the cut-off it used for its document production was the date of the title policy at issue, which is March 30, 2006. Chicago Title issued a coverage denial letter to Dare dated August 14, 2007, which included failure to cooperate as a defense. In addition, as set forth below, Dare's principal, Richard McCloskey ("McCloskey"), has had communications in 2009 with the party that sued it, Peter Mocco ("Mocco"), which are relevant in discovery here as they relate to possible settlement of Dare's claims with Mocco, they enclosed Dare's communications with its counsel from 2006 regarding the transaction at issue, and otherwise discussed the transaction and other matters at issue in this litigation. Thus, it is Chicago Title's position that, at a minimum, Dare's production should be supplement up through the date it filed its complaint here in 2010.

8.   Documents Not In Dare's Production:

    a. Dare's Position: Dare has related to Chicago Title that Mr. Richard McCloskey is not a sophisticated record keeper, but that he has, in good faith and without withholding any documents whatsoever, produced his entire file regarding this matter. In order to assure that Chicago Title has the entire file independent of Dare, Dare has agreed to permit production of all files in the possession of its attorneys (including attorney-client privileged information). Dare and Chicago Title agreed to resolve any inadvertent errors by allowing Dare to point to alternative source of the documents. Dare has done so and does so again here:

　　i. All FCCG Bankruptcy Documents, including Orders No 716, 844, 866, 897 and 917 are in the Horizon Title files (which have been seized by Chicago Title), in Chicago Title's own claim investigation files, on PACER, and in the possession of counsel for Dare. Upon request, counsel for Dare will e-mail these orders to counsel for Chicago Title. All these order have been previously attached to counsel's correspondence along with an analysis of the effect of these Orders on the Policy.

　　ii. All documents relative to the SWJ purchase of the Assets have been exchanged and are in Chicago Title's possession. These documents may also be found attached to various documents in the FCCG Bankruptcy, they are in possession of SWJ, Gordon Duval (who provided them pursuant to a subpoena), Ken Williams (who has been subpoenaed), George Pratt (who has been subpoenaed), Dale Schreiber, Stephen Podell (who has been subpoenaed), William Mournes (who has been subpoenaed) and James Licata (who has been subpoenaed.)

　　iii. All documents relative to the Policy are believed to be in Horizon Title's files (seized by Chicago Title), and are currently in Chicago Title's possession. As indicated above, Chicago Title has refused to provide these documents to Dare Investments. The production of these documents awaits this Court's Order.

　　iv. Additional documents that are not in Dare's possession have been made available by James Licata in a 155,000 page disclosure.

　　v. Dare Investments' interest in this matter is to exchange **all** documents and bring the matter to trial. Dare has no interest or motive to act other than with the utmost openness.

b. **Chicago Title's Position:** Chicago Title subpoenaed from Mocco, among other things, his and his counsel's communications with Dare and its representatives and counsel. Mocco produced communications with Dare's counsel, Peter Strojnik, and with McCloskey. In particular, in 2009, McCloskey emailed Mocco communications that McCloskey had with his prior counsel (the Jones Waldo firm and the LeClair Ryan firm) in 2006, which is at the time of the underlying transaction at issue. Some of McCloskey's emails to Mocco indicate that they are enclosing documents from his "archived" folders. Despite having been requested by Chicago

Title, Dare has not produced all of the 2006 communications it had with its prior counsel, the 2009 communications it had with Mocco (or his counsel), or the communications Dare's counsel had with Mocco (or his counsel). In addition, Chicago Title has not received confirmation from Dare that it produced all of its "archived" folders, which may contain additional documents such as Dare's communications in 2006 with Mocco (or his counsel).

As bases for its failure to produce all of these documents, Dare claims that they are not material or relevant (or likely to lead to the discovery of evidence admissible at trial) and that they have been produced by Mocco. Chicago Title disagrees and believes Dare's failure to disclose that it was withholding such documents, until after Chicago Title pressed Dare after it received the subpoenaed documents from Mocco, is highly improper.

Clearly these documents are material and relevant for discovery purposes, particularly given the broad scope of discovery, and Dare asserts no privilege. The 2006 communications obviously concern the underlying transaction at issue, and the 2009 communications discussing the same (and this litigation) are obviously relevant for discovery purposes and further as to waiver of privilege. Indeed, they also relate to possible settlement of the claim with Mocco and the failure to cooperate. In addition, the fact that Mocco may have produced some of the documents requested does not obviate Dare's obligation to produce such documents in its possession. Indeed, Dare may have additional documents, or its copies may be different and include, for example, handwriting or other markings on them. Further, the fact that Dare has such documents in its possession may itself be a fact relevant for discovery purposes. Thus, it is Chicago Title's position that Dare is required to produce all these documents – the 2006 communications Dare had with its prior counsel, the 2009 communications it had with Mocco (or his counsel), the communications Dare's counsel had with Mocco (or his counsel), and all "archived" folder documents that are responsive to all of Chicago Title's document requests – that are in Dare's possession, custody, and control, including but not limited to those in Dare's files and in McCloskey's and Mr. Strojnik's files. Obviously these documents existed in Dare's and/or its counsel's possession and at least some clearly were in Dare's possession as of 2009. Accordingly, if Dare no longer possesses any of these documents, it must specify what happened to such documents and when and must identify where they or copies thereof may be found.

9. <u>Scope of Dare's Production</u>:

a. Dare's Position: Dare has provided to Chicago Title all documents relative to this litigation including privileged information. Chicago Title has subpoenaed every conceivable person who was even tangentially involved with Dare Investments, and has in its possession any and all conceivably relevant document. Just in response to subpoena on James Licata, Mr. Licata gave Chicago Title access to 155,000 pages of documents.

b. Chicago Title's Position: In its November 11 and 17, 2011 production letters, Dare stated: "We have previously agreed to provide you with all non-privileged documentation relating to (1) SWJ funding and the Asset Purchase Agreement, (2) Dare's loans from Gary Clark and Clark Real Estate, and (3) coverage. In other words, we agreed to provide you with everything except privileged information." In its October 21, 2011 responses to Chicago Title's interrogatories and document requests, Dare appears to be trying to limit its responses to what it claims is the one issue remaining in this cases – that is, Dare's "'reasonable expectation' of coverage in light of the ambiguity within the Policy." Chicago Title objects to this attempt to unilaterally restrict the scope of its production. These are not the only topics at issue and, more importantly, are not the only subjects for which information and documents were requested in the discovery Chicago Title propounded on Dare. Dare has not produced a privilege log in this matter. Dare must confirm in writing whether it is withholding documents or information from production based on this or any other ground, such as a claim of irrelevancy or immateriality, and to the extent it is, provide a privilege log for the same.

10. Document Subpoenas:

a. Dare's Position: Dare encourages all subpoenaed parties to respond to Chicago Title's subpoenas fully, completely, and without regard to the attorney-client privilege.

b. Chicago Title's Position: Chicago Title has outstanding document subpoenas to two of Dare's former counsel, the Jones Waldo firm and the LeClair Ryan firm, both of which have declined to produce documents based on Dare's assertion of privilege. Jones Waldo has also not yet produced a privilege log in light of the issue as to Dare's waiver of its attorney-client privilege and may have additional documents to produce. Chicago Title also has outstanding subpoenas to William Mournes and his company, Cobra/Ventura Equities, and to Shandon Gubler. Mr. Mournes had produced some documents and indicated he may have more. Mr. Gubler has

stated that he has responsive documents that are over 250 miles from his home, but that he will be at that location on January 18th and can provide the documents thereafter. Chicago Title is trying to work with these witnesses and avoid filing a motion to compel, particularly in light of the current February 9th discovery cut-off. Accordingly, Chicago Title reserves its rights as to these outstanding document subpoenas.

11. <u>Depositions</u>:

   a. <u>Dare's Position</u>: Dare is anxious to reschedule the depositions that have been vacated twice at the request of Chicago Title, including the deposition of David Cohn, Chicago Title (30)(b)(6) and Gordon Duval. Dare may take other depositions thereafter, including a deposition of Dino Cancellieri. Dare has no objections to Chicago Title's taking any depositions and has agreed to make Dare available for a deposition in New Jersey. Dare reserves the right to take other depositions as needed.

   b. <u>Chicago Title's Position</u>: Chicago Title has noticed or subpoenaed the depositions of the following seven witnesses thus far: (i) McCloskey; (ii) Dare's company representative (which we understand may be McCloskey); (iii) E. Kenneth Williams, an attorney at LeClair Ryan; (iv) Todd Galante, an attorney at LeClair Ryan; (v) George Pratt, an attorney at Jones Waldo; (vi) Rick Knuth, an attorney at Jones Waldo; and (vii) Gary Clark. Chicago Title has been mindful of this Court's directive not to take depositions until all document discovery issues have been resolved. Accordingly, Chicago Title reserves it right to take these and any other depositions as may be appropriate in light of continued discovery and to seek an extension of discovery to complete the same.

Thank you.

   RESPECTFULLY SUBMITTED this 13th day of January, 2012.

STROJNIK, P.C.                              RIKER DANZIG

/S/

_____                         _____
Peter Strojnik, Esq.                        Michael R. O'Donnell, Esq.
Attorney for Plaintiff                      Attorney for Defendant

CC:
PKS *by e-mail only*
Chris Humphrey *by e-mail only*
Rick Dare McCloskey*by e-mail only*
Paul Drobbin*by e-mail only*
George Pratt *by e-mail only*
Attachments as indicated.