| | |
|---|---|
| DARE INVESTMENTS, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>CHICAGO TITLE INSURANCE COMPANY, a Missouri domiciled insurer; HORIZON TITLE AGENCY, Inc., a New Jersey domiciled company,<br><br>Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>Case Action No.2:10-CV-06088(DRD)(MAS)<br><br>Hon. Dickenson Debevoise, U.S.D.J.<br>Hon. Michael A. Shipp, U.S.M.J. |

### CHICAGO TITLE INSURANCE COMPANY'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF MOTION FOR REVOCATION OF PRO HAC VICE ADMISSIONS AND DISQUALIFICATION OF COUNSEL

RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

Federal Bar No. 7088

Attorneys for Defendant,
Chicago Title Insurance Company

Of Counsel:
    Michael R. O'Donnell, Esq.

On the Brief:
    Derrick R. Freijomil, Esq.
    Joshua S. Jacobs, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

LEGAL ARGUMENT ................................................................................................................ 1

I.     DARE'S COUNSEL'S CERTIFICATIONS CONFIRM THAT THE PHV ADMISSIONS MUST BE REVOKED AND HUMPHREY DISQUALIFIED ................. 1

A.     STROJNIK SR.'S REPEATED FAILURE TO DISCLOSE AND ATTEMPT TO COVER UP HIS DISCIPLINES AND DISCIPLINARY PROCEEDINGS ............................................................................................. 3

B.     STROJNIK JR.'S CERTIFICATION FURTHER SUPPORTS REVOCATION OF HIS PHV ADMISSION ................................................................. 7

C.     HUMPHREY HAS DONE NOTHING TO PREVENT HIMSELF FROM BEING DISQUALIFIED AS DARE'S COUNSEL HERE ................................. 8

II.     LITIGATION TACTICS BY STROJNIK SR. AND JR. AND HUMPHREY ALONE AND IN AGGREGATE WITH THE PHV APPLICATION WARRANT REVOCATION OF COUNSEL'S PRIVILEGES ......................................................... 11

CONCLUSION ......................................................................................................................... 15

## TABLE OF AUTHORITIES

Barlow v. U.S, 32 U.S. 404 (1833)..................................................................................3

Data Sys. Analysts, Inc. v. Netplex Group, Inc., 187 F.R.D. 181 (D.N.J. 1999)..........................................................................................................................14

Steel v. General Motors, 912 F. SUPP. 724 (D.N.J. 1995) ...........................................14

## PRELIMINARY STATEMENT

Defendant Chicago Title Insurance Company ("Chicago Title") submits this final reply brief in further support of its motion for an Order revoking the pro hac vice ("PHV") admissions of Peter Strojnik ("Strojnik Sr.") and his son, Peter K. Strojnik (Strojnik Jr."), and to disqualify local co-counsel for Dare Investments, LLC ("Dare"), Christopher Humphrey ("Humphrey"). Chicago Title will not reiterate what is in its prior papers, but will simply identify the further admissions, un-rebutted facts, and bases that compel the relief sought here.

## LEGAL ARGUMENT

I. **DARE'S COUNSEL'S CERTIFICATIONS CONFIRM THAT THE PHV ADMISSIONS MUST BE REVOKED AND HUMPHREY DISQUALIFIED**

The depth of the hole Strojnik Sr. and his colleagues continue to dig for themselves seems to have no end. First, Strojnik Sr. admits having made material misrepresentations to the Court (and adverse counsel) in this matter and having failed to even read the Local Rules that govern him, which he then proceeded to repeatedly violate. This is, itself, a stunning about face from his prior certification in which he swore under oath that his PHV certification was correct in "all respects," making arguments that he was not required to disclose the 1990 censure or pending disciplinary proceedings based on his review of the Local Civil Rules and that he timely disclosed his suspension. See Jan. 3, 2012 Strojnik Sr.

Cert. [Doc.73]. Moreover, Strojnik Sr. and Strojnik Jr. cannot explain, nor attempt to explain, the obvious difference between their <u>pro hac vice</u> applications filed in the same application to the Court:

- Strojnik Jr.'s certification on December 5, 2010 to this Court:

  > "1) I am licensed to practice in the State of Arizona, Bar Number 026082, and the State of California, Bar Number 242728. <u>I am in active status and in good standing in both jurisdictions and there are no disciplinary proceedings pending against me.</u>"

- Strojnik Sr.'s certification on December 5, 2010 to this Court:

  > "I, Peter Strojnik, do hereby certify that I am licensed to practice in the State of Arizona, Bar Number 006464. <u>I am on active status and in good standing.</u>"

Doc. 67-3 at Ex. 7 (emphasis added).

Even accepting Strojnik Sr.'s claims at face value (which this Court should not), however, they are not a defense to this motion. How an attorney asks a court to grant him admission pursuant to a rule [Doc. 5] that he admittedly choose to ignore and not even read is beyond belief, particularly for someone who professes to have been practicing for over 30 years and to "have practiced before various jurisdictions in the United States pursuant to local pro hac vice admissions." <u>See</u> Jan. 13, 2012 Strojnik Sr. Supp. Cert. [Doc. 84-1] at ¶ 4; <u>see also</u> Jan. 13, 2012 Dare Supp. Br. at p. 20 (claiming Strojnik Sr. is "supremely aware of facts," etc. and was "meticulous" in his review and knowledge of this case).

- 2 -

Moreover, this is the same rule under which this Court granted him PHV admission and by which this Court ordered he was bound. See March 4, 2011 PHV Order [Doc. 15]. Obviously, Strojnik Sr. never reviewed this Court's PHV Order either, or he simply chose to ignore it as well. Regardless, ignorance is not a defense. See Barlow v. United States, 32 U.S. 404, 411 (1833) (J. Storey) ("Ignorance of the law does not excuse any person, either civilly or criminally."). Moreover, as will be shown below, Strojnik Sr. and his co-counsel were far from ignorant of the Rules.

### A. Strojnik Sr.'s Repeated Failure to Disclose and Attempt to Cover Up His Disciplines and Disciplinary Proceedings

Strojnik Sr. cannot explain away his serious violations, of which there are many. First, Strojnik Sr. admits his "negligent" failure to certify in his PHV application that no discipline had been imposed against him and that no disciplinary proceedings were pending against him. See Jan. 13, 2012 Strojnik Sr. Supp. Cert. [Doc. 84-1] at ¶¶ 14-15. In addition to clearly violating Local Civil Rule 101.1(c)(1), it is evidence of his intent to try to hide the omitted matters and avoid making affirmative misrepresentations under oath.

Second, Strojnik Sr. further admits that he failed to disclose the 1990 censure on his PHV application here, in violation of Local Civil Rule 101.1(c)(1). See Jan. 13, 2012 Strojnik Sr. Supp. Cert. [Doc. 84-1] at ¶ 16. Recall in his prior certification that he tried to explain away this violation by averring that the censure

was not within the last five years. See Jan. 3, 2012 Strojnik Sr. Cert. [Doc. 73] at ¶ 10 & n.1. Apparently realizing the futility of that position, he jettisons it. As set forth in Chicago Title's moving papers, however, Strojnik Sr. disclosed the 1990 censure in his PHV application in the Utah Action made around the same time. See Jan. 13, 2012 Strojnik Sr. Supp. Cert. at ¶ 1; See Chicago Title Moving Br. [Doc. 67-1] at p. 5. Yet, he provides no explanation for his having chosen to review the applicable rules in the Utah Action, while purposefully sticking his head in the sand here.

Third, Strojnik Sr. avoids discussing his 2006 diversion, instead leaving that to argument in the brief that it was not disclosed because it allegedly is not a discipline. See Supp. Br. [Doc. 84] at p. 4. Local Civil Rule 101.1(c) speaks in terms of any "discipline" against the attorney. The 2006 diversion was not an award for a job well done – quite the contrary, it was an alternative disciplinary sanction designed to modify the attorney's conduct that failed to comply with the Rules of Professional Conduct. This is exactly the type of discipline called for by Local Civil Rule 101.1(c), a topic wholly avoided by Strojnik Sr.

Fourth, Strojnik Sr. admits that he should have disclosed the 2009 and 2010 Claims in his PHV certification and abandons his flawed argument that the 2009 and 2010 Claims were not "formal" disciplinary proceedings at the time of his PHV application. See Jan. 13, 2012 Strojnik Sr. Supp. Cert. [Doc. 84-1] at ¶

17. Local Civil Rule 101.1(c) is not limited to "formal" complaints, and there is nothing in the Rule to suggest otherwise. Finally and more invidiously, Strojnik Sr. also changes his position on what he knew of the charges, having previously tried to suggest, without explicitly saying so, that he did not have knowledge of the 2009 and 2010 Claims at the time of his PHV application. See Jan. 3, 2012 Strojnik Sr. Cert. [Doc. 73] at ¶ 9. Only after this position was completely rebutted has he dropped it.

Indeed, Strojnik Sr.'s position leaves no doubt that he thought about the issue at the time of his PHV application and made a conscious decision not to disclose the 2009 and 2010 Claims. Again, why the difference in his and his son's certifications? Further, given his heavy involvement in the 2009 and 2010 Claims at the time of his PHV application, with multiple Probable Cause Orders (requiring complaints to be filed) and a subpoena having been issued, it is unfathomable that he never once looked at the applicable Local Civil Rules here to see whether he had an obligation to disclose those claims. Making Strojnik Sr.'s position even more incredible is the fact that the Supreme Court of Arizona and United States District Court for the District of Arizona require disclosure of "any pending disciplinary proceeding or investigation by any court, agency or organization authorized to discipline attorneys at law" for pro hac vice admission in those forums. See AZ PHV Form, attached as Ex. B to Jan. 17, 2012 Cert. of Michael R.

4201002.5

O'Donnell, Esq.; 17A A.R.S. Sup.Ct.Rules, Rule 46 ("'Discipline proceedings' and 'disability proceedings' mean any action involving a respondent pursuant to the rules relating thereto."); see also Dist. Of AZ PHV Form, attached as Exhibit C to Jan. 17, 2012 Cert. of Michael R. O'Donnell, Esq.; Az. L. Civ. R. 83.1 (requiring that the PHV application state that "the attorney is not currently suspended, disbarred or subject to disciplinary proceedings in any court.")

Finally, Strojnik Sr. concedes, as he must, that he failed to notify the Court of the two complaints filed as to the 2009 and 2010 Claims and can only try to seek refuge in his admittedly negligent failure to read Local Civil Rule 101.1(c). This is inexcusable given that the Complaint as to the 2009 Claims was issued while his PHV application was pending and about two and a half months before his PHV admission was granted. Strojnik Sr. continued these infractions in failing to promptly disclose anything until November 21, 2011, see Jan. 17, 2012 Cert. of Michael R. O'Donnell, Esq. at ¶9, after he realized he had no choice in light of his impending 30-day suspension. Indeed, he never disclosed the April 30, 2011 Judgment and Order entered as to the 2009 Claims (for which he had entered into a March 25, 2011 consent agreement, signed on April 21, 2011). Similarly, he never disclosed the Complaint as to the 2010 Claims filed on July 29, 2011, which he answered on August 24, 2011, and for which a Notice of Settlement was filed on September 26, 2011.

4201002.5

### B. Strojnik Jr.'s Certification Further Supports Revocation of His PHV Admission

Strojnik Jr. tries desperately now to distance himself by claiming that he is a mere "associate" type attorney here and that he does "not have a direct contractual relationship with [Dare]." See Jan. 13, 2012 Strojnik Jr. Cert. [Doc. 84-6] at ¶¶ 4-5 (emphasis in original). This flies in the face of his PHV application and submissions to the Court in which he has held himself out as seeking to be and being counsel for Dare – not some type of "associate" counsel without any contractual agreement to represent Dare. Nonetheless, it does nothing to help him here, nor does his admission that he too failed to review the Local Civil Rules governing him and his father in this Court. Id. at ¶ 7.

Strojnik Jr. also makes the incredible statement that he "first became aware of [his] father's disciplinary history when Doc. 67 [Chicago Title's instant motion] was filed" on December 21, 2011. Id. at ¶ 11. In the same breath, however, he claims that in or about July 2011, he "discovered that [his] father was dealing with a State Bar matter of some kind, but [he] never knew exactly what it was, e.g., whether it was an investigation, a Complaint, formal disciplinary proceedings, etc." Id. at ¶ 9. He then relates that in or about early-November 2011, "[his] father advised [him] that he would be suspended from the practice of law for 30 days and that during this suspension, [he] would have to be the sole and

primary counsel for [Dare] in this litigation." Id. at ¶ 9. This "story" is far from true.

Attached to Chicago Title's reply papers as Ex. 26 is an August 23, 2010 email from Strojnik Jr. to SBA Counsel stating that he received her August 17, 2010 correspondence "in the File number above" (as to the 2010 Claims) and that "[he] will be submitting [his] response shortly" and asking for an extension for his father to respond. As it is too damning to be rebuffed, Strojnik Jr. does not even discuss the e-mail in his certification. In sum, Strojnik Jr., at a minimum, had direct knowledge in 2010 of the disciplinary proceedings involving his father as to the 2010 Claims.

Suffice it to say that Strojnik Jr., as an officer of this Court, did nothing to bring to light the true facts about the deficient disclosures of Strojnik Sr. and has instead continued to pursue his father's transgressions both in the litigation and through this briefing process as set forth in Chicago Title's prior submissions. See, e.g., Jan. 10, 2012 Chicago Title Reply Br. [Doc. 83] at pp. 20-22.

### C. Humphrey Has Done Nothing To Prevent Himself From Being Disqualified as Dare's Counsel Here

It is undisputed that Humphrey is responsible for Strojnik Sr.'s and Strojnik Jr.'s actions in this matter. Humphrey acknowledged as much in his certification in support of the PHV application here, and it is required by our Local Rules and the PHV Order entered here. Dare's submissions and Humphrey's

- 8 -

4201002.5

certification, however, have added additional bases warranting his disqualification from this matter.

First, per Strojnik Sr.'s supplemental certification [Doc. 84-1 at ¶ 11] and Dare's prior opposition brief [Doc. 73 at p.10], which Humphrey signed, Humphrey was the attorney responsible for advising Strojnik Jr. and Sr. "on local rules, standards and practices[.]" Yet, Strojnik Jr. and Sr. admit that they did not review the Local Rules or follow them. Humphrey obviously failed in his obligation to advise as to them or take steps to insure that the Rules were followed.

Second, Humphrey stated in his certification in support of the PHV application of Strojnik Sr. and Strojnik Jr.: "It is my understanding that [n]o disciplinary proceedings are pending against either attorney seeking admission [PHV] and they are members in good standing of [the bars] in which they are admitted." See Dec. 3, 2011 Humphrey Cert. [Doc. 5] at ¶ 4. In his current certification [Doc. 84-7], however, Humphrey does nothing to explain the basis for this representation he made to the Court (and counsel) in support of the PHV application, including what he did to satisfy himself before making such an affirmative representation. Indeed, Humphrey does not explain whether he reviewed the Strojniks' certifications that he was filing, which would have revealed their obvious differences and prompted an inquiry into Strojnik Sr.'s failure to certify as required by Local Rule 101.1(c) that he had no prior disciplines

4201002.5

and no pending disciplinary proceedings. Humphrey, moreover, makes no distinction in his affirmative statement as to "formal" disciplinary proceedings or disciplinary proceedings as defined under Arizona's applicable rules. The purpose of his statement, which we know to be materially incorrect, was to obtain PHV admission for Strojnik Sr., which was improperly achieved.

Third, Humphrey's certification is a carefully-crafted attempt at trying to certify just enough to avoid inculpation. Unfortunately for Humphrey, its glaring omissions reveal his involvement. Humphrey merely certifies that at the time of the PHV application, he "was unaware of any past discipline or pending disciplinary proceedings" for Strojnik Sr. and Strojnik Jr. See Jan. 13, 2012 Humphrey Cert. [Doc. 84-7] ¶ 3. Obviously, Humphrey failed to certify as to what he knew, when he knew it, and what he did with that information – questions highlighted in Chicago Title's prior papers [Doc. 83 at p. 19-20].

Finally, as demonstrated below, Humphrey further fails to address his continuing the improper behavior of Strojnik Sr. and Jr. in this matter, including pressing a bogus privilege claim, signing an application to compel discovery making material misrepresentations, filing an absurd sanctions application, and signing Dare's prior brief containing egregious misstatements. See Jan. 10, 2012 Dare Br. [Doc. 83] at pp. 20-22. In short, Humphrey failed on multiple occasions to discharge his obligations to ensure the propriety and ethical compliance of the

applications and submissions filed in this matter under his name and the conduct of the case and of Strojnik Sr. and Strojnik Jr. here.

## II. LITIGATION TACTICS BY STROJNIK SR. AND JR. AND HUMPHREY ALONE AND IN AGGREGATE WITH THE PHV APPLICATION WARRANT REVOCATION OF COUNSEL'S PRIVILEGES

Strojnik Sr. and Jr. (and Humphrey) avoid addressing their actions in this litigation, presumably fearing further implication. Chicago Title will not reiterate what is in its prior submissions, but merely clarifies some points. Chicago Title's claims here are directed at their actions. For example, it was Strojnik Sr. who took the bogus attorney-client privilege claim from the very beginning of this litigation, withheld from production his communications with counsel for Peter Mocco, and sought to force depositions without such discovery. See Chicago Title Moving Br. [Doc. 67-1] at pp. 7-9; Chicago Title Reply Br. [Doc. 83] at pp. 15-16. It was not until a third-party (Peter Mocco), in response to Chicago Title's subpoena, produced 220 e-mails from Dare's principal, Richard McCloskey ("McCloskey") – which included, among other documents, his counsel's invoices and McCloskey's communications with his counsel dating back to 2006 – that Strojnik Sr. conceded waiver. See Dec. 21, 2011 Michael R. O'Donnell Certification [Doc. 67-2] at ¶ 4.

Even then, however, Strojnik Jr. spearheaded the frivolous attempts to condition that waiver on Chicago Title conceding relevancy and materiality of the

- 11 -

documents, sight unseen, for trial. See Dec. 30, 2011 letter from Strojnik Jr. & Humphrey to Hon. Michael A. Shipp, U.S.M.J., filed in this matter [Doc. No. 72] & attached as Ex. 34 to the Jan. 10, 2012 Michael R. O'Donnell Certification [Doc. 83-5]. Moreover, in those efforts, Strojnik Jr. sought permission to file a sanctions application for having to participate in a conference call with the Court and sought sanctions in his papers opposing Chicago Title's efforts to enforce the waiver. See id. All of this was done without citation to case law on point and was approved by Humphrey. To date, documents from Dare's 2006 counsel (LeClairRyan and Jones Waldo) are still being withheld, despite Dare's unconditioned waiver.

Further, not only did Strojnik Sr. in fact "concoct a story" to cover up his suspension, but he failed to tell the Court of his suspension, pursuant to a November 7, 2011 Judgment and Order, during a November 15, 2011 conference call when the Court asked him directly about the application for a discovery extension. Despite having had multiple opportunities, Strojnik Sr. has not denied this exchange and has instead just recently attempted to craft a cleverly-worded response: "At no time did I withhold any information from the Court or refuse to answer a direct question concerning my suspension in order to obtain a discovery extension." See Jan. 13, 2012 Strojnik Sr. Supp. Cert. [Doc. 84-1] at ¶ 30. Such a statement is itself misleading, as he did not inform the Court during the November 15th conference of his suspension and no one on the call – except for Strojnik Sr.,

- 12 -

4201002.5

who was not letting anyone in on his secret – knew of it to ask a direct question of him. See Chicago Title Moving Br. [Doc. 67-1] at pp. 9-10; Chicago Title Reply Br. [Doc. 83] at p. 16.

Finally, in their opposition to this application, Strojnik Sr., Strojnik Jr. and Humphrey make a mockery of the Local Rules. First, they sought sanctions against Chicago Title's counsel for the failure to file the instant motion under seal, citing a violation of Local Civil Rule 104.1. However, the Court, without briefing and in less than five minutes, dismissed their argument as to even the need for sealing the record in its January 6, 2012 conference call with the parties. Second, during that call, Strojnik Jr. asked permission to file a sur-reply because he claimed that he was unaware that Chicago Title's application sought to disqualify counsel. As unbelievable as that statement is, any review of Plaintiff's brief demonstrates that it had nothing to do with addressing the disqualification standard, but rather getting a chance to change their "stories" and address arguments made in the initial moving papers that were deliberately ignored. Third, in their sur-reply, Strojnik Jr. and Humphrey again seek sanctions against Chicago Title's counsel in the form of an "ethics charge" for delaying depositions. As an initial matter, this Court has twice granted Chicago Title's request to adjourn depositions, a fact Dare's counsel blithely ignores. Moreover, as shown by Certification of Michael R. O'Donnell submitted herewith, that claim too is false. While irrelevant, there can be no doubt

that Chicago Title filed its motion to revoke before counsel ever spoke to SWJ's counsel, Gordon Duval. See O'Donnell Cert. dated January 17, 2012 at ¶7. Even there, while wrong, it is noteworthy that the claims as to what Mr. Duval told Mr. O'Donnell violate Local Rule 7.2(a), as they are not supported by a certification. See Local Rule 7.2(d). Finally, the hyperbole and frivolity of many of the claims, such as Mr. O'Donnell allegedly making statements as to Strojnik Sr.'s wife are, in a word, abusive. In that vein, Dare's alleged "prejudice" – in a case where no depositions have been done to date and document discovery is not yet complete – cannot possibly justify this Court allowing current counsel to remain. Steel v. General Motors, 912 F. Supp. 724, 745-46 (D.N.J. 1995) (only in "extraordinary circumstances" would a client's right to the counsel of its choice outweigh "the need to maintain the highest standards of the profession."). Their abusive tactics will only continue.

In sum, whether considering counsel's failure to disclose Strojnik Sr.'s disciplines or disciplinary proceedings in this action or their improper litigation tactics here, more than sufficient bases exist to revoke both Strojniks' PHV admissions and disqualify Humphrey.[1]

---

[1] Dare's attempt to distinguish Data Sys. Analysts, Inc. v. Netplex Group, Inc., 187 F.R.D. 181 (D.N.J. 1999), is misplaced. Dare tries to argue that Data Sys. is distinguishable because it involved conduct at issue in that case. See Jan. 13, 2012 Dare Supp. Dare Br. [Doc. 84] at pp. 6-7. Here, however, that is exactly what Chicago Title is asserting, which started with Strojnik Sr.'s PHV application and has continued through the litigation.

## CONCLUSION

For the foregoing reasons, Chicago Title Insurance Company respectfully requests that the pro hac vice admissions of Peter Strojnik and Peter K. Strojnik be revoked and that Christopher Humphrey be disqualified as counsel for Dare Investments, LLC in this matter.

Respectfully submitted,

RIKER, DANZIG, SCHERER, HYLAND
& PERRETTI LLP
Attorneys for Chicago Title Ins. Co.

By:   */s/ Michael R. O'Donnell*
      Michael R. O'Donnell

Date: January 17, 2012