```
 1                   IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF NEW JERSEY
 2                      CIVIL ACTION 2:10-cv-6088-DRD

 3     DARE INDUSTRIES, LLC,        : TRANSCRIPT OF PROCEEDINGS
                                    :
 4                 Plaintiff,       :    M O T I O N
                                    :
 5                  -vs-            :    Pages 1 - 22
                                    :
 6     CHICAGO TITLE,               :
                                    :
 7                 Defendant.       :
       - - - - - - - - - - - - - - -

 8
                                         Newark, New Jersey
 9                                       January 17, 2012

10     B E F O R E:   HONORABLE DICKINSON R. DEBEVOISE,
                        SENIOR UNITED STATES DISTRICT JUDGE
11

12     A P P E A R A N C E S:

13          PETER C. STROJNIK, JR., ESQ.
            PETER C. STROJNIK, SR., ESQ.
14          Attorneys  For the Plaintiff

15          MICHAEL R. O'DONNELL, ESQ.
            DERRICK R. FREIJOMIL, ESQ.
16          Attorney for the Defendant

17

18     _____
19     Pursuant to Section 753 Title 28 United States Code, the
       following transcript is certified to be an accurate record as
20     taken stenographically in the above entitled proceedings.

21
                         S/Mollie Ann Giordano
22                       MOLLIE ANN GIORDANO
                         Official Court Reporter
23                       973-220-9465

24

25
```

1          THE COURT:  This is Chicago Title's motion.  I read

2     the fairly lengthy briefs.  One of them as late as this

3     morning.  I've read them all, so go ahead.

4          MR. O'DONNELL:  Your Honor, this is Chicago -- as your

5     Honor stated --

6          THE COURT:  Come on up to the microphone and use it

7     effectively.

8          MR. O'DONNELL:  Thank you, your Honor.  This is

9     Chicago Title's motion to revoke the pro hac vice admission of

10    Peter C. Strojnik and disqualify local counsel Christopher

11    Humphreys.

12         THE COURT:  And you're also moving to vacate local

13    counsel to eliminate them from the case.

14         MR. O'DONNELL:  Yes, your Honor.

15         THE COURT:  That was not technically set forth in your

16    moving papers.  The original motion was a motion to revoke pro

17    hac vice.

18         MR. O'DONNELL:  It was a motion to revoke pro hac

19    vice.  In the original papers we did have, your Honor, a

20    request that Mr. Humphreys be disqualified as local counsel.

21    He has the responsibility to supervise, and did not do so, your

22    Honor, and that was set forth.

23         THE COURT:  Alright.

24         MR. O'DONNELL:  We apologize if it was not clearly set

25    forth in the papers.

Motion

 1              THE COURT:  Alright.

 2              MR. O'DONNELL:  I think it's at issue now, your Honor.

 3     I think THERE can be no doubt about the proper notice, your

 4     Honor, with regard to this.

 5              THE COURT:  I don't really want to go through this

 6     whole thing all over again.  Anything that should be added to

 7     the papers THAT we considered the last time we were here, and

 8     what's new.

 9              MR. O'DONNELL:  The only thing that is new --

10     everything is already set forth in the papers, including -- if

11     your Honor has read the papers we originally submitted.

12              THE COURT:  I read them this morning.

13              MR. O'DONNELL:  Everything is set forth -- everything

14     is set forth, your Honor.  The one thing I might want to point

15     out to the Court, if we take a look at the abusive process

16     that's been going on, on January 12th, they submitted papers

17     that stated the application was correct in all respects.

18              THE COURT:  The application was what?

19              MR. O'DONNELL:  The pro hac vice application was

20     correct in all respects.  That's page 6 of their initial

21     papers.  Less than three days later, they submitted papers

22     which admitted the pro hac vice application is wrong, it's

23     incorrect, it's inaccurate.  They failed to disclose a 1990 --

24     more importantly, it failed to disclose two pending ethics

25     investigations in 2009 claims and 2010 that resulted in a

 1    30-day suspension.

 2           The other issue I want to point out to the Court is
 3    this second brief was submitted to the Court in the January 6th
 4    calendar.  Peter C. Strojnik said he needed a second brief for
 5    the disqualification standard.  Again, point two of the initial
 6    brief, their initial brief, the disqualification standard is
 7    not met here.  So it was addressed.  So I would just point out
 8    to this Court that this second brief from Dare was another
 9    attempt to abuse the process, another attempt to flip and
10    change the story, another attempt to say Chicago Title's
11    counsel lied.  And there was some type of claim by Peter Macco
12    that made our case an absolute loser.  That's not true, your
13    Honor.  And now you have my certification submitted this
14    morning that leaves no doubt.

15           Other than that, your Honor, in all candor, absolutely
16    everything is put forth in our papers.  The 2009 ethics claim
17    involves two transactions, two clients.  The 2010 ethics claim
18    involves one transaction, two complaints.  The 2010 claim
19    involves essentially pressuring a witness.  And also Arizona
20    indicated that the aggravating circumstances on both were
21    patterns of misconduct.  But you've said you've read the papers
22    and I will not belabor a dead horse.  Everything is set forth
23    in our papers that say right now the pro hac should be revoked,
24    and there is not one case cited by the plaintiffs that
25    addresses pro hac, except for the PMB case.  And in the PMB

1    case, the pro hac was revoked for the ex parte communication.

2    In the True Blood, the Third Circuit stated, at a minimum, the

3    pro hac vice admission should be revoked in that it's a

4    violation of the ethics rule, your Honor.  With that, I will

5    save my time for reply.

6           THE COURT:  I've read your papers thoroughly, and I've

7    read Mr. Strojnik's papers thoroughly, but let me have your --

8    the response to the motion.

9           MR. CHRISTOPHER:  Thank you, your Honor.  I am Peter

10   Christopher.

11          THE COURT:  Come on up.  You're going to have to use

12   the microphone.  That would be the advantage of the machinery.

13          MR. CHRISTOPHER:  Thank you.

14          THE COURT:  Frankly, I see very little to be said on

15   your behalf.  Go ahead, try to -- it just seems to me right

16   down the line you haven't been following our local rules.

17          MR. CHRISTOPHER:  Your Honor, the certification was

18   fully thorough and it was fully accurate.  Mr. Strojnik, my

19   father, was active and in good standing at the time of the

20   certification.  The only thing he did not include was a 1990

21   censure based on conduct from the 1980s.  And the only reason

22   he did not include that is at that time he did not familiarize

23   himself with the local Civil Rule 101.1C.  He was not intending

24   to mislead this Court.

25          THE COURT:  But then disciplinary proceedings were

1          going on all this time.  The 2009 and 2010 proceeding, you were

2          participating in them as a defense for your father.

3                    MR. CHRISTOPHER:  Absolutely not, your Honor.

4                    THE COURT:  And there was an -- the disciplinary

5          action was -- it was between the filing of your application and

6          the granting of the application, the disciplinary action was

7          taken by the Arizona disciplinary authorities.

8                    MR. CHRISTOPHER:  Let me go through the time line very

9          briefly.  This is a very important matter for Dare Investments.

10         Let me go through the time line briefly.

11                   As I said, the certification was true, but for the

12         1990 censure.  These so-called 2009 claims actually referred to

13         one single disciplinary proceeding.  That was initiated after

14         Mr. Strojnik's certification.  So let's focus first on Mr.

15         Strojnik's certification.  It was true and accurate, and the

16         only thing it did not disclose, it was due to Mr. Strojnik's,

17         quite frankly, embarrassing omission, was the 1990 -- is as old

18         as I am.  That's old.  That's the certification.  The only

19         thing that it did not include was the 1990 censure.

20                   Now, the movant points to the so-called 2009 claims,

21         and the so-called 2010 claims.  The so-called 2009 claims,

22         plural, is misleading to this Court.  It refers to one single

23         disciplinary proceeding that was effectuated --

24                   THE COURT:  They're listed in their brief, proceedings

25         which took place, order to show cause responses in those

1    claims.  They're there.  Go on.

2            MR. CHRISTOPHER:  Before the certification they were

3    not going on.  Mr. O'Donnell even admits himself in his own

4    certification that prior to Mr. Strojnik's certification, these

5    were, quote unquote, an ethics investigation.  It is clear in

6    Arizona that a proceeding begins with the filing of a formal

7    complaint.

8            THE COURT:  I don't agree.

9            MR. CHRISTOPHER:  Arizona rules.  Supreme Court --

10           THE COURT:  I'm applying my rules, that is the court

11   of New Jersey, New Jersey rules.

12           MR. CHRISTOPHER:  I understand.  But disciplinary

13   proceeding is the same term used in New Jersey as it is in

14   Arizona.  And in Arizona, the disciplinary proceeding begins at

15   the time of the filing of a complaint.  Mr. Strojnik was

16   perfectly honest in his complaint.  He did not willfully --

17   this is not something that should have been included in his

18   certification, pursuant to a rule.  There was nothing that

19   should have been included except for the 1990 censure.  It was

20   very clear, pursuant to the papers that we submitted, and

21   pursuant to the rule, that no disciplinary proceedings were

22   pending at the time of Mr. Strojnik's certification.

23           But let me get to Mr. Strojnik in this case.  This all

24   boils down to Mr. Strojnik's inadvertent and his failure to

25   review the local civil rule.  And that inadvertence, this

1    qualification would greatly, greatly outweigh Mr. Strojnik's

2    inadvertence in that respect.

3            Let me cite to a few Supreme Court rules, your Honor.

4    The Supreme Court has said it must be exercised with restraint

5    and discretion --

6            THE COURT:  So what Supreme Court are you talking

7    about?

8            MR. CHRISTOPHER:  The United States.  The Chambers

9    matter, the Third Circuit has held that the courts must "ensure

10   that the sanction is tailored to identify the harm that is

11   identified."  That is the Westinghouse matter.  Mr. Strojnik

12   was inadvertent.  He didn't review the local rule.  He did not

13   intent to mislead this Court.  He did not intend to withhold

14   any material information.  He did not steel client money.  He

15   did not create a conflict.  He made a mistake.  If the standard

16   of this high -- this grand profession ridded itself of all

17   persons that made an honest error, your Honor, there would be

18   no lawyers.  All lawyers would be disqualified.  He made an

19   honest mistake.

20           And with respect to a reprimand that occurred during

21   the pendency of this action, what occurred after his

22   certification, Mr. Strojnik incorrectly relied on Rule 72A,

23   Arizona rules in the Supreme Court, in not alerting the Court

24   of the reprimand.  It was not due to him intending to mislead

25   the Court.  Mr. Strojnik is following Arizona rules for over 30

1    years.  They are ingrained in his mind.  Ninety-nine percent of

2    his cases are in Arizona.

3              THE COURT:  And what's he doing in New Jersey?

4              MR. CHRISTOPHER:  Because they're chosen, they're

5    chosen because he has the ability to handle this matter on a

6    contingency basis.  He can expend -- advance extremely

7    expensive litigation costs.  Their investments search for over

8    two and a half years, after termination of the 2007 matter in

9    Utah, search for two and a half years to find a lawyer.  He was

10   initially represented by Jones Waldo, by this very action.  He

11   didn't have any money.  This is Richard Magrozski, the

12   principal for Dare Investments, he flew 3,000 miles here today

13   to stand by his lawyer's side.  A Utah company chose an Arizona

14   lawyer to litigate a New Jersey action.  That's how strong his

15   resolve is to choose Mr. Strojnik as his counsel.

16             And this qualification here for Mr. Strojnik's

17   inadvertent error, a mistake that he's embarrassed about, he

18   apologizes to the Court.  It was an honest mistake, your Honor.

19   This qualification would greatly outweigh not only his mistake,

20   but their right to freely choose his counsel.  I know why we're

21   here today.  The movant did not move to disqualify to maintain

22   the high standards of this profession.  Absolutely not.  The

23   high standards of profession, as I stated earlier, does not rid

24   itself of lawyers who make honest mistakes.  The movant made

25   this motion because they would profit.  Mr. Strojnik, and Mr.

1    O'Donnell, and Mr. Frasier, are past adversaries with respect

2    to Chicago Title on the same unmarketability issues.   Same

3    unmarketability issues.

4              In 2007, in this court, Mr. Strojnik represented

5    Skyland Investments against Chicago Title and right -- Mr.

6    O'Donnell and Mr. Frasier, on the same unmarketability issue.

7    The motive here is not to maintain the high standards.   The

8    motive here is to rid themselves of a worthy adversary.

9    There's chosen counsel that is the motivation.

10             And let me just summarize the value that Mr. Strojnik

11   provides to Dare investments.   The Court vacated the recent

12   depositions.   One of those depositions was of Gordon Duval,

13   which was scheduled for January 19, 2012.   Mr. Strojnik flew to

14   Utah.   Woke up, brushed his teeth, flew to Utah, interviewed

15   face to face Gordon Duval, and we have an affidavit from Gordon

16   Duval waiting to be signed that says Macco claims are covered.

17   Macco claims are covered.   Why else would Dare Investments seek

18   title insurance when all other claims were extinguished by the

19   363 sale?   And that's exactly what Mr. Duval has drafted, an

20   affidavit ready to sign.

21             But I just received an e-mail from Mr. Duval saying:

22   I want to see how this -- this issue today, what we're here for

23   today, how it resolves before I sign it.   Translation:   If Mr.

24   Strojnik isn't on this case, I ain't signing it.   Trust, trust

25   between witnesses, third parties.   That is the value of

1      lawyers.  That is the value of Mr. Strojnik.  He has developed

2      interest.  He has worked over a thousand hours in this case.

3      He has reviewed thousands, upon thousands, upon thousands of

4      the SEG bankruptcy, 363 sale, the Liccata litigation.

5              This case is not at its inception, it is at its end.

6      And a new lawyer, even assuming Mr. Dare could find a new

7      lawyer, which he can't, assuming he could get up to speed in a

8      timely fashion, which he can't, he still would not provide the

9      value that Mr. Strojnik provides, one of which is his past

10     favorable experience against Chicago Title, against Mr.

11     O'Donnell, against Riker Danzig, on the same unmarketability

12     issues.

13             Your Honor, we pray that the Court recognizes the

14     inadvertence here.  It is just that, it is inadvertence.  We're

15     not trying to pull the wool over anybody's eyes.  The guy made

16     a mistake, and we hope the Court recognizes that.  And we pray

17     especially that Dare will probably fall to nothing.  Dare prays

18     that the Court gives us leniency and permits Mr. Strojnik to

19     continue.

20             THE COURT:  Alright.

21             Mr. Humphreys, is there something you want to say?

22             MR. CHRISTOPHER:  Mr. Humphreys is not present.

23             THE COURT:  Mr. Humphreys is not here?

24             MR. CHRISTOPHER:  No, your Honor.  He had to be with

25     his children.  He asked me to alert the Court that it was a

1   very important matter with his children.  He would not

2   elucidate --

3         THE COURT:  Alright.  And he waives any -- alright, go

4   ahead, reply.

5         MR. O'DONNELL:  Your Honor, the issue with Mr. Duval,

6   none of that is on the record.  Dare accused me of seeking to

7   delay depositions and seek ethic charges against me and Mr.

8   Fresnal because Mr. Duval told me the Macco claims were

9   covered, and that's why I filed the rebuttal.  The substance of

10  what I talked about -- it's not correct what they're saying Mr.

11  Duval is not relevant for this motion.  What is relevant, that

12  was another, and I -- I'll use the word lie, your Honor,

13  because the motion to revoke was filed five hours before I ever

14  spoke to Mr. Duval, and it was announced days before that we

15  would file the motion before Magistrate Shipp.  That's another

16  example of a reckless claim that simply is not true.

17        Now, with regard to whether there were investigating

18  proceedings.  Obviously we agree with the Court that when an

19  ethics claim is made, that's when it starts.  However, it's

20  significant here that the probable cause orders that Arizona

21  has were both filed and served on Mr. Strojnik, Sr. before the

22  pro hac application.  Those probable cause orders require a

23  complaint to be filed.  The vote was 6 to O in each case, your

24  Honor.  There is no doubt that Mr. Strojnik, Sr. and Jr.

25  thought about that.  You cannot explain the difference between

 1       the certifications from Mr. Strojnik, Jr., Peter C. Strojnik,

 2       certifies he's not the subject of any pending ethics

 3       investigation, and Mr. Strojnik Sr. does not.  Mr. Humphreys

 4       isn't here to explain what he did to look at that discrepancy.

 5       Mr. Humphreys isn't also here to explain when he found out

 6       about the ethics investigation.  So in that context, your

 7       Honor, it's just a blatant falsehood to argue that this was a

 8       mistake.

 9              Also, this Court was misled, and counsel was misled.

10       Mr. Strojnik asked to have no depositions in December because

11       he was going to take a 30-day vacation that his wife told him

12       he had to take.  We were not told about his wife being ill, and

13       we did not disparage his wife.  And I would submit to this

14       Court, if you look at the November 17th letter, which is

15       Exhibit 16 to my first certification, Mr. Strojnik basically

16       admits it.  He says, on a matter of discovery I shared with you

17       earlier, that I am taking vacation time during the month of

18       December.  That's what he says he shared with us.  He then goes

19       on to say:  I will also take this opportunity to suspend my

20       practice of law to resolve some festering issues with the

21       Arizona State Bar.  That's the first time I ever knew he was

22       suspended, and I didn't even know it then.  We had to go back

23       and find out what the festering issues were.

24              THE COURT:  New Jersey certainly has enough lawyers.

25       They should be able to find someone to take this case on

1       contingency.  And, quite frankly, we've heard about the

2       invaluableness of Mr. Strojnik, Sr.  However, when they wanted

3       to have the deposition of Gordon Duval, he represented that he

4       could go forward with that deposition, and he could defend this

5       case, even if his father was disqualified.  This has now boiled

6       down to a contract case, a policy case.  New counsel should be

7       able to find if there's merit.  There is not -- this does not

8       prohibit the Court, and preventing counsel from spreading,

9       quite frankly, falsehood after falsehood in the pro hac vice

10      application.

11              And if we take a look at the abuses that have happened

12      just in this court.  I'll give you a list, just 10 of them,

13      10-count complaint was filed.  Nine of the ten counts were

14      dismissed.  A motion for summary judgment was filed.  Even

15      before, no effort to waive attorney/client privilege whatsoever

16      until Chicago Title received those documents via a third party

17      subpoena trying to have depositions of critical witnesses

18      before Dare produced a single piece of paper.

19              THE COURT:  I really don't want to get into the

20      details of the litigation.

21              MR. O'DONNELL:  Understood, your Honor.  With that, I

22      will just sit down.

23              THE COURT:  Alright.  I'll place an opinion -- do you

24      have something else you want to say?

25              MR. CHRISTOPHER:  Yes, your Honor, just briefly.

1          THE COURT:  Yes.

2          MR. CHRISTOPHER:  Thank you.

3          Mr. Strojnik's recent suspension was promptly alerted

4     to the Court.  As the Court is aware, Mr. Strojnik sent the

5     Court his certified letter advising of the suspension.

6          With respect to the certification, the only thing that

7     was not included is the 1990 censure, the so-called 2009

8     claims, is one single disciplinary proceeding after the

9     certification.  The 2010 claims refers to one July 11

10    proceeding that resulted in the suspension.  It did not alert

11    this Court of the reprimand and of the initiation of post

12    certification proceedings because he didn't review the rule.

13    He made a mistake.

14         The movant points to, and I'm going to jump to a new

15    point, and the movant says:  I made a representation to Judge

16    Shipp that I can proceed with the deposition.  And if that --

17    it looks like the movant says that I can no longer be

18    disqualified, but I must alert the Court to this.  I'm a labor

19    and employment lawyer.  I'm a civil rights lawyer.  I helped

20    folks who have been discriminated against at the work place.

21    I'm not a title insurance lawyer, I'm not capable of handling

22    this.  Once more, I don't have the power of the person that Mr.

23    Strojnik has.  I can't advance 50 grand, 75 grand in litigation

24    costs.  I'm not going to handled this on a contingency basis.

25         Dare Investments has sought out new counsel for over

1      two and a half years.  He finally heard of Mr. Strojnik.

2      Dare's case, there's lawyers in New Jersey, there's lawyers in

3      Puerto Rico, Utah.  Dare has searched for these lawyers.  He

4      couldn't find them, and he couldn't find one as competent as

5      Mr. Strojnik, who has over 30 years experience in insurance

6      law, who is a licensed insurance adjuster, and who has past

7      favorable experiences against the same players, Riker Danzig,

8      on the same unmarketability issues.  Dare would be -- I sat

9      down with the Dare principal myself.  We sat down with the

10     hotel bar and tavern, and he had the look of a beaten man on

11     his face, to be quite frank.  He knows, he knows that if this

12     motion is granted the case is done, your Honor.  We pray that

13     the Court recognizes that proportionality between

14     disqualification and Mr. Strojnik's inadvertence.  He did not

15     attempt to mislead this Court.  This Court ridding itself of

16     Mr. Strojnik would not maintain the highest standard of the

17     profession.  It wouldn't, Mr. Strojnik made a mistake, and we

18     pray, we pray, your Honor, that the Court recognizes this.  I

19     have nothing further, but.  If the Court has any other

20     questions.

21               THE COURT:  No.

22               MR. CHRISTOPHER:  Thank you.

23               THE COURT:  Alright.  I'll place an opinion on the

24     record.

25               Plaintiff Dare Investments, LLC, a Utah limited

1          liability company, instituted this action against defendant

2          Chicago Title Insurance Company and others.  The case is now

3          before the Court on Chicago Title's motion to revoke the pro

4          hac vice admission of Dare's counsel.  Out-of-state counsel

5          admitted pro hac vice are Peter Strojnik, Sr., Esquire, and his

6          son Peter Strojnik, Jr., Esquire.   Local counsel is

7          Christopher Humphrey, Esquire.  Mr. Humphreys filed a Strojnik

8          pro hac vice application on December 6th, 2010.  The

9          application did not list any pending disciplinary proceedings

10         against Mr. Strojnik, Sr., or any prior discipline action

11         imposed against him.  In fact, Mr. Strojnik, Sr. has been

12         subject to two Arizona attorney disciplines, a 1990 censure and

13         a 2006 diversion.

14               On December 6th, 2010, Mr. Strojnik, Sr. was the

15         subject of two Arizona disciplinary proceedings, the 2009

16         claims and the 2010 claims, that resulted in four separate

17         counts, based on three different transactions.  The

18         disciplinary complaint resulting in the 2009 claims was filed

19         on December 17th, 2010.  The pro hac vice application was

20         granted on March 4th, 2011.  During the interval between

21         December 6th, 2010, and March 4th, 2011, plaintiff's counsel

22         provided the Court with no information concerning the past and

23         pending disciplinary proceedings concerning Mr. Strojnik, Sr.

24         The disciplinary complaint resulting in the 2000 claim was

25         filed on July 29th, 2011.  The Strogics, Senior and Junior. did

1    not advise this Court.  Local rule 101.1C-1 governing pro hac

2    vice motions, states:  "The motions shall contain a statement

3    certifying that no disciplinary proceedings are pending against

4    the attorney in any jurisdiction, and no discipline has been

5    previously imposed on the attorney in any jurisdiction."  The

6    rule imposes a continuing obligation on attorneys admitted pro

7    hac vice, they quote, "they have a continuing obligation during

8    the period of suit -- during the period of such admission

9    promptly to advise the Court of the disposition made of charges

10   or the institution of new disciplinary proceedings".  It.

11        Is undisputed that Mr. Strojnik, Sr. failed in his pro

12   hac vice application to certify, as required, that no

13   discipline has previously been imposed on him in any

14   jurisdiction, although such discipline had been imposed on him.

15   He failed to disclose on his application for disciplinary

16   proceedings, referred to as 2009 and 2010 claims, were pending

17   against him.  He failed to disclose the filing of the December

18   17th, 2010 complaint against him, and that occurred after he

19   filed his pro hac vice application, but before it was granted

20   on March 4th 2011.  Despite his continuing obligation to notify

21   the Court promptly of the institution of the new disciplinary

22   proceedings, he failed to advice the Court of the filing of the

23   July 29th, 2011 complaint until November 21, 2011.

24        Chicago Title alleges transgressions of Mr. Strojnik,

25   Sr. during the course of this litigation as a basis for

1    revoking his pro hac vice admission.  There is no need to

2    consider these allegations because Mr. Strojnik's lack of

3    candor with the Court, in contention with his pro hac vice

4    admission alone, requires that it be revoked.  The Court has

5    the inherent power to take this action, just as it had the

6    power to admit Mr. Strojnik, Sr. to appear in the court to

7    represent plaintiff.  The Court welcomes attorneys admitted in

8    other jurisdictions, but only if they conduct themselves

9    candidly and honorably, which most do.  Mr. Strojnik, Sr. did

10   not.  Mr. Strojnik, Jr. participated in the Arizona ethics

11   proceedings and was fully aware of them.  He's been a party to

12   Mr. Strojnik's lack of candor with the Court, and his pro hac

13   vice admission likewise must be revoked.

14        Mr. Strojnik argued that the Court -- that the client

15   has minimal resources, and is contending with powerful and

16   wealthy adversaries.  And if they can no longer represent Dare

17   Investments, Dare will be unable to contest effectively against

18   defendants.  Dare's predicament does not justify admitting pro

19   hoc vice attorneys who are unwilling to abide by the Court's

20   rules, and it made false representations to the Court.  Local

21   counsel, Christopher Humphreys, Esquire, is a member of the bar

22   of the court.  He has not been admitted pro hac vice.

23   Consequently, Chicago Title's motion as originally framed may

24   not technically have applied to him.  However, as local

25   counsel, he has an obligation to ensure the good standing of

1    the person he was moving to admit pro hac vice.  More

2    importantly, as events unfold here, we're dealing with the

3    unethical matter with the way the Strogics were dealing with

4    the Court to appear here.  He did nothing to remedy the

5    situation.  And, in fact, continued to participate with the

6    Strogics.  This renders his -- this renders him ineligible to

7    continue to act as local counsel in this case.

8              Thus, the motion will be granted.

9              As to Mr. Peter Strojnik, Sr., and Mr. Peter Strojnik,

10   Jr., the order will prohibit Mr. Humphreys from continuing to

11   act as local counsel in the case.  The Court will file an

12   appropriate order.  That will resolve the motion.

13             MR. STROGIC:  Your Honor, may I approach, I need a

14   logistical issue?

15             THE COURT:  You had your opportunity.

16             MR. STROGIC:  I need to find out if all discovery --

17             THE COURT:  You'll have to come up to the microphone,

18   I can't hear you.

19             MR. STROGIC:  Your Honor, this is Peter Strojnik.  I

20   need to find out if all the discovery deadlines are being

21   continued or whether or not they're not being continued.

22             THE COURT:  I'm afraid I'm not hearing you.  Pull the

23   microphone closer.

24             MR. STROGIC:  How's this?  Okay.  The only question I

25   have, your Honor, is whether or not the discovery deadlines

1        that have been scheduled, some of which comes up this Friday,

2        are being continued so that Mr. -- Dare Investments can find

3        new counsel, or whether or not they're not being continued.

4                    THE COURT:  Whether the deadlines are --

5                    MR. STROGIC:  Correct.  Whether the deadlines --

6        whether the Court will invoke some sort of a moratorium on

7        discovery and deadline issues.

8                    THE COURT:  I think you'll have to take that up with

9        Judge Shipp.

10                   MR. STROGIC:  Well, I can't, your Honor.

11                   THE COURT:  WeLL, your -- whoever -- they'll be a

12       stay, temporarily, while you get new counsel.  So I'll order a

13       stay of 60 days.

14                   MR. STROGIC:  Okay.

15                   THE COURT:  To enable you to get new counsel to appear

16       in the case.

17                   MR. STROGIC:  Thank you, your Honor.

18                   THE COURT:  I'll include that in the order.

19                   MR. STROGIC:  May I also inquire, your Honor, if the

20       order is without prejudice or with prejudice?

21                   THE COURT:  With prejudice or without prejudice?

22                   MR. STROGIC:  I'm wondering whether or not it would be

23       appropriate to file another application and make another --

24                   THE COURT:  It's as prejudicial as it can be.  It will

25       be with prejudice.

1              MR. STROGIC:  Okay, thank you.

2              THE COURT:  Alright.  Good.  Thank you, very much.

3              MR. O'DONNELL:  Your Honor, the deadline for us to

4      file our answer and counterclaim --

5              THE COURT:  That will be stayed too.  Everything is

6      stayed for 60 days.

7              MR. O'DONNELL:  Thank you, your Honor.

8              THE COURT:  Alright.

9              (Matter concluded)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25